IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAVARIAN NORDIC A/S, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-614-SLR |
| | ) |
| ACAMBIS INC. and | ) |
| ACAMBIS, PLC, | ) |
| | ) |
| Defendants. | ) |

## ACAMBIS' MOTION TO STAY THE PROCEEDINGS

The claims in this action against Defendants Acambis Inc. and Acambis plc ("Defendants" or "Acambis") must be stayed pursuant to 28 U.S.C. § 1659(a). Plaintiff Bavarian Nordic A/S ("Plaintiff" or "BN") has initiated a parallel proceeding against Acambis' products, involving the same issues, before the U.S. International Trade Commission ("ITC"). By statute, "the district court *shall* stay, until the determination of the [ITC] becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the [ITC]…." 28 U.S.C. §1659(a) (emphasis added).

BN's actions here and before the ITC are based on the same fact and legal issues. *See* Exhibits A & B.[1]  Both actions involve issues relating to competition for U.S. Government contracts for the research, development, and manufacture of a smallpox vaccine based on a modified vaccinia Ankara ("MVA") virus strain. In both cases, BN

---

[1]   The ITC Complaint is attached as Exhibit A (with numbered public exhibits). The highlighted allegations in Exhibit A appear – in most cases *verbatim* – in both the ITC Complaint and the complaint in this case ("Del. Complaint"). Exhibit B charts those allegations on a paragraph-by-paragraph basis.

claims that Acambis violated BN's "property" interests in certain MVA virus strains, "misappropriated trade secrets" relating to MVA vaccine research and production techniques, and "unfairly competed" with BN by misleading the U.S. Government into believing that Acambis had rights to use the MVA viral strains and trade secrets at issue. *See* Del. Complaint ¶¶ 44-69 & ITC Complaint ¶¶ 66-69.

As the claims in this case involve the same issues involved in BN's ITC action, Acambis hereby moves for a stay of this action pursuant to 28 U.S.C. § 1659(a). If any aspect of this case is not stayed pursuant to 28 U.S.C. § 1659(a), it should be stayed pursuant to this Court's inherent discretion as proceeding with this case concurrently with the ITC action would result in duplicative and potentially inconsistent results.

## FACTUAL BACKGROUND

On August 19, 2005, BN filed both this action and a complaint with the ITC. On September 19, 2005, the ITC instituted an investigation into the allegations raised by BN's ITC complaint.[2] As set forth below, both complaints include allegations of misappropriation, trade secret violations, and unfair competition based on the *identical* factual predicate. *E.g., compare* Del. Complaint ¶¶ 10-42 *with* ITC Complaint ¶¶ 11-43.

### 1. Factual allegations

The nucleus of BN's factual allegations in both this and the ITC action is as follows[3]:

---

[2]   *In the Matter of Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Investigation No. 337-TA-550. *See* 70 Fed. Reg. 55,918 (Sept. 23, 2005), attached as Exhibit C.

[3]   The recitation of BN's allegations in this motion is solely to demonstrate that the two matters involve the same issues and is no way an admission that those allegations are true. Acambis vigorously contests BN's allegations and believes that BN's claims are without merit.

BN and Acambis are competitors for contracts with the U.S. Government in the development and sale of smallpox vaccines based on the modified vaccinia ankara ("MVA") strain of the smallpox virus. Del. Complaint ¶¶ 10-15, 16-21[4]. MVA-based vaccines are "safer and more effective for individuals for whom the traditional smallpox vaccine is more dangerous, such as patients with disorders of the immune system, skin conditions such as eczema, or other disorders presenting a high risk of complications from existing smallpox vaccines." *Id.* ¶ 11.

Following the September 11, 2001 terrorist attacks, the U.S. Government devised a "comprehensive approach" to "address[ing] the urgent and compelling need to accelerate the development and stockpiling of MVA smallpox vaccines…." ITC Complaint Ex. 15 at 3. To that end, it stated its intent to "provide contract support" and to issue "three sequential Requests for Proposals (RFPs)" relating to the research, development, and manufacture of a MVA-based vaccine. *Id*. at 4.

