IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAVARIAN NORDIC A/S, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-614-SLR |
| | ) |
| ACAMBIS INC. and | ) |
| ACAMBIS, PLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ACAMBIS' REPLY IN SUPPORT OF MOTION TO STAY

Defendants Acambis Inc. and Acambis plc ("Acambis") hereby reply to Plaintiff Bavarian Nordic A/S's ("BN") opposition to Acambis' motion to stay these proceedings. BN seeks to proceed simultaneously with both this case and the ITC matter, on separate tracks, despite the fact that the ITC case will address all of the issues to be litigated here. Such parallel proceedings are prohibited by 28 U.S.C. § 1659 and would unnecessarily waste the resources of the Court and parties. BN's opposition does not overcome the clear language of § 1659(a), nor does it assert any sound justification for proceeding on parallel paths. Hence, whether pursuant to § 1659(a) or this Court's inherent discretion, this case should be stayed.[1]

---

[1] Given the enormous amount of discovery required in the ITC case – including over 30 years of prior art, substantial foreign discovery, and third-party discovery from multiple parties, including the U.S. Government – Acambis moved for, and the ALJ overseeing the ITC action granted, a two-month extension of the target date from September 2006 to November 2006. *See* Exhibit H at 3. Hence, the ITC proceeding is targeted for completion – including discovery, a hearing before the ALJ, an initial determination by the ALJ, and a final determination by the Commission – before summary judgment motions would even be *filed* in this case. *See id.* Grounds to terminate the ITC proceeding may exist (such as a jurisdictional challenge to a proceeding against U.S.

(Continued . . .)

Acambis responds to the specific points raised in BN's opposition below.

A.  THE MANDATORY STAY UNDER 28 U.S.C. § 1659(a) APPLIES.

1.  BN does not dispute that Acambis has met all of the procedural requirements for a stay pursuant to 28 U.S.C. § 1659(a). Nor does BN dispute that the same *factual* contentions underlie its Delaware claims and its claims before the ITC. In fact, the topics upon which BN claims to need discovery in this case are totally subsumed within BN's complaint before the ITC. *See* Exhibit I (comparing BN's discovery issues with its ITC allegations). BN itself has argued to the ITC that "although [the ITC] investigation involves two patents, all of the claims are *directed towards the same technology* – a MVA-derived vaccinia virus, vaccine, or pharmaceutical composition based thereon." Exhibit J at 2. That concession alone provides the basis for a mandatory stay under 28 U.S.C. § 1659(a). *See Proxim Inc. v. 3Com Corp.*, 2003 WL 403348 at *1 (D. Del. Feb. 21 2003) (Robinson, J.) ("Given the fact that Intersil was also a respondent in an action brought before the ITC by plaintiff *related to the same technologies*, the court was required to stay this action pursuant to 28 U.S.C. § 1659.") (emphasis added).

2.  BN's argument that 28 U.S.C. § 1659(a) does not apply because "the legal issues are not the 'same' between the federal district court and the ITC" is erroneous. Opp. at 4. BN confuses "issues" with causes of action. While conduct might be analyzed under different causes of action – *e.g.*, negligence, strict liability, quasi-contract – the conduct is the "issue" to

---

(. . . continued.)
   Government property under 28 U.S.C. § 1498), but even if the ITC were to consider such relief, all other aspects of that matter, including discovery, will proceed until any such termination. Unless and until that case is terminated (which Acambis would report immediately to this Court), this matter must be stayed pursuant to § 1659(a).

be litigated.[2]  The statute does not require identical causes of action in the two fora; on its face, the statute requires a stay of "any claim that involves the same *issues* involved in the proceeding before the [ITC]…."  *See* 28 U.S.C. § 1659(a) (emphasis added).  Only 13 cases appear to have addressed the statute, which is relatively recent, but none support BN's legal distinction.[3]  *Cf. Proxim*, 2003 WL 403348 at *1 (quoted above).

         3.      BN's almost exclusive reliance on *Micron Technology, Inc. v. Mosel Vitelic Corp.*, 1999 U.S. Dist. LEXIS 4792 (D. Idaho Mar. 31, 1999), in support of its suggestion that the exact same causes of action must appear in both the civil and ITC actions in order to implicate § 1659(a) is misplaced.  *Micron* did not hold that § 1659(a) only applies to identical causes of action before the district court and ITC.  It merely found as a matter of fact that the seven patent claims before the district court (but not the ITC) did not involve the "same issues" as the ITC proceeding as required by § 1659(a).[4]  *Id.*  And while the court did not grant the § 1659(a) motion, it strictly limited further proceedings to discovery on the seven patent claims not before the ITC.  *Id.* at *5.

---

[2]    For example, even if federal and state causes of action are not identical, district courts may exercise supplemental jurisdiction if the claims "are merely alternative theories of recovery based on the same acts."  *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979).

