# EXHIBIT A

1

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

**Before the Honorable Robert L. Barton, Jr.**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of | Inv. No. 337-TA-550 |
| **CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES AND PHARMACEUTICAL COMPOSITIONS BASED THEREON** | |

**ORDER NO. 26:   INITIAL DETERMINATION GRANTING STAFF'S MOTION TO TERMINATE THE INVESTIGATION WITH RESPECT TO COMPLAINANT'S TRADE SECRET ALLEGATIONS**
(April 14, 2006)

## I.    INTRODUCTION

By publication of a notice in the *Federal Register* on September 19, 2005, pursuant to

subsection (b) of section 337 of the Tariff Act of 1930, as amended, the United States

International Trade Commission instituted this investigation to determine:

> (a)  [w]hether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain Modified Vaccinia Ankara ("MVA") viruses and vaccines and pharmaceutical compositions based thereon by reason of infringement of claims 1, 4, 5, or 34 of U.S. Patent No. 6,761,893 or claims 1, 2-9, 13-15 or 16 of U.S. Patent No. 6,913,752, and whether an industry in the United States exists or is in the process of being established as required by subsection (a)(2) of section 337; and
>
> (b)  [w]hether there is a violation of subsection (a)(1)(A) of section 337 in the importation of certain MVA viruses and vaccines and pharmaceutical compositions based thereon or in the sale of such articles by reason of misappropriation of trade secrets, the threat or effect of which is to destroy or substantially injure an industry in the United States, and whether an industry in

On March 20, 2006, the Commission's Investigative Staff ("Staff") filed, pursuant to 19

C.F.R. § 210.21(a)(2), a motion to terminate the trade secret portion of this investigation based

2

on an arbitration agreement between complaint Bavarian Nordic A/S ("BN") and respondent Acambis plc ("Acambis"). The Staff argues that "BN and Acambis have previously agreed that all matters relating to the exchange of trade secrets will be resolved by arbitration." Staff Memorandum at 1. The Staff acknowledges that because no investigations have been terminated pursuant to Section 337(c) since Congress amended the statute in 1994, its motion presents an issue of first impression. Id. at 5.

On March 20, 2006, Acambis filed and served a motion for summary determination in which, among other matters, it sought summary determination of BN's claim of misappropriation of trade secrets in part because BN's claim arises out of a confidentiality agreement which plainly requires arbitration of its claims. Acambis Motion at 1. In its memorandum filed in support of the motion, Acambis specifically states that the trade secret claim alleged in BN's complaint must be terminated pursuant to the mandatory arbitration provision in the February 2002 "secrecy agreement" upon which the claim is based. Acambis Motion Memorandum for Summary Determination at 32-33.

On March 28, 2006, Acambis filed a response supporting the Staff's motion to terminate. Acambis argues that the trade secret portion of this investigation should be terminated based on the arbitration agreement, because: (1) BN agreed to the mandatory arbitration provision; (2) BN was on notice that some or all of the allegations in this investigation may be subject to binding arbitration; (3) BN delayed in clarifying its trade secret allegations; and (4) BN is not actively prosecuting its trade secret allegations in this investigation. Acambis Memorandum at 1-2.

On March 28, 2006, BN filed an opposition to the Staff's motion to terminate. BN asserts that only a party to the arbitration agreement may invoke the arbitration clause and that neither BN nor Acambis have done so. BN Memorandum at 2. Because the Staff is not a party to the arbitration agreement, BN argues the Staff lacks standing to assert the arbitration clause. Id.

## II.    BACKGROUND

3

The products at issue in this investigation are "MVA viruses and vaccines and other pharmaceutical compositions based thereon that have in common an attenuated strain of MVA that cannot reproductively replicate in human cells." Staff Memorandum, Exhibit 1 at ¶ 43 ("BN Complaint"). In its complaint, BN alleges to have acquired the exclusive license for the commercialization of MVA strains. BN Complaint at ¶ 58. BN also alleges that certain technological information regarding both BN's MVA-based smallpox vaccine and the MVA virus used to manufacture it constitutes BN's trade secrets. Id. at ¶ 59-61. According to the complaint,

Acambis has engaged in unfair competition by creating its own vaccine, MVA3000, through its misappropriation of these trade secrets. Id. at ¶ 66.

