**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **BAVARIAN NORDIC A/S**<br><br>                              Plaintiff,<br><br>v.<br><br>**ACAMBIS INC. and**<br><br>**ACAMBIS, PLC,**<br><br>                              Defendants. | **C.A. No. 05-614 (SLR)** |

### LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE IN CIVIL OR COMMERCIAL MATTERS

1.    **SENDER:**                   Edward A. Pennington, Esq.
Robert C. Bertin, Esq.
Dr. Axel Spies, Rechtsanwalt
Bingham McCutchen LLP
3000 K Street, NW Suite 300
Washington, DC 20007, USA
Phone +1 (202) 373-6672
Email  R.Bertin@bingham.com

2.    **CENTRAL AUTHORITY**
**OF REQUESTED STATE:** Foreign Process Section, Queen's Bench Masters'
Secretary
The Royal Courts of Justice
Room E14
Strand
London, WC2A 2LL, United Kingdom

3.    **PERSON TO WHOM THE**
**EXECUTED REQUEST IS**
**TO BE RETURNED**:        Suzanne Mills, Solicitor
Bingham McCutchen LLP
41 Lothbury
London, EC2R 7HF, United Kingdom
Phone + 44 (20) 7661.5374
Email suzanne.mills@bingham.com

4.    **NOT APPLICABLE**

**IN CONFORMITY WITH ARTICLE III OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUESTS:**

5a. **REQUESTING JUDICIAL AUTHORITY:**

United States District Court for the District of Delaware ("Court")
Mary Pat Thynge, U.S. Magistrate Judge J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801USA

5b. **TO THE COMPETENT AUTHORITY OF:**

Foreign Process Section,
Queen's Bench Masters' Secretary
The Royal Courts of Justice
Room E14
Strand
London, WC2A 2LL
United Kingdom

5c. **NAME OF THE CASE AND ANY IDENTIFYING NUMBER:**

Bavarian Nordic A/S v. Acambis Inc. and Acambis plc
C.A. No. 05-614 (SLR)

**6. NAMES OF AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES:**

**a) Plaintiff**

Bavarian Nordic A/S (hereinafter "Bavarian Nordic")
Bøgeskovvej 9
DK-3490 Kvistgård
Denmark

**Represented by:**

Edward A. Pennington Esq.
Robert C. Bertin, Esq.
Dr. Axel Spies, Rechtsanwalt
Bingham McCutchen LLP
3000 K Street, NW Suite 300
Washington, DC 20007, USA

**Delaware counsel:**

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801, USA

**b) Defendant**

Acambis, plc (hereinafter "Acambis")
Peterhouse Technology Park
100 Fulbourn Road
Cambridge, CB1 9PT
United Kingdom

**Represented by:**

Eric S. Namrow, Esq.
Venable, LLP
575 7th Street, NW
Washington, DC 20004, USA

**Delaware counsel:**

Mary B. Graham and
James W. Parrett, Jr.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

**c) Third Party**

BAXTER HEALTHCARE SA (hereinafter "Baxter")
Hertistrasse 2
CH 8304 Wallisellen
Switzerland

**Represented in the United States by:**

April E. Abele, Esq.
Townsend and Townsend and Crew LLP OWNSEND
AND TOWNSEND AND CREW LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA  94111-3834, USA

DB02:5399893.1                                                                064417.1001

7.    **NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS (ARTICLE 3(C)):**

The Court seeks assistance in obtaining evidence from Mr. Nicolas Andrew Higgins, resident of Cambridge, England, in a civil proceeding pending at this Court. The Plaintiff's complaint in this case was filed on August 19, 2005 the Defendants' Answer was served on September 8, 2005. Plaintiff's first set of interrogatories were served upon the Defendants on November 23, 2005. Defendants' answers to the Plaintiff's first set of interrogatories were served on the Plaintiff on December 22, 2005. Defendants' first set of interrogatories were served upon the Plaintiff on January 17, 2006. Defendants' answers to Plaintiff's second set of interrogatories were served on the Plaintiff on February 20, 2006.

