IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAVARIAN NORDIC A/S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-614 (SLR) |
| | ) | |
| ACAMBIS INC. and | ) | |
| ACAMBIS PLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ACAMBIS' MOTION TO DISMISS IN FAVOR OF MANDATORY ARBITRATION BN'S CLAIM OF MISAPPROPRIATION OF TRADE SECRETS

Defendants Acambis Inc. and Acambis plc (collectively "Acambis") hereby move to dismiss the claim of misappropriation of trade secrets asserted by Plaintiff Bavarian Nordic A/S's ("BN") because there is a valid, mandatory arbitration provision in a confidentiality agreement between BN and Acambis, which clearly covers BN's trade secrets claim.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA requires a determination, based on the ordinary principles of contract law, of whether there is a valid arbitration agreement and whether the dispute falls within the terms of the agreement. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998); 9 U.S.C. § 2. If both questions are answered in the affirmative, then the claim must be arbitrated. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). There is a "presumption of arbitrability" and any doubts should be resolved in favor of arbitration. *Battaglia v. McKendry*, 233 F.3d 720,

723 (3d Cir. 2000); *see also First Liberty Inv. Gp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998); *BAE Systems Aircraft Controls v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D.Del. 2004). A court may not deny arbitration unless it determines that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.*

## BN'S CLAIM OF TRADE SECRET MISAPPROPRIATION

Count II of BN's Complaint alleges that Acambis misappropriated trade secrets relating to BN's MVA-BN vaccine and its "production/commercialization process." BN Compl. at ¶ 54. The alleged genesis for the claim is a two-hour meeting between the parties in June 2002 at which BN allegedly disclosed certain trade secrets pursuant to a confidentiality agreement.

Specifically, the Complaint alleges as follows: In February 2002, Acambis and BN entered into a Secrecy Agreement "to facilitate licensing negotiations between [the parties]." BN Compl. at ¶ 31; *see also* Exhibit A, Secrecy Agreement. Following their entering into the Agreement, Acambis and BN met on June 12, 2002, to discuss the possibility of licensing BN's MVA technology. BN Compl. at ¶¶ 31-32. "Pursuant to this Agreement, Bavarian Nordic personnel explained the technology of MVA-BN … to Acambis personnel" at the June 12, 2002, meeting. BN Compl. at ¶ 32; *see also id.* at ¶ 58 ("attenuation of MVA-572 required adoption and use of [BN's] MVA-BN proprietary technology disclosed to [Acambis] during the June 12, 2002 meeting").

Acambis then allegedly misused this (allegedly proprietary) BN technology "disclosed to [Acambis] during the June 12, 2002 meeting" in violation of the Delaware common law of misappropriation of trade secrets. BN Compl. at ¶¶ 57-59; see also ¶ 58 . This misuse is further alleged to have been done knowingly: "as a result of its June 12, 2002, meeting with [BN], Acambis … knew or should have had reasons to know that" it was misappropriating BN's

trade secrets. *Id.* at ¶ 56. According to the complaint, it is the Secrecy Agreement that gives rise to the alleged duty on the part of Acambis to have maintained the secrecy of and limited use of (allegedly BN proprietary) technology disclosed at the meeting. *Id.* at ¶ 58.

## THE PARTIES' MANDATORY ARBITRATION PROVISION

The parties' Agreement governs "all information disclosed by [BN] to [Acambis]" and "information in whatever form on the subject of … MVA-BN Based Vaccines." *See id.* at ¶¶ 1.1, 2.1. It also contains a clear and unambiguous mandatory arbitration provision requiring that:

> *All disputes* and differences *of any kind* related to this Agreement, which cannot be solved amicably by the parties, shall be finally settled under the Rules of the International Chamber of Commerce (the "ICC") by one arbitrator appointed in accordance with the said Rules.

Exhibit A at ¶ 5.1 (emphasis added). Furthermore, the Agreement requires that arbitration take place in Frankfurt, Germany, under English law. *Id.* at ¶¶ 5.3, 5.4.

## ARGUMENT

Application of the two pronged legal standard noted above is straightforward. There is no dispute that the Agreement's arbitration provision is valid and enforceable. Moreover, there can be no real question that BN's claim falls within the scope of that provision. The claim arises out of and is related to the Agreement, as is clear from the plain language of the complaint noted above. Indeed, the Secrecy Agreement is the foundation for BN's claim that Acambis has misappropriated BN trade secrets because it is the Agreement that allegedly gave

rise to the duty to keep BN information confidential and it is that duty that was allegedly violated.[1]

BN has further confirmed in discovery that all of the alleged trade secrets purportedly disclosed to Acambis were disclosed pursuant to the Secrecy Agreement during the June 12, 2002, meeting between BN and Acambis.  *See* Exhibit B, BN's Interrogatory Response No. 4 ("the discussions, which occurred pursuant to a Confidentiality Agreement … provided Acambis with a complete overview of BN's MVA-BN smallpox program"); *see also id.* at Response No. 6 ("Bavarian Nordic's trade secrets facilitated Acambis' participation in … the development of an MVA-based vaccine for smallpox …").

