# EXHIBIT A

# FAX

To
Mr. Nick Higgins
Acambis
Cambridge

Fax No.
0044/1223 416 300

From
Dr. Andreas Hartmann
Bavarian Nordic GmbH

Date
26 February, 2002

Pages incl. cover
4

Dear Nick,

Enclosed please find the CDA signed by Peter Wulff.

I am looking forward to your call tomorrow morning at 08.00 a.m. British time.

Yours sincerely,

Dr. Andreas Hartmann
Director
Commercial & Business Development

Office  +49-89-8565-1303
Mobile: +49-173-866-1681
Fax:    +49-89-8565-1338
e-mail:hartmann@bavarian-nordic.de

## BAVARIAN NORDIC

Bavarian Nordic GmbH
Fraunhoferstr. 18b, D-82152 Martinsried, Germany, Phone +49 89 8565 0030, Fax +49 89 8565 1338
www.bavarian-nordic.com, Geschäftsführer: Peter Wulff, VAT No.: DE 178 111 974, Reg.: Amtsgericht München, HRB 112242

# SECRECY AGREEMENT

Between Acambis plc, Peterhouse Technology Park, 100 Fulbourn Road, Cambridge CB1 9PT, UK and Bavarian Nordic A/S, Vesterbrogade 149, DK-1620 Copenhagen V, Denmark. Both parties are hereinafter referred to as disclosing Party and receiving Party/recipient, as the case may be. As far as Acambis plc is concerned the terms "disclosing Party" and "receiving Party/recipient" shall include subsidiaries of Acambis plc. As far as Bavarian Nordic A/S is concerned the terms "disclosing Party" and "receiving Party/recipient" shall include subsidiaries of Bavarian Nordic A/S.

## ARTICLE 1 - DEFINITION OF INFORMATION

1.1    INFORMATION shall mean any and all information disclosed by the disclosing Party to the recipient in oral, visual, written, or electronic form under this Agreement. INFORMATION shall also mean any and all technical or non-technical information obtained in any form by the recipient during observation or examination of the information which may include, but is not limited to, technical processes, specifications, instrumentation, formulae, assays, manufacturing techniques, sales and marketing information, material or data. This also includes any other confidential information about the disclosing Party and the receiving Party obtained through the disclosure of information as well as the fact that disclosure has taken place.

## ARTICLE 2 - CONFIDENTIALITY

2.1    This Agreement will come into force on the date of the last signature hereto. In consideration of any disclosure at any time by the disclosing Party to the recipient of INFORMATION in whatever form on the subject of:

### MVA-BN Based Vaccines

The recipient undertakes from the date of disclosure to treat all received INFORMATION as strictly confidential for a period of five (5) years from the date of disclosure and therefore not to disclose it to any third party without the prior written and express consent of the disclosing Party and, at the minimum, treat INFORMATION in the same manner and with the same degree of care as the recipient treats its own confidential information. The recipient furthermore undertakes to make no use of INFORMATION, except as specifically provided for in Article 4 without the prior written and express consent of the disclosing Party in each case.

2.2    The recipient may disclose INFORMATION only to reliable employees who need to know in order to carry out the evaluations under this Agreement, provided that such persons are bound by obligations of confidentiality and non-use to the recipient which are no less onerous than the terms of this Agreement. The recipient shall ensure that such employee(s) be fully aware of the obligations of this Agreement and shall be responsible for any breach of these provisions by its employees(s).

2.3    In case INFORMATION is received in oral form, the above obligation shall apply only to the extent such oral INFORMATION has been confirmed in writing in summary form to the recipient and marked 'Confidential' within forty-five (45) days after the date of oral disclosure.

