## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAVARIAN NORDIC A/S | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-614-SLR |
| | ) | |
| ACAMBIS INC. and | ) | |
| ACAMBIS PLC, | ) | |
| | ) | |
| Defendants. | ) | |

## BAVARIAN NORDIC'S ANSWERING BRIEF
## IN OPPOSITION TO ACAMBIS' MOTION TO DISMISS
## IN FAVOR OF MANDATORY ARBITRATION BN'S CLAIM OF
## MISAPPROPRIATION OF TRADE SECRETS

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (# 2903) [kpascale@ycst.com]
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

- and -

BINGHAM McCUTCHEN LLP
Edward A. Pennington
Robert Bertin
George Jones
Stephanie Scruggs
3000 K Street Suite 300
Washington, DC 20007
(202) 424-7500

*Attorneys for Plaintiff, Bavarian Nordic A/S*

July 17, 2006

**TABLE OF CONTENTS**

**PAGES**

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS .................1

SUMMARY OF ARGUMENT .........................................................................................4

STATEMENT OF FACTS .............................................................................................5

ARGUMENT.................................................................................................................7

    I.    Acambis' Motion to Dismiss Is Procedurally Improper ...................................7

    II.   Acambis Has Waived Any Right to Arbitrate Bavarian Nordic's Trade Secret Claims................................................................................................7

    III.  Bavarian Nordic's Trade Secret Claims Are Broader Than the Secrecy Agreement Entered Into Between Acambis and Bavarian Nordic .........................................................................................................13

CONCLUSION............................................................................................................16

i

## TABLE OF AUTHORITIES

**PAGES**

**Cases**

*AT&T Technologies, Inc. v. Communications Workers of Am.,*
    475 U.S. 643 (1986)..................................................................................................... 13

*Brown v. Dillard's, Inc.,*
    430 F.3d 1004 (9th Cir. 2005) ....................................................................................... 8

*Creative Solutions Group, Inc. v. Pentzer Corp.,*
    252 F.3d 28 (1st Cir. 2001)............................................................................................ 7

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,*
    640 F. Supp. 882 (S.D.N.Y. 1986) .............................................................................. 12

*Expofrut S.A. v. M/V Aconcagua,*
    280 F. Supp. 2d. 374 (E.D. Pa. 2003) .......................................................................... 9

*Faircloth v. Jackie Fine Arts, Inc.,*
    682 F. Supp. 837 (D. S.C. 1988)................................................................................. 11

*Hoxworth v. Blinder, Robinson & Co.,*
    980 F.2d 912 (3d Cir. 1992) .............................................................................. 7, 8, 11

*Joba Construction Co. v. Monroe County Drain Comm'r,*
    150 Mich.App. 173, 388 N.W.2d 251 (1986)............................................................. 10

*Kelly v. Golden,*
    352 F.3d 344 (8th Cir. 2003) ........................................................................................ 8

*Lubrizol Corp. v. Exxon Corp.,*
    929 F.2d 960 (3d Cir. 1991) ....................................................................................... 14

*Maxum Foundations, Inc. v. Salus Corp.,*
    779 F.2d 974 (4th Cir. 1985) ...................................................................................... 11

*Medtronic Avenue Inc. v. Advanced Cardiovascular Sys. Inc.,*
    247 F.3d 44 (3d Cir. 2001) ......................................................................................... 13

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    39 F.3d 1482 (10th Cir. 1994) ...................................................................................... 7

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,*
    460 U.S. 1 (1983)........................................................................................................ 13

*Nationwide Ins. Co. v. Patterson,*
    953 F.2d 44 (3d Cir. 1991) ........................................................................................... 7

*PaineWebber, Inc. v. Faragalli,*
    61 F.3d 1063 (3d Cir.1995) .................................................................................... 8, 13

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004) ....................................................................... 7

*Perry v. Sonic Graphic Sys., Inc.*
    94 F. Supp. 2d 623 (E.D. Pa. 2000) ......................................................... 8, 9

*Rugumbwa v. Betten Motor Sales*,
    136 F. Supp. 2d 729 (W.D. Mich. 2001) .................................................... 9

**Statutes**

15 U.S.C. § 1125(a) ...................................................................................... 5

28 U.S.C. § 1659(a) ...................................................................................... 1

6 *Del. C.* § 2001 *et seq.* ................................................................................ 5

