EXHIBIT A



**DEPARTMENT OF HEALTH & HEALTH SERVICES**                    Public Health Service

---

National Institutes of Health
Bethesda, Maryland 20892

**JAN 1 1 2006**

<u>VIA OVERNIGHT MAIL</u>

Mr. Robert C. Bertin
Swidler Berlin, LLP
The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C.  20007-5116

Re:    Subpoena Duces Tecum and Subpoena Ad Testificandum

Dear Mr. Bertin:

On December 27, 2005, the Office of the General Counsel for the Department of Health and
Human Services (DHHS) received your correspondence addressed to Dr. Elias Zerhouni,
Director of the National Institutes of Health, dated December 23, 2005, and a subpoena issued by
the International Trade Commission (ITC).  As Deputy Director, NIH, I make these
determinations on behalf of the Director.  This letter is to inform you that for reasons set forth
below, it is the Government's position that the ITC lacks jurisdiction to issue subpoenas to the
National Institutes of Health (NIH) and, further, the NIH has determined that compliance with
the subpoenas is not in its interest.

*I.      The ITC Lacks Jurisdiction Over DHHS.*

The Commission's Rules of Practice and Procedure contain a provision for the ITC to accept
applications for issuance of a subpoena for nonparty records and personnel of Government.  *See*
Commission Rules at § 210.32; *see also* 19 U.S.C. § 1337(c).  This rule, however, appears to
exceed the Commission's statutory authority to compel testimony and production of documents.
19 U.S.C. §§ 1330-1335.  While section 1333 confers upon the Commission authority to sign
subpoenas and order testimony to be taken by deposition, this authority extends only over "any
person, firm, copartnership, corporation, or association."  *Id.* at § 1333(a)-(c).  The sections of
the statute setting forth the Commission's authority to issue subpoenas, or to otherwise compel
the testimony of various individuals or entities, does not include the term "government
agencies."  *See, e.g., id.* at § 1333(a) (listing covered entities as "any person, firm, copartnership,
corporation, or association").

Indeed, "other agencies" are treated in a separate section of the statute, section 1334,
conspicuously titled "Cooperation with other agencies."  19 U.S.C. § 1334.  This is the only
section addressing "other agencies" and states:

Page 2 – Mr. Robert C. Bertin

> The commission shall in appropriate matters act in *conjunction and cooperation* with the Treasury Department, the Department of Commerce, the Federal Trade Commission, *or any other departments*, or independent establishments of the Government and such departments and independent establishments of the Government shall *cooperate fully* with the commission for the purposes of aiding and assisting in its work, and, *when directed by the President*, shall furnish to the commission, on its *request*, all records, papers, and information in their possession relating to any of the subjects of investigation by the commission and shall detail, from time to time, such officials and employees to said commission as he may direct.

*Id.* at 1334 (emphasis added). Thus, this section requires the Commission to "act in conjunction and cooperation with ... other departments ... of the Government ...." Similarly, section 1334 requires other departments of the Government to "cooperate fully" with the Commission "for the purpose of aiding and assisting in its work...." *Id.*

There is no language in this section conferring authority to the Commission to subpoena or otherwise order testimony or production of documents by a Government agency. Nor is the Commission granted any jurisdiction to compel discovery from other Government agencies. Moreover, while other Government departments or agencies are required to "cooperate" with the Commission, the statute does not require other departments of the Government to comply with subpoenas issued to it by the Commission. Rather, the language of section 1334 suggests that the Commission is authorized *to request* information from other agencies. Further, it is clear that when a conflict arises between an agency's interests and a request is made by the Commission, the agency need not comply with the request unless so "directed by the President." *Id.* Therefore, it is our position that the Commission is without jurisdiction to issue subpoenas to the NIH.

II.    *Compliance with the Subpoenas is not in the Interest of NIH.*

Requests or subpoenas issued to an employee or former employee of the DHHS (other than an employee of the Food and Drug Administration) for deposition or trial testimony, or for the production of documents in proceedings where the United States is not a party, are governed by 45 C.F.R. Part 2. Section 2.3 of this regulation specifically states that an employee of DHHS may only provide requested testimony or documents upon authorization by the Agency head, who, with respect to the NIH, is the Director of the NIH. *Id.* at §2.2. Authorization by the NIH Director is "based on a determination ... that compliance with the request would promote the objectives of the Department." *Id.* at §2.3. All requests for testimony are required to "state the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or federal government." *Id.* at §2.4(a).

Page 3 – Mr. Robert C. Bertin

Upon consideration of the information you provided in your cover letter and subpoena attachments, and after consultation with the Office of the General Counsel, I have determined that the requested testimonial and documentary information are overly broad and in some instances seek information that is privileged or otherwise protected. Additionally, I find that due to its broad scope, the requested information is apparently sought not just to support Bavarian Nordic's allegations against Acambis, but also in anticipation of a lawsuit against the United States. This is further evidenced by the fact that Bavarian Nordic's Complaint is based on unsupported assertions that the NIH improperly distributed MVA strains to Acambis.[1]

For the NIH to allow its employees to testify in litigation that involves allegations of NIH misconduct, but in which the NIH is not a party, is clearly against its interest. As a nonparty, the NIH would place itself in a position of significant prejudice by providing testimony relating to its challenged conduct without having the status of a party in the lawsuit.

It is unreasonable for Bavarian Nordic to attempt to rely on NIH testimony to substantiate its ITC Complaint against Acambis, where the Complaint is based on the alleged misconduct of the NIH. Such unreasonableness is fully appreciated upon consideration of the substantial dialog between Bavarian Nordic and NIH that preceded the filing of the present ITC action.

For these reasons, compliance with the issued subpoenas is not in the interest of the NIH. Consequently, pursuant to 45 C.F.R §§ 2.3 and 2.4, I have directed NIH employees not to comply with the subpoena. This determination is consistent with the Department's policy regarding the availability of its employees to testify in matters in which the Government is not a party, i.e., "to maintain strict impartiality with respect to private litigants and to minimize the disruption of official duties." *Id.* at § 2.1(b).

Further, the testimony sought is not necessary to the ITC proceedings. We read Bavarian Nordic's Complaint as seeking relief for importation of goods infringing a valid United States Patent under § 1337(a)(1)(B). As such, the determination of whether Acambis' MVA3000 product infringes necessarily must be made by comparison of the MVA3000 product to patent claims. Testimony from Government employees is unnecessary to this determination as Bavarian Nordic is free to hire expert witnesses to prove its case.

