# EXHIBIT A

# EXHIBIT A

## DEFINITIONS

A.   "BN," "Plaintiff," "you," "your," or "yours" refer to Bavarian Nordic A/S, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

B.   The term "MVA" refers to modified vaccinia Ankara.

C.   The term "communication" shall include any transmission, conveyance, or exchange of information whether by written, oral, or any other means, including, but not limited to, electronic communications and electronic mail.

D.   The term "person" or "persons" refers to any individual, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other entity.

E.   The term "RFPs"-1 refers to Request for Proposal NIH-NIAID-DMID-03-44 (issued by the U.S. Government on August 15, 2002), Request for Proposal NIH-NIAID-DMID-04-49 (issued by the U.S. Government on December 4, 2003), and Request for Proposal DHHS-ORDC-V&B-05-06 issued by the U.S. Government on August 15, 2005.

F.   "Transgene" refers to Transgene S.A., located at 11 rue de Molsheim 67082, Strasbourg Cedex, France, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants,

officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

G. "Medigenomix" refers to Medigenomix GmbH, located at Fraunhofer Strasse 22, D-82152, Martinsried, Germany, and referenced in BN's response to Interrogatory No. 40 in *In the Matter of Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Inv. No. 337-TA-550, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

H. "InCyte" refers to the company that performed sequencing experiments on behalf of BN, as referenced in BN's response to Interrogatory No. 40 in the *In the Matter of Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Inv. No. 337-TA-550, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys..

I. "Sequiserve" refers to the company that performed sequencing experiments on behalf of BN, as referenced in BN's response to Interrogatory No. 40 in the *In the Matter of Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, Inv. No. 337-TA-550, including without limitation all of its parents, predecessors, successors, subsidiaries, affiliates,

divisions or operations thereof, entities under common control with it, representatives, agents, employees, servants, officers, directors, trustees, any other individual or company acting on their behalf, and, unless privileged, attorneys.

J.   The phrase "sequencing experiments" refers to any genetic sequencing or any comparison or analysis of any complete or partial DNA sequence

## SUBJECT MATTERS OF INQUIRY

Topic No. 1.:

Contracts, licensing, or agreements of any kind relating to MVA viruses or BN's MVA technology, including but not limited to consulting agreements, between BN and any other individual or entity, including without limitation their terms, the surrounding circumstances and reasons for the arrangement, any negotiations or communications about the arrangement, the date of such arrangement, the identity of persons knowledgeable about such arrangement, and any documents relating thereto.

Topic No. 2.:

BN's communications with the U.S. Government regarding MVA, including without limitation BN's responses to the RFPs, and including without limitation the persons involved, the dates, the manner of communicating, the reasons for and surrounding circumstances of the communication and the content of the communication and all documents relating thereto.

Topic No. 3.:

All claims made by BN, including but not limited to public claims and those made to the U.S. Government, that it has the right to exclusive ownership and

possession of MVA viruses, that it alone has freedom to operate to meet the terms of the U.S. Government RFP's for MVA-based smallpox vaccines, and that it has the sole right to sell MVA based vaccines, including without limitation the dates, manner and contents of such claims, the persons involved, the reasons for and surrounding circumstances of such claims, the facts on which such claims were based, and all documents relating thereto.

Topic No. 4.:

The U.S. market for MVA-based smallpox vaccines and BN's customers for such vaccines.

Topic No. 5.:

BN's claim that Acambis was on notice that it did not have a lawful right to receive, possess and exercise control over an MVA virus from National Institute of Allergy and Infectious Diseases at the National Institutes of Health, including without limitation the date and persons involved, the reasons and surrounding circumstances for such communication, and any documents relating thereto.

Topic No. 6.:

BN's knowledge as to whether Acambis knew or should have had reason to know that any attenuated MVA strain received from National Institute of Allergy and Infectious Diseases at the National Institutes of Health was provided to Acambis without express or implied consent from Bavarian Nordic.

Topic No. 7.:

BN's knowledge of Acambis's use of the alleged trade secret information disclosed to it by BN, including without limitation the date and means of Acambis's use,

the specific information used and the basis for BN's knowledge of Acambis's use and how it came to have such knowledge.

Topic No. 8.:

Any communications, agreements, or draft or proposed agreements, or discussions between Transgene and BN concerning MVA, including those concerning the genetic sequence of the MVA strain used by Transgene.

Topic No. 9.:

Any agreements, or draft or proposed agreements, or discussions between Medigenomix and BN concerning MVA, and any sequencing of any strain of MVA.

Topic No. 10.:

Any agreements, or draft or proposed agreements, or discussions between InCyte and BN concerning MVA, and any sequencing of any strain of MVA.

Topic No. 11.:

Any agreements, or draft or proposed agreements, or discussions between Sequiserve and BN concerning MVA, and any sequencing of any strain of MVA.

Topic No. 12.:

BN's process, policies or procedures, from the time period from 1999 to present, for patenting inventions and the process by which patent applications, or decisions to file patent applications, are approved, the individuals responsible for BN's intellectual property, the individuals responsible for deciding to file patent applications and the decision to file the Danish patent application 2000 01764 (referenced in U.S. Patent Nos. 6,761,893 B2 and 6,913,752 B2), and the decision to file the applications for

5

U.S. Patent Nos. 6,761,893 B2 and 6,913,752 B2, including the identities of those individuals involved in the decision-making process.

Topic No. 13:

All MVA testing and replication studies performed prior to, during, and after BN's applications for U.S. Patent Nos. 6,761,893 B2 and 6,913,752 B2, including without limitation dates, location of the testing, persons involved, test or study design, methodology used, results, and communications and documents relating thereto.

Topic No. 14:

Any genetic sequencing experiments conducted on by or on behalf of BN on any MVA strain, including, but not limited to, MVA-BN, MVA3000, MVA-F6, MVA-575, MVA-574, MVA-573, or MVA-572, MVA-571, MVA-570, MVA-M4, or MVA-HLR and all individuals or companies which performed such genetic sequencing experiments.