# EXHIBIT C

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

### Before the Honorable Robert L. Barton, Jr.
### Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES AND PHARMACEUTICAL COMPOSITIONS BASED THEREON** | Inv. No. 337-TA-550 |

## ORDER NO. 26: INITIAL DETERMINATION GRANTING STAFF'S MOTION TO TERMINATE THE INVESTIGATION WITH RESPECT TO COMPLAINANT'S TRADE SECRET ALLEGATIONS
### (April 14, 2006)

## I.    INTRODUCTION

By publication of a notice in the *Federal Register* on September 19, 2005, pursuant to

subsection (b) of section 337 of the Tariff Act of 1930, as amended, the United States  International

Trade Commission instituted this investigation to determine:

> (a)  [w]hether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain Modified Vaccinia Ankara ("MVA") viruses and vaccines and pharmaceutical compositions based thereon by reason of infringement of claims 1, 4, 5, or 34 of U.S. Patent No. 6,761,893 or claims 1, 2-9, 13-15 or 16 of U.S. Patent No. 6,913,752, and whether an industry in the United States exists or is in the process of being established as required by subsection (a)(2) of section 337; and

> (b)  [w]hether there is a violation of subsection (a)(1)(A) of section 337 in the importation of certain MVA viruses and vaccines and pharmaceutical compositions based thereon or in the sale of such articles by reason of misappropriation of trade secrets, the threat or effect of which is to destroy or substantially injure an industry in the United States, and whether an industry in the United States.

70 FR 55918 (September 23, 2005).

2

On March 20, 2006, the Commission's Investigative Staff ("Staff") filed, pursuant to 19 C.F.R. § 210.21(a)(2), a motion to terminate the trade secret portion of this investigation based on an arbitration agreement between complaint Bavarian Nordic A/S ("BN") and respondent Acambis plc ("Acambis"). The Staff argues that "BN and Acambis have previously agreed that all matters relating to the exchange of trade secrets will be resolved by arbitration." Staff Memorandum at 1. The Staff acknowledges that because no investigations have been terminated pursuant to Section 337(c) since Congress amended the statute in 1994, its motion presents an issue of first impression. Id. at 5.

On March 20, 2006, Acambis filed and served a motion for summary determination in which, among other matters, it sought summary determination of BN's claim of misappropriation of trade secrets in part because BN's claim arises out of a confidentiality agreement which plainly requires arbitration of its claims. Acambis Motion at 1. In its memorandum filed in support of the motion, Acambis specifically states that the trade secret claim alleged in BN's complaint must be terminated pursuant to the mandatory arbitration provision in the February 2002 "secrecy agreement" upon which the claim is based. Acambis Motion Memorandum for Summary Determination at 32-33.

On March 28, 2006, Acambis filed a response supporting the Staff's motion to terminate. Acambis argues that the trade secret portion of this investigation should be terminated based on the arbitration agreement, because: (1) BN agreed to the mandatory arbitration provision; (2) BN was on notice that some or all of the allegations in this investigation may be subject to binding arbitration; (3) BN delayed in clarifying its trade secret allegations; and (4) BN is not actively prosecuting its trade secret allegations in this investigation. Acambis Memorandum at 1-2.

3

On March 28, 2006, BN filed an opposition to the Staff's motion to terminate. BN asserts that only a party to the arbitration agreement may invoke the arbitration clause and that neither BN nor Acambis have done so. BN Memorandum at 2. Because the Staff is not a party to the arbitration agreement, BN argues the Staff lacks standing to assert the arbitration clause. Id.

## II.    BACKGROUND

The products at issue in this investigation are "MVA viruses and vaccines and other pharmaceutical compositions based thereon that have in common an attenuated strain of MVA that cannot reproductively replicate in human cells." Staff Memorandum, Exhibit 1 at ¶ 43 ("BN Complaint"). In its complaint, BN alleges to have acquired the exclusive license for the commercialization of MVA strains. BN Complaint at ¶ 58. BN also alleges that certain technological information regarding both BN's MVA-based smallpox vaccine and the MVA virus used to manufacture it constitutes BN's trade secrets. Id. at ¶ 59-61. According to the complaint, Acambis has engaged in unfair competition by creating its own vaccine, MVA3000, through its misappropriation of these trade secrets. Id. at ¶ 66.

