# EXHIBIT A

BINGHAM McCUTCHEN

Robert C. Bertin
Direct Phone: (202) 373-6672
Direct Fax:    (202) 295.8478
r.bertin@bingham.com
Our File No.: 4255860002

July 24, 2006

Bingham McCutchen LLP
Suite 300
3000 K Street NW
Washington, DC
20007-5116
202.424.7500
202.424.7647 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

**VIA HAND DELIVERY**

Elias A. Zerhouni, M.D.
Director
National Institutes of Health
1 Center Drive
Bethesda, Maryland 20892

Re: *Bavarian Nordic A/S v. Acambis Inc., et al.*, Civil Action No. 05-614

Dear Dr. Zerhouni:

I am writing to request that the National Institutes of Health ("NIH") honor the attached subpoena issued by the U.S. District for Delaware in connection with *Bavarian Nordic A/S v. Acambis Inc., et al.*, Civil Action No. 05-614. The subpoena directs the NIH to produce to Bavarian Nordic and to permit inspection of the documents specified in Attachment A. It also orders NIH to make an employee available to provide deposition testimony regarding topics specified in Attachment B.

The subpoena requests information related to the circumstances in which NIH provided a strain of modified vaccinia Ankara ("MVA") owned by Bavarian Nordic to Acambis. The subpoena also requests information related to the Bavarian Nordic's proprietary technology, which was disclosed to NIH and Acambis. The information sought is unavailable to Bavarian Nordic by any other means.

It serves the interests of the NIH to cooperate with this litigation. At issue in this litigation are the safeguards scientists rely on when they transfer innovative property to other researchers in the hope of creating opportunities for collaboration. These safeguards include assurances that materials will be used only for research purposes. Such promises serve to protect the intellectual property rights of the companies and the scientists who take financial and professional risks by investing in untested technologies.

The NIH received the MVA strain at issue in this case after the NIH promised to use it solely for research purposes. Such agreements, of course, help ensure that scientists share their innovations with research institutions like the NIH. Scientific cooperation fuels innovation. Yet where the risks of such cooperation are uncertain, scientists may think twice before risking their investments. As such, NIH has a strong interest in

By Hand

Elias A. Zerhouni, M.D.
July 24, 2006
Page 2

Bingham McCutchen LLP
bingham.com

participating in the requested deposition, to ensure that researchers maintain confidence in their agreements and the benefits of collaboration.

Finally, Bavarian Nordic is engaged in litigation against Bavarian Nordic's competitor - Acambis - and not its customer - NIH. Bavarian Nordic values its relationship with the NIH, and will do all it can to preserve this relationship.

Please let me know if you have any questions.

Regards,

Robert C. Bertin
Partner

9301176v1

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

BAVARIAN NORDIC A/S
V.
ACAMBIS, INC. and ACAMBIS, PLC

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-614-SLR
United States District Court for District of Delaware

TO: NATIONAL INSTITUTES OF HEALTH
1 Center Drive
Bethesda, MD 20892

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | | DATE AND TIME |
|---|---|---|
| Bingham McCutchen, LLP<br>3000 K Street, NW, Suite 300<br>Washington, DC 20007-5116 | See Attachment A | August 8, 2006   9 AM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attachment B

| PLACE | DATE AND TIME |
|---|---|
| 1 Center Drive<br>Bethesda, MD 20892 | August 4, 2006   9 AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* (Attorney for Plaintiff) | July 24, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert C. Bertin, (202) 424-7500
Bingham McCutchen LLP
3000 K Street, NW, Suite 300,

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

**Attachment A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff Bavarian Nordic A/S ("Bavarian Nordic") hereby requests that production of the documents listed below at the time and place specified in the subpoena *duces tecum* that is served upon you herewith:

**DEFINITIONS**

As used herein, unless specifically indicated otherwise, the following terms shall have the indicated meanings:

A. **"Acambis"** shall mean Acambis plc, Acambis Inc., and/or any corporate predecessor, any joint venture to which it is or was a party, any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

B. **"Baxter"** shall mean Baxter International Inc., and/or any corporate predecessor, any joint venture to which it is or was a party, any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

C. **"Therion"** shall mean Therion Biologic Corporation, and/or any corporate predecessor, any joint venture to which it is or was a party, any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

D.  **"NIH," "You,"** or **"Your"** shall mean the National Institutes of Health and its institutes, departments, laboratories, and personnel, including the National Institute of Allergy and Infectious Diseases (NIAID).