According to BN, "[a]ll sources of [MVA] originate from Professor Anton Mayr," a German scientist. *Id.* ¶ 22. By virtue of a May 1996 "exclusive license" with Professor Mayr, BN claims to hold the rights to "the commercialization of all MVA strains." *Id.* ¶ 23. BN claims to have developed its own MVA-based smallpox vaccine, sold under the trademark IMVAMUNE™, based on a viral strain to which BN claims patent rights, MVA-BN®. *Id*. ¶¶ 11, 13. It claims to "own several U.S. patents and pending patent applications directed to MVA-base vaccines." *Id*. ¶ 14.

Acambis researches, develops, and manufactures vaccines, including traditional smallpox vaccines. *Id*. ¶¶ 17-18. Its traditional smallpox vaccines are sold under the

---

[4]    The corresponding paragraphs from the ITC Complaint are listed in Exhibit B.

trade names ACAM1000 and ACAM2000. *Id.* Acambis' MVA-based smallpox vaccine is known as ACAM3000 or MVA3000. *Id.* ¶¶ 17-19.

On June 12, 2002, personnel from BN and Acambis met to discuss a potential collaboration regarding an MVA-based vaccine. *Id.* ¶ 32. BN claims that during the meeting, and subject to an earlier "secrecy agreement," BN disclosed "clinical data, dosing, and production conditions that were…the culmination of [BN's] extensive research and development dating back to 1996." *Id.* ¶¶ 31-32.

In August 2002, the NIAID NIH released its first RFP relating to a MVA-based vaccine, which was "intended to provide resources for the initial development of MVA vaccine candidates." *See* ITC Complaint Ex. 15 at 4; *id.* ¶¶ 36-38. The first RFP also identified separate collaborative opportunities with NIH, including the "the availability of master seed stock of MVA from NIAID." *See* ITC Complaint Ex. 15 at 3; Del. Complaint ¶ 36; Exhibit D at 2. Dr. Bernard Moss of NIH is alleged to have obtained the U.S. Government's MVA master seed stock from Professor Mayr. *Id.* ¶ 27. BN alleges that Professor Mayr provided the MVA to NIH on a number of conditions, including that "the strains were…for research only and were not to be used for any commercial purpose without the express permission from Professor Mayr." *Id.* ¶ 28.[5]

---

5   Following BN's filing of the ITC Complaint, the Office of Unfair Import Investigation ("OUII") investigated the basis for BN's claim that Professor Mayr placed restrictions on NIH's use of the MVA strains. *See* Exhibits D & E. The OUII "confirm[ed] that, while it is [BN's] contention that the referenced agreement [between Professor Mayr and NIH] exists, there is no written agreement to this effect and, accordingly, none was provided with either the complaint or supplemental letter." Exhibit E. Further, a 2001 letter from Professor Mayr to Dr. Moss contains no restrictions on NIH's use of the strain. *See* Exhibit F.

Pursuant to the first RFP, NIAID NIH awarded contracts to both BN and Acambis. *Id.* ¶ 38. BN claims that, after the contract award, "Acambis received MVA-572 or its progeny…from NIAID NIH." *Id.* ¶ 38. According to BN, Acambis' used that MVA strain and information from the June 12, 2002 meeting to develop its MVA3000 vaccine. *Id.* ¶¶ 41-42.

### 2. Delaware and ITC Counts

Based on that core of factual allegations, as set forth below, BN alleges claims in both this case and the ITC action on various grounds rooted in misappropriation, trade secrets violations, and unfair competition. BN alleges four counts in the Delaware Complaint: (1) tortious conversion; (2) misappropriation of trade secrets pursuant to Del. Code Ann. Tit. 6 § 2001 *et seq.*; (3) unfair trade practices pursuant to Del. Code Ann. Tit. 6 § 2531 *et seq.* and Delaware common law; and (4) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). Based on the same factual predicate as the Delaware Complaint, BN alleges claims for "misappropriation of proprietary technology" and patent infringement in the ITC action. *Compare* Del. Complaint ¶¶ 10-42 *with* ITC Complaint ¶¶ 11-43. At bottom, all of the claims are dependent on BN's claims to proprietary rights in MVA strains and MVA-related trade secrets.

i. Tortious conversion.