[3]    Section 1659(a) was enacted on December 8, 1994 as part of the Uruguay Round Agreements Act, Pub. Law. 103-465.

[4]    *Micron* involved 11 patents – six semiconductor circuitry patents and five process patents – only four of which were before the ITC.  1999 WL 458168 at *1-2.  The defendants argued that the claims relating to the seven patents *not before the ITC* should be stayed pursuant to § 1659(a) because "they implicate substantially similar legal and factual issues."  *Id.* at *3.  The plaintiff argued that "each of the eleven patents represent separate and distinct property rights, the alleged infringement of which necessarily implicates separate and distinct legal and factual issues."  *Id.*

4. BN mistakenly argues that this Court's *Alloc* and *Proxim* decisions support the proposition that § 1659(a) compels a stay only "when the same patents were claimed to have been infringed both in this Court and before the ITC." Opp. at 5 citing *Alloc, Inc. v. Unilin Decor N.V.*, 2003 WL 21640372 at *2 (D. Del. July 11, 2003); *Proxim*, 2003 WL 403348 at *1. *Alloc* did not involve a § 1659(a) motion. 2003 WL 21640372 at *1. Rather, it involved a discretionary stay of litigation involving a continuation patent while the parent patent was under reexamination by the USPTO.[5] Judge Sleet exercised his discretion to stay the continuation patent claims because, "even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate." *Id.* at *2. And the cited *Proxim* decision involved whether to stay the accrual of damages against certain defendants pending a § 1659(a) stay; the Court noted at the outset that it "was required" to stay the action pursuant to § 1659 due to a parallel action before the ITC "related to the same technologies…." *See* 2003 WL 403348 at *1. Here, the cases are clearly "correlated" – approximately 50% of the allegations are *verbatim* – and involve the exact same technology. *See* Exhibits A, B, I, J.

5. Even if the application of § 1659(a) were limited to the same legal theories, as set forth below, BN does not identify any elements of the legal causes of action in this case that are not before the ITC or predicated upon issues before the ITC. While BN can argue that its ITC claims are "more complex" or involve *more* issues than the claims here (*see* Opp. at 3, 7), it cannot deny that the issues here are subsumed within the claims before the ITC.

---

[5] Claims between the parties in the District of Columbia and Eastern District of Wisconsin relating to *other* patents had been previously stayed by those respective courts pursuant to § 1659(a). Judge Sleet's decision did not involve an ITC proceeding or motion pursuant to § 1659(a).

For instance, BN concedes that its tortious conversion claim is "predicate[d]" upon BN's alleged "property interest" in MVA strains obtained through an alleged "exclusive agreement" with Professor Mayr, and Acambis' alleged violation of those rights by receiving MVA strains from the NIH. *See* 10/18/05 BN Reply in Support of Motion to Strike at 2 citing Del. Complaint ¶ 46. Those underlying issues – *e.g.*, whether there is an agreement between BN and Professor Mayr (and the terms and scope of any such agreement) and whether NIH had authority to provide MVA strains to Acambis without restriction – are in both cases. *See* ITC Complaint ¶¶ 22, 58, 68.

Similarly, BN does not dispute that the exact same trade secret misappropriation allegations in this case are before the ITC. Rather, it argues that the cases involve different legal issues because the ITC applies "its own uniform federal standard" to trade secrets claims. Opp. at 7. But the lead ITC precedent cited by BN belies that argument and demonstrates that the same elements of a cause of action are present in both the Delaware and the ITC trade secrets claims. *Compare In re Certain Apparatus for the Continuous Production of Copper Rod*, Inv. No. 337-TA-52, 206 U.S.P.Q. 138, 156 (ITC 1979) ("To prove misappropriation of a trade secret for purposes of establishing an unfair act within the purview of section 337, four elements must be proven: (1) the existence of a trade secret which is not in the public domain, (2) that the complainant is the owner of the trade secret or possesses a proprietary interest therein, (3) that the complainant disclosed the trade secret to respondent while in a confidential relationship or that the respondent wrongfully took the trade secret by unfair means, and (4) that the respondent has used or disclosed the trade secret causing injury to the complainant.") *with Savor, Inc. v. FMR Corp.*, 2004 WL 1965869 at *5 (Del. Super. Ct. July 15, 2004) (Trade secrets claims implicate the following inquiries: "(1) Does a trade secret exist….; (2) has the secret been

5

communicated by plaintiff to the defendant; (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been improperly (*e.g.*, in breach of the understanding) used or disclosed by the defendant to the injury of the plaintiff?").[6]

BN's attempt to distinguish its unfair trade practices claim is also unavailing. *See* Motion at 7-8. It argues that "the heart" of the claim is "that Acambis is passing off ACAM3000 as its own." Opp. at 3 (citing Del. Complaint ¶ 63). But the *sole* basis for the alleged "passing off" is the allegation that Acambis developed its MVA vaccine using BN's purported trade secrets and proprietary MVA strains, which again, is squarely before the ITC. *Compare* Del. Complaint ¶¶ 63, 64 *with* ITC Complaint ¶¶ 67, 69.