Allegedly, Acambis came into possession of the trade secrets at issue in this investigation during a meeting in June 2002, between BN and Acambis. Id. at ¶ 31; Staff Memorandum, Exhibit 2 at 16 ("The disclosure on June 12, 2002, is believed to have comprised all trade secrets disclosed prior to this meeting to Acambis.")("BN Response to Staff's First Set of Interrogatories"). The meeting was to discuss a possible licensing arrangement between the two companies. BN Complaint at ¶¶ 30-32. In order to facilitate the licensing negotiations, BN and Acambis entered into a Secrecy Agreement. Id. at 30; BN Response to Staff's First Set of Interrogatories at 17. The Secrecy Agreement contains an arbitration clause that forms the basis of the Staff's motion to terminate.

III.   **DISCUSSION**

Title 19 of the United States Code, section 1337(c) states that
The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section, except that the Commission may, by issuing a consent order or on the basis of an agreement between the private parties to the investigation, **including an agreement to present the matter for arbitration**, terminate any such investigation, in whole or in part, without making such a determination.

4

19 U.S.C. § 1337 (c) (emphasis added).  The language outlined in bold print above was added to the statute by Congress in 1994 specifically to provide for termination of an investigation, in whole or in part, based on an arbitration agreement.  Commission Rule 210.21(a)(2) implements the portion of the statutory provision emphasized above.  Rule 210.21(a)(2) provides that

> **Any party** may move at any time for an order to terminate an investigation in whole or in part as to any or all respondents on the basis of an agreement to present the matter for arbitration.

19 C.F.R. § 210.21(a)(2)(emphasis added).  The word "party", as used in Rule 210.21(a)(2), is defined in Rule 210.3 to include "each complainant, respondent, intervenor, or **Commission investigative attorney**."  19 C.F.R. § 210.3 (emphasis added).  Therefore, contrary to BN's argument, a plain reading of Rule 210.21(a)(2) makes clear that the Staff has standing to move for an order to terminate this investigation on the basis of the arbitration agreement between BN and Acambis.

Moreover, even if Acambis were required to assert the arbitration agreement, I note that Acambis, in its own motion for summary determination, has sought to terminate the trade secret portion of this investigation based on the arbitration clause in the Secrecy Agreement.  In its motion for summary determination, Acambis clearly states:

> While BN's trade secret claim is without merit, it must be terminated pursuant to the mandatory arbitration provision in the February 2002 "secrecy agreement" upon which the claim is based. . . .  BN cannot claim prejudice from any termination in this forum.  It agreed to the arbitration provision upon which its trade secret claim is based, and Acambis gave notice at the outset of this Investigation that '[s]ome or all of [Complainant's] claims may be subject to arbitration.' . . . Hence, BN's trade secret claim should be terminated from this Investigation.

Acambis Motion Memorandum for Summary Determination at 32-33 (Motion Docket No. 12).  This is an affirmative assertion of the arbitration agreement by Acambis.  To consider it otherwise would place form over substance.

In order to terminate the trade secret portion of this investigation on the basis of an

5

arbitration agreement, the Staff need only show an agreement between BN and Acambis to arbitrate the trade secret issues in this investigation.  See  19 U.S.C. § 1337 (c); see also 19 C.F.R. § 210.21(a)(2).  Here, the Staff has produced the Secrecy Agreement, signed by Peter S. Wulff, President and CEO of Bavarian Nordic, and Nicolas Higgins, Commercial Director of Acambis.  Staff Memorandum, Exhibit 3 ("Secrecy Agreement").    The Secrecy Agreement states, in pertinent part,

    5.1    Both parties will use their best efforts to settle all matters in dispute amicably. All disputes and differences of any kind related to this Agreement, which cannot be solved amicably by the parties, shall be finally settled under the Rules of the International Chamber of Commerce (the "ICC") by one arbitrator appointed in accordance with the said Rules.

    5.2    The arbitration shall take place in Frankfurt and shall be conducted in the English language.  The award of the arbitrator shall be final and binding on both parties. The parties bind themselves to carry out the awards of the arbitrator.

Secrecy Agreement at §§ 5.1, 5.2.  Thus, according to the Secrecy Agreement, BN and Acambis agree to arbitrate "[a]ll disputes and differences of any kind related to [the] Agreement."  BN acknowledges in its interrogatory responses that all the trade secrets at issue in this investigation were disclosed during the June 12, 2002, meeting between BN and Acambis.  BN Response to Staff's First Set of Interrogatories at 16.  Because the June 12, 2002 meeting was covered by the Secrecy Agreement, there can be no doubt that BN and Acambis agreed to arbitrate the trade secret issues in this investigation.