### (1)    Background

Beginning in 1996, Bavarian Nordic, the Plaintiff, sought to develop a new generation of smallpox vaccines that would be safer and more effective for individuals for whom the traditional smallpox vaccine is more dangerous, such as patients with disorders of the immune system, skin conditions such as eczema, or other disorders presenting a high risk of complications from existing smallpox vaccines. Through an extensive research and development, Bavarian Nordic developed a smallpox vaccine, modified vaccinia Ankara - MVA-BN®.

Bavarian Nordic owns several U.S. patents and pending patent applications directed to MVA-based vaccines, for example, U.S. Patent Nos. 6,761,893 and 6,913,752 cover the MVA-BN® virus and derivatives thereof.

### (2)    Claims

Bavarian Nordic alleges that Acambis obtained samples of vaccinia virus MVA from Professor Anton Mayr, a German scientist, that were exclusively licensed to Bavarian Nordic in 1996 for the development of MVA-BN®, and used these samples to develop its own vaccine, ACAM3000, thereby violating Bavarian Nordic's patent rights.

DB02:5399893.1                                          064417.1001

It further alleges that Acambis had never been involved in the development of MVA-based vaccines before Bavarian Nordic shared with Acambis its proprietary technology.

Bavarian Nordic also alleges that Acambis has committed tortious conversion regarding the virus samples it has received, misappropriation of trade secrets, unfair trade practices, in particular under the United States Lanham (Trademark) Act of 1947, as amended (15 United States Code § 1051 et seq.).

### (3)    Status of the Proceeding

The proceeding at the Court is ongoing. By Court Order of October 26, 2005, the Court granted Plaintiff discovery on tortious conversion, trade secret misappropriation, alleged unfair trade practices, unfair competition, and the relationship between Acambis plc. and Acambis Inc and damages.  All fact discovery must be completed by August 14, 2006. A pretrial conference will be held at the Court on May 8, 2007 with jury trial commencing on June 5, 2007.

### (4)    Relevance of the Testimony

Mr. Higgins was the former Chief Business Officer and Board Director (vaccines) of Acambis plc until the end of 2004, after having worked for Acambis for 11 years.  He was responsible for all commercial activities including intellectual property management, licensing, corporate development, and sales and marketing.  He was closely involved in the development and production of ACAM3000, in particular, as a member of the MVA project team, and has extensive knowledge about the case, Acambis' Intellectual Property, Bavarian Nordic's Intellectual Property position, the patented processes that Acambis has used in the development and manufacture of MVA, the relationship of Acambis with the National Institutes of Health ("NIH") and the MVA strains that the NIH provided to Acambis.

Therefore, the Court seeks assistance for this ongoing proceeding via this letter of request.

All requests have a direct and necessary link with this ongoing proceeding against Acambis pending at the Court.

DB02:5399893.1                                                    064417.1001

8.    **EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE PERFORMED (ARTICLE 3(D)):**

> The Court seeks the English judicial authorities for an order that Mr. Nicolas Andrew Higgins present himself for purposes of deposition upon oral examination at of Bingham McCutchen's London office at 41 Lothbury, London, England  EC2R 7HF at the earliest possible date. The Court would appreciate a copy of the report of Mr. Higgins's deposition by August 14, 2006, the deadline for the fact discovery.

9.    **IDENTITY AND ADDRESS OF ANY PERSON TO BE EXAMINED (ARTICLE 3(E)):**

> Mr. Nicolas Andrew Higgins
> Chief Executive Officer
> Intercytex Ltd
>
> 1) Registered Address of Intercytex Ltd
> Innovation House
> Oaks Business Park
> Crewe Road
> Manchester M23 9QR
> United Kingdom
>
> 2) Headquarters of Intercytex Ltd
> St John's Innovation Centre
> Cowley Road
> Cambridge CB4 0WS
> United Kingdom
>
> 3) Registered Service Address of Mr. Higgins
> Peterhouse Technology Park
> 100 Fulbourn Road
> Cambridge
> Cambridgeshire CB1 9PT
> United Kingdom

10. **QUESTIONS TO BE PUT TO THE PERSONS TO BE EXAMINED OR STATEMENT OF THE SUBJECT-MATTER ABOUT WHICH THEY ARE TO BE EXAMINED (ARTICLE 3(F)):**

> The attorneys of the Plaintiff shall ask the witness questions, to the full extent allowed under U.K. procedural law, pertaining to the topics and questions listed in Attachment A.