In fact, the ALJ in the parallel ITC proceeding already determined that BN's trade secret allegations – which are identical in the two proceedings – are subject to arbitration.  The ALJ specifically found that "there can be no doubt that BN and Acambis agreed to arbitrate the trade secret issues."  *In re Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Inv. No. 337-550, Order No. 26 at 6 (April 14, 2006).  The ALJ's decision became final as of May 9, 2006, because BN did not file a petition requesting review of the decision and the ITC determined not to review the ALJ's Order. *See* 19 C.F.R. § 210.42(d) (2006).  Such ITC rulings on unfair competition claims have *res judicata* effect.[2]  The only distinction that BN makes between the trade secret allegations before

---

[1]    Recently, BN filed a motion to amend its Complaint.  BN did not move to amend the substance of any of its trade secret claims.  In fact, the allegations of misappropriation are the exact same.  Thus, even if BN's motion to amend is granted, it will not affect its trade secret allegations and its claims will remain subject to the mandatory, binding arbitration agreement.  Likewise, Acambis asserted the arbitration agreement as a defense to BN's claims in both its Answer and Amended Answer.  *See* Acambis Answer at 12; Acambis Amended Answer at 10.

[2]    *See Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 46 (2d Cir. 1985) ("ITC adjudications of unfair trade practice …causes of action are entitled to *res judicata*

the ITC and those at issue here is that the ITC purportedly applies a different *legal* standard than Delaware.  *See* Exhibit B at Response No. 5 ("legal issues involved in this action are different from the legal issues in the ITC investigation").  But the legal basis of the claims have no bearing on whether the claims are subject to the arbitration provision, which covers "[a]ll disputes and differences of any kind" regarding "information in whatever form on the subject of … MVA-BN Based Vaccines."[3]  Exhibit B at ¶ 5.1.

    Finally, Acambis' motion is timely and poses no threat of prejudice to BN. Initially Acambis moved to stay the trade secret claims pending a final determination of BN's parallel ITC action against Acambis.  It was only recently that Acambis withdrew its motion to stay and the motion became moot, and that the initial decision terminating the trade secret claims in the ITC action became final.  BN has had notice that Acambis intended to rely on the arbitration agreement, as the agreement was asserted as a defense in both Acambis' Answer and

---

effect."); *In re Convertible Rowing Exerciser Patent Litig.*, 814 F. Supp. 1197, 1207 (D. Del. 1993) (factual findings underlying ITC unfair trade practices judgment have collateral estoppel effect on civil patent claim).

[3] And in any event, the same elements of a cause of action are present in both the Delaware and the ITC trade secret claims.  *Compare In re Certain Apparatus for the Continuous Production of Copper Rod*, Inv. No. 337-TA-52, 206 U.S.P.Q. 138, 156 (ITC 1979) ("To prove misappropriation of a trade secret for purposes of establishing an unfair act within the purview of section 337, four elements must be proven: (1) the existence of a trade secret which is not in the public domain, (2) that the complainant is the owner of the trade secret or possesses a proprietary interest therein, (3) that the complainant disclosed the trade secret to respondent while in a confidential relationship or that the respondent wrongfully took the trade secret by unfair means, and (4) that the respondent has used or disclosed the trade secret causing injury to the complainant.") *with Savor, Inc. v. FMR Corp.*, 2004 WL 1965869 at *5 (Del. Super. Ct. July 15, 2004) (Trade secrets claims implicate the following inquiries: "(1) Does a trade secret exist….; (2) has the secret been communicated by plaintiff to the defendant; (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been improperly (*e.g.*, in breach of the understanding) used or disclosed by the defendant to the injury of the plaintiff?").

Amended Answer.  *See* Answer at 10; Amended Answer at 12.  In addition, there has been no new discovery taken regarding trade secrets (although some is just recently being sought).

## <u>CONCLUSION</u>

Based on the foregoing, Count II of this action should be dismissed pursuant to the parties' mandatory arbitration agreement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

OF COUNSEL:

William D. Coston
Lindsay B. Meyer
Eric S. Namrow
Martin L. Saad
VENABLE, LLP
575 7th Street, NW
Washington, DC  20004-1601
(202) 344-4000

Dated:  June 30, 2006
527262

*Attorneys for Defendants*
*Acambis Inc. and Acambis plc*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John W. Shaw, Esquire
> YOUNG CONAWAY STARGATT & TAYLOR LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 30, 2006 upon the following individuals in the manner indicated:

**BY HAND**

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

**BY FACSIMILE**

Edward A. Pennington
SWIDLER BERLIN LLP
3000 K Street, Suite 300
Washington, DC 20007

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)