## ARTICLE 3 - NON-DISCLOSURE AND EXCEPTIONS

3.1    The obligations set forth in Article 2 above shall not apply to:

LO1\32877\02\71_M02\DOC\67574.0003

a) INFORMATION which at the time of disclosure is already in the public domain;

b) INFORMATION which, after disclosure, becomes part of the public domain through no violation of this Agreement;

c) INFORMATION which the recipient is able to prove to have been in possession of prior to disclosure. In this case, the recipient will, in writing and within forty-five (45) days from the date of disclosure, provide evidence to the disclosing Party to substantiate that it was in possession of such INFORMATION;

d) INFORMATION which is hereafter lawfully disclosed by a third party to the recipient, which information such third party did not acquire under a still effective obligation of confidentiality to the disclosing Party;

e) INFORMATION that can be demonstrated as independently developed or acquired by the recipient without reference to or reliance upon confidential INFORMATION defined in this Agreement, as evidenced by the recipient's written records;

f) INFORMATION disclosed to the extent required by law or regulation, provided that the recipient shall give the disclosing Party prompt written notice and sufficient opportunity to object, time permitting, to such disclosure.

## ARTICLE 4 - USE OF INFORMATION

4.1 The recipient shall not use INFORMATION for any purpose other than evaluation purposes.

4.2 INFORMATION is the sole property of the disclosing Party and nothing in this Agreement shall be construed as granting to the recipient, by implication or otherwise, any right or license with respect to INFORMATION or any patent applications, patents or any claims of patent now or hereafter filed or issued with respect to INFORMATION and the recipient is obligated to refrain from filing applications or otherwise seeking proprietary rights and protection in respect of INFORMATION.

4.3 Upon completion of the evaluation by the recipient of INFORMATION, or upon request from the disclosing party, the recipient undertakes to return to the disclosing Party all INFORMATION received hereunder and any material, data, and results derived from such INFORMATION and all copies hereof.

4.4 Except as expressly set forth herein or other agreement relating to INFORMATION between the Parties, neither Party shall incur any obligation or liability to the other Party merely by disclosing or receiving INFORMATION. It is further agreed that the furnishing of INFORMATION shall not constitute any grant, option or license under any patent or other rights now or hereinafter held by either Party.

4.5 The recipient acknowledges that INFORMATION is provided "as is" and without any representation or warranty, express or implied, as to the accuracy or completeness of INFORMATION, including, without limitation, any implied warranty of merchantability or fitness for a particular purpose, or any warranty that the use of INFORMATION will not infringe or violate any patent or other proprietary rights of any third party.

## ARTICLE 5 - MISCELLANEOUS

3

5.1 Both parties will use their best efforts to settle all matters in dispute amicably. All disputes and differences of any kind related to this Agreement, which cannot be solved amicably by the parties, shall be finally settled under the Rules of the International Chamber of Commerce (the "ICC") by one arbitrator appointed in accordance with the said Rules.

5.3 The arbitration shall take place in Frankfurt and shall be conducted in the English language. The award of the arbitrator shall be final and binding on both parties. The parties bind themselves to carry out the awards of the arbitrator.

5.4 This contract shall be construed and interpreted pursuant to the laws of England. The English wording in this Agreement shall prevail.

5.5 The parties acknowledge that damages would not be an adequate remedy for breach of this Agreement and the disclosing Party shall be entitled to the remedy of injunction, specific performance and other equitable of similar relief for any threatened or actual breach of this Agreement and no proof of special damages shall be necessary for the enforcement of this Agreement.

5.6 For the avoidance of doubt nothing in this Agreement shall prevent or restrict any of the parties from terminating their discussions and evaluation at any time without further notice.

5.7 Each person signing below and each Party on whose behalf such person executes this Agreement warrants that he or it, as the case may be, has the authority to enter into this Agreement and perform the obligations herein.

SIGNED BY:

Date: 22/2/02        Date: 26/2/02
Bavarian Nordic      Acambis plc

By: Peter S. Wulff   By: Nicolas Higgins
President & CEO      Commercial Director

CDA: Bavarian Nordic – Acambis Inc.
LO1\S287\0\ZA71_M021.DOC\67974.0003

3