6 *Del. C.* §2531 *et seq.* ................................................................................ 5

**Rules**

FED. R. CIV. PROC. 12(b) ............................................................................... 7

FED. R. CIV. PROC. 12(b)(6) ......................................................................... 7

## INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

Bavarian Nordic A/S ("Bavarian Nordic"), a leading developer and producer of vaccines and related products that prevent and treat infectious diseases, brought this suit alleging that Acambis Inc. and Acambis, plc ("Acambis") have committed acts of unfair trade practices, tortious conversion, misappropriation of trade secrets in violation of state laws, and unfair competition under the Lanham Act. Bavarian Nordic has also brought suit against Acambis at the International Trade Commission ("ITC") alleging unfair acts in the importation of goods into the United States, including patent infringement and trade secret misappropriation. The trade secret misappropriation claim was terminated from the ITC proceeding, and an evidentiary hearing was held on the patent infringement claims from May 8 to May 15, 2006. The ITC heard closing arguments on July 12 and an initial determination from the ITC is expected in August. Further relevant procedural background is provided below.

Subsequent to answering Bavarian Nordic's Delaware complaint, Acambis filed a motion to stay the case in Delaware pursuant to 28 U.S.C. § 1659(a) pending a resolution of the ITC proceeding. In support of its motion to stay, Acambis argued that the claims at issue in the Delaware case—in particular Bavarian Nordic's trade secret and conversion claims—were identical to the claims at issue in the ITC, despite differences in factual and legal requirements of the claims. In effect, Acambis argued that discovery and the ITC case should proceed in lieu of the Delaware case on common issues. At all times, discovery has proceeded in this case and the ITC case in parallel, and the parties have continued to litigate all claims that are part of this action, seeking to avoid duplication of discovery effort where possible.

During the ITC case, at the close of fact and expert discovery, the ITC staff attorneys ("Staff") filed a motion to terminate the trade secret claims based on an arbitration clause and an ITC procedural rule governing arbitration. Acambis for its part did not move to terminate or dismiss on the basis of any arbitration right before the Staff filed its motion to terminate. Rather, Acambis filed a separate motion for summary determination (the equivalent of summary judgment) to dispose of the ITC trade secret claims on the merits, but indicated that it supported the Staff's motion to terminate based on ITC rules relating to arbitration. Both Bavarian Nordic and the Staff opposed Acambis' motion to terminate the ITC trade secrets claims on the merits, with both noting factual disputes that Bavarian Nordic could reasonably be expected to win. Bavarian Nordic opposed the Staff's motion to terminate the trade secret claim on the basis that the Staff did not have standing to invoke the ITC procedural rule on arbitration as a non-party to the agreement.

On April 4, 2006, the non-patent claims in the ITC proceeding, including Bavarian Nordic's trade secret claims, were dismissed without prejudice on the basis of the ITC procedural rule on arbitration. Bavarian Nordic elected not to appeal the procedural decision to the ITC Commission largely because for purposes of discovery and trial, the trade secret claims were more advantageously litigated as part of the claims filed in Delaware. Notwithstanding the ITC's decision on the trade secret issue, Acambis did not notify this Court regarding the dismissal and therefore the mootness of Acambis' then-pending Motion to Stay this case (D.I. 12). On May 25, 2006, Bavarian Nordic notified this Court that the Motion to Stay pending in the Delaware proceeding appeared to be moot now that the trade secret claims are no longer part of the ITC case. (*See* D.I.

39.) Finally on June 9, 2006, Acambis withdrew its Motion to Stay based essentially on those claims. (*See* D.I. 43.)

For efficiency, the parties have agreed that the discovery conducted in the ITC may also be used in the Delaware case. Substantial discovery related to the trade secret claims therefore has already taken place in this case. Both parties have engaged in extensive document production and have taken numerous depositions of both fact and expert witnesses on the merits of the trade secret claims that Acambis, at this late point in the proceedings, attempts to dismiss. The parties have submitted a joint discovery plan, attended a scheduling conference, attended a status conference and attended an initial mediation session in Delaware.