While I have determined that the agency will not comply with the issued subpoenas, the NIH is willing to work with Bavarian Nordic in accordance with its policy "to provide information, data, and records to non-federal litigants to the same extent and in the same manner that they are made available to the general public...." *Id.* This will require Bavarian Nordic to submit to the NIH a

---

[1] In its application, Bavarian Nordic asserted that the subpoena was necessary because it alleges that the NIH provided to Acambis "a strain of modified vaccinia Ankara (MVA) owned by Bavarian Nordic...." BN Appl. at 2. Bavarian Nordic alleges that Acambis' vaccine, MVA3000, "infringes and misappropriated Bavarian Nordic's patented and proprietary technology, respectively." *Id.*

Page 4 – Mr. Robert C. Bertin

revised list of requested material, limited to documents containing information relevant to the pending litigation.  Upon receipt of this revised request, the NIH will review the list and provide to the parties authenticated copies of the relevant, requested documents that are not privileged or otherwise protected.  I request that you continue to work with Dr. Dale Berkley of the Office of the General Counsel if you choose to proceed in this manner.

Sincerely yours,

Raynard S. Kington, M.D., Ph.D.
Deputy Director

cc:    Dr. Bernard Moss, NIAID
Dr. Dale Berkley, OGC

EXHIBIT B

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | Investigation No. 337-TA-550 |

## RESPONDENT'S FIRST SET OF REQUESTS (NOS. 1-128) FOR PRODUCTION OF DOCUMENTS AND THINGS TO COMPLAINANT

Respondent Acambis plc ("Acambis" or "Respondent"), pursuant to Rules 210.27 and 210.30 of the Commission's Rules of Practice and Procedure ("Commission's Rules"), requests that Complainant Bavarian Nordic A/S ("BN" or "Complainant") permit produce and make available for inspection and copying each of the documents and things specified below.

The documents and things to be produced pursuant to these requests are to be made available for inspection and copying within ten (10) days after service thereof at the offices of counsel for the above-mentioned Respondent, Venable LLP, 575 7th Street, N.W., Washington, D.C. 20004, or at such other time and place as agreed to by the parties or established by the Administrative Law Judge. Failure to respond may ultimately result in the imposition of sanctions provided for in Rule 210.33 of the Commission's Rules.

The definitions and instructions set forth in Acambis' First Set of Interrogatories to Complainant apply to these requests and are incorporated by reference.

105.    All documents supporting or refuting your allegation in ¶27 of the Complaint that Professor Mayr provided Dr. Moss with MVA strains with any qualifications on their use and/or to whom Dr. Moss was authorized to provide such strains.

106.    All documents supporting or refuting your allegation in ¶28 of the Complaint that "on at least one occasion" a company seeking MVA from NIH and/or NIAID was referred to Professor Mayr.

107.    All documents referring or relating to the February 2002 Secrecy Agreement between BN and Acambis, including, but not limited, all correspondence, e-mails, notes, or draft agreements.

108.    All documents provided by BN or Acambis to the other under the February 2002 Secrecy Agreement.

109.    All documents referring or relating to the June 12, 2002 meeting between BN and Acambis, including, but not limited to, all correspondence, e-mails, notes, or presentations.

110.    All documents supporting or refuting your contention in ¶36 of the Complaint that BN and/or Professor Mayr attempted to prevent NIAID NIH from releasing MVA-572 under RFP-1.

111.    All documents supporting or refuting your contention that Acambis developed MVA3000 based on BN's alleged proprietary information.

112.    All documents supporting or refuting your contention that Acambis has at any time misappropriated BN's alleged proprietary technology.

113.    All documents supporting or refuting any allegations of infringement by any entity regarding the alleged inventions covered by the patents-in-suit, including, but not limited to, any notices, responses thereto, letters, memoranda, pleadings, or filings.

114.    All pleadings, potentially dispositive motions with supporting briefs and responses thereto, judicial rulings on dispositive motions, final judgments or opinions, and appellate briefs, decisions, and opinions filed or issued in any litigation identified in response to Acambis' First Set of Interrogatories.

115.    A copy of any documents referring or relating to any speech, lecture, talk, or presentation of any kind given by you or your employees at any conference, trade show, industry group or meeting, government events, or any gathering whatsoever in connection with the alleged inventions described by the patents-in-suit.

116.    All articles, publications, and scientific literature describing products designed, manufactured, or sold by BN or the use of such products which you allege incorporates the an alleged invention covered by the patents-in-suit.

117.    All documents which describe the use of any product designed, manufactured, or sold by BN which you allege incorporates an alleged invention covered by the patents-in-suit.

118.    All documents relating to the factual allegations set forth in the Complaint.

119.    All documents referring or relating to the validity, enforceability, infringement, or scope of claims of the patents-in-suit.

120.    All documents referring or relating to the licensing of the patents-in-suit, including, but not limited to, any discussions pertaining to licensing, negotiations to license, or offers to license any of the patents-in-suit.

121.    All documents referring or relating to licenses related to any parent strains of MVA-BN.

122.    All documents referring, relating, or evidencing the receipt of each of the parent strains of MVA-BN either from or by BN or from or by any other entity.

123.    All documents referring or relating to any transfer of assets from any entity to BN relating in any way to the patents-in-suit, including, but not limited to, ownership rights to the patents-in-suit, due diligence, prior art searches, or infringement or validity searches or analysis.

124.    All documents referring, relating, or supporting your claims of infringement in this Investigation including, but not limited to, claim charts.

125.    All documents referring, relating, or supporting your allegations of misappropriation of trade secrets in this Investigation.

126.    Any written materials referring or relating to the accused products in this Investigation, including, but not limited to, materials obtained from Acambis or Acambis' subcontractors, affiliates, or agents.

127.    All documents, not otherwise produced in response to the foregoing requests, referring or relating to the '893 and/or '752 patents, or their foreign counterpart patents or patent applications.

128.    All documents, not otherwise produced in response to the foregoing requests referring or relating to your allegations in this Investigation with respect to alleged misappropriation of trade secrets.

Respectfully submitted,

Eric S. Namrow
Lindsay B. Meyer
Lisa M. Kattan
Tamany J. Bentz
Venable LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone: 202-344-4800
Facsimile:  202-344-8300

*Counsel for Respondent Acambis plc*

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | Investigation No. 337-TA-550 |

## RESPONDENT'S FIRST SET OF INTERROGATORIES (NOS. 1-69) TO COMPLAINANT

Respondent Acambis plc ("Acambis" or "Respondent"), by its attorneys and pursuant to Rules 210.27 and 210.29 of the Commission's Rules of Practice and Procedure ("Commission Rules"), directs the following Interrogatories to Complainant Bavarian Nordic A/S ("BN" or "Complainant") to be answered separately by an officer thereof competent to testify, separately and fully, in a writing made under oath and signed by such officer making such answer, by serving a copy of such answers upon counsel for the above-mentioned Respondent within ten (10) days after service hereof.