Allegedly, Acambis came into possession of the trade secrets at issue in this investigation during a meeting in June 2002, between BN and Acambis. Id. at ¶ 31; Staff Memorandum, Exhibit 2 at 16 ("The disclosure on June 12, 2002, is believed to have comprised all trade secrets disclosed prior to this meeting to Acambis.")("BN Response to Staff's First Set of Interrogatories"). The meeting was to discuss a possible licensing arrangement between the two companies. BN Complaint at ¶¶ 30-32. In order to facilitate the licensing negotiations, BN and Acambis entered into a Secrecy Agreement. Id. at 30; BN Response to Staff's First Set of Interrogatories at 17. The Secrecy Agreement contains an arbitration clause that forms the basis of the Staff's motion to terminate.

4

## III. DISCUSSION

Title 19 of the United States Code, section 1337(c) states that

The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section, except that the Commission may, by issuing a consent order or on the basis of an agreement between the private parties to the investigation, **including an agreement to present the matter for arbitration**, terminate any such investigation, in whole or in part, without making such a determination.

19 U.S.C. § 1337 (c) (emphasis added). The language outlined in bold print above was added to the

statute by Congress in 1994 specifically to provide for termination of an investigation, in whole or

in part, based on an arbitration agreement. Commission Rule 210.21(a)(2) implements the portion

of the statutory provision emphasized above. Rule 210.21(a)(2) provides that

**Any party** may move at any time for an order to terminate an investigation in whole or in part as to any or all respondents on the basis of an agreement to present the matter for arbitration.

19 C.F.R. § 210.21(a)(2)(emphasis added). The word "party", as used in Rule 210.21(a)(2), is

defined in Rule 210.3 to include "each complainant, respondent, intervenor, or **Commission**

**investigative attorney**." 19 C.F.R. § 210.3 (emphasis added). Therefore, contrary to BN's

argument, a plain reading of Rule 210.21(a)(2) makes clear that the Staff has standing to move for

an order to terminate this investigation on the basis of the arbitration agreement between BN and

Acambis.

Moreover, even if Acambis were required to assert the arbitration agreement, I note that

Acambis, in its own motion for summary determination, has sought to terminate the trade secret

portion of this investigation based on the arbitration clause in the Secrecy Agreement. In its motion

for summary determination, Acambis clearly states:

5

> While BN's trade secret claim is without merit, it must be terminated pursuant to the mandatory arbitration provision in the February 2002 "secrecy agreement" upon which the claim is based. . . . BN cannot claim prejudice from any termination in this forum. It agreed to the arbitration provision upon which its trade secret claim is based, and Acambis gave notice at the outset of this Investigation that '[s]ome or all of [Complainant's] claims may be subject to arbitration.' . . . Hence, BN's trade secret claim should be terminated from this Investigation.

Acambis Motion Memorandum for Summary Determination at 32-33 (Motion Docket No. 12). This is an affirmative assertion of the arbitration agreement by Acambis. To consider it otherwise would place form over substance.

In order to terminate the trade secret portion of this investigation on the basis of an arbitration agreement, the Staff need only show an agreement between BN and Acambis to arbitrate the trade secret issues in this investigation. See 19 U.S.C. § 1337 (c); see also 19 C.F.R. § 210.21(a)(2). Here, the Staff has produced the Secrecy Agreement, signed by Peter S. Wulff, President and CEO of Bavarian Nordic, and Nicolas Higgins, Commercial Director of Acambis. Staff Memorandum, Exhibit 3 ("Secrecy Agreement"). The Secrecy Agreement states, in pertinent part,

> 5.1    Both parties will use their best efforts to settle all matters in dispute amicably. All disputes and differences of any kind related to this Agreement, which cannot be solved amicably by the parties, shall be finally settled under the Rules of the International Chamber of Commerce (the "ICC") by one arbitrator appointed in accordance with the said Rules.