E.  **"Bavarian Nordic"** or **"Complainant"** means Complainant Bavarian Nordic A/S, any corporate predecessor, and any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

F.  **"RFP-1"** shall mean Request for Proposal No. NIH-NIAID-DMID-03-44 issued by the U.S. Government on August 15, 2002.

G.  **"RFP-2"** shall mean Request for Proposal No. NIH-NIAID-DMID-04-49 issued by the U.S. Government on December 4, 2003.

H.  **"RFP-3"** shall mean Request for Proposal DHHS-ORDC-V&B-05-06 issued by the U.S. Government on August 15, 2005.

I.  **"MVA"** shall mean modified vaccinia Ankara.

J.  **"MVA3000"** refers to itself and/or ACAM3000.

K.  **"MVA-BN"** refers to itself and/or IMVAMUNE.

L.  **"MVA-572"** refers to MVA designated 572.FHE.-22.02.1974, its progeny, and/or its derivatives, including that which was plaque purified by Dr. Bernard Moss of NIAID.

M.  **"MVA based vaccines"** shall include all vaccines against smallpox incorporating MVA, including MVA3000 and IMVAMUNE.

N.  **"U.S. Government officials"** shall mean officials, representatives, agents, or personnel of the United States and its agencies including the Department of Health and Human Services, the Centers for Disease Control, the National Institutes of Health, and the Food and Drug Administration.

O.  **"ATCC"** shall mean the American Type Culture Collection.

P.  **"Documents"** and **"Things"** shall have the broadest meaning ascribed to them by the Commission Rules and applicable case law, including but not limited to electronic files.

Q.  **"Agreement"** means any and all contracts, promises, compacts, undertakings, commitments, obligations, pledges, covenants, stipulations, arrangements, and understandings, of any kind, whether written, oral, or tacit.

R.  **"And"** and **"or"** shall be construed conjunctively and disjunctively, as necessary, to make the document request inclusive rather than exclusive.

S.  **"Communication"** or **"Communications"** means any type of oral, written, magnetic, electronic, or visual contact(s) between two or more persons in which information, facts, statements, conversations, or opinions were exchanged, imparted, or received.

T.  The terms **"concerning"** and **"relating to"** mean containing, embodying, evidencing, reflecting, supporting, identifying, stating, referring to, contradicting, rebutting, inconsistent with, dealing with, bearing upon, relating to or in any way pertaining to, directly or indirectly.

U.  The singular includes the plural and vice versa; the masculine includes the feminine and vice versa; and verb tenses include the past, present, and future.

V.  **"Person"** refers to any natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

W.  The term **"derivatives"** means any modified or unmodified progeny or recognized fragments thereof.

X.  The term **"DMID"** refers to the Division of Microbiology and Infectious Diseases.

Y.  The term **"NIAID"** refers to the National Institute of Allergy and Infectious Diseases.

Z.  The term **"GSF"** refers to Forschungszentrum für Umwelt und Gesundheit, any past or present institute, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

## INSTRUCTIONS

A.  Where an identified document is in a language other than English, state whether an English translation of such document exists. If a document is in a language other than English and an English translation exists, identify and provide both documents.

B.  If possible, supply all financial data requested on a calendar year basis. If fiscal year data is provided, please specify the dates on which the fiscal years begin and end.

C.  For any information requested that is not readily available from your records in exactly the form requested, furnish carefully prepared estimates, designated as such. Attach a statement of the basis for such estimates and identify the person or persons making them.