BN's tortious conversion count in this case involves the same issues involved in BN's misappropriation claim in the ITC action, including (i) whether BN holds proprietary rights to MVA-572 and its progeny, and (ii) whether Acambis' alleged receipt of MVA-572 from NIH violates those rights. *See* Del. Complaint ¶¶ 44-50; ITC Complaint ¶¶ 66-69; *see also Resource Ventures, Inc. v. Resources Mgmt. Intl., Inc.*, 42

F. Supp. 2d 423, 439 (D. Del. 1999) ("Under Delaware law, conversion is the wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it.") (citation omitted).

For instance, the complaints allege the exact same basis for BN's purported property rights to the MVA-572 strain – an "exclusive agreement" with Professor Mayr. *See* Del. Complaint ¶ 23, 46; ITC Complaint ¶¶ 22, 58. They also both allege that Acambis violated those purported property rights by receiving an MVA strain from NIH. *See, e.g.,* Del. Complaint ¶ 47; ITC Complaint ¶ 68. In fact, the ITC has already begun its investigation into issues relating to these claims. *See* Exhibit E (OUII letter confirming that BN has not provided any written documentation supporting its allegation that Professor Mayr restricted NIH's use of the MVA-572 strain to non-commercial purposes).

  ii. <u>Misappropriation of trade secrets</u>.

BN's misappropriation of trade secrets count also involves the same issues involved in the ITC action, including (i) whether BN purported "proprietary technology" constitutes trade secrets, (ii) whether BN disclosed any trade secret information to Acambis, (iii) and whether Acambis used any such information for its own commercial benefit. *See* Del. Complaint ¶¶ 51-61; ITC Complaint ¶¶ 66-69; *see also* Del. Code Ann. Tit. 6 § 2001 (2) ("'Misappropriation' shall mean…Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means….").

In both cases, the same purported trade secrets are alleged – "the effective dose and production/commercialization process for IMVAMUNE™" and "the plaque

6

purification and attenuation processes relating to MVA-BN®." *See* Del. Complaint ¶¶ 52, 54, 57, 58; ITC Complaint ¶¶ 59, 67-69. BN also makes virtually identical allegations with respect to the value of, and efforts to protect, those purported trade secrets. *Compare* Del. Complaint ¶¶ 53-54 *with* ITC Complaint ¶¶ 60-61.

Further, in both cases, BN alleges that it disclosed the trade secrets to Acambis in the June 12, 2002 meeting. *See id.*; *see also* ITC Complaint ¶¶ 59-61. And both complaints include identical allegations regarding the "secrecy agreement" purportedly governing the disclosures. *See* Del. Complaint ¶¶ 31-33; ITC Complaint ¶¶ 30-32; *see also,* ITC Complaint ¶ 69 & Del. Complaint ¶ 58.

Both complaints also include allegations that Acambis used BN's proprietary information for purposes of developing its own MVA vaccine. *See* Del. Complaint ¶ 41 & ITC Complaint ¶ 67; *see also id*. ¶¶ 63, 65. They also include identical allegations of Acambis' knowledge of the alleged misappropriation. *See* ITC Complaint ¶ 69 & Del. Complaint ¶ 58; *see also* ITC Complaint ¶ 69 & Del. Complaint ¶ 55, 57.

    iii.    <u>Unfair trade practices</u>.

BN also alleges that Acambis engaged in "deceptive practices" and "unfair competition" by "passing off MVA3000 … *as a product of its own research and development*" and "marketing and using *a strain of MVA virus that it has no lawful right to possess or use*." *Id.* ¶ 63 (emphasis added). BN's unfair trade practices count merely recasts BN's tortious conversion and misappropriation of trade secrets counts and, hence, involves the same issues as the ITC misappropriation claim. *Compare* Del. Complaint ¶ 63 (Acambis engaged in deceptive trade practices and unfair competition "by marketing and using a strain of MVA virus *that it has no lawful right to possess or use*" and "by

7

passing off MVA3000 … *as a product of its own research and development*") (emphasis added) *with* ITC Complaint ¶ 69 ("Acambis *unfairly competed* with Bavarian Nordic by creating a vaccine, MVA3000, through its wrongful acquisition of MVA-572 or its progeny and its misappropriation of Bavarian Nordic's proprietary information relating to IMVAMUNE™ and MVA-BN®.") (emphasis added); *see also id*. ¶¶ 63, 65.  The only other substantive paragraph alleged in the unfair trade practices count – which again simply restates tortious conversion and trade secrets theories – appears *verbatim* in the ITC misappropriation claim.  *See* Del. Complaint ¶ 64 & ITC Complaint ¶ 67.[6]

      iv.      Lanham Act unfair competition.