Lastly, BN makes no attempt to distinguish any issues in its Lanham Act claim from the issues before the ITC. Opp. at 8 ("This is a federal law claim in this Court, and Bavarian Nordic has made no claim under the Lanham Act at the ITC."). As explained in Acambis' motion, the Lanham Act claim is predicated on the same *issues* before the ITC, including whether BN has rights to "proprietary strains and know how" and whether Acambis misappropriated any such rights. *See* Motion at 8-9. Further, if BN chooses to include in its Lanham Act claim allegations that Acambis made "false" statements to the U.S. Government regarding Acambis' ability to operate free of BN's alleged patents, both cases will involve the same patent issues (and corresponding proceedings, including determinations of patent validity,

---

[6]    BN notes that the ITC also looks to the Restatement (First) of Torts § 757 and Milgrim on Trade Secrets for guidance on trade secrets claims. Opp. at 7. But Delaware courts look to those same secondary sources for guidance. *See, e.g., American Totalisator Co. v. Autotote Ltd.,* 1983 WL 21374 at *4 (Del. Ch. Aug. 12, 1983) (Restatement); *Medtronic Vascular, Inc. v. Advanced Cardiovascular Systems, Inc.*, 2005 U.S. Dist. LEXIS 2259 at *3 (D. Del. Feb. 2, 2005) (Robinson, C.J.) (Milgrim).

enforceability, construction and infringement). *See* ITC Complaint ¶¶ 62-65; Del. Complaint ¶¶ 14, 20, 68.

B.     A DISCRETIONARY STAY IS APPROPRIATE.

      1.     BN provides no convincing argument as to how it would be prejudiced by a stay pending the ITC proceeding. It claims that injunctive relief from the ITC "may not apply to Acambis Inc.," but that argument has no merit. Opp. at 9. BN requests relief from the ITC against "Acambis" (collectively including Acambis plc and Acambis Inc.) as well as "permanent cease and desist orders pursuant to 337(f) prohibiting Acambis, its affiliates, subsidiaries, successors, or assigns from importing, selling or offering for sale in the United States certain MVA viruses and vaccines and pharmaceutical compositions based thereon that infringe, use, or disclose, one or more claims of the '893 and '752 patents or Bavarian Nordic's Proprietary Technology." ITC Complaint ¶ 7 & p. 29. And in any event, BN would not receive any relief in this case against Acambis Inc. pending the ITC matter – BN does not seek a preliminary injunction in this case and the ITC proceeding is targeted for completion before summary judgment motions would even be *filed* in this case.[7] *See* Exhibit H at 3.

---

[7]     Further, BN can hardly be heard to claim prejudice from a stay as it does not dispute that it had knowledge of the claims alleged in this case for at least two-and-a-half years before bringing suit. *Compare* Motion at 12 *with* Opp. at 9-10. BN argues that this suit was necessitated by the U.S. Government's issuance of a third MVA-related RFP in August 2005 (Opp. at 10), but that claim has no merit. BN knew for at least three years that the U.S. Government would issue a third RFP for a stockpile of MVA-based smallpox vaccine, and knew that Acambis had received contracts on the first two RFPs, yet took no action. *See* ITC Complaint, Exhibit 15 (First RFP dated August 15, 2002) at 4 ("It is the intent of the Government to provide contract support for the development and stockpiling of MVA vaccines through the issuance of three sequential Request for Proposals (RFPs)….[The] third contract action for the acquisition of a licensed product is being planned for 2005….").

2.     Contrary to BN's conclusory assertion, a stay will simplify and/or narrow any issues for trial in this case, thereby preserving the scarce resources of the Court and parties. *See* Opp. at 10 ("[A]ny resolution of the legal issues present in the ITC case are not likely to be relevant to this case because the legal issues are different."). Not only are the "issues" in the cases the same, as is already evident, at each step of the litigation, the same disputes will arise before this Court and the ITC. For example, as suggested by BN's outside counsel in the October 19 scheduling conference with the Court, the same "snag" in the ITC case involving whether BN's in-house counsel may have access to the discovery highly confidential materials relating to the ongoing U.S. Government procurement is likely to be a problem here. Similarly, the parties' dispute regarding whether patent proceedings are necessary to BN's Lanham Act claim will likely be resolved by materials produced in the ITC and patent proceedings in that forum. *See, e.g.,* 10/12/05 Acambis Opp. to Motion to Strike. There is no reason to burden this Court with such disputes when they can be addressed before the ITC. *See Red Hat, Inc. v. The SCO Group, Inc.*, 2004 WL 883400 at *2 (D. Del. April 6, 2004) (Robinson, J.) ("It is a waste of judicial resources to have two district courts resolving the same issue, especially when the first filed suit…involves the primary parties to the dispute.").