## IV.    CONCLUSION

Accordingly, for the reasons stated hereinabove, the Staff's motion to terminate the trade secret portion of this investigation is granted.

Pursuant to 19 C.F.R. § 210.21(d), a copy of the Staff's motion to terminate is included with this Order at Appendix A and a copy of the agreement to arbitrate at Appendix B.

This initial determination shall become the determination of the Commission unless a party files a petition for review of the initial determination pursuant to 19 C.F.R. §§ 210.43(a), or

6

the Commission, pursuant to 19 C.F.R. §§ 210.44, orders on its own motion a review of the

initial determination or certain issues herein.  19 C.F.R. §§ 210.42(h)(3).

**SO ORDERED**.

_____

Robert  L.  Barton,  Jr.

Administrative Law Judge

7

## APPENDIX A

8

## APPENDIX B

# EXHIBIT B

Robert L Barton, Jr.
ADMINISTRATIVE LAW JUDGE
UNITED STATES INTERNATIONAL TRADE COMMISSION
500 E STREET, S.W.
SUITE 317
WASHINGTON, D.C. 20436

TELECOPIER (ALJ's OFFICE)    202/205-1852

FACSIMILE COVER SHEET

CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES
AND PHARMACEUTICAL COMPOSITIONS BASED THEREON

Inv. No. 337-TA-550

ORDER NO: 27          DATE SENT: 04/17/2006

PLEASE DELIVER THESE PAGES TO:

NAME: Edward A. Pennington
FIRM:   SWIDLER BERLIN LLP
FAX #:   202-424-7647

NAME: Eric S. Namrow
FIRM:   VENABLE
FAX #:   202-344-8300

NAME: Erin D.E. Joffre
COMPANY: OUII
FAX #:   (202) 205-2158

--------------------------------------------------------------------------------

This communication is intended for the sole use of the individual to whom it is
addressed and may contain information that is privileged, confidential and exempt
from disclosure under applicable law. If the reader of this communication is not the
intended recipient or the employee or agent responsible for delivering the
communication to the intended recipient, you are hereby notified that any
dissemination, distribution, or copying of this communication may be strictly
prohibited. If you have received this communication in error, please notify Ann
Newsome of my office on 202-708-4051.

May Contain Confidential Business Information Subject to Protective Order

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

### Before the Honorable Robert L. Barton, Jr.
### Administrative Law Judge

| |
|---|
| **In the Matter of** |
| **CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES AND PHARMACEUTICAL COMPOSITIONS BASED THEREON** |

**Inv. No. 337-TA-550**

## ORDER NO. 27: INITIAL DETERMINATION GRANTING IN PART RESPONDENT'S MOTION FOR SUMMARY DETERMINATION
### (April 17, 2006)

## I.    SUMMARY

On March 20, 2006, Respondent Acambis plc ("Acambis") filed a motion for summary determination of, *inter alia*, Complainant Bavarian Nordic A/S's ("BN") conversion claim. For the following reasons, the motion for summary determination as it pertains to the conversion claim is hereby GRANTED. Therefore, pursuant to 19 C.F.R. § 210.18(f), I am issuing this order as an initial determination.

## II.    PROCEDURAL HISTORY

This proceeding was instituted upon publication of the Notice of Investigation in the Federal Register on September 19, 2005. 70 Fed. Reg. 55918-19. The United States International Trade Commission instituted this investigation to determine:

(a) [w]hether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the

-2-

United States after importation of certain Modified Vaccinia Ankara ("MVA")
viruses and vaccines and pharmaceutical compositions based thereon by reason of
infringement of claims 1, 4, 5, or 34 of U.S. Patent No. 6,761,893 or claims 1, 2-9,
13-15 or 16 of U.S. Patent No. 6,913,752, and whether an industry in the United
States exists or is in the process of being established as required by subsection (a)(2)
of section 337; and

(b)  [w]hether there is a violation of subsection (a)(1)(A) of section 337 in the
importation of certain MVA viruses and vaccines and pharmaceutical compositions
based thereon or in the sale of such articles by reason of misappropriation of trade
secrets, the threat or effect of which is to destroy or substantially injure an industry
in the United States, and whether an industry in the United States.

70 Fed. Reg 55918-19 (September 23, 2005).

On March 20, 2006, Staff filed a motion to terminate the investigation with respect to BN's
trade secret allegations [550-014]. On March 28, 2006, Acambis filed a response in support of the
motion. On March 28, 2006, BN filed a response opposing the motion. I granted the motion in
Order No. 26, issued on April 14, 2006.