11. **DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED (ARTICLE 3(G)):**

> Currently, no documents and things are requested to be produced by Mr. Higgins.

12. **ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED (ARTICLE 3(H)):**

> The evidence shall be given under oath and the deposition shall be overseen by an examiner if the requested High Court deems the appointment of an examiner appropriate.

13. **SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED (ARTICLES 3(I), 9):**

> (a) Pursuant to Articles 3(I) and 9 of the Convention, it is requested that the Plaintiff's legal representatives and Mr. Higgins' legal representatives (if any) be permitted to conduct the examination of Mr. Higgins in the United Kingdom at the offices of Bingham McCutchen LLP, London. The examination will be before an impartial barrister of the English Bar or English qualified solicitor who shall act as referee. The Plaintiff's attorneys are familiar with the relevant events and the transactions in this complex matter. Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible. In addition, permitting the Plaintiff's attorneys to conduct the examination of Mr. Higgins will avoid the unnecessary waste of costs and attorneys fees for both parties in instructing English counsel on the substance of the case.
>
> In the event that the evidence cannot be taken in the manner requested, it is requested that the evidence be taken in the manner provided by the applicable law of the United Kingdom for the formal taking of evidence.
>
> (b) If production of any document by Mr. Higgins is withheld, in whole or in part, on the basis of a claim of privilege or that it contains attorney work product, each

Page 8

withheld document shall be separately identified in a
privileged document list. The privileged document list
must identify each document separately, specifying for
each document at least the following information: (1) the
title and type of document being withheld; (2) the date of
the document; (3) the number of pages in the document; (4)
the author(s), addressee(s); and recipient(s), identifying
each by name, title, employer, job title, and business
telephone number; (5) the subject matter of the document;
(6) the specific pages or portions of the document being
withheld; and (7) the specific privilege or claim being
invoked. If the author/sender, addressee or recipient is an
attorney or foreign patent agent, he or she shall be so
identified. The party asserting the privilege or hearing
preparation claim also must provide a certification that all
necessary elements of the asserted privilege/hearing
preparation claim have been met and not waived with
respect to each document.

14. **REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE
EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY
PERSON TO BE NOTIFIED (ARTICLE 7):**

> The Court wishes that the examination be recorded and to
> be informed of the time when, and the place where, the
> execution of the request will take place. This information
> shall be sent directly to the parties' representatives, as listed
> above, with a copy to the Court.

15. **NOT APPLICABLE**

16. **NOT APPLICABLE**

17. **THE FEES AND COSTS INCURRED WHICH ARE REIMBURSABLE UNDER
THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF
THE CONVENTION WILL BE BORNE BY:**

> Bingham McCutchen LLP
> Attn: Suzanne Mills, Solicitor
> 41 Lothbury
> London, England  EC2R 7HF

DB02:5399893.1                                                                  064417.1001

IN WITNESS WHEREOF the undersigned administrative judge of the Court has hereunto set his hand and caused the seal of said Court to be affixed at Wilmington, Delaware on this _____ day of _____, 2006.


_____

The Honorable Sue L. Robinson
Chief Judge
United States District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware
United States of America

**ENCLOSURE: ATTACHMENT A: Questionnaire**


9280789v1

DB02:5399893.1                                                                    064417.1001

# ATTACHMENT A
# TO LETTER OF REQUEST

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

**Attachment A**

**QUESTIONNAIRE**

By authority of the Section 28(b) of the Federal Rules of Civil Procedure of the United States,

Plaintiff Bavarian Nordic A/S ("Bavarian Nordic") hereby requests Mr. Nicolas Andrew Higgins

to answer questions related to a proceeding involving Bavarian Nordic and Acambis.  Illustrative

questions are presented below to exemplify the type of questions and topics expected to be the

subject of examination:

**<u>DEFINITIONS</u>**

As used herein, unless specifically indicated otherwise, the following terms shall have the

indicated meanings:

A.    "**Acambis**" shall mean Acambis plc, Acambis Inc., and/or any corporate predecessor, any

joint venture to which it is or was a party, any past or present division, department, parent,

subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative,

or other person acting on its behalf or under its control.