Acambis has also engaged in motion practice in both the Delaware and ITC cases that run contrary to its motions for stay and dismissal. In the ITC, Acambis filed a summary determination motion addressing the merits of Bavarian Nordic's trade secret claims as discussed above. Here in Delaware, Acambis' motion to stay did not indicate any intention to arbitrate. Acambis has also moved for leave to amend its answer to include counterclaims in this case. Acambis' proposed counterclaims include declaratory judgment counterclaims that that two of Bavarian Nordic's patents are invalid and unenforceable, antitrust counterclaims alleging Walker Process and Sham litigation and various competition torts. These counterclaims, if allowed, would greatly expand the Delaware action.[1]

---

[1] It is also worth noting that the ITC, in an unusual move, has reopened the record after trial and after closing arguments based on Bavarian Nordic's motion for sanctions, to enter into evidence prior undisclosed testimony of Acambis' only expert and to permit another deposition of this expert to explore the testimony and inconsistent statements made at trial.

Now, ten months after the filing of the complaint in this case and only one month from the close of discovery, which is scheduled for August 16, Acambis moves to dismiss Baavarian Nordic's trade secret claims in favor of arbitration.

Because Acambis' motion is procedurally improper, is broader in scope than warranted, and further because Acambis has delayed in asserting any right to arbitrate the trade secret claims, Acambis' motion to dismiss in favor of arbitration, which is brought only to delay liability for its misappropriation, should be summarily denied.

## SUMMARY OF ARGUMENT

1.    Acambis' motion dismiss is untimely because Acambis has already answered the complaint and because Acambis has set forth no procedural basis for its motion.

2.    Acambis has engaged in extensive fact and expert discovery on the trade secret issues using judicial forums and has acted in a manner that is inconsistent with its intention to arbitrate those claims.  Therefore, under the relevant legal authority, Acambis has waived its right to arbitrate.

3.    Acambis seeks to dismiss Bavarian Nordic's misappropriation of trade secrets claims on the basis of an arbitration clause in a Secrecy Agreement entered into between Acambis and Bavarian Nordic.  Although the Secrecy Agreement does contain an arbitration clause, this agreement does not cover all of the trade secret issues in dispute in the Delaware action.  Therefore, in any event, not all of Bavarian Nordic's trade secret claims are subject to arbitration.

4.    Finally, Bavarian Nordic will be greatly prejudiced, both economically and procedurally, if its trade secret claims are dismissed at this late stage.

4

## STATEMENT OF FACTS

Bavarian Nordic alleges four counts in the Delaware Complaint: (1) tortious

conversion; (2) misappropriation of trade secrets pursuant to 6 *Del. C.* § 2001 *et seq.*; (3)

unfair trade practices pursuant to 6 *Del. C.* §2531 *et seq.* and Delaware common law; and

(4) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

Bavarian Nordic disclosed the advantageous properties of a virus population

called Modified Vaccinia Ankara (MVA) as a stand alone vaccine against smallpox, its

MVA-BN® and other related trade secrets to the National Institute of Allergy and

Infectious Diseases ("NIAID") under two secrecy agreements dated December 21, 2000

and February 21, 2002. Bavarian Nordic's cooperation with the NIAID at this time was a

purposeful effort to promote its MVA technology over the use of other conventional and

much less safe vaccinia viruses such as Acambis' Dryvax- based technologies.

Under a non-disclosure agreement among the Division of Microbiology and

Infectious Diseases ("DMID"), NIAID, NIH and Bavarian Nordic, executed shortly after

September 11, 2001, Bavarian Nordic disclosed the technology for MVA-BN specifically

for use as a smallpox vaccine. Complaint (D.I. 1) at ¶30. This disclosure ultimately led

to the sponsorship by the NIAID of a pre-investigational New Drug Application (IND)

with Bavarian Nordic during 2002 for IMVAMUNE$^{TM}$, the name for Bavarian Nordic's

smallpox vaccine using MVA-BN. *Id.*

Bavarian Nordic and Acambis entered into a Secrecy Agreement in February

2002 in order to facilitate licensing negotiations involving Bavarian Nordic's MVA-BN®

technology. *Id.* at ¶31. Bavarian Nordic and Acambis then met on June 12, 2002 and

Bavarian Nordic disclosed the technology for MVA-BN® and IMVAMUNE$^{TM}$. *Id.* at

¶32. Bavarian Nordic alleges that Acambis has misappropriated Bavarian Nordic's trade secrets as a third-party receiver of information from the NIH and also through information received at the June 12, 2002 meeting. *Id.* at ¶¶ 55,58.