Written responses to these Interrogatories are required absent the conditions set forth in Rule 210.29(c). To the extent the party responding to these Interrogatories is permitted to utilize the option of producing business records in lieu of a written answer to a particular Interrogatory as provided in Rule 210.29(c), the party must "specify the records from which the answer to such Interrogatory may be derived or ascertained," and such specification "shall include sufficient detail to permit the [Respondent] to locate and to identify, as readily as can the party served, the documents from which the answer may be ascertained." Rule 210.29(c) (emphasis added). Further, "groups of documents shall be segregated to correspond to

documents in support thereof.

59. State with specificity all grounds in support of your allegation in ¶58 of the Complaint that you put Respondent and NIAID NIH "on notice" that you allegedly had sole and exclusive right to commercialize MVA virus strains and that any other uses were allegedly wrongful and in violation of BN's "rights."

60. Describe in detail your allegation in ¶27 of the Complaint that Professor Anton Mayr provided Dr. Bernard Moss and/or NIAID NIH with MVA stains with any qualifications on their use and/or to whom Dr. Moss was authorized to provide such strains, and state specifically whether any such restrictions were reduced to a writing. Include in your response all individuals with knowledge of any such restrictions and identify all documents in support thereof.

61. State with specificity all facts in support of your allegation in ¶28 of the Complaint that "on at least one occasion" a company seeking MVA from NIAID NIH was referred to Professor Mayr, including, but not limited, the identity of the company at issue, when such events took place, all individuals with knowledge thereof, and the identity of all documents in support thereof.

62. State with specificity all information communicated to Respondent during the June 12, 2002 meeting between you and Respondent, including, but not limited to, the particular effective dosage and production/commercialization process as well as plaque purification and attenuation processes that were communicated to Respondent.

63. State with specificity all facts in support of your allegation that any proprietary information was communicated during the June 12, 2002 meeting between BN and Acambis, and describe in detail all such proprietary information that you allege was communicated during that meeting.

64. State with specificity all BN trade secrets that you allege were misappropriated by Respondent at any time.

65. State with specificity all facts in support of your allegation in ¶36 of the Complaint that BN and Professor Mayr attempted to prevent NIAID NIH from releasing MVA-572 to successful applications under RFP-1 on the ground that the virus was provided to Dr. Moss strictly for research and not commercial purposes.  Include in your response all individuals with knowledge of such allegations and identify all documents in support thereof.

66. Identify and describe with particularity all communications you have had with Respondent regarding the patents-in-suit or allegations of misappropriation of trade secrets or any products designed, produced, manufactured, or sold by Respondent which you allege are within the scope of the patents-in-suit.

67. Identify and describe with particularity any tests, analysis, or evaluation of any product designed, produced, manufactured, or sold by Respondent at any time.

68. Identify Li Westerlund's job title(s) at BN, and for each job title, describe her dates of employment and principle responsibilities.  Include in your description any involvement she has had, directly or indirectly, with the preparation of BN's responses to RFP-1, RFP-2 or RFP-3, the prosecution or supervision of the prosecution of the patents-in-

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | Investigation No. 337-TA-550 |

**RESPONDENT'S SECOND SET OF REQUESTS (NOS. 129-154) FOR PRODUCTION**
**OF DOCUMENTS AND THINGS TO COMPLAINANT**

Respondent Acambis plc ("Acambis" or "Respondent"), pursuant to Rules 210.27 and

210.30 of the Commission's Rules of Practice and Procedure ("Commission's Rules"),

requests that Complainant Bavarian Nordic A/S ("BN" or "Complainant") produce each of

the documents and things specified below.

The documents and things to be produced pursuant to these requests are to be made

available for inspection and copying within ten (10) days after service thereof at the offices of

counsel for the Respondent, Venable LLP, 575 7th Street, N.W., Washington, D.C. 20004, or

at such other time and place as agreed to by the parties or established by the Administrative

Law Judge. Failure to respond may ultimately result in the imposition of sanctions provided

for in Rule 210.33 of the Commission's Rules.

The definitions and instructions set forth in Acambis' First Set of Interrogatories to

Complainant apply to these requests and are incorporated by reference.

142.    All documents referring or relating to testing of MVA3000 at any time by BN, or at BN's request.

143.    All secrecy or non-disclosure agreements between BN and any entity other than Acambis, which in any way restricted that entity's access, dissemination, or other use of any BN trade secrets, or otherwise confidential or proprietary information relating to MVA.

144.    All documents referring or relating to BN's exclusive license for AGR129 mice, including any agreements between BN and the University of Zurich, Mark Suter and/or Rolf M. Zinkernagel for such mice.

145.    All documents referring or relating to BN's agreements with GSF, including the agreement referenced in BNITC00033871-33886.

146.    All communications or documents referring or relating to such communications between BN and NIH concerning NIH's right to distribute MVA, including any correspondence between Peter Wulff and Michael Mowatt.

147.    All secrecy or non-disclosure agreements entered into between BN and third party(s) relating to the disclosure by BN of documents BNITC 56101-56164, 67705-67741, 70621-70666, 71568-71608, 72887-72946, 73613-73667, 73812-73873, 102854-102864, 102866-102902, 103668-103715, 103823-103890, 103951-104024, 104169-104194, 104205-104272, 104581-104637, 105044-105108, 105279-105309, 106009-106029, 106058- 106099, 106583-106624, 106673-106752, 106754-106792, 106798-106830, 106832-106909, 106988-107063, 107257-107287, 112450-112510, 112801-

112874, 113146-113215, 113288-113350, 116419-116450, 124512-124542, 125712-125746, 126372-126438, 137830-137897 or 137966-138027.

148.    All secrecy or non-disclosure agreements entered into between BN and third party(s) relating to the disclosure by BN of documents BNITC 24875-24912, 43719-43760, 51795-51836, 55029-55070, 55666-55707, 55737-55778, 55823-55864, 55866-55907, 55909-55950, 61836-61877, 62046-62087, 63339-63380, or the document attached to BNITC 56292.

149.    The document attached to BNITC 56292.

150.    To the extent not previously produced, the following documents for the period 2002-2005:  financial statements for BN's US operations including balance sheets, income statements and statements of cashflow; trial balances or general ledgers for BN's operations; documents related to BN's approvals for obtaining capital assets for specified projects (e.g., capital asset request forms or requests for capital improvement); BN's capital asset purchase budgets or forecasts; and BN's capital asset acquisition policies and procedures.