> 5.2    The arbitration shall take place in Frankfurt and shall be conducted in the English language. The award of the arbitrator shall be final and binding on both parties. The parties bind themselves to carry out the awards of the arbitrator.

Secrecy Agreement at §§ 5.1, 5.2. Thus, according to the Secrecy Agreement, BN and Acambis agree to arbitrate "[a]ll disputes and differences of any kind related to [the] Agreement." BN acknowledges in its interrogatory responses that all the trade secrets at issue in this investigation were disclosed during the June 12, 2002, meeting between BN and Acambis. BN Response to

6

Staff's First Set of Interrogatories at 16. Because the June 12, 2002 meeting was covered by the Secrecy Agreement, there can be no doubt that BN and Acambis agreed to arbitrate the trade secret issues in this investigation.

## IV.    CONCLUSION

Accordingly, for the reasons stated hereinabove, the Staff's motion to terminate the trade secret portion of this investigation is granted.

Pursuant to 19 C.F.R. § 210.21(d), a copy of the Staff's motion to terminate is included with this Order at Appendix A and a copy of the agreement to arbitrate at Appendix B.

This initial determination shall become the determination of the Commission unless a party files a petition for review of the initial determination pursuant to 19 C.F.R. §§ 210.43(a), or the Commission, pursuant to 19 C.F.R. §§ 210.44, orders on its own motion a review of the initial determination or certain issues herein. 19 C.F.R. §§ 210.42(h)(3).

**SO ORDERED**.

Robert L. Barton, Jr.
Administrative Law Judge

CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES
AND PHARMACEUTICAL COMPOSITIONS BASED THEREON

Inv. No. 337-TA-550

## CERTIFICATE OF SERVICE

I, Marilyn R. Abbott, hereby certify that the attached **Order** was served upon, Erin D.E. Joffre, Esq., Commission Investigative Attorney, and the following parties via first class mail and air mail where necessary on **April 17**, 2006.

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, D.C. 20436

## FOR COMPLAINANT BAVARIAN NORDIC A/S:

Edward A. Pennington, Esq.
Warren Anthony Fitch, Esq.
Robert C. Bertin, Esq.
Stephanie D. Scruggs, Esq.
George S. Jones, Esq.
**BINGHAM McCUTCHEN LLP**
3000 K Street, NW
Washington, D.C. 20007

## FOR RESPONDENT ACAMBIS PLC AND ACAMBIS, INC.:

Eric S. Namrow, Esq.
Lindsay B. Meyer, Esq.
Lisa M. Kattan, Esq.
Tamany J. Vinson, Esq.
**VENABLE LLP**
575 7th Street, N.W.
Washington, D.C. 20004

**CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES
AND PHARMACEUTICAL COMPOSITIONS BASED THEREON**

**Inv. No. 337-TA-550**

<u>PUBLIC MAILING LIST</u>

Sherry Robinson
LEXIS - NEXIS
8891 Gander Creek Drive
Miamisburg, OH 45342

Ronnita Green
West Group
Suite 230
901 Fifteenth Street, N.W.
Washington, D.C. 20005

**APPENDIX A**

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

**Before Robert L. Barton, Jr.**
**Administrative Law Judge**

**In the Matter of**

**CERTAIN MODIFIED VACCINIA ANKARA ("MVA") VIRUSES AND VACCINES AND PHARMACEUTICAL COMPOSITIONS BASED THEREON**

Investigation No. 337-TA-550

**COMMISSION INVESTIGATIVE STAFF'S MOTION TO TERMINATE INVESTIGATION WITH RESPECT TO COMPLAINANT'S TRADE SECRET ALLEGATIONS**

The Commission Investigative Staff ("Staff") hereby moves for an initial determination pursuant to 19 C.F.R. § 210.21(a)(2) terminating the trade secrets portion of this investigation. As set forth in the attached memorandum, such an initial determination is appropriate under 19 U.S.C. § 1337(c) which provides for the termination of an investigation, in whole or in part, on the basis of an agreement to present the matter at issue for arbitration.