D.  If any information called for by one of these Document requests is withheld because you allege that such information is contained in a privileged document and/or communication, identify each relevant document and/or communication in accordance with the Federal Rules of Civil Procedure.

E.  If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, clearly indicate the portions as to which the privilege is claimed. Any redaction must be clearly visible on the redacted document.

## DOCUMENT REQUESTS

1.  All documents concerning any agreement to acquire or provide MVA, MVA-572 or its progeny or MVA based vaccines to any entity, including Acambis, Baxter, Prof. Dr. Anton Mayr, Bavarian Nordic, GSF, and Therion.

2.  All documents, including any Agreements or communications with Acambis, Baxter or any entity concerning: any right or ability of NIH to provide MVA-572 to any entity without violating the intellectual property rights or property rights of any entity; any right or ability of any entity to receive and/or use MVA-572 for the purpose of manufacturing vaccines for the US Government stockpile without violating the intellectual property rights or property rights of any entity; and any right or ability of any entity to provide MVA-572 to a third party such as Baxter for the purpose of manufacturing vaccines for the US Government stockpile without violating the intellectual property rights or property rights of any entity.

3.  All documents, including internal NIH communications and communications with other entities, regarding the source of, receipt, storage, transfer, or distribution by NIH of MVA or MVA-572 strains or master seed stock, including all correspondence from other entities requesting any MVA strain, regardless of whether or not the strain was actually provided, all correspondence from NIH to any entity regarding the availability or lack of availability of any MVA strain.

4.  All documents, including correspondence, memorandums, communications, messages, or electronic mail regarding the intellectual property rights or property rights of Dr. Bernard Moss, NIH, Prof. Dr. Anton Mayr, Bavarian Nordic, Acambis, Baxter, Therion or any entity in MVA-572, MVA-572 plaque purified by Dr. Bernard Moss, any MVA strain, or any MVA based vaccine.

5.  All documents concerning provision by the NIH of confidential information to any entity including Acambis, or the ability to provide confidential information to any entity. For purposes of this request, confidential information shall mean confidential information received from Bavarian Nordic, confidential information derived from confidential information received from Bavarian Nordic, and MVA-572 including MVA-572 plaque purified by Dr. Bernard Moss.

6.  All documents regarding delivery or receipt of MVA based vaccines by the U.S Government from any entity including Bavarian Nordic, Acambis, or Baxter.

7.  All documents concerning any aspect of the design, development, testing, manufacturing or plaque purification of MVA-572, including plaque purification of MVA-572 by Dr. Bernard Moss or NIH, including documents describing the starting materials, the plaque purification process and properties of the MVA strain derived from the plaque purification process.

8.  All documents concerning any MVA-572 strain deposited by Dr. Bernard Moss or NIH at the ATCC, and all documents concerning the preparation of such strain, including documents concerning the passaging and/or plaque purification of the MVA-572, the cells on which the MVA-572 was grown, and any preferred cell types on which the deposited strain was grown.

9.  All documents concerning any efforts by Therion to obtain MVA, including all correspondence with NIH, Dr. Bernard Moss, Prof. Dr. Anton Mayr or any other individual or entity.

10. All documents concerning individuals at NIH who received confidential information from Bavarian Nordic regarding MVA or any MVA based vaccine, including documents sufficient to identify all those individuals at NIH who received or were exposed to confidential information of Bavarian Nordic.

11. All documents concerning any steps taken by NIH to isolate individuals at NIH who received or were exposed to confidential information from Bavarian Nordic, including regarding MVA-BN, IMVAMUNE, or any other confidential information, from the design, development, testing, manufacturing or plaque purification of MVA-572.

12. All documents concerning Acambis' contract to manufacture MVA3000 for shipment to the U.S. Government under any RFP, including RFP-1, RFP-2 and RFP-3, including all communications with Acambis concerning or progress in performing on the contracts awarded pursuant to RFP-1, RFP-2 and RFP-3, and Acambis responses to RFP-1, RFP-2 and RFP-3.