This final count alleges that Acambis deceived the U.S. Government into believing that Acambis has rights to BN's "proprietary strains and know how." *Id*. ¶ 68 (Acambis' conduct is "likely to cause consumers to be confused, mistaken or deceived into believing that Acambis has a right to use [BN's] *proprietary strains and know how*, and/or otherwise believe that Acambis is a legitimate bidder in the RFP process, when in fact they are not.") (emphasis added).  Hence, this count also depends on the same issue of whether Acambis misappropriated any proprietary MVA strains and/or trade secret information.

BN's Lanham Act count involves issues squarely before the ITC, including whether BN has rights to "proprietary strains and know how" and whether Acambis misappropriated any such rights.  *See* Del. Complaint ¶ 68; ITC Complaint ¶ 66.  BN's

---

[6]    In addition, to the extent that this claim is based on BN's alleged trade secrets, it is precluded by statute.  *See* Del. Code Ann. Tit. 6 § 2007(a) ("[T]his chapter displaces conflicting …law of this state providing civil remedies for misappropriation of a trade secret."); *Savor, Inc. v. FMR Corp*., 812 A.2d 894, 898 (Del. 2002) (precluding unfair competition claim based on misappropriation of trade secrets).

8

patent claims before the ITC will also inform the Lanham Act count insofar as BN asserts those patents – which are specifically identified in Delaware Complaint ¶ 14 – as support for the claim that Acambis has made false statements to the U.S. Government regarding Acambis' "freedom to operate" in the field.  *See* Del. Complaint ¶ 68, ¶ 20.

## ARGUMENT

As set forth below, this action should be stayed in its entirety as all of the prerequisites for a mandatory stay pursuant to 28 U.S.C. § 1659(a) are met.  To the extent that any aspect of this action that is not stayed pursuant to 28 U.S.C. § 1659(a), it should be stayed pursuant to this Court's inherent discretionary power.

**A.    The Delaware Action Must be Stayed Pursuant to 28 U.S.C. § 1659(a).**

The mandatory stay provision in 28 U.S.C. § 1659 states:

(a)  *Stay*.  In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, *the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission*, but only if such request is made within –
  (1) 30 days after the party is named as a respondent in the proceeding before the Commission, or
  (2) 30 days after the district court action is filed, whichever is later.

(Emphasis added).[7]

---

[7]    Following the dissolution of any stay pursuant to 28 U.S.C. § 1659(a), the record of the ITC proceeding is forwarded to the district court and admissible in the district court action.  *See* 28 U.S.C. § 1659(b) ("[A]fter dissolution of a stay under subsection (a), the record of the proceeding before the United States International Trade Commission shall be transmitted to the district court and shall be admissible in the civil action, subject to such protective order as the district court determines necessary, to the extent permitted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure.").

Hence, a claim must be stayed if three prerequisites are met: (1) the civil action involves "parties that are also parties to a proceeding before the [ITC]"; (2) the civil claim "involves the same issues involved in the proceeding before the [ITC]"; and (3) a request for stay is filed within 30 days after the ITC begins a proceeding. *See id.*; *Verve, LLC v. Verifone, Inc.*, 2004 WL 2600452 (N.D. Cal. Nov. 15, 2004).

If those elements are met, a stay of proceedings in the civil action is mandatory. *See, e.g., Fexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, 2005 WL 1126750 at *2 (N.D. Ohio April 29, 2005) (stay granted based on "the mandatory nature of the stay provision"); *Proxim Inc. v. 3Com Corp.*, 2003 WL 403348 at *1 (D. Del. Feb. 21 2003) (Robinson, J.) ("Given the fact that Intersil was also a respondent in an action brought before the ITC by plaintiff related to the same technologies, the court was required to stay this action pursuant to 28 U.S.C. § 1659."); *Universal Tool & Stamping Co. v. Ventra Group*, 1998 U.S. Dist. LEXIS 11541, 46 U.S.P.Q.2d 1799 at *3 (N.D. Ind. Jan. 20, 1998) (defendant need not answer complaint because "a stay must (the statute says 'shall') be entered" as to "proceedings in the civil action"); *see also Micron Tech., Inc. v. Mosel Vitelic Corp.*, 1999 U.S. Dist. LEXIS 4792 at *6 (D. Idaho 1999) (court "statutorily required" under 28 U.S.C. § 1659 to stay claims).