3.     BN's argument that "[i]t is at most questionable whether any factual or legal conclusions of the ITC can have preclusive effect on the instant action" is mistaken. Opp. at 10. The case law is clear that ITC findings on *unfair trade practices* issues are given preclusive effect. *See Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 46 (2d Cir. 1985) ("ITC adjudications of unfair trade practice …causes of action are entitled to *res judicata* effect."); *see also Baltimore Luggage Co. v. Samsonite Corp.*, 727 F. Supp. 202, 207 (D. Md. 1989) (antitrust and unfair competition claims barred by *res judicata* based on ITC

adjudication). BN does not even address *Union Manufacturing*, a seminal case on this issue, in its opposition. *Compare* Motion at 13 *with* Opp. at 10-11. Further, while the ITC's *patent* rulings may not be granted preclusive effect, the Court "can attribute whatever persuasive value…that it considers justified" to any such rulings. *See Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (construing claims "consistent with the ITC's construction").[8] Hence, in this case, BN's claims may be precluded by any ITC rulings on BN's ITC unfair competition claim (which subsumes the claims in this case), and any patent rulings may be persuasive insofar as they relate to BN's claims here, including the Lanham Act claim.[9] In a nutshell – why should either party be entitled to litigate *twice* issues such as whether Professor Mayr and BN have an "exclusive" agreement, whether Professor Mayr restricted NIH's use and provision of MVA strains, whether BN's dosing and manufacturing processes are confidential, and whether Acambis used any of BN's alleged proprietary information?

---

[8] As explained in *Union Manufacturing,* 763 F.2d at 45:

> [A]uthority regarding ITC patent validity determinations has no bearing on ITC unfair trade practice and trademark determinations. Patent validity determinations of the ITC are properly not accorded *res judicata* effect because the ITC has no jurisdiction to determine patent validity except to the extent necessary to decide a case otherwise properly before it. The jurisdictional bar to *res judicata* treatment of ITC patent validity determinations simply does not apply to other decisions by the ITC.

[9] In this regard, BN's challenge to *Convertible Rowing* misses the mark – that case remains good law in this District and has only been questioned by the District of New Jersey with respect to whether factual findings underlying an ITC *patent* invalidity ruling can be used in the context of a civil *patent* claim. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 173 F.Supp.2d 268, 275 n. 2 (D.N.J. 2001).

4.   Finally, BN's argument that the parties can "reach agreement on the production of witnesses and documents at the same time for both cases" is insufficient to require this Court and the parties to proceed simultaneously with both cases. Opp. at 11. BN has not suggested any topics for discovery in this case that are not already at issue before the ITC. *See* Exhibit I. Nor does BN dispute that the ITC proceeding will resolve and/or narrow the *factual* issues in this case. *Compare* Opp. at 10 *with* Motion at 12-13. In addition, the entire record can be available for this Court at the conclusion of that proceeding. 28 U.S.C. § 1659(b). There is simply no reason to waste resources on duplicative discovery and any related disputes and conferences in this case. *See, e.g., Red Hat*, 2004 WL 883400 at *2; *Alloc*, 2003 WL 21640372 at *2.

## CONCLUSION

Based on the foregoing and for the reasons set forth in Acambis' motion, this action should be stayed in its entirety pursuant to 28 U.S.C. § 1659(a) and/or this Court's inherent discretion pending a final determination in BN's parallel ITC proceeding.

MORRIS, NICHOLS, ARSHT & TUNNELL

*James W. Parrett, Jr. (#4292)*

OF COUNSEL:

William D. Coston
Lindsay B. Meyer
Eric S. Namrow
Martin L. Saad
VENABLE, LLP
575 7th Street, NW
Washington, DC 20004-1601
202-344-4000

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
   *Attorneys for Defendants Acambis Inc.
   and Acambis plc*

October 21, 2005
489282

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

>John W. Shaw
>YOUNG CONAWAY STARGATT & TAYLOR
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, DE  19899-0391

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 21, 2005, upon the following individuals in the manner indicated:

>**BY HAND**
>
>John W. Shaw
>YOUNG CONAWAY STARGATT & TAYLOR
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, DE  19899-0391
>
>**BY FEDERAL EXPRESS**
>
>Edward A. Pennington
>SWIDLER BERLIN LLP
>3000 K Street, N.W., Ste. 300
>Washington, DC  20007-5116

*James W. Parrett, Jr. (#4292)*

James W. Parrett, Jr. (#4292)
jparrett@mnat.com

489282