Acambis's motion for summary determination was filed on March 20, 2006 [550-012].
Staff filed a response supporting the motion in part and opposing the motion in part on March 30,
2006. On March 31, 2006, BN filed a motion for a one day extension to file its opposition to
Acambis's motion for summary determination [550-015]. I granted that motion in Order No. 23,
issued on April 5, 2006. BN filed a memorandum in opposition to Acambis's motion for summary
determination on March 31, 2006.

On April 5, 2006, Acambis filed a motion for leave to reply in support of its motion for
summary determination [550-017]. On April 6, 2006, Staff filed a response opposing Acambis's
motion for leave to reply. Motion No. 550-017 is hereby DENIED.

On April 7, 2006, BN filed a motion for leave to respond to Staff's response to Acambis's

-3-

motion for summary determination [550-018].  On April 10, 2006, Staff responded to BN's motion for leave to respond, stating that it did not agree with the substance of BN's response but it did not oppose the motion for leave to respond.  Motion No. 550-018 is hereby DENIED.

On March 31, 2006, Staff filed a motion to supplement exhibits submitted in support of its response to Acambis's motion for summary determination [550-016]. I granted that motion in Order No. 23, issued on April 5, 2006.

## III.    MOTIONS FOR SUMMARY DETERMINATION

Under 19 C.F.R. § 210.18(a), "[a]ny party may move . . . for a summary determination in his favor upon all or any part of the issues to be determined in the investigation."  An Administrative Law Judge (ALJ) may grant summary determination where "there is no genuine issue as to any material fact and that the moving party is entitled to summary determination as a matter of law." 19 C.F.R. § 210.18(b).  Summary determination under Rule 210.18(b) is analogous to summary judgment under Fed. R. Civ. P. 56(c).  Certain Asian-Style Kamaboko Fish Cakes, Inv. No. 337-TA-378, Commission Notice, 1996 WL 1056341 at 16 (U.S.I.T.C. Sept. 25, 1997) (Westlaw pagination). Therefore, federal case law interpreting Rule 56(c) is useful in determining whether summary determination is appropriate.

When seeking summary judgment, the moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To determine whether the party has met this burden, "the [ALJ] must accept all evidence presented by the non-movant as true, must view all of the evidence in the light most favorable to the non-movant and must draw all justifiable inferences in favor of the non-movant." Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406, Order No. 7 at 3 (U.S.I.T.C. July 10,

-4-

1998) (citations omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986). The moving party is entitled to summary judgment "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita at 578.

## IV.    DISCUSSION

In its memorandum in opposition to Acambis' motion for summary determination, BN has asserted that Acambis has made unauthorized and wrongful commercial use of the MVA-572 strain, and its progeny, which Acambis acquired and gave to its partner Baxter for use in the manufacture of MVA3000 imported in the United States. BN's Response at 37. This assertion, referenced below as BN's "conversion claim" was addressed in Acambis' motion for summary determination. See Acambis' Motion Memo. at 42-44. Staff also has addressed this issue in its response to the motion. See Staff Response at 39.

Acambis claims that it is "entitled to summary determination of BN's conversion claim because BN has not proffered any evidence that it has any property interest in MVA or that Professor Anton Mayr places any restriction on the use of the MVA strain transferred to NIH." Acambis Motion at 2; Acambis Motion Memo. at 42.    Staff supports Acambis's motion for summary determination on the issue of the conversion claim because "Staff submits that it is undisputed that BN did not have an ownership right in the MVA strain at issue until November 2002." Staff Response at 41. Staff contends that because BN did not own the MVA strain at issue at the time of the alleged conversion, BN cannot maintain a conversion claim. Id.

In its opposition to the motion for summary determination, BN asserts that it

> "has adduced evidence in this investigation that: (i) world renowned
> Prof. Dr. Dr. Hc mult Anton Mayr created and owned the MVA-572
> strain and the MVA-575 strain; (ii) Until Mayr transferred ownership

-5-

rights in MVA viruses, including MVA-572 to Bavarian Nordic, he owned the viruses; (iii) Mayr provided some samples of MVA to individual scientists for research purposes only; (iv) Mayr provided Dr. Moss at the NIH with samples of MVA-575 in 1995 and MVA-572 in 2001 for research purposes only pursuant to customary transfers of virus material to NIH and his course of dealing with Dr. Moss; (v) Dr. Moss purified MVA-572 and sent master seed stock to Acambis pursuant to an unusual material transfer agreement that on its face licensed Acambis to make commercial use of MVA-572 and its progeny in the smallpox vaccine field of use; (vi) Acambis's commercial uses included transferring the MVA-572 seed stock to Baxter who manufactured the MVA3000 from the purified MVA-572 seed stock imported it [sic] into the United States.