B.    "**You**," or "**your**"  shall mean Nicolas Andrew Higgins in his personal capacity or

official capacity as a former agent, officer or employee of Acambis.

C.    "**NIH**," shall mean the National Institutes of Health and its institutes, departments,

laboratories, and personnel, including the National Institute of Allergy and Infectious

Diseases (NIAID).

D.    "**Bavarian Nordic**" or "**Complainant**" means Complainant Bavarian Nordic A/S, any

corporate predecessor, and any past or present division, department, parent, subsidiary,

Page 1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

affiliate, director, officer, principal, agent, employee, consultant, representative, or other

person acting on its behalf or under its control.

E.      "**RFP-1**" shall mean Request for Proposal No. NIH-NIAID-DMID-03-44 issued by the

U.S. Government on August 15, 2002.

F.      "**RFP-2**" shall mean Request for Proposal No. NIH-NIAID-DMID-04-49 issued by the

U.S. Government on December 4, 2003.

G.      "**RFP-3**" shall mean Request for Proposal DHHS-ORDC-V&B-05-06 issued by the U.S.

Government on August 15, 2005.

H.      "**MVA**" shall mean modified vaccinia Ankara.

I.      "**MVA3000**" refers to itself and/or ACAM3000.

J.      "**MVA-BN**" refers to itself and/or IMVAMUNE.

K.      "**MVA-572**" refers to MVA designated 572.FHE.-22.02.1974, its progeny, and/or its

derivatives, including that which was plaque purified by Dr. Bernard Moss of NIAID.

L.      "**MVA based vaccines**" shall include all vaccines against smallpox incorporating MVA,

including MVA3000 and IMVAMUNE.

M.      "**U.S. Government officials**" shall mean officials, representatives, agents, or personnel

of the United States and its agencies including the Department of Health and Human

Services, the Centers for Disease Control, the National Institutes of Health, and the Food and

Drug Administration.

DB02:5400072.1                                                                                    064417.1001

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

N.    "**Documents**" and "**Things**" shall have the broadest meaning ascribed to them by the

Commission Rules and applicable case law, including but not limited to electronic files.

O.    "**Agreement**" means any and all contracts, promises, compacts, undertakings,

commitments, obligations, pledges, covenants, stipulations, arrangements, and

understandings, of any kind, whether written, oral, or tacit.

P.    "**And**" and "**or**" shall be construed conjunctively and disjunctively, as necessary, to make

the document request inclusive rather than exclusive.

Q.    "**Communication**" or "**Communications**" means any type of oral, written, magnetic,

electronic, or visual contact(s) between two or more persons in which information, facts,

statements, conversations, or opinions were exchanged, imparted, or received.

R.    The terms "**concerning**" and "**relating to**" mean containing, embodying, evidencing,

reflecting, supporting, identifying, stating, referring to, contradicting, rebutting, inconsistent

with, dealing with, bearing upon, relating to or in any way pertaining to, directly or

indirectly.

S.    The singular includes the plural and vice versa; the masculine includes the feminine and

vice versa; and verb tenses include the past, present, and future.

T.    "**Person**" refers to any natural person, firm, association, organization, partnership,

business, trust, corporation or public entity.

U.    The term "**NIH**" refers to the National Institutes of Health.

V.    The term "**DMID**" refers to the Division of Microbiology and Infectious Diseases.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

W.    The term "**NIAID**" refers to the National Institute of Allergy and Infectious Diseases.

X.    The term "**patents-in-suit**" refers to U.S. Patent No. 6,761,893, issued July 13, 2004

from application no. 10/439,953 to Chaplin *et al*. and U.S. Patent No. 6,913,752, issued July

5, 2005 from application no. 10/439,439 to Chaplin *et al*.