Bavarian Nordic has been unable to discover information regarding the trade secret information Acambis received from NIH in the ITC investigation. In December 2005, the ITC issued a subpoena duces tecum and ad testificandum to NIH related to the information that NIH provided to Acambis regarding Bavarian Nordic's MVA technology. NIH, however, declined to cooperate with Bavarian Nordic or Acambis, essentially denying that the ITC had any jurisdiction over it. *See* Letter to R. Bertin from R. Kington, attached as Exhibit A. In response to Bavarian Nordic's subpoena, NIH produced only a small number of public documents and refused to produce any NIH employees for deposition.

Therefore, without the opportunity to conduct essential third-party discovery, the misappropriation of Bavarian Nordic's trade secrets at the ITC were presented only in the context of the June 12, 2002 disclosure to Acambis. Bavarian Nordic, however, has the opportunity to discover information related to NIH's disclosure of Bavarian Nordic's trade secrets to Acambis. Indeed, Bavarian Nordic is pursuing another subpoena to NIH in the Delaware case related to its trade secret claims and has also subpoenaed NIH employee, Dr. Bernard Moss, who is allegedly responsible for providing Acambis with Bavarian Nordic's MVA strain and has been a consultant to Acambis at least through Acambis' corporate predecessor Oravax. This additional discovery from NIH and Dr.Moss is critical to certain of Bavarian Nordic's trade secret allegations.

## ARGUMENT

As explained in detail below, Acambis' motion is merely its latest attempt to delay a resolution of the merits if this case. There is no basis for granting Acambis' untimely motion to dismiss Bavarian Nordic's trade secret claims in favor of arbitration.

### I.    Acambis' Motion to Dismiss Is Procedurally Improper.

Acambis improperly filed this motion to dismiss long after filing its Answer in this case (D.I. 6, filed September 8, 2005). Under the law of the Third Circuit, a motion to dismiss on the basis of an arbitration agreement is treated like to a motion to dismiss for failure to state a claim under FED. R. CIV. PROC. 12(b)(6). *Palcko v. Airborne Express, Inc.,* 372 F.3d 588 (3d Cir. 2004) *citing Nationwide Ins. Co. v. Patterson,* 953 F.2d 44 (3d Cir. 1991). As such, Acambis' motion should be treated as a motion to dismiss under FED. R. CIV. PROC. 12(b)(6).

Under Rule 12(b), a motion under Rule 12, include a motion for failure to state a claim upon which relief may be granted, "shall be made before pleading if a further pleading is permitted." FED. R. CIV. PROC. 12(b). Acambis has already filed and served a responsive pleading to Bavarian Nordic's Complaint. Accordingly, Acambis' motion is procedurally defective.

### II.    Acambis Has Waived Any Right To Arbitrate Bavarian Nordic's Trade Secret  Claims.

The parties to an agreement can waive an arbitration clause by simply not invoking the clause, electing instead to litigate their differences in other forums. *See*, *e.g.*, *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32-33 (1st Cir. 2001); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir. 1994); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926 (3d Cir. 1992); *Kelly v. Golden*,

352 F.3d 344 (8th Cir. 2003); *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005).

Furthermore, courts have held that a party's conduct in defending and proceeding to trial

on the merits of an action without raising the issue of arbitration constitutes a waiver of

that party's right to arbitration of the claim.

For example, in *Perry v. Sonic Graphics Sys., Inc.*, 94 F. Supp. 2d 623 (E.D. Pa.

2000), the Court used the following factors to determine whether or not there had been a

waiver of arbitration rights:  "(A) lack of timeliness of the motion to arbitrate;  (B) degree

to which the party seeking to compel arbitration has contested the merits of its opponent's

claims;  (C) whether the party has informed its adversary of the intention to seek

arbitration even if it has not yet filed a motion to stay the district court proceedings;  (D)

the extent of its non-merits motion practice;  (E) its assent to the district court's pretrial

orders; and (F) the extent to which both parties have engaged in discovery." *Id.* at 625.

*See also Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926 (3d Cir. 1992)

and *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1069 (3d Cir.1995).

The defendant in the *Perry* case argued that because the copyright license at issue

contained an arbitration provision, the plaintiff was precluded from bringing suit in court.