151.    To the extent not previously produced, the following documents for the period 2002-2005:  BN's payroll tax returns (Form 990); payroll registers evidencing payroll by department; timesheets or other reports prepared by BN employees indicating their job activities; and written job descriptions.

152.    To the extent not previously produced, the following documents for the period 2002-2005:  BN's research and development budgets; requests for funding of research and

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-550 |
| **Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | |

**RESPONDENT'S SECOND SET OF INTERROGATORIES**
**(NOS. 70-90) TO COMPLAINANT**

Respondent Acambis plc ("Acambis" or "Respondent"), by its attorneys and pursuant to Rules 210.27 and 210.29 of the Commission's Rules of Practice and Procedure ("Commission Rules"), directs the following Interrogatories to Complainant Bavarian Nordic A/S ("BN" or "Complainant") to be answered separately by an officer thereof competent to testify, separately and fully, in a writing made under oath and signed by such officer making such answer, by serving a copy of such answers upon counsel for the above-mentioned Respondent within ten (10) days after service hereof.

Written responses to these Interrogatories are required absent the conditions set forth in Rule 210.29(c). To the extent the party responding to these Interrogatories is permitted to utilize the option of producing business records in lieu of a written answer to a particular Interrogatory as provided in Rule 210.29(c), the party must "specify the records from which the answer to such Interrogatory may be derived or ascertained," and such specification "shall include sufficient detail to permit the [Respondent] to locate and to identify, as readily as can the party served, the documents from which the answer may be ascertained." Rule 210.29(c) (emphasis added). Further, "groups of documents shall be segregated to correspond to

applicable Interrogatories requesting their identification and/or to correspond to applicable document production requests."

Respondent requests that the responses to these discovery requests be supplemented to include information acquired after service of the response. *See* Rule 210.27(c)(1) and (2). Failure to respond to these discovery requests may ultimately result in the imposition of sanctions provided for in Rule 210.33 of the Commission's Rules.

Respondent incorporates by reference the instructions and definitions in its First Set of Interrogatories to Complainant.

## INTERROGATORIES

70. State with specificity the role GSK, IDT, Epimmune, Vaccine Solutions, or any other third party have in manufacturing MVA-BN, including the location of the manufacturing sites, the amount of MVA-BN that is manufactured at each site on a monthly basis, any alleged investment in plant and equipment made by BN in these companies or sites, any employment of labor and/or capital made by BN in these companies or sites, and any investment in research and/or development made by BN in these companies or sites.

71. Identify any strain of MVA that BN acquired by any means from the U.S. Government, including NIH NIAID, including a description of such strain(s), the date of acquisition(s), any person(s) involved in such acquisition(s) and the circumstances under which such strain was acquired.



72. Identify any and all documents other than documents Bates No. BNITC00099456-523 that support BN's allegation that trade secret or otherwise confidential information was

given to Acambis by BN at the June 12, 2002 meeting.

73. Identify the passage number(s) of MVA-BN, identified at col. 6, line 28 and Figures 1A, 1B, 2, 4, 5, 10 and 11 of the '893 patent and describe the lineage for each passage number identified, including the name of the person(s) responsible for each passage, the method by which each passage was created, the date each passage was created, the quantity of virus that was created by each passage, the current location of samples of each passage that were created, and the identity of the stock virus from which passage was created.

74. Identify the passage number(s) of MVA-F6, identified on page 6 of the Petition to Make Special filed in U.S. Patent Application Nos. 10/439,953 and 10/439,439 on May 16, 2003, and describe the lineage for each passage number identified, including the name of the person(s) responsible for each passage, the method by which each passage was created, the date each passage was created, the quantity of virus that was created by each passage, the current location of samples of each passage that were created, and the identity of the stock virus from which passage was created.

75. Describe in detail all differences between MVA-BN and MVA-F6 that BN alleges exist.

76. Describe in detail the basis for the decision to re-name MVA-F6 to MVA-BN.

77. State with specificity whether AGR129 mice are available and, if so, the name, address, and telephone number of the party from whom the mice may be obtained.

78. Describe in detail any Complaint, request for investigation, or any other proceeding you have filed or pursued regarding Acambis (other than this Investigation and the

Delaware Action), including, but not limited to, any *Qui Tam* proceeding.

79. Describe in detail any testing of MVA3000 done by BN or at BN's request, at any time.

80. Describe in detail the circumstances that led to the entry into any secrecy or non-disclosure agreements relating to MVA between BN and any third party(s) besides Acambis, including which BN employees or consultants were involved, the dates(s) such agreements were entered, the date(s) of any meetings, communications or disclosures between BN and such third party(s) pursuant to such agreements, describe in detail any information relating to MVA that BN disclosed to such third parties pursuant to such agreements, and describe in detail any information or knowledge that BN has regarding such third party(s)' dissemination or use of the information disclosed by BN.

81. Describe in detail the document produced in various versions at BNITC 24875-24912, 43719-43760, 51795-51836, 55029-55070, 55666-55707, 55737-55778, 55823-55864, 55866-55907, 55909-55950, 61836-61877, 62046-62087, 63339-63380, or the document attached to BNITC 56292, including the author(s) of this document, the date(s) it was created or modified, the purpose of this document, the date(s) this document (or portions or versions thereof) were disclosed to any third party(s), who from BN disclosed this document (or portions or versions thereof) to any third party(s), the names of such third party(s) (*i.e.,* identify both the individual people and companies), and any secrecy or non-disclosure agreements that were entered into by BN and such third parties related to the disclosure of this document (or portions or versions thereof) to such third party(s).

82. Describe in detail the document produced in various versions at BNITC 56101-

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | Investigation No. 337-TA-550 |

## RESPONDENT'S THIRD SET OF REQUESTS (NOS. 155-156) FOR PRODUCTION OF DOCUMENTS AND THINGS TO COMPLAINANT

Respondent Acambis plc ("Acambis" or "Respondent"), pursuant to Rules 210.27 and 210.30 of the Commission's Rules of Practice and Procedure ("Commission's Rules"), requests that Complainant Bavarian Nordic A/S ("BN" or "Complainant") produce each of the documents and things specified below.

The documents and things to be produced pursuant to these requests are to be made available for inspection and copying within ten (10) days after service thereof at the offices of counsel for the Respondent, Venable LLP, 575 7th Street, N.W., Washington, D.C. 20004, or at such other time and place as agreed to by the parties or established by the Administrative Law Judge. Failure to respond may ultimately result in the imposition of sanctions provided for in Rule 210.33 of the Commission's Rules.