RECEIVED
OFC OF THE SECRETARY
US INTL TRADE COMM
2006 MAR 20 PM 4: 39

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*

The Staff has conferred with counsel for the private parties prior to filing this motion.

Counsel for Acambis has indicated that it was in support of the Staff's motion. Counsel for

Bavarian Nordic stated that it would take a position after reviewing the motion.


Lynn I. Levine, Director
Thomas S. Fusco, Investigative Attorney
Erin D.E. Joffre, Investigative Attorney

OFFICE OF UNFAIR IMPORT INVESTIGATIONS
U.S. International Trade Commission
500 E Street, S.W., Suite 401
Washington, D.C. 20436
(202) 205-2571
(202) 205-2158 (Facsimile)

March 20, 2006

**APPENDIX B**

## SECRECY AGREEMENT

Between Acambis plc, Peterhouse Technology Park, 100 Fulbourn Road, Cambridge CB1 9PT, UK and Bavarian Nordic A/S, Vesterbrogade 149, DK-1620 Copenhagen V, Denmark. Both parties are hereinafter referred to as disclosing Party and receiving Party/recipient, as the case may be. As far as Acambis plc is concerned the terms "disclosing Party" and "receiving Party/recipient" shall include subsidiaries of Acambis plc. As far as Bavarian Nordic A/S is concerned the terms "disclosing Party" and "receiving Party/recipient" shall include subsidiaries of Bavarian Nordic A/S.

### ARTICLE 1 - DEFINITION OF INFORMATION

1.1      INFORMATION shall mean any and all information disclosed by the disclosing Party to the recipient in oral, visual, written, or electronic form under this Agreement. INFORMATION shall also mean any and all technical or non-technical information obtained in any form by the recipient during observation or examination of the information which may include, but is not limited to, technical processes, specifications, instrumentation, formulae, assays, manufacturing techniques, sales and marketing information, material or data. This also includes any other confidential information about the disclosing Party and the receiving Party obtained through the disclosure of information as well as the fact that disclosure has taken place.

### ARTICLE 2 - CONFIDENTIALITY

2.1      This Agreement will come into force on the date of the last signature hereto. In consideration of any disclosure at any time by the disclosing Party to the recipient of INFORMATION in whatever form on the subject of:

#### MVA-BN Based Vaccines

The recipient undertakes from the date of disclosure to treat all received INFORMATION as strictly confidential for a period of five (5) years from the date of disclosure and therefore not to disclose it to any third party without the prior written and express consent of the disclosing Party and, at the minimum, treat INFORMATION in the same manner and with the same degree of care as the recipient treats its own confidential information. The recipient furthermore undertakes to make no use of INFORMATION, except as specifically provided for in Article 4 without the prior written and express consent of the disclosing Party in each case.

2.2      The recipient may disclose INFORMATION only to reliable employees who need to know, in order to carry out the evaluations under this Agreement, provided that such persons are bound by obligations of confidentiality and non-use to the recipient which are no less onerous than the terms of this Agreement. The recipient shall ensure that such employee(s) be fully aware of the obligations of this Agreement and shall be responsible for any breach of these provisions by its employee(s).

2.3      In case INFORMATION is received in oral form, the above obligation shall apply only to the extent such oral INFORMATION has been confirmed in writing in summary form to the recipient and marked "Confidential" within forty-five (45) days after the date of oral disclosure.