13. All documents and communications with Acambis concerning any aspect of MVA or MVA based vaccines including MVA3000 and present and future manufacturing of MVA3000.

14. All documents concerning any responses to RFP-1, RFP-2, or RFP-3 by any entity other than Acambis and Bavarian Nordic, including all correspondence relating to such RFPs or responses.

15. All documents concerning Bavarian Nordic and/or Prof. Dr. Anton Mayr's rights in MVA received by NIH from any source, including Bavarian Nordic and Anton Mayr.

16. All documents provided by NIH to any other entity, including Acambis, Baxter, or Therion regarding information or property received by NIH from Bavarian Nordic or Prof. Dr. Anton Mayr, including information regarding MVA-572, MVA-572 plaque purified by Dr. Bernard Moss, MVA-BN, or any aspect of Bavarian Nordic's smallpox vaccines.

17. All documents and communication indicating that any information provided by Bavarian Nordic to NIH or any entity regarding MVA-BN and Bavarian Nordic's MVA program in whole or in part was not confidential and/or was publicly available.

18. All documents regarding any meeting including the October 29, 2001 meeting, between Acambis, Baxter and U.S. Government officials, including Dr. Phillip Russell.

19. All documents concerning the use of MVA as a pre-vaccine against smallpox and/or regarding the efficacy of MVA as a smallpox vaccine, including documents comparing MVA as a smallpox vaccine to other types of smallpox vaccines.

20. All documents concerning any communications between any employee at NIH, including Dr. Bernard Moss, and Acambis regarding MVA based smallpox vaccines.

21. All documents concerning any communications between any employee at NIH, including Dr. Phillip Russell, and Acambis regarding MVA based smallpox vaccines.

22. All documents concerning any communications between NIH and any entity regarding Acambis and/or Bavarian Nordic.

23. All documents concerning the use of BHK cells and CEF cells for the growth of MVA strains.

24. All documents sufficient to show the history and lineage of, genetic sequencing of, and properties of, the MVA strain in MVA3000, including the ability of such virus strain to replicate in any cell line, including human cell lines.

**Attachment B**

**DEFINITIONS AND INSTRUCTIONS**

The definitions and Instructions set forth in Attachment A are incorporated by reference.

**TOPICS**

1. The information contained in the documents requested in Attachment A of the Subpoena Duces Tecum served on NIH in connection to this Investigation.

2. Any agreement to acquire from, or provide to, any entity or person, including Acambis, Baxter, Prof. Dr. Anton Mayr, Bavarian Nordic, GSF, and Therion, any MVA strains, including MVA-572, MVA-575, and any progeny thereof, MVA based vaccines, or MVA based pharmaceutical compositions.

3. Agreements or communications with Acambis, Baxter, Therion or any entity concerning: any right or ability of NIH to provide MVA-572, MVA-575, or any progeny thereof, to any entity without violating the intellectual property rights or property rights of any entity; any right or ability of any entity to receive and/or use MVA-572, MVA-575, or any progeny thereof, for the purpose of manufacturing vaccines for the U.S. Government stockpile without violating the intellectual property rights or property rights of any entity; and any right or ability of any entity to provide MVA-572, MVA-575, or any progeny thereof to a third party, such as Baxter Healthcare, for the purpose of manufacturing vaccines for the U.S. Government stockpile without violating the intellectual property rights or property rights of any entity.

4. The source of MVA strains, including MVA-572, MVA-575, a MVA based master seed stock, and any progeny thereof in the possession of Dr. Bernard Moss or NIH; the receipt, storage, transfer, or distribution of MVA strains, including MVA-572, MVA-575, a MVA based master seed stock, and any progeny thereof, by or involving Dr. Bernard Moss or NIH; NIH correspondence requesting any MVA strains by or to NIH, regardless of whether or not the strain was actually provided, including correspondence regarding the availability or lack of availability of any MVA strain.

5. The intellectual property rights or property rights of Dr. Bernard Moss, NIH, Prof. Dr. Anton Mayr, Bavarian Nordic, Acambis, Baxter, Therion or any entity in MVA strains, including MVA-572, MVA-575, and any progeny thereof, MVA based vaccines, and MVA based pharmaceutical compositions.