This entire action must be stayed as each of the 28 U.S.C. § 1659(a) prerequisites are present – (1) there is an identity of parties between this and the ITC action; (2) each and every claim in this action involves issues involved in the ITC action; and (3) this motion is filed within 30 days of the institution of the ITC proceeding. The first element is met BN and Acambis plc are parties to this action and are also parties to the ITC

action. *See id.*[8] The second element for a stay under 28 U.S.C. § 1659 is also met because, as described above, each of the four counts brought in this case involves issues involved in the ITC action. The fact that the ITC action may raise *more* issues than the Delaware case has no bearing on whether a stay is required; a stay is required for any Delaware count "that involves the same issues involved in the [ITC] proceeding." *See* 28 U.S.C. § 1659(a). Finally, Acambis also meets the third 28 U.S.C. § 1659(a) prerequisite as this motion is filed well within 30 days of the ITC's September 19, 2005 institution of the ITC proceeding naming Acambis plc as a respondent (and the September 23, 2005 publication of that investigation in the Federal Register). *See Verve,* 2004 WL 2600452 at *1. Acambis plc also satisfies the requirement that the request for stay be brought by "*a* party to the civil action that is also *a* respondent in the proceeding before the Commission." 28 U.S.C. § 1659(a) (emphasis added).

**B.    Any Aspects of this Case Not Stayed Pursuant to 28 U.S.C. § 1659(a) Should be Stayed Pursuant to This Court's Inherent Discretion.**

Even if the Court were to determine that 28 U.S.C. § 1659(a) does not *require* a stay of any aspect of this case, that aspect should be stayed nonetheless pursuant to this

---

[8]   While Acambis Inc. is not formally named as a respondent in the ITC action, the claims against it must also be stayed as the statute does not require that *all* parties in the civil suit also be respondents in the ITC proceeding; it merely requires that the civil action "involv[e] parties that are also parties to a proceeding before the [ITC]." *See* 28 U.S.C. § 1659(a). Further, as discussed *infra*, even if 28 U.S.C. § 1659 does not apply to Acambis Inc., the claims against Acambis Inc. should be stayed pursuant to this Court's inherent discretion. Acambis Inc. is a wholly-owned subsidiary of Acambis plc and is the holder of the U.S. Government contracts relating to MVA3000. BN does not differentiate between Acambis Inc. and Acambis plc in either the Delaware or ITC complaint; rather, it alleges that Acambis Inc. is an "alter ego" of Acambis plc and collectively refers to both entities as "Acambis." *See* Del. Complaint p. 1 & ¶ 7; ITC Complaint at ¶ 7. In addition, BN's request for relief in the ITC action would extend to both Acambis plc and Acambis Inc. *See* ITC Complaint at pp. 28-29. Hence, there is no reason to treat the two entities differently for purposes of a stay.

11

Court's discretionary authority.  *See Commissariat a L'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 9107 at *6 (D. Del. May 13, 2004) (granting motion to stay); *Alloc, Inc. v. Unilin Decor N.V.*, 2003 WL 21640372 at *2 (D. Del. July 11, 2003) ("The decision to stay a case is firmly within the discretion of the court.").

In determining whether a stay is appropriate, this Court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *Commissariat*, 2004 U.S. Dist. LEXIS 9107 at *6; *Alloc*, 2003 WL 21640372 at *2; *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).  In this case, all of those factors support the grant of a stay pending a final determination in the ITC action.

First, BN would not be prejudiced or tactically disadvantaged by a stay.  BN has virtually identical claims pending in another forum in which it seeks injunctive relief. *See* Exhibits A & B; 28 U.S.C. § 1659; *Commissariat*, 2004 U.S. Dist. LEXIS 9107 at *9-10 (delay in recovery of money damages not prejudicial).  Further, by its own admission, BN has had knowledge of the claims alleged in this case for at least two-and-a-half years.  *See* Del. Complaint ¶¶ 38-39.  BN cannot now be heard to claim prejudice from a stay, particularly when the ALJ overseeing the ITC action has set a target date for completion within 12 months.  *See* Exhibit G.