BN Response at 37-38 (citations omitted).

The conversion claim is not properly a part of this investigation. As Staff noted, "BN did not explicitly allege conversion in its complaint, alleging instead a general 'misappropriation of proprietary technology.'" Staff Response at 39 citing Complaint ¶¶ 66-69. The conversion claim is also not listed in the Notice of Investigation. See 70 Fed. Reg. 55918 (September 23, 2005). This proceeding is governed by the Notice of Investigation, and therefore, the conversion claim is not properly a part of this investigation. Given that determination, it is unnecessary to address the parties' discussion of the merits of the conversion claim.

Furthermore, there is considerable doubt that the Commission has jurisdiction to hear this common law conversion claim. 19 U.S.C. § 1337 provides that the following acts are unlawful and are subject to action by the Commission:

> (A) Unfair methods of competition and unfair acts in the importation of articles (other than articles provided for in subparagraphs (B), (C), and (D)) into the United States, or in the sale of such articles by the owner, importer, or consignee, the threat or effect of which is -
> (i) to destroy or substantially injure an industry in the United States;
> (ii) to prevent the establishment of such an industry; or

-6-

(iii) to restrain or monopolize trade and commerce in the United States.

(B) The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that -

(i) infringe a valid and enforceable United States patent or a valid and enforceable United States copyright registered under Title 17; or

(ii) are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent.

(C) The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that infringe a valid and enforceable United States trademark registered under the Trademark Act of 1946 [15 U.S.C.A. 1051 et seq.].

(D) The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of a semiconductor chip product in a manner that constitutes infringement of a mask work registered under chapter 9 of Title 17.

19 U.S.C. § 1337(a)(1). The conversion claim does not appear to be encompassed by the above statutory language.

Subsection (A) does not apply to the conversion claim because although a conversion claim could be construed as an unfair method of competition or unfair act, the alleged act(s) have nothing to do with the importation of the vaccine into the United States. The only importation that took place at all in the chain of events listed by BN occurred when Dr. Mayr transferred the vaccine to Dr. Moss at NIH. See BN Response at 37-38. This is well before the alleged conversion took place, and the importation bears little or no relationship to the alleged conversion. Subsection (B) does not apply to the conversion claim because there is no allegation that the conversion claim involves importation into the United States, a sale for importation, or a sale within the United States after importation of articles that infringe a U.S. Patent. Subsection (C) clearly does not apply to the

-7-

conversion claim because there is no registered trademark that is at issue in this investigation. Subsection (D) clearly does not apply to the conversion claim because there are no semiconductor chips involved.

In passing BN alleges that the alleged conversion is connected to the importation of MVA3000, the virus that was manufactured from the MVA-572 strain and imported into the United States for sale to the United States government. BN Response at 37. Assuming *arguendo* that the alleged conversion is an unfair act in the importation of MVA3000, nothing in the Notice of Investigation would support its inclusion in this investigation. It would be inappropriate at this late stage (less than a month before trial) for BN to attempt to expand the scope of this investigation.

## V.    CONCLUSION

For the foregoing reasons, I find that the common law conversion claim is not properly a part of this investigation and that even if Complainant sought leave to make it a part of this investigation, the Commission likely would be without jurisdiction to hear the issue. Therefore, Acambis's motion for summary determination as to the conversion claim is GRANTED.

Within seven days of the date of this document, each party shall submit to the Office of the Administrative Law Judges a statement as to whether or not it seeks to have any portion of this document deleted from the public version. The parties' submissions may be made by facsimile and/or hard copy by the aforementioned date.

Any party seeking to have any portion of this document deleted from the public version thereof must submit to this office a copy of this document with red brackets indicating any portion asserted to contain confidential business information. The parties' submissions concerning the public version of this document need not be filed with the Commission Secretary.

-8-

Pursuant to 19 C.F.R. § 210.42(h)(3), this ID shall become the determination of the Commission 30 days after its date of service unless the Commission within those 30 days shall have ordered review of this ID, or certain issues herein, pursuant to 19 C.F.R. § 210.43(d) or § 210.44.

**SO ORDERED**.

Robert L. Barton, Jr.
Administrative Law Judge