Page 4

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

### Questionnaire

*Note: This list of topics and questions is illustrative in nature and is not exhaustive.*

**Topic 1: Mr. Higgins' Educational Background and Employment**

1.    Describe your educational background and employment history, including degrees completed for education and titles and duties and responsibilities for employment.

2.    For what period of time did you work for Acambis (dates, job functions) and what was your role in the development of MVA 3000 as an employee of Acambis, including business development, procurement, and promotion of a MVA based smallpox vaccine?

3.    Why did you leave Acambis?  What is your current position at Intercytex Ltd.? Does this company have any current relationship with Acambis?

4.    What is your understanding of the dispute between Bavarian Nordic and Acambis?

5.    Questions about documents authored by or received by Mr. Higgins.

**Topic 2: Acquisition of MVA Virus by Acambis**

1.    Are you aware of any Agreement and/or have you been involved in the negotiations to acquire from, or provide to, any entity or person, including Acambis, Baxter, Prof. Dr. Anton Mayr, Bavarian Nordic, GSF, Vivacs and Therion, any MVA strains, including, TBC-MVA, MVA-572, MVA-575, MVA-M4 and any progeny thereof, MVA based vaccines, or MVA based pharmaceutical compositions?

2.    If you are aware, please provide dates and names of the persons involved in such negotiations as well as further details on such negotiations and on the delivery of such MVA viruses, the data and circumstances of any provisions of or transfer of ownership in such viruses, records and record keeping of such transactions or acquisitions, and further details on each transaction or acquisition.

3.    What were the reasons for selecting, using and/or abandoning each MVA virus that Acambis, or Baxter, acquired for developing the MVA3000 virus/vaccine.

**Topic: 3: Role of Therion and Acambis concerning the provisioning of MVA3000 to the NIH, any right or ability of any entity to receive and/or use MVA-572, MVA-575, and right or ability of any entity to provide MVA-572, MVA-575, or any progeny thereof to a third party for the purpose of manufacturing vaccines**

1.    Describe communications, agreements and/or negotiations between Acambis, Therion, Baxter and/or NIH that concerning MVA viruses, *inter alia*, including the following aspects of such communications or negotiations:

   (a) any right or ability of Acambis to provide MVA3000 to NIH without violating the intellectual property rights or property rights of any entity;

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

(b) any right or ability of any entity to receive and/or use MVA-572, MVA-575, or any progeny thereof, for the purpose of manufacturing vaccines for the U.S. Government stockpile without violating the intellectual property rights or property rights of any entity;

(c) and any right or ability of any entity to provide MVA-572, MVA-575, or any progeny thereof to a third party for the purpose of manufacturing vaccines for the U.S. Government stockpile without violating the intellectual property rights or property rights of any entity?

Please provide dates and names of the persons involved as well as further details on such negotiations (dates, venue, details on what was discussed).

2.      With regard to Therion, describe your role in the negotiation with Therion concerning the use of Therion's MVA for Acambis' response to RFP-1?

3.      Describe all facts and circumstances surrounding Therion's acquisition or attempted acquisition of MVA or rights in MVA from NIH or any third party.

4.      Did Acambis commission any (in-house) or external study to determine whether or not Therion had rights to any MVA strains?  If so, identify the law firm and/or attorney, including patent attorney, who executed that study and/or legal opinion?

5.      Did Acambis receive and review any (in-house) or external study from Therion that purported to determine whether or not Therion had rights to any MVA strains?  If so, what law firm and/or attorney, including patent attorney, executed that study and/or legal opinion? Describe all communications with personnel of Acambis and/or Baxter regarding any ownership rights of Prof. Mayr and/or Bavarian Nordic in Therion's MVA strain.