The plaintiff responded that the defendant waived any arbitration right by substantially

delaying before asserting rights. In particular, the defendant did not raise the issue of

arbitration in its answer and engaged in discovery with the plaintiff.  The defendant

decided to assert its right to arbitration for the first time "fourteen months after the

Complaint had been filed and four days before the case was scheduled to be placed in the

trial pool." *Id.*  Applying the above factors, the court found that the defendant

substantially delayed asserting its arbitration rights and therefore waived them.

8

Similarly, in *Expofrut S.A. v. M/V Aconcagua*, 280 F. Supp. 2d. 374 (E.D. Pa. 2003), the district court held that the plaintiff had waived its right to arbitration when the plaintiff moved to stay the action to arbitrate the dispute overseas, nearly one year after filing the complaint. Despite the existence of an arbitration clause, the plaintiff pursued judicial action against the defendant, including engaging in extensive document production, taking depositions, exchanging initial disclosures, and submitting a joint proposed discovery plan without mentioning any intention to arbitrate the claim. *Id.* at 377. Relying on the factors set forth in *Perry*, the court denied the plaintiff's motion to stay. The court found that "the prejudice defendants would suffer …is the decisive factor in the Court's determination that the plaintiffs [sic] have indeed waived their right to arbitration." *Id.* Moreover, the court explained, "[n]ot only would referring this case to arbitration one month before the close of discovery cause prejudice to defendants by the unnecessary delay and expense of the past years' litigation process, but defendants would also be deprived of the ability to obtain testimony and evidence in support of their defense." *Id.*

Other courts have also implied a party's waiver of the right to arbitrate a claim based on a party's participation in litigation. In *Rugumbwa v. Betten Motor Sales*, 136 F. Supp. 2d 729 (W.D. Mich. 2001), the defendant did not raise arbitration as a defense in its original answer or in the joint status report submitted thereafter. The defendant later amended its answer to add arbitration as an affirmative defense, but did not seek a stay. Even after the defendant filed a motion to compel arbitration, the defendant continued to litigate the case including engaging in discovery and filing a motion for summary judgment. *Id.* at 734. The court stated that "[a] party's waiver of the right to arbitrate

'may be implied when a party actively participates in a litigation or acts in a manner inconsistent with its right to proceed to arbitration.'" *Id.* (citing *Joba Construction Co. v. Monroe County Drain Comm'r*, 150 Mich.App. 173, 178, 388 N.W.2d 251 (1986).) Examining the defendant's actions, the court concluded that the defendant had actively participated in the litigation and acted in a manner inconsistent with its right to proceed with arbitration. *Id.*

There is no doubt in this case that Acambis has elected to vigorously litigate the trade secret claims in judicial forums, with full knowledge that it was foregoing the right to arbitrate. In this regard, Acambis asserted a defense in its answer that claims may be subject to arbitration. However, Acambis never moved to dismiss or take any other steps to arbitrate the claim and offers no explanation for this delay. Acambis did not file its motion until eleven months after the complaint was filed.

Moreover, Acambis has utilized all of the tools of the judicial process in preparing its trade secret defense in this forum and the related ITC case. Acambis and Bavarian Nordic have taken a substantial amount of fact and expert discovery on the trade secret claims. Acambis has propounded document requests and interrogatories related to Bavarian Nordic's trade secret claims. *See* Acambis' discovery requests and interrogatories, attached as Exhibit B. Bavarian Nordic has produced thousands of documents related to its trade secrets. Acambis has taken depositions of Bavarian Nordic's CEO, Peter Wulff and CSO, Dr. Paul Chaplin, Bavarian Nordic's expert, Dr. Robert Drillien, and past and present employees, Christine Meisinger and Paul Howley. All of these deposition transcripts contain extensive testimony related to Bavarian Nordic's trade secrets. Additionally, Acambis took a Rule 30(b)(6) deposition

of Bavarian Nordic, which included 12 topics on trade secrets. *See* Notice of Deposition

of Bavarian Nordic at topics 1-3, 16-20, 22, 31, 39 and 43, attached as Exhibit C. In

addition, Bavarian Nordic propounded discovery on Acambis including document

requests, interrogatories and depositions. By agreement of the parties, all of this trade

secret discovery is part of the Delaware case. Acambis also moved for summary

determination on the merits of the trade secret claim at the close of fact and expert

discovery, which both Bavarian Nordic and the ITC Staff opposed at the ITC. Indeed,

Acambis' handling of its trade secret defense to date speaks loudly to Acambis' decision

to litigate these claims in lieu of arbitration.