The definitions and instructions set forth in Acambis' First Set of Interrogatories to Complainant apply to these requests and are incorporated by reference.

## REQUESTS FOR PRODUCTION

155.    All presentations and associated materials (including but not limited to notes, transcripts, posters, slideshows or handouts) made by BN representatives or on behalf of BN concerning MVA, including but not limited to presentations at the following: (1) BIO CEO & Investor Conference in New York City at the Waldorf-Astoria, Feb. 20-22, 2002; (2) BIO-Defense & Homeland Security Procurement Conf. & Expo, Double Tree Hotel Crystal City, Virginia, April 30, 2002; (3) BIO 2002 Conference in Toronto, June 9-12, 2002; (4) BIO 2001 conference in San Diego; (5) "Gene Delivery Systems 2001" conference by the Knowledge Foundation in Washington, DC on December 6-7, 2001; (6) all Phacilitate (www.phacilitate.co.uk) conferences; and (7) BIO Japan 2000.

156.    Any secrecy or non-disclosure agreements that were entered into by BN and any third party attendees prior to the presentation of any materials or information as described in Request for Production No. 155.

Eric S. Namrow
Lindsay B. Meyer
Lisa M. Kattan
Tamany Vinson Bentz
Venable LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone: 202-344-4800
Facsimile:  202-344-8300

*Counsel for Respondent Acambis plc*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

Before the Honorable Robert L. Barton, Jr.
Administrative Law Judge

In the Matter of

**Certain Modified Vaccinia Ankara**
**("MVA") Viruses and Vaccines and**
**Pharmaceutical Compositions Based**
**Thereon**

Investigation No. 337-TA-550

**RESPONDENT'S FOURTH SET OF INTERROGATORIES**
**(NOS. 94-106) TO COMPLAINANT**

Respondent Acambis plc ("Acambis" or "Respondent"), by its attorneys and pursuant

to Rules 210.27 and 210.29 of the Commission's Rules of Practice and Procedure

("Commission Rules"), directs the following Interrogatories to Complainant Bavarian Nordic

A/S ("BN" or "Complainant") to be answered separately by an officer thereof competent to

testify, separately and fully, in a writing made under oath and signed by such officer making

such answer, by serving a copy of such answers upon counsel for the above-mentioned

Respondent within ten (10) days after service hereof.

Written responses to these Interrogatories are required absent the conditions set forth

in Rule 210.29(c). To the extent the party responding to these Interrogatories is permitted to

utilize the option of producing business records in lieu of a written answer to a particular

Interrogatory as provided in Rule 210.29(c), the party must "specify the records from which

the answer to such Interrogatory may be derived or ascertained," and such specification "shall

include sufficient detail to permit the [Respondent] to locate and to identify, as readily as can

the party served, the documents from which the answer may be ascertained." Rule 210.29(c)

(emphasis added). Further, "groups of documents shall be segregated to correspond to

102.    For the period of 2002 until the present, describe with specificity:  BN's financial statements for BN's U.S. operations including income statements and balance sheets; general ledgers and journal entries identifying capitalized research and development costs.

103.    For the period of 2002 until the present, describe with specificity:  BN's general ledgers and related detail identifying royalty income and royalty reports from licensees of the patents-in-suit; licensing policies and procedures; any licensing programs related to the patents-in-suit and budgets related to these programs; licenses related to the patents-in-suit including inter-company licenses.

104.    For the period of 2002 until the present, describe with specificity any analyses prepared by or on behalf of BN for purposes of complying with Section 482 of the Internal Revenue Code.

105.    Identify with specificity all presentations and associated materials (including but not limited to notes, transcripts, posters, slideshows or handouts) made by BN representatives or on behalf of BN concerning MVA, including presentations at the following: (1) BIO CEO & Investor Conference in New York City at the Waldorf-Astoria, Feb. 20-22, 2002; (2) BIO-Defense & Homeland Security Procurement Conf. & Expo, Double Tree Hotel Crystal City, Virginia, April 30, 2002; (3) BIO 2002 Conference in Toronto, June 9-12, 2002; (4) BIO 2001 conference in San Diego; (5) "Gene Delivery Systems 2001" conference by the Knowledge Foundation in Washington, DC on December 6-7, 2001; (6) all Phacilitate (www.phacilitate.co.uk) conferences; and (7) BIO Japan 2000; including but not limited to the identity of the presenter(s), the form of the presentation (including but not limited to, *e.g.,* lecture, poster session or private meeting),  the third party attendees of the presentation, and

- 4 -

any secrecy or non-disclosure agreements that were entered into by BN and any third party

attendees prior to the presentation.

106.    State with specificity the complete factual basis for BN's assertion that

document BNITC00099456-523 was shown to Acambis representatives on June 12, 2002 and

identify all documents relating thereto.

Eric S. Namrow
Lindsay B. Meyer
Lisa M. Kattan
Tamany J. Bentz
Venable LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone: 202-344-4800
Facsimile:  202-344-8300
*Counsel for Respondent Acambis plc*

EXHIBIT C

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C. 20436

### Before The Honorable Robert L. Barton, Jr.
### Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon** | Investigation No. 337-TA-550 |

PLEASE TAKE NOTICE that, pursuant to Commission Rule 210.28, 19 C.F.R. § 210.28, and Ground Rule 4.6.1, Respondent Acambis plc ("Respondent") will take the deposition upon oral examination of individual(s) to testify on behalf of Complainant Bavarian Nordic A/S ("Complainant" or "BN"). The deposition will commence on January 20, 2006 at 9:00 a.m. at the offices of Venable LLP, 575 7th Street, N.W., Washington, DC 20004-1601, Tel: (202) 344-4800, or at a time and place to be agreed upon by counsel for the parties.

Plaintiff is requested to designate one or more knowledgeable persons to testify on its behalf on the topics identified in Exhibit A attached hereto.

The deposition will be taken before a person having power to administer oaths by the laws of the United States, or of the place where the examination is held, and will continue from day to day until completed. The deposition may be videotaped.

Eric S. Namrow
Lindsay B. Meyer
Lisa M. Kattan
Tamany V. Bentz
Venable LLP

575 7th Street, N.W.
Washington, DC  20004
Telephone: 202-344-4800
Facsimile:  202-344-8300

*Counsel for Respondent Acambis plc*

## EXHIBIT A

## DEFINITIONS

A.  "BN", "Complainant", "you", "your", or "yours" refer to Bavarian Nordic A/S, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

B.  "Respondent" refers to Respondent Acambis plc, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

C.  The term "MVA" refers to modified vaccinia Ankara.

D.  The term "MVA3000" refers to itself and/or ACAM3000.

E.  The phrase "F6" refers to the strain F6 described on page 6 of the Petition to Make Special filed in U.S. Patent Application Nos. 10/439,953 and 10/439,439 on May 16, 2003.