### ARTICLE 3 - NON-DISCLOSURE AND EXCEPTIONS

3.1      The obligations set forth in Article 2 above shall not apply to:

LON9357/H07/03_ABU.DOC/8174.0003

a)   INFORMATION which at the time of disclosure is already in the public domain;

b)   INFORMATION which, after disclosure, becomes part of the public domain through no violation of this Agreement;

c)   INFORMATION which the recipient is able to prove to have been in possession of, prior to disclosure. In this case, the recipient will, in writing and within forty-five (45) days from the date of disclosure, provide evidence to the disclosing Party to substantiate that it was in possession of such INFORMATION;

d)   INFORMATION which is hereafter lawfully disclosed by a third party to the recipient, which information such third party did not acquire under a still effective obligation of confidentiality to the disclosing Party;

e)   INFORMATION that can be demonstrated as independently developed or acquired by the recipient without reference to or reliance upon confidential INFORMATION defined in this Agreement, as evidenced by the recipient's written records;

f)   INFORMATION disclosed to the extent required by law or regulation, provided that the recipient shall give the disclosing Party prompt written notice and sufficient opportunity to object, time permitting, to such disclosure.

## ARTICLE 4 - USE OF INFORMATION

4.1   The recipient shall not use INFORMATION for any purpose other than evaluation purposes.

4.2   INFORMATION is the sole property of the disclosing Party and nothing in this Agreement shall be construed as granting to the recipient, by implication or otherwise, any right or license with respect to INFORMATION or any patent applications, patents or any claims of patent now or hereafter filed or issued with respect to INFORMATION and the recipient is obligated to refrain from filing applications or otherwise seeking proprietary rights and protection in respect of INFORMATION.

4.3   Upon completion of the evaluation by the recipient of INFORMATION, or upon request from the disclosing party, the recipient undertakes to return to the disclosing Party all INFORMATION received hereunder and any material, data, and results derived from such INFORMATION and all copies hereof.

4.4   Except as expressly set forth herein or other agreement relating to INFORMATION between the Parties, neither Party shall incur any obligation or liability to the other Party merely by disclosing or receiving INFORMATION. It is further agreed that the furnishing of INFORMATION shall not constitute any grant, option or license under any patent or other rights now or hereinafter held by either Party.

4.5   The recipient acknowledges that INFORMATION is provided "as is" and without any representation or warranty, express or implied, as to the accuracy or completeness of INFORMATION, including, without limitation, any implied warranty of merchantability or fitness for a particular purpose, or any warranty that the use of INFORMATION will not infringe or violate any patent or other proprietary rights of any third party.

## ARTICLE 5 - MISCELLANEOUS

CDA: Bavarian Nordic - Acambis Inc.

LO1\D357340217J_H02J.DOC\37474.0003

2

3.

5.1  Both parties will use their best efforts to settle all matters in dispute amicably. All disputes and differences of any kind related to this Agreement, which cannot be solved amicably by the parties, shall be finally settled under the Rules of the International Chamber of Commerce (the "ICC") by one arbitrator appointed in accordance with the said Rules.

5.3  The arbitration shall take place in Frankfurt and shall be conducted in the English language. The award of the arbitrator shall be final and binding on both parties. The parties bind themselves to carry out the awards of the arbitrator.

5.4  This contract shall be construed and interpreted pursuant to the laws of England. The English wording in this Agreement shall prevail.

5.5  The parties acknowledge that damages would not be an adequate remedy for breach of this Agreement and the disclosing Party shall be entitled to the remedy of injunction, specific performance and other equitable of similar relief for any threatened or actual breach of this Agreement and no proof of special damages shall be necessary for the enforcement of this Agreement.

5.6  For the avoidance of doubt nothing in this Agreement shall prevent or restrict any of the parties from terminating their discussions and evaluation at any time without further notice.

5.7  Each person signing below and each Party on whose behalf such person executes this Agreement warrants that he or it, as the case may be, has the authority to enter into this Agreement and perform the obligations herein.

SIGNED BY:

Date: 22/2/02                         Date: 26/2/02
Bavarian Nordic                       Acambis plc

By: Peter S. Wulff                    By: Nicolas Higgins
    President & CEO                       Commercial Director

CDA Bavarian Nordic – Acambis Inc.

L01932374422011_N001.DOC\27371.0003

3.