6. Provision of confidential information to any entity including Acambis, or the ability to provide confidential information to any entity. For purposes of this request, confidential information shall mean information received from Bavarian Nordic pursuant to a non-disclosure agreement, confidential information derived from such information received by Dr. Bernard

Moss or NIH from Bavarian Nordic, MVA-572, including MVA-572 plaque purified by Dr. Bernard Moss, and MVA-BN or IMVAMUNE.

7.  The design, development, testing, manufacturing or plaque purification of MVA-572, MVA-575, or any progeny thereof, including plaque purification of MVA-572 by Dr. Bernard Moss or NIH; the starting materials, the plaque purification process, the cells on which the MVA strain was grown and properties of the MVA strain derived from the plaque purification process.

8.  MVA strains deposited by Dr. Bernard Moss or NIH at the ATCC, and the preparation of such strains, including the passaging and/or plaque purification of such MVA strains, the cells on which the MVA strains were grown, and any preferred cell types on which the deposited MVA strains were grown.

9.  Any efforts by Therion to obtain MVA strains from Dr. Bernard Moss or NIH.

10. Steps taken by NIH to isolate individuals at NIH who received or were exposed to confidential information from Bavarian Nordic. For purposes of this request, confidential information shall mean information received from Bavarian Nordic pursuant to a non-disclosure agreement, confidential information derived from such information received by Dr. Bernard Moss or NIH from Bavarian Nordic, MVA-572, including MVA-572 plaque purified by Dr. Bernard Moss, MVA-BN or IMVAMUNE, or any other confidential information, from the design, development, testing, manufacturing or plaque purification of MVA strains.

11. Acambis' contract with the U.S. Government to manufacture and/or stockpile MVA based smallpox vaccines, including MVA3000 or ACAM3000, under any RFP or collaborative opportunities relating thereto, including RFP-1, RFP-2, and RFP-3.

12. Communications with Acambis concerning any aspect of MVA or MVA based vaccines, including MVA3000, and present and future manufacturing of MVA3000.

13. Bavarian Nordic's and/or Prof. Dr. Anton Mayr's rights in any MVA strains, including MVA-572, MVA-575, or any progeny thereof, received by Dr. Bernard Moss or NIH from any source, including Bavarian Nordic and Anton Mayr.

14. Information provided to any entity, including Acambis, Baxter, or Therion regarding information or property received from Bavarian Nordic or Prof. Dr. Anton Mayr, including information regarding MVA strains, including MVA-572, MVA-572 plaque purified by Dr. Bernard Moss, MVA-575, MVA-BN, or any aspect of Bavarian Nordic's smallpox vaccines.

15. The confidentiality of information provided by Bavarian Nordic to NIH, Dr. Bernard Moss or any entity regarding MVA-BN and Bavarian Nordic's MVA program in whole or in part.

16. Meetings between Acambis, Baxter and U.S. Government officials, including Dr. Phillip Russell, regarding MVA strains, including MVA strains used as MVA based smallpox vaccines.

17. The use and/or efficacy of MVA strains as a pre-vaccine and/or a stand alone vaccine against smallpox.

18. Communications between Dr. Bernard Moss and Acambis regarding MVA based smallpox vaccines.

19. Communications between Dr. Russell and Acambis regarding MVA based small pox vaccines.

20. All communications regarding Acambis and/or Bavarian Nordic relating to MVA based vaccines, including those relating to RFP-1, RFP-2, RFP-3, and any collaborative opportunities stemming therefrom.

21. The history and lineage of, genetic sequencing of, and properties of, the MVA strain in MVA3000, including the ability of such virus strain to replicate in any cell line, including human cell lines.

22. NIH policies regarding employment and consulting agreements between NIH employees and third parties.

23. All submissions from employees or contractors concerning consulting for Acambis or a predecessor in interest, including Oravax.

9300875v1