Second, as discussed *supra*, the ITC action will resolve and/or narrow any issues raised in this case, thereby reducing litigation costs and conserving judicial resources. *See Red Hat, Inc. v. The SCO Group, Inc.*, 2004 WL 883400 at *2 (D. Del. April 6, 2004)

(Robinson, J.) ("It is a waste of judicial resources to have two district courts resolving the same issue, especially when the first filed suit…involves the primary parties to the dispute."); *Alloc*, 2003 WL 21640372 at *2; *see also Commissariat*, 2004 U.S. Dist. LEXIS 9107 at *11.

Third, the issues decided before the ITC may have *res judicata* or claim/issue preclusive effect on the counts asserted by BN in this case. *See Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 46 (2d Cir. 1985) ("ITC adjudications of unfair trade practice …causes of action are entitled to *res judicata* effect."); *In re Convertible Rowing Exerciser Patent Litig.*, 814 F. Supp. 1197, 1207 (D. Del. 1993) (factual findings underlying ITC unfair trade practices judgment have collateral estoppel effect on civil patent claim).

Finally, this case is barely underway; discovery has not begun and no trial date has been set. Hence, a stay can be entered "before any party incurs substantial litigation-related expenses." *Alloc*, 2003 WL 21640372 at *3. In addition, discovery and other materials from the ITC action may be used in this matter, thereby reducing litigation and other administrative costs. *See* 28 U.S.C. § 1659(b).

## **CONCLUSION**

Based on the foregoing, this action should be stayed in its entirety pursuant to 28 U.S.C. § 1659 and/or this Court's inherent discretion pending a final determination in the ITC action.

                        MORRIS, NICHOLS, ARSHT & TUNNELL

                        */s/ James W. Parrett, Jr.*

                        Mary B. Graham (#2256)
                        James W. Parrett, Jr. (#4292)
                        1201 North Market Street
                        P.O. Box 1347
                        Wilmington, DE 19899-1347
                        (302) 658-9200

OF COUNSEL:           mgraham@mnat.com
                              jparrett@mnat.com

William D. Coston          *Attorneys for Defendants Acambis Inc.*
Lindsay B. Meyer           *and Acambis plc*
Eric S. Namrow
Martin L. Saad
VENABLE, LLP
575 7th Street, NW
Washington, DC 20004-1601
202-344-4000

October 4, 2005
486029

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAVARIAN NORDIC A/S, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-614-SLR |
| ) | |
| ACAMBIS INC. and ) | |
| ACAMBIS, PLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**[Proposed] ORDER**

WHEREAS Acambis plc and Acambis Inc. (collectively "Acambis") have moved pursuant to 28 U.S.C. § 1659(a) and this Court's inherent discretion for a stay of this proceeding pending a final determination in Bavarian Nordic A/S's parallel proceeding before the U.S. International Trade Commission ("ITC"), *In the Matter of Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Investigation No. 337-TA-550;

WHEREAS the Court has considered the parties' positions and arguments with respect to the motion, and finds that Acambis is entitled to the relief sought thereby;

IT IS HEREBY ORDERED that this action is stayed in its entirety until the determination of the ITC becomes final in the aforementioned parallel proceeding.

_____   _____
Date                         United States District Court Judge

## **RULE 7.1.1 CERTIFICATION**

I hereby certify that counsel for Acambis Inc. and Acambis plc have raised the subject of the foregoing motion with counsel for Bavarian Nordic A/S asking Bavarian Nordic to agree that this case should be stayed. Counsel for Bavarian Nordic refused to agree without providing any reasons as to why.

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John W. Shaw
> YOUNG CONAWAY STARGATT
>   & TAYLOR
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE  19899-0391

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 4, 2005, upon the following individuals in the manner indicated:

**BY HAND**:

> John W. Shaw
> YOUNG CONAWAY STARGATT
>   & TAYLOR
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE  19899-0391

**BY FEDERAL EXPRESS**

> Edward A. Pennington
> SWIDLER BERLIN LLP
> 3000 K Street, N.W., Ste. 300
> Washington, DC  20007-5116

*/s/ James W. Parrett, Jr.*

James W. Parrett, Jr. (#4292)
jparrett@mnat.com

486029