6.      Describe any information you are aware of regarding Prof. Mayr's and/or Bavarian Nordic's rights in MVA, including MVA provided by Therion to Acambis.  Describe any discussions between Acambis and Therion, and within Acambis and/or with Baxter, regarding Therion's MVA strain and the possibility to obtain permission from Prof. Mayr to use the strain for commercial purposes.

7.      How would you distinguish the market for ACAM2000 versus the market for ACAM3000?

8.      Describe in detail the facts and circumstances surrounding the termination of the Therion relationship for supplying MVA to Acambis and/or Baxter for RFP-1, and all communications and correspondence concerning the termination of Therion.

**Topic 4: Role of Baxter concerning the development and production of MVA**

1.      Describe information received from NIH and any information provided to Baxter by Acambis or NIH concerning any aspect of RFP-1, RFP-2 or RFP-3 and any aspect of MVA.  For purposes of this request, information shall include information received from Bavarian Nordic, and information about MVA including manufacturing process information, safety and efficacy information and information about clinical trials and animal models.  Please provide dates and

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

names of the persons involved in any information exchanges as well as further details on such provision and your role regarding such provision.

2.      Describe the role of and reason for the requested attendance of the proposed Baxter manufacturing person at the June 12, 2002, meeting between Bavarian Nordic and Acambis.

**Topic 5: Intellectual property rights and ability to provide MVA-572, MVA-575, or any progeny thereof to a third party for the purpose of manufacturing vaccines**

1.      When did you become aware of intellectual property rights or property rights, if any, of Dr. Bernard Moss, NIH, Prof. Dr. Anton Mayr, Bavarian Nordic, Acambis, Baxter, Therion or any entity in MVA strains, including MVA-572, MVA-575, and any progeny thereof, MVA based vaccines, and MVA based pharmaceutical compositions?

2.      Did you discuss these rights and Acambis' strategy against such right with others? If so, with whom? What was discussed and which measures were taken by you or by others?

3.      Describe the circumstances leading up to the meeting with Bavarian Nordic on June 12, 2002, and describe in detail why Acambis did not license MVA from Bavarian Nordic, including any expectations or strategies discussed before and/or after the meeting.

4.      At the time of the meeting with Bavarian Nordic on June 12, 2002, describe which other strategies Acambis pursued to obtain the relevant technical knowledge, including valid regulatory strategies, to launch its MVA vaccine program to timely meet any foreseeable milestones of a potential NIH contract award for a MVA based smallpox vaccine.

5.      Explain the facts and circumstances surrounding the decision to use Dr. Moss' MVA virus instead of the MVA provided by Therion. Further, describe all facts and circumstances surrounding the decision by Acambis and/or Baxter to use Therion data, or prepublished data unrelated to the Therion MVA strain, for the submission of a proposal for RFP1, even though Acambis and/or Baxter decided to use a different MVA strain for developing MVA3000, and any discussion with the NIH to that effect.

**Topic 6: Communications with Therion, Baxter, or the U.S. Government concerning any aspect of MVA or MVA based vaccines**

1.      Describe communications with Therion, Baxter, or the U.S. Government concerning any aspect of MVA or MVA based vaccines, including MVA3000, and present and future manufacturing of MVA3000? If so, please provide dates and names of the persons involved in each Communication (recipients, etc.), its contents, as well as further details on the circumstance that lead to each Communication.

2.      Describe any receipt of technical information, including manufacturing process information, safety and efficacy information and/or information about clinical trials or animal models from the NIH or other governmental agencies.

**Topic 7: Acambis' contract with the U.S. Government to manufacture and/or stockpile MVA based smallpox vaccines**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

1.    Please describe Acambis' contract with the U.S. Government to manufacture and/or stockpile MVA based smallpox vaccines, including MVA3000 or ACAM3000, under any RFP or collaborative opportunities relating thereto, including RFP-1, RFP-2, and RFP-3)?

2.    In particular, what was your involvement/role in the negotiations and execution of these contracts (such as reporting line, instructions from you to the MVA team at Acambis)? Do you still have any records on these negotiations?