Prejudice is an important factor to be considered by courts in determining whether

or not a party has waived its right to arbitrate. "[P]rejudice is the touchstone for

determining whether the right to arbitration has been waived." *Hoxworth v. Blinder

Robinson & Co., Inc.*, 980 F.2d 912, 926 (3d Cir. 1992).

The right to arbitrate a dispute has been deemed waived in cases when the party

seeking arbitration invokes the judicial process to the detriment or prejudice of another

party. For example, the court in *Faircloth v. Jackie Fine Arts, Inc.,* 682 F. Supp. 837 (D.

S.C. 1988), found that the defendant waived its right to arbitrate because of the expense

incurred and time spent litigating prior to defendant asserting its arbitration rights. The

court noted that "[a] litigant may waive its right to invoke the Federal Arbitration Act by

so substantially utilizing the litigation machinery that to subsequently permit arbitration

would prejudice the party opposing the stay.'" *Id.* at 841 (citing *Maxum Foundations,

Inc. v. Salus Corp.*, 779 F.2d 974 at 981 (4th Cir. 1985)). By the time the defendant

attempted to enforce arbitration, "the parties had conducted numerous depositions and

11

spent undoubtedly enormous amounts of time in the preparation of motions and responses." *Id.* The court stated that "too much time and effort will have been wasted and the litigation will become unnecessarily protracted if the court decides to send part of the claim to an arbitrator." *Id.* Thus, the court held that the defendants had waived their right to arbitration. Likewise, the court in *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 640 F. Supp. 882 (S.D.N.Y. 1986), denied a defendant's request for arbitration based on the defendant's full participation in all aspects of the litigation. The court specifically held: "[w]hereas there is a strong federal policy favoring arbitration ..., the right to arbitrate may be waived. . . . Having already participated so extensively in the litigation of this case, [defendants'] have waived any right to arbitration." *Id.* at 884.

Dismissing Bavarian Nordic's trade secret claims in favor of arbitration would unjustly prejudice Bavarian Nordic in two ways. First, Bavarian Nordic has invested a considerable amount of time and incurred substantial expenses litigating its trade secret claims. If those claims were now dismissed in favor of arbitration in Frankfurt, Germany under English Law pursuant to the arbitration clause, none of the documents or testimony acquired from this case could be used in the potential arbitration, because of the protective order and the very limited possibilities of discovery in that jurisdiction. In effect, all of Bavarian Nordic's efforts in proving its trade secret case would be wasted. In light of the time and money spent by Bavarian Nordic over the past eleven months litigating its trade secret misappropriation claims, it is only fair that those claims be permitted to proceed to resolution in this civil action.

Second, dismissal in favor of arbitration would confer an unfair procedural advantage on Acambis, which has taken full advantage of the judicial system here to

acquire information about Bavarian Nordic's trade secret claims. If those claims are dismissed from the Delaware action, prior to their final adjudication here, Acambis would have achieved substantial delay in the ultimate day of reckoning on those claims, while retaining the fruits of the discovery process. At the same time, Bavarian Nordic would be deprived of its ability to complete the process of obtaining testimony and evidence to support certain of its trade secret misappropriation allegations and would be deprived of a resolution based on that evidence. That result would be highly prejudicial to Bavarian Nordic, which relied on Acambis' demonstrated intention to litigate these claims on the merits without raising the issue of arbitration.

**III.    Bavarian Nordic's Trade Secret Claims Are Broader Than the Secrecy Agreement Entered Into Between Acambis and Bavarian Nordic.**

Although arbitration is generally favored under the Federal Arbitration Act, any agreement between the parties to arbitrate must cover the dispute at issue. If the dispute at issue falls outside of the substantive scope of the agreement, the dispute is not subject to arbitration. *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649-650 (1986). Thus, interpreting the scope of an arbitration agreement is key to the determination of whether or not a dispute is subject to arbitration.

It is true that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983); *Medtronic Avenue Inc. v. Advanced Cardiovascular Sys. Inc.,* 247 F.3d 44, 55 (3d Cir. 2001). But, it has also been held that "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *PaineWebber Inc. v. Hartmann*, 921 F. 2d 507 (3d Cir. 1990).