F.  The phrase "'893 patent" refers to U.S. Patent No. 6,761,893 B2.

G.  The phrase "'752 patent" refers to U.S. Patent No. 6,913,752 B2.

H.  The phrase "patents-in-suit" refers collectively to the '893 and '753 patents.

I.    The term "document" or "documents" shall include all "writings" and "recordings," to the broadest extent permitted by the Commission Rules, including without limitation the originals (absent any original, a copy) of any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise visually or aurally reproduced, letters, compilations, data, notebooks, laboratory notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings (including photographs), diaries, sales literature, advertising literature, agreements, minutes of meetings, punch cards, magnetic tape or wire, other machine producible records including films, computer disks and files, electronic mail, videotapes and sound reproductions, printout sheets, summaries or records of telephone conversations, personal conversations or interviews, and any and all other writings, typings, printings, drafts, copies and/or mechanical or photographic reproductions or recordations thereof in your possession, custody or control, or otherwise reasonably available to you, and/or any of your representatives, whether or not prepared by them. "Document" or "documents" also includes all copies which are not identical with the originals, such as those bearing writing, marks, marginal comments, alterations, notes or other notations not present on the documents as originally written, typed or otherwise prepared.

J.    The terms "refer to", "related to", "refers to", "relates to", "referring to", or "relating to" shall mean, in addition to their customary and usual meaning, discussing, reflecting, assessing, recording, evidencing, constituting, or in any way logically or factually connected with the matter discussed.

K.  The term, "concerning" means relating to, referring to, describing, evidencing, or constituting.

L.  The term, "communication" shall include any transmission, conveyance, or exchange of information whether by written, oral, or any other means, including, but not limited to, electronic communications and electronic mail.

M.  The term "including" means including, but not limited to.

N.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the request all responses that might otherwise be construed outside its scope.

O.  A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun, whenever necessary to bring within the scope of the request all responses that might otherwise be construed outside its scope.

P.  The term "any" shall be construed as one or more whenever necessary to bring within the scope of the request all responses that might otherwise be construed outside its scope.

Q.  The term "or" means and/or.

R.  The term "person" or "persons" refers to any individual, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other entity.

S.  The term "accused products" refers to any products designed, manufactured,

3

imported, or sold by Respondent that BN alleges infringe the patents-in-suit or which form the basis for BN's allegations with respect to misappropriation of trade secrets..

T.  The term RFP-1 refers to Request for Proposal NIH-NIAID-DMID-03-44 issued by the U.S. Government on August 15, 2002.

U.  The term RFP-2 refers to Request for Proposal NIH-NIAID-DMID-04-49 issued by the U.S. Government on December 4, 2003

V.  The term RFP-3 refers to Request for Proposal DHHS-ORDC-V&B-05-06 issued by the U.S. Government on August 15, 2005.

## SUBJECT MATTERS OF INQUIRY

Topic 1:

BN's Complaint against Acambis, including the basis of its claims that Acambis' products infringe the patents-in-suit and that Acambis misappropriated BN's confidential proprietary information or trade secrets.

Topic 2:

BN's responses to Acambis' interrogatories and requests for the production of documents and things to BN, including documents produced or identified in response to the foregoing.

Topic 3:

The research and development or derivation of any MVA virus, recombinant virus or vector, vaccine, pharmaceutical composition, or product based on MVA, including MVA-BN, IMVAMUNE and those identified or discussed in your response to Interrogatory Nos. 17, 47, 48, 49, 50, 51, 52, 53, and 54.  Any clinical testing or reports

on MVA virus, recombinant virus or vector, vaccine, pharmaceutical composition, or product based on MVA, including MVA-BN, IMVAMUNE and those identified or discussed in your response to Interrogatory Nos. 17, 47, 48, 49, 50, 51, 52, 53, and 54. The storage, passaging or amplification of MVA virus, recombinant virus or vector, vaccine, pharmaceutical composition, or product based on MVA, including MVA-BN, IMVAMUNE and those identified or discussed in your response to Interrogatory Nos. 17, 47, 48, 49, 50, 51, 52, 53, and 54. The manufacture, commercialization, marketing, distribution or sales of MVA virus, recombinant virus or vector, vaccine, pharmaceutical composition, or product based on MVA, including MVA-BN, IMVAMUNE, and those additional products identified in your response to Interrogatory Nos. 17, 47, 48, 49, 50, 51, 52, 53, and 54.

Topic 4:

The lineage and chain of custody of MVA strains, including those identified in your response to Interrogatory No. 47, used by BN to develop MVA based products, including those products identified in your response to Interrogatory No. 17, and the distribution of those strains.

Topic 5:

All of Acambis' products that BN alleges infringe, either literally or equivalently, the patents-in-suit, the claims of the patents-in-suit that are allegedly infringed, either literally or equivalently, and the manner in which BN alleges these products infringe, either literally or equivalently, the claims or practice the inventions described in the patents-in-suit.

Topic 6:

BN's evidence that any of products referred to in Topic 5 infringe the patents-in-suit. Any test, analysis, or evaluation of products referred to in Topic 5, including any testing identified in your response to Interrogatory No. 67.

Topic 7:

The preparation, filing and prosecution of the applications which led to the issuance of the patents-in-suit, or any patent applications related to the patents-in-suit or concerning MVA or the subject matter of this investigation, including any pending application, continuation, continuation in part, or divisional thereof. The preparation, filing, and prosecution of any foreign counterparts to the patents-in-suit, or any foreign patent applications related to the patents-in-suit or concerning MVA or the subject matter of this investigation, including pending patent applications. The patents-in-suit and any patent applications assigned to BN related to the patents-in-suit or concerning MVA or the subject matter of this investigation, including any abandoned or pending application, continuation, continuation in part, or divisional thereof, and including any research and experimentation conducted in connection with the same, as well as all documents, persons, and dates relating thereto.  Any foreign counterparts to the patents-in-suit, or any foreign patent applications related to the patents-in-suit or concerning MVA or the subject matter of this investigation that are assigned to BN, including abandoned or pending patent applications, and research or experimentation conducted in connection with the same, as well as, documents, persons and dates relating thereto.

Topic 8:

The meaning of each term or limitation in each claim in the patents-in-suit that is allegedly infringed, either literally or equivalently, including all intrinsic evidence that

BN contends supports its interpretation and, if BN contends that extrinsic evidence is required to interpret a claim term or element, all extrinsic evidence that BN contends supports its interpretation of the claim term or element.