**Topic 8: Concerns of US government that Bavarian Nordic's intellectual property rights may adversely affect Acambis' ability to bid or to receive awards under RFP-1, RFP-2, or RFP-3**

1.    Did at any time the NIH ask Acambis or did any other government agency associated with the bidding process for RFP-1, RFP-2 or RFP-3 voice any concerns that Bavarian Nordic's intellectual property rights may adversely affect Acambis' ability to bid or to receive awards under RFP-1, 2, or 3? If so, what did Acambis state and/or do in response?

2.    Are you aware of any Communication between Acambis and Therion, Baxter, Bavarian Nordic, or the U.S. Government regarding MVA or RFP-1, RFP-2 or RFP-3? In particular, what were the issues discussed or described in the Communication regarding Bavarian Nordic's bids in these cases? Do you have any records?

**Topic 9: Market intelligence on Bavarian Nordic and its intellectual property rights gathered by Acambis**

1.    Did you attend any Bavarian Nordic market intelligence presentation or did anyone attend at your request? If so, describe what information was presented and discussed at such presentation and the origin of any such information.

2.    Were you involved in, did you order, or did you receive a competitor report on Bavarian Nordic? If so, describe the purpose behind such report and the intended use of any information so obtained.

3.    Did you or someone reporting to you commission such a report? If so, describe the content of such report and any discussions based thereon.

**Topic 10: Potential collaboration between Bavarian Nordic and Acambis**

1.    Did you ever discuss a potential collaboration regarding MVA (including a potential joint bid) with Bavarian Nordic? If so, when did these negotiations break off? Was there any confidentiality agreement between the parties?

2.    In particular did you attend a meeting with Bavarian Nordic in June 2002 at Acambis' Inc.'s facilities?

DB02:5400072.1                                                                                      064417.1001

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
LETTER OF REQUEST IN THE MATTER C.A. NO. 05-614 (SLR)

3.      If you did attend or if someone reported to you about it, what was discussed during this meeting, who attended, and which documents were shown?

4.      Did anyone participating in the meeting, to your knowledge, take notes of, or otherwise report to anyone within Acambis, Baxter or any its consultants, the content of the discussion of an MVA-based smallpox vaccine?  If so, please provide detailed information about any such documents and/or communications.

5.      Were there follow-up meetings with Bavarian Nordic?

6.      Please describe and discuss any potential concern on your part or Acambis' part that an MVA-based smallpox vaccine could make Acambis' ACAM1000 and ACAM2000 vaccines obsolete.

7.      Did anyone at Acambis contact Dr. Moss at NIH to discuss anything that was said during any of these meetings?  If so, please provide detailed information about any such discussion and any documentation pertaining thereto.

**Topic 11: Meetings between Acambis, Baxter, and U.S. Government officials regarding MVA strain**

1.      Please describe and discuss any meetings between Acambis, Baxter, and U.S. Government officials regarding MVA strains, including MVA strains used as MVA based smallpox vaccines, in which you participated personally, or about which you received reports from the MVA project team (please provide details about dates, topics being discussed, persons involved, and records kept).

2.      Was there any MVA program at Acambis prior to June 18, 2002?

3.      Compare and contrast Acambis' MVA program with other vaccine programs at Acambis.

**Topic 12: Use of MVA viruses as a pre-vaccine and/or a stand-alone vaccine against smallpox and history and lineage of, genetic sequencing of the MVA strain**

1.      What was your role in developing Acambis' MVA program, including developing MVA as a pre-vaccine and/or a stand-alone vaccine against smallpox?

2.      Please describe the history and lineage of, genetic sequencing of, and properties of Therion's MVA virus, including the ability of such virus to replicate in any cell line, including human cell lines, that you are aware of.

**Topic 13: Knowledge of Third Parties**

1.      Describe your knowledge of a company VIVCAS GmbH of Martinsried, Germany, including its CEO Karl Heller.

2.      Describe all communications with Baxter, Falco Falkner, VIVACS, Karl Heller, Sonya Lehrer, Prof. Dr. Anton Mayr, Dr. Bernard Moss and Gerd Sutter concerning MVA.