13

In support of its argument that Bavarian Nordic's trade secret claims are subject to binding arbitration, Acambis points to an arbitration clause in a Secrecy Agreement entered into by Bavarian Nordic and Acambis for the purposes of the June 12, 2002 meeting. Acambis Motion to Dismiss (D.I. 49) at 4.[2] However, not all of Bavarian Nordic's trade secret claims in this case are within the scope of the asserted arbitration clause and therefore cannot be subject to arbitration.

Bavarian Nordic alleges that Acambis received Bavarian Nordic trade secrets from Bavarian Nordic and also NIH, with whom Bavarian Nordic had a secrecy agreement in an on-going procurement involving its MVA-BN and tens of millions of dollars in funding. Acambis needs to look no further than the Complaint filed in this case to understand that the trade secrets at issue in this case are not limited to the June 12, 2002 meeting.

Additionally, each party's discovery plan submitted to the Court included discovery which contemplated that Bavarian Nordic's trade secrets at issue were not limited to the June 12, 2002 meeting. Bavarian Nordic specifically requested discovery on "Acambis' communications with third parties relating to any meetings between Bavarian Nordic and agencies of the U.S. government, including NIH, regarding MVA strains and its use as a small pox vaccine." Scheduling Order (D.I. 20) at 2. Acambis requested discovery on "BN's communications with NIH regarding its alleged trade

---

[2]  Acambis also asserts that the ITC's ruling in Order No. 26 has *res judicata* effect and is binding on this Court. Acambis' argument fails because *res judicata* only applies to final decisions on the merits, not procedural determinations. *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991). The trade secret claim was not considered by the ITC on the merits. Moreover, even if the agreement did require arbitration, Acambis, for the reasons stated herein, has failed to raise that issue properly before this Court and thus has waived its right to assert arbitration based on its conduct in this litigation.

secrets; and BN's alleged non-disclosure and secrecy agreements with Defendants and NIH." *Id.* at 4.

Furthermore, the discovery conducted in this case is consistent with Bavarian Nordic's allegations that its trade secrets also encompass the information disclosed to the NIH under a confidentiality agreement as well as the information disclosed to Acambis at the June 12, 2002 meeting. For example, during the Rule 30(b)(6) deposition of Acambis' corporate designee, Dr. Cynthia Lee testified that Acambis had several teleconferences with Dr. Moss of the NIH to discuss the use of MVA as a smallpox vaccine. (Lee 30(b)(6) Depo. Tr. at 200:18-211:9.) Bavarian Nordic also met with the NIH during this time and disclosed its MVA technology to NIH as part of discussions related to the U.S. Government's decision to procure MVA-based small pox vaccines.

Acambis refers to Bavarian Nordic's response to an interrogatory at the ITC to support its position that the allegations are covered by the June 12, 2002 meeting. Acambis Motion to Dismiss (D.I. 49) at 4. But, these interrogatory responses were specific to the ITC investigation, not the case in Delaware. And, Bavarian Nordic was unable to factor in discovery from the NIH and Dr. Moss in the ITC investigation, both of whom are being pursued. Thus, these interrogatory responses did not consider the full breadth of Bavarian Nordic's trade secret allegations. Therefore, Acambis' reliance on these interrogatory responses as showing that Bavarian Nordic does not allege receipt of trade secret information from third parties, such as NIH, is misplaced.

# CONCLUSION

As set forth above, Acambis' motion is procedurally improper, the arbitration clause does not fully cover the trade secret claims at issue, and Acambis has waived its right to arbitrate these claims. Therefore, Acambis' motion to dismiss Bavarian Nordic's claim for misappropriation of trade secrets should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

July 17, 2006

_____

John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

- and -

BINGHAM MCCUTCHEN LLP
Edward A. Pennington
Robert Bertin
George Jones
Stephanie Scruggs
3000 K Street Suite 300
Washington, DC 20007
(202) 424-7500

*Attorneys for Plaintiff, Bavarian Nordic A/S*

16

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on July 17, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham [mbgefiling@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

I further certify that on July 17, 2006, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### By E-Mail on July 17, 2006
> ### and Hand Delivery on July 18, 2006

> Mary B. Graham [mgraham@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

> ### By E-Mail on July 17, 2006
> ### and FedEx on July 18, 2006

> William D. Coston [wdcoston@venable.com]
> VENABLE LLP
> 575 7th Street, NW
> Washington, DC 20004-1601
> (202) 344-4000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L. Pascale*

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
Email: kpascale@ycst.com
    *Attorneys for Plaintiff, Bavarian Nordic A/S*