Topic 9:

The conception and reduction to practice of each of the inventions claimed in the patents-in-suit, including the relevant documents, persons, and dates.

Topic 10:

The date on which the subject matter claimed in the patents-in-suit was first offered for sale, first sold, first used in public, first used by someone other than the named inventors, first disclosed to someone other than one of the named inventors, first published, or otherwise publicly disclosed.

Topic 11:

The inventorship of the patents-in-suit.  The ownership, assignment and licensing of the patents-in-suit, as well as documents, persons, and dates relating thereto.

Topic 12:

Prior art, potential prior art, or searches for prior art conducted in connection with the applications that led to the issues of the patents-in-suit, any continuation, continuation in part, divisional, or any foreign counterparts thereof or related thereto, and BN's knowledge, review, or possession of the same.  BN's allegation, or evidence in support thereof, that all of the relevant prior art was disclosed during the prosecution of the patents-in-suit, including BN's response to Interrogatory No. 13.

Topic 13:

Any legal action concerning or involving the infringement, invalidity, enforceability, or extension of the patents-in-suit, any foreign counterparts thereof, or the subject matter of this Investigation.

Topic 14:

Any and all opinions, reports, studies, analyses, or search results, written or oral, obtained by BN, on its behalf, or at its request referring or relating to the validity, enforceability, or infringement of the patents-in-suit, including any generated through BN's evaluation of the inventions claimed in the patents-in-suit as described in BN's response to Interrogatory No. 14. BN's patent department, including its evaluation of the patents-in-suit.

Topic 15:

BN's contentions regarding any alleged objective indicia of non-obviousness of the inventions claimed in the asserted claims of the patents-in-suit.

Topic 16:

The research and development, manufacture, passaging or amplification, production, and sales of all products manufactured, or sold by BN which BN asserts embody any claim of the patents-in-suit, including those listed or discussed in BN's responses to Interrogatories No. 17 and 48-54. The research and development, manufacture, passaging or amplification, production, and sales of all products manufactured, or sold by BN in which BN asserts MVA-BN is a component, including those listed or discussed in BN's responses to Interrogatories No. 17 and 48-54.

Topic 17:

BN's allegation, and evidence in support thereof, that Acambis misappropriated BN proprietary information or trade secrets, including the specific information that BN alleges was inappropriately obtained by Acambis. BN's evidence that Acambis used that information. Evidence that Acambis was not involved in the development of an MVA based product prior to the first RFP, including BN's evidence in support of the allegations in its response to Interrogatory No. 57. Evidence that Acambis wrongfully acquired a proprietary strain of MVA.

Topic 18:

Any information that BN alleges was communicated to Respondent during the June 12, 2002 meeting between BN and Respondent, including the information referenced in BN's response to Interrogatory No. 62.

Topic 19:

BN's efforts to secure the secrecy of the allegedly misappropriated proprietary information.

Topic 20:

Contracts, licensing, or agreements, including confidentiality or secrecy agreements, between BN and any other individual or entity regarding MVA-BN or other product related to the subject matter of this investigation. All documents and communications between BN and another entity regarding the licensing or ownership of the patents-in-suit, including those communications identified in your response to Interrogatory No. 16.

Topic 21:

BN's allegation, and evidence in support thereof, that it has the exclusive right to commercialize all MVA strains, including agreements referenced in response to Interrogatory No. 58. BN's communications with any person or entity regarding its exclusive right to commercialize all MVA strains.

Topic 22:

BN's communications with NIH with respect to MVA , including RFP-1, RFP-2 or RFP-3.

Topic 23:

BN's communications with Anton Mayr regarding MVA. BN's evidence that Anton Mayr supplied NIH with two different MVA strains. BN's allegation, and evidence in support thereof, that Anton Mayr restricted the transfer of an MVA strain to NIH, including any restriction identified in your response to Interrogatories Nos. 60 and 65. Paul Chaplin's knowledge of communications between Therion and NIH regarding MVA as identified in your response to Interrogatory No. 61.

Topic 24:

The deposition of MVA-BN with the ECACC. The deposition of any MVA based product developed, manufactured, or sold by BN that has been deposited with the ECACC or ATCC. BN's evidence that Anton Mayr deposited MVA-572 or MVA-575 with ECACC or ATCC. BN's allegation and evidence that the ECACC or ATCC restricts the commercialization of certain MVA strains or those strains "derivatives."

Topic 25:

BN's corporate structure.

Topic 26:

BN's allegation that there is a domestic industry for the inventions described in the patents-in-suit. BN's present or planned domestic and overseas investment in plant and equipment related to said inventions. BN's present or planned domestic and overseas employment of labor and capital. BN's present and planned domestic and overseas investment in the exploitation of the inventions described in the patents-in-suit. BN's evidence that Acambis' activities substantially injure, or threaten to substantially injure, a domestic industry.

Topic 27:

Any reports on or sequencing of MVA viruses, recombinant viruses or vectors performed by or on behalf of BN, or about which BN has any knowledge. Any testing or sequencing of any accused product performed by or on behalf of BN, or about which BN has knowledge. Any comparisons between an accused product and MVA-BN, or any other MVA based product. Any comparisons between the sequence of any accused product and MVA-BN or other viruses, recombinant virus or vector, including the sequence comparisons performed by Paul Chaplin identified in your response to Interrogatory No. 21. The sequencing experiments identified in your response to Interrogatory No. 40 and sequencing tests identified in response to Interrogatory No. 67.

Topic 28:

The cell lines identified in your response to Interrogatory No. 41 and any tests or experiments performed by or on behalf of BN, or about which BN has knowledge, using these cell lines. The MVA viruses identified in your response to Interrogatory No. 42 and any tests or experiments performed by or on behalf of BN, or about which BN has knowledge, using these viruses. The immunodeficient mouse strains identified in your

response to Interrogatory No. 43 and any tests or experiments performed by or on behalf

of BN, or about which BN has knowledge, using these strains.

Topic 29:

The role GSK, IDT, Epimmune, Vaccine Solutions, or any other third party have

in manufacturing MVA-BN, including the location of the manufacturing sites, the

amount of MVA-BN that is manufactured at each site on a monthly basis, any alleged

investment in plant and equipment made by BN in these companies or sites, any

employment of labor and/or capital made by BN in these companies or sites, and any

investment in research and/or development made by BN in these companies or sites.

Topic 30:

The identity of any strain of MVA that BN acquired by any means from the U.S.

Government, including NIH NIAID, including a description of such strain(s), the date of

acquisition(s), any person(s) involved in such acquisition(s) and the circumstances under

which such strain was acquired.

Topic 31:

The identity of any and all documents other than documents Bates No.

BNITC00099456-523 that support BN's allegation that trade secret or otherwise

confidential information was given to Acambis by BN at the June 12, 2002 meeting.

Topic 32:

The identity of the passage number(s) of MVA-BN, identified at col. 6, line 28

and Figures 1A, 1B, 2, 4, 5, 10 and 11 of the '893 patent and describe the lineage for each

passage number identified, including the name of the person(s) responsible for each

passage, the method by which each passage was created, the date each passage was

created, the quantity of virus that was created by each passage, the current location of samples of each passage that were created, and the identity of the stock virus from which passage was created.

Topic 33:

The identity of the passage number(s) of MVA-F6, including the lineage for each passage number identified, the name of the person(s) responsible for each passage, the method by which each passage was created, the date each passage was created, the quantity of virus that was created by each passage, the current location of samples of each passage that were created, and the identity of the stock virus from which passage was created.

Topic 34:

All differences between MVA-BN and MVA-F6 that BN alleges exist.

Topic 35:

The basis for the decision to re-name MVA-F6 to MVA-BN.

Topic 36:

Whether AGR129 mice are available and, if so, the name, address, and telephone number of the party from whom the mice may be obtained.

Topic 37:

Any Complaint, request for investigation, or any other proceeding you have filed or pursued regarding Acambis (other than this Investigation and the Delaware Action), including, but not limited to, any *Qui Tam* proceeding.

Topic 38:

Any testing of MVA3000 or ACAM3000 done by BN or at BN's request, at any time.

Topic 39:

The circumstances that led to the entry into any secrecy or non-disclosure agreements relating to MVA between BN and any third party(s) besides Acambis, including which BN employees or consultants were involved, the dates(s) such agreements were entered, the date(s) of any meetings, communications or disclosures between BN and such third party(s) pursuant to such agreements, describe in detail any information relating to MVA that BN disclosed to such third parties pursuant to such agreements, and describe in detail any information or knowledge that BN has regarding such third party(s)' dissemination or use of the information disclosed by BN.

Topic 40:

Information about the document produced in various versions at BNITC 24875-24912, 43719-43760, 51795-51836, 55029-55070, 55666-55707, 55737-55778, 55823-55864, 55866-55907, 55909-55950, 61836-61877, 62046-62087, 63339-63380, or the document attached to BNITC 56292, including the author(s) of this document, the date(s) it was created or modified, the purpose of this document, the date(s) this document (or portions or versions thereof) were disclosed to any third party(s), who from BN disclosed this document (or portions or versions thereof) to any third party(s), the names of such third party(s) (*i.e.,* identify both the individual people and companies), and any secrecy or non-disclosure agreements that were entered into by BN and such third parties related to the disclosure of this document (or portions or versions thereof) to such third party(s).

Topic 41:

14

Information about the document produced in various versions at BNITC 56101-56164, 67705-67741, 70621-70666, 71568-71608, 72887-72946, 73613-73667, 73812-73873, 102854-102864, 102866-102902, 103668-103715, 103823-103890, 103951-104024, 104169-104194, 104205-104272, 104581-104637, 105044-105108, 105279-105309, 106009-106029, 106058- 106099, 106583-106624, 106673-106752, 106754-106792, 106798-106830, 106832-106909, 106988-107063, 107257-107287, 112450-112510, 112801-112874, 113146-113215, 113288-113350, 116419-116450, 124512-124542, 125712-125746, 126372-126438, 137830-137897 and 137966-138027, including the author(s) of this document, the date(s) it was created or modified, the purpose of this document, the date(s) this document (or portions or versions thereof) were disclosed to any third party(s), who from BN disclosed this document (or portions or versions thereof) to any third party(s), the names of such third party(s) (*i.e.,* identify both the individual people and companies), and any secrecy or non-disclosure agreements that were entered into by BN and such third parties related to the disclosure of this document (or portions or versions thereof) to such third party(s).

Topic 42:

The circumstances surrounding the unavailability of ECACC deposit No. V00083008 to the public after the issuance of the '893 patent (*see, e.g.,* document GPS0001) including any correspondence between ECACC and BN regarding deposit V00083008, any correspondence between any third party and BN or its attorneys regarding the unavailability of deposit V00083008, and how and when the unavailability of V00083008 to the public was resolved.

Topic 43:

15

Communications, including any agreements, or draft or proposed agreements, between GSF and BN that concern MVA, including any agreements that royalties be paid to GSF for the sale or use of MVA-BN and/or F6.

Topic 44:

Agreements between BN and the University of Zurich and/or Mark Suter and/or Rolf M. Zinkernagel for AGR129 mice.

Topic 45:

The process(es) starting in January 2002 through December 2005 by which the MVA-BN project meeting minutes are drafted, including the individuals responsible for drafting them.

Topic 46:

The identity of the BN employee with initials "TSH", the MVA-BN project manager, her employment history with BN and her role in the MVA-BN project.

Topic 47:

The factual basis for BN's statement in response to Acambis Interrogatory Nos. 65 and 65 that "it is common practice in the research community to provide research samples to further research in areas of interest with an understanding that there is no authorization to use this strain commercially."

Topic 48:

The date BN first submitted IND #11596 to the FDA and the dates when it submitted supplements or amendments to this IND.

Topic 49:

The date BN first submitted IND #11229 to the FDA and the dates when it submitted supplements or amendments to this IND.

Topic 50:

Communications with Karl Heller, Sonya Leyrer, or any other employee or affiliate of Vivacs GmbH from 2003 to the present.

Topic 51:

Any analysis of the MVA claimed by U.S. Patent No. 5,185,146 (Altenburger) done by BN or at BN's direction, including comparisons to the MVA claimed by the patents-in-suit.

Topic 52:

BN's acquisition and testing of the Boukamp HaCaT cell line described in Col. 3, ll. 10-11 of the '893 patent and any testing of MVA-BN on this cell line.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of January 2006, copies of Respondent

Acambis plc's Corporate Deposition Notice to BN were served as follows:

**BY Email and U.S. Mail:**

**Commission Investigative Attorney:**

Erin D.E. Joffre, Esquire                          (two copies)
Thomas S. Fusco, Esquire
Office of Unfair Import Investigations
U.S. INTERNATIONAL TRADE COMMISSION
Room 401
500 E. Street, S.W.
Washington, D.C. 20436

**Counsel for Complainant Bavarian Nordic A/S:**

Edward A. Pennington, Esquire                      (one copy)
Swidler Berlin LLP
The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C. 20007-5116

Lisa M. Kattan

18