# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAVARIAN NORDIC A/S and<br>ANTON MAYR, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-614-SLR |
| | ) | |
| ACAMBIS INC. and | ) | |
| ACAMBIS PLC, | ) | |
| Defendants. | ) | |
| | ) | |

## [PLAINTIFFS'] PROPOSED JURY INSTRUCTIONS[1]

---

[1] The parties have made a good faith attempt, pursuant to D.Del. LR 51.1(a), to confer about the jury instructions and reach agreement thereon, but were unable to resolve their differences as of today's deadline. The parties are continuing to negotiate with respect to the jury instructions and plan to submit a joint set which identifies clearly any remaining areas of disagreement by Monday, May 7, 2008.

## TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ............................................................................. 4
    1.1 INTRODUCTION .................................................................................. 4
    1.2 JURORS' DUTIES ................................................................................ 5
    1.3 BURDENS OF PROOF ......................................................................... 6
    1.4 EVIDENCE............................................................................................ 7
    1.5 CONSIDERATION OF EVIDENCE .................................................... 9
    1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................... 10
    1.7 DEPOSITION TESTIMONY .............................................................. 11
    1.8 CREDIBILITY OF WITNESSES ...................................................... 12
    1.9 NUMBER OF WITNESSES .............................................................. 13
    1.10 EXPERT WITNESSES ..................................................................... 14
    1.11 "MISSING" WITNESS .................................................................... 15
    1.12 DEMONSTRATIVE EXHIBITS ..................................................... 16
2. THE PARTIES' CONTENTIONS .................................................................. 17
    2.1 THE PARTIES...................................................................................... 17
    2.2 BAVARIAN NORDIC'S CONTENTIONS ........................................ 18
    2.3 ACAMBIS' CONTENTIONS .............................................................. 19
    2.4 SUMMARY OF THE ISSUES............................................................ 20
          2.4.1 CONVERSION ......................................................................... 20
          2.4.2 DECEPTIVE TRADE PRACTICES ....................................... 20
          2.4.3 UNFAIR TRADE PRACTICES............................................... 20
          2.4.4 UNFAIR COMPETITION UNDER THE LANHAM ACT ..... 20
3. CONVERSION................................................................................................ 21
    3.1 CONVERSION ELEMENTS ............................................................... 21
    3.2 CONVERSION - RIGHT TO POSSESSION ..................................... 22
    3.3 CONVERSION - UNAUTHORIZED USE .......................................... 23
          3.3.1 CONVERSION - EXCEEDING AUTHORIZATION........... 24
          3.3.2 CONVERSION -PARTIES TO THE AGREEMENT ............. 25
          3.3.3 CONVERSION - BURDEN OF PROOF ................................ 26
          3.3.4 CONVERSION - CUSTOM IN THE INDUSTRY................ 27

2

3.4 CONVERSION - INTENT ........................................................................ 28

3.5 CONVERSION - DAMAGES .................................................................. 29

    3.5.1 COMPENSATORY DAMAGES ............................................ 29

    3.5.2 CONVERSION - PUNITIVE DAMAGES ............................. 30

4. UNFAIR COMPETITION ........................................................................ 31

4.1 DECEPTIVE TRADE PRACTICES ........................................................ 31

4.2 UNFAIR TRADE PRACTICES ............................................................. 33

4.3 UNFAIR COMPETITION UNDER THE LANHAM ACT ................................... 34

4.4    DISGORGEMENT OF PROFITS ...................................................... 38

5. DELIBERATIONS AND VERDICT ............................................................. 39

5.1 INTRODUCTION .............................................................................. 39

5.2 UNANIMOUS VERDICT ..................................................................... 40

5.3 DUTY TO DELIBERATE .................................................................... 41

5.4 COURT HAS NO OPINION .................................................................. 42

1.    GENERAL INSTRUCTIONS

**1.1    INTRODUCTION**

Members of the jury, you have seen and heard all of the evidence and the arguments of the attorneys for each side.  Now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.  Please listen carefully to everything that I say.

You will have a written copy of these instructions with you in the jury room for reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

Sources:

Delaware Jury Instructions 1.1 (adapted to fit this case).

4

## 1.2    JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you heard and saw in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented. I will instruct you on burdens of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and the instructions that I am providing to you now. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel towards one side or the other influence your decision in any way.

Sources:

Delaware Jury Instructions 1.1 (adapted to fit this case).

5

**1.3    BURDENS OF PROOF**

This is a civil case in which plaintiffs Bavarian Nordic and Anton Mayr are charging defendants Acambis Inc. and Acambis plc (collectively "Acambis") with tortious conversion of certain MVA strains. This case also involves business tort claims by Bavarian Nordic that Acambis unfairly competed with Bavarian Nordic. Bavarian Nordic has the burden of proving the claims of conversion, deceptive trade practices, unfair trade practices, and unfair competition against Acambis by what is called a preponderance of the evidence. That means Bavarian Nordic must produce evidence, which, when considered in light of all the facts, leads you to believe that what Bavarian Nordic claims is more likely true than not. To put it differently, if you were to put Bavarian Nordic's and Acambis' evidence on the opposite sides of the scale, the evidence supporting Bavarian Nordic's claims against Acambis would have to make the scales tip somewhat on its side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, not consider it at all in your deliberations as to whether or not Bavarian Nordic has met its burden of proof.

Sources:

Delaware Jury Instructions 1.10 (adapted to fit this case).

6

## 1.4    EVIDENCE

The evidence you will consider consists of the following:

1.    sworn testimony of witnesses;

2.    documents and other things admitted into evidence;

3.    any facts that are stipulated (*i.e.*, formally admitted or agreed to by the parties); and

4.    any facts that are judicially noticed (*i.e.*, facts I say you must accept as true without any other evidence).

Nothing else is evidence. The attorneys' statements and arguments are not evidence. Their questions and objections are not evidence. Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence (even if they refer to or identify evidence).

Nothing you have heard or seen outside this courtroom is evidence. Do not let rumors, suspicions, or anything else that you may have heard or seen outside of court influence your decision in any way.

My legal rulings are not evidence. In addition, none of my comments or questions are evidence. For example, during the trial, I may have not let you hear the answers to some of the questions posed from the attorneys. I also may have ruled that you could not see some of the exhibits that the attorneys proffered. And, sometimes I may have ordered you to disregard things you saw or heard, or I struck testimony or exhibits from the record. You must completely ignore all of these things. Do not even think about them. If I sustained an objection or ordered evidence stricken from the trial, do not speculate about what a witness might have said or what

7

an exhibit might have shown.  These things are not evidence, and you are bound by your oath not

to let them influence you decision in any way.

Make your decisions based only on the evidence as I have defined it here, and nothing

else.

Sources:

Delaware Jury Instructions 1.5 (adapted to fit this case).

8

**1.5    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your every day experience with people and events. Give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to lead to that conclusion.

Sources:

Delaware Jury Instructions 1.5 (adapted to fit this case).

9

## 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like testimony of an eyewitness, which if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Sources:

Delaware Jury Instructions 1.6 (adapted to fit this case).

10

## 1.7    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or by the playing of videotape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in Court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence which may be used to prove particular facts.

Sources:

*IMX, Inc. v. Lendingtree, LLC*, Case No. 03-1067-SLR (D.Del.); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, Case No. 03-027-SLR and 03-283-SLR (D.Del.).

11

## 1.8    CREDIBILITY OF WITNESSES

In determining the weight given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some time or another, the witness said or did something that was different from the testimony he gave at trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you should consider whether it was simply an innocent lapse of memory or an intentional falsehood, or that may depend upon whether it concerns an important fact or an unimportant detail.

During the examination of a witness, you may have heard discussions about "impeachment."  Impeachment of a witness, whether a fact witness or an expert witness, occurs when his or her testimony is contradicted by other evidence and can be considered when judging the credibility of that witness.

Sources:

Delaware Jury Instructions 1.7 (adapted to fit this case).

## 1.9    NUMBER OF WITNESSES

One more point about witnesses. Sometimes jurors wonder if the weight of the evidence to prove a fact depends on the number of witnesses who testify.

Do not make any decision based only on the number of witnesses who testified. What is more important is how believable the witnesses are and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

Sources:

Delaware Jury Instructions 3.2 (adapted to fit this case).

13

## 1.10   EXPERT WITNESSES

When knowledge of technical or financial subject matter may be helpful to the jury, a person who has specialized training or experience in that technical field—he or she is called an expert witness—is permitted to state his or her opinion on those technical or financial matters. However, you are not required to accept that opinion.

In weighing opinion testimony, you may consider the expert's qualifications, the reasons for his or her opinions, and the reliability of the information supporting those opinions, as well as the factors that I have previously mentioned for weighing the testimony of any other witness. The opinion of an expert should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that a witness may have, including any bias that may arise from evidence that the witness has been or will be paid for reviewing the case and testifying or from evidence that the witness testifies regularly and makes a large portion of his or her income from testifying in court.

Sources:

Delaware Jury Instructions 2.11 (adapted to fit this case); *IMX, Inc. v. Lendingtree, LLC*, Case No. 03-1067-SLR (D.Del.); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, Case No. 03-027-SLR and 03-283-SLR (D.Del.).

14

## 1.11    "MISSING" WITNESS

You have heard evidence concerning Dr. Bernard Moss of the National Institutes of Health (NIH). Both Bavarian Nordic and Acambis have attempted to elicit direct testimony from Dr. Moss. However, Dr. Moss has not testified live and in-person at this trial.

Under Federal law and regulations, the U.S. government may prevent its employees from testifying about issues relating to their employment when such testimony would be contrary to the government's interests. In this case, the NIH determined that allowing Dr. Moss to testify in this case would be contrary to its interests, and have thus refused to comply with Bavarian Nordic's and Acambis' subpoenas.

You are not to draw any adverse inferences against Bavarian Nordic or Acambis on account of their not being able to produce Dr. Moss in this case. You may, however, conclude that Dr. Moss's participation in this case would have been contrary to the interests of the NIH.

Sources:

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 45 C.F.R. Part 2; U.S. District Judge Deborah Chasanow's January 19, 2007 Memorandum Opinion and Order in *Bavarian Nordic A/S v. Acambis Inc. & the National Institutes of Health*, Case No. 8:06-cv-02406-DKC, D.I. 15.

15

**1.12    DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of exhibits, such as charts, and animations were offered to help illustrate the testimony of various witnesses. These illustrated exhibits, called demonstrative exhibits, have not been admitted and are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibit that is the evidence in this case.

Sources:

Delaware Jury Instructions 2.7 (adapted to fit this case).

16

## 2.    THE PARTIES' CONTENTIONS

### 2.1    THE PARTIES

The plaintiffs in this are Bavarian Nordic A/S, which I will refer to as Bavarian Nordic, and Anton Mayr.  The defendants are Acambis Inc. and Acambis plc, which I will collectively refer to as Acambis.

17

## 2.2    BAVARIAN NORDIC'S CONTENTIONS

In this case, Bavarian Nordic and Anton Mayr contend that Acambis committed acts of tortious conversion. In addition, Bavarian Nordic contends that Acambis engaged in deceptive trade practices under Delaware statutory law and unfair trade practices under Delaware common law. Bavarian Nordic further contends that Acambis made false or misleading representations regarding Bavarian Nordic and its product, as well as their own product, in violation of the Lanham Act.

18

## 2.3    ACAMBIS' CONTENTIONS

Acambis denies Bavarian Nordic's claims.

DB02:5957673.1

064417.1001

## 2.4    SUMMARY OF THE ISSUES

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

### 2.4.1    CONVERSION

1.    Whether Bavarian Nordic and/or Anton Mayr has proven by a preponderance of the evidence that Acambis tortiously converted certain MVA viruses.

### 2.4.2    DECEPTIVE TRADE PRACTICES

2.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in deceptive trade practices under Delaware statutory law.

### 2.4.3    UNFAIR TRADE PRACTICES

3.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in unfair trade practices under Delaware common law.

### 2.4.4    UNFAIR COMPETITION UNDER THE LANHAM ACT

4.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in unfair competition under the Lanham Act.

In a few minutes, I will give you a detailed explanation for these matters.

DB02:5957673.1

064417.1001

**3.    CONVERSION**

Bavarian Nordic and Anton Mayr allege that Acambis converted certain MVA viruses in which Bavarian Nordic and/or Anton Mayr held a possessory or proprietary interest.

**3.1    CONVERSION ELEMENTS**

To find Acambis liable for this conversion, you must find that Bavarian Nordic and/or Anton Mayr has proven each of the following elements:

1.    Bavarian Nordic and/or Anton Mayr own or had a right to possess the MVA viruses at issue;

2.    Acambis exercised an unauthorized dominion or control over the MVA viruses;

3.    Acambis' exercise of dominion or control over the MVA viruses was intentional.

If you find that Bavarian Nordic and/or Anton Mayr has failed to prove one or more of these elements, Acambis cannot be held liable for conversion.  In determining whether these elements have been proven, you shall also refer to Instructions 3.2, 3.3, 3.3.1, 3.3.2, 3.3.3, 3.3.4 and 3.4, which I will go over now.

Sources:

*Third Nat. Bank v. Continental Ins. Co.,* 388 Mass. 240, 244 (1983); *Spooner v. Manchester*, 133 Mass. 270, 274 (1882);  *Data General Corp. v. Grumann Systems Support Corp.*, 795 F. Supp. 501 (D. Mass. 1992); *Jack Davis, Inc. v. Southworth-Milton, Inc.*, 1997 Mass. Super. LEXIS 522 (1997).

21

### 3.2    CONVERSION - RIGHT TO POSSESSION

In determining whether Bavarian Nordic and/or Anton Mayr had a right to possess the MVA viruses, it is not necessary that either had possession of the MVA viruses at the moment that the defendant took control over it.  It is sufficient that either had the right to take possession, and that Acambis did not have that right.

Sources:

1-2 Jury Instructions in Commercial Litigation § 2.26 (MB 2006).

22

### 3.3    CONVERSION - UNAUTHORIZED USE

You may find that Acambis exercised dominion or control over the MVA viruses adversely to Bavarian Nordic's and/or Anton Mayr's right to possess the MVA viruses if Acambis used the property without authorization.

Sources:

*Hall v. Corcoron*, 107 Mass. 251, 254-55 (1871); *Goell v. Smith*, 128 Mass. 238, 239-40 (1880); *Hall v. Boston & W.R. Corp.*, 96 Mass. 439, 443 (1867); Restatement (2d) of Torts § 228.

23

### 3.3.1   CONVERSION - EXCEEDING AUTHORIZATION

The limits of the authorization for use of property like the MVA viruses at issue ordinarily are determined by the terms, expressly or reasonably to be implied, of any agreement between the parties.

<u>Sources:</u>

Restatement (2d) of Torts §228

24

### 3.3.2   CONVERSION - PARTIES TO THE AGREEMENT

In this case, there are four parties to consider in determining whether Acambis used the vial of MVA-572 virus and its progeny without authorization: Bavarian Nordic, Dr.Anton Mayr, Dr. Bernard Moss and Acambis.

25

### 3.3.3    CONVERSION - BURDEN OF PROOF

It is Acambis' burden to prove that Dr. Bernard Moss received from Bavarian Nordic and/or Dr. Anton Mayr ownership of the MVA-572 vial for all purposes, and that Acambis received from Dr. Moss ownership of the MVA-572 vial and its progeny for all purposes. You are instructed that if Dr. Bernard Moss did not receive ownership of the MVA-572 vial for all purposes from Bavarian Nordic and/or Dr. Anton Mayr, then Acambis did not receive ownership of the MVA-572 vial and its progeny for all purposes, including rights to commercialize the MVA.

Sources:

>    Restatement (2d) Torts §§228, 895
>    2 N.Y. PJI3d 3:10, at 98 (2007)

26

### 3.3.4   CONVERSION - CUSTOM IN THE INDUSTRY

You have heard and seen evidence regarding the ordinary customs practiced by researchers in the virology field around the 2001 timeframe.  You are to consider this evidence if you cannot separately determine the content of the agreement between Dr. Anton Mayr and Dr. Bernard Moss in determining whether Dr. Bernard Moss received from Bavarian Nordic and/or Dr. Anton Mayr ownership of the MVA-572 vial for all purposes, and that Acambis received from Dr. Bernard Moss ownership of the MVA-572 vial for all purposes, including for commercial purposes.

Sources:

*Ghen v. Rich*, 8 F. 159 (D. Mass. 1881); *Nixon v. United States*, 978 F.2d 1269, 1276 n. 18 (D.C. Cir. 1992); 1-2 Jury Instructions in Commercial Litigation § 2.26 (MB 2006).

27

### 3.4    CONVERSION - INTENT

In determining whether Acambis' actions were intentional, it is not necessary for Bavarian Nordic and/or Anton Mayr to prove that Acambis intended to do Bavarian Nordic and/or Anton Mayr any harm or commit any fraud. It is not even necessary that Acambis knew that the MVA viruses were properly in Bavarian Nordic's and/or Anton Mayr's possession. If you find from the facts that Acambis intended to exercise control over the MVA viruses in a manner that indicated a decision by Acambis to use the MVA viruses as if Acambis had the right of possession, then you will find that Acambis had sufficient intent under these instructions.

Sources:

*Kelly v. Laforce*, 288 F.3d 1, 12 (1st Cir. 2002); *Hall v. Boston & W.R. Corp.*, 96 Mass. 439, 443 (1867); 1-2 Jury Instructions in Commercial Litigation § 2.25 (MB 2006).

28

### 3.5    CONVERSION - DAMAGES

#### 3.5.1    COMPENSATORY DAMAGES

If you find that Bavarian Nordic and/or Anton Mayr has proven all the elements of the conversion claim, you must evaluate the amount of the compensatory damages to which either or both of the plaintiffs is entitled.

Damages for conversion are assessed as the fair market value of the property at the time of the conversion. "Fair market value" must reflect market forces, including Government contracts to purchase MVA, and should consider negotiations among bidders for those contracts and material to compete for those contracts. Fair market value ultimately reflects the value attached to the property when it is offered for sale by an owner who is willing, but under no compulsion, to sell and is bought by a buyer who is willing, but not compelled, to buy.

Nevertheless, Acambis is not entitled to benefit from appreciation of the value of the converted MVA viruses. Thus, if you find that the fair market value of the MVA viruses has increased since the time of the conversion, Bavarian Nordic is entitled to any profit Acambis has earned due to its appreciation in value.

<u>Sources</u>:

1-10 Jury Instructions on Damages in Tort Actions § 10.07 (MB 2005); Restatement (First) of Restitution, § 154 (1937).

29

### 3.5.2   CONVERSION - PUNITIVE DAMAGES

In addition to compensatory damages, you may award punitive damages to Bavarian Nordic and/or Anton Mayr if you find that Acambis' conduct was particularly reprehensible. By reprehensible, I mean reckless or motivated by malice or fraud. Keep in mind that mere inadvertence, mistake, or errors of judgment that constitute negligence will not suffice.

The purpose of punitive damages is both to punish wrongdoers and to deter others from engaging in similar conduct. In determining the amount of punitive damages to award, you may consider the effect (if any) that Acambis' actions had on third parties in determining the reprehensibility of Acambis' actions. You may not, however, punish Acambis for harm it inflicted on anyone other than Bavarian Nordic or Anton Mayr.


Sources:

*Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987); *Philip Morris USA v. Williams*, 549 U.S. 801; 127 S. Ct. 1057 (2007).

DB02:5957673.1

064417.1001

4.    **UNFAIR COMPETITION**

Bavarian Nordic contends that Acambis engaged in deceptive and unfair trade practices under Delaware law.   In addition, Bavarian Nordic alleges that Acambis engaged in unfair competition under the Lanham Act.  I will discuss the elements required to prove each of these in greater detail now.

4.1    **DECEPTIVE TRADE PRACTICES**

In particular, Bavarian Nordic contends that Acambis engaged in deceptive trade practices under Delaware statutory law.  To find Acambis liable for unfairly competing with Bavarian Nordic under Delaware statutory law, you must find that Bavarian Nordic proved by a preponderance of the evidence that Acambis engaged in any one or more of the following forms of misconduct:

1.    Acambis caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2.    Acambis caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

3.    Acambis represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

4.    Acambis represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or

31

064417.1001

5.    Acambis engaged in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Bavarian Nordic is not required to prove that any actual confusion or misunderstanding occurred.

If you find that Bavarian Nordic has failed to prove that Acambis engaged in any of the forms of conduct enumerated above, Acambis cannot be held liable for deceptive trade practices against Bavarian Nordic under Delaware statutory law.

Sources:

6 Del. C. § 2532(a)(2), (3), (5), (7), (12); 6 Del. C. § 2532(b); Restatement of the Law, Third, Unfair Competition, § 1.

32

## 4.2    UNFAIR TRADE PRACTICES

Bavarian Nordic also contends that Acambis engaged in unfair trade practices under Delaware common law. "Unfair trade practices," as used in these instructions, include any conduct that would constitute immoral, unethical, oppressive, or unscrupulous conduct that would result in substantial injury to competitors or other businesses.

To find Acambis liable for engaging in unfair trade under Delaware common law, you must find that Acambis has engaged in an unfair trade practice that prevented Bavarian Nordic from legitimately earning revenue.

<u>Sources</u>:

*Edix Media Group, Inc. v. Mahani*, 2006 Del. Ch. LEXIS 207 (Del. Ch. 2006); 1-2 Jury Instructions in Commercial Litigation § 2.15 (MB 2006).

33

**4.3    UNFAIR COMPETITION UNDER THE LANHAM ACT**

Bavarian Nordic contends that Acambis unfairly competed with Bavarian Nordic for contracts with the U.S. Government in violation of 15 U.S.C. § 1125(a)(1), commonly called the Lanham Act.  This section provides that:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (A) is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the. origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Acambis is liable for unfair competition under the Lanham Act if Bavarian Nordic has proven each of the following elements by a preponderance of the evidence:

1.    Acambis used in commerce a false designation of origin or a false or misleading representation of fact in connection with the MVA vaccine product it sold to the U.S. Government, or in connection with the services Acambis provided to the U.S. Government relating to this MVA vaccine product;

2.    Acambis' use of the false designation of origin or the false or misleading representation of fact is likely to cause confusion, mistake, or deceive as to:

34

the affiliation, connection or association of Acambis with Bernard

Moss;

the origin of the MVA vaccine product that Acambis sold to the

U.S. Government; or

the sponsorship or approval of the MVA vaccine product that

Acambis sold to the U.S. Government, or the services

Acambis provided to the U.S. Government relating to this

MVA vaccine product by another person; and

3.    Bavarian Nordic was or is likely to be damaged by Acambis' actions.

If you find that Bavarian Nordic has failed to prove one or more of these elements, Acambis is not liable.

In the alternative, Acambis is liable for unfair competition under the Lanham Act if Bavarian Nordic has proven each of the following elements by a preponderance of the evidence:

1.    In commercial advertising or promotion, Acambis used a false designation of origin or a false or misleading representation of fact in connection with the MVA vaccine product it sold to the U.S. Government, or in connection with the services Acambis provided to the U.S. Government relating to this MVA vaccine product;

2.    Acambis' use of the false designation of origin or the false or misleading representation of fact misrepresented the origin of the MVA vaccine product that Acambis sold to the U.S. Government or misrepresented the nature, characteristics, qualities, or origin of the services Acambis

35

provided to the U.S. Government relating to this MVA vaccine product; and

3.    Bavarian Nordic was or is likely to be damaged by Acambis' actions.

If you find that Bavarian Nordic has failed to prove one or more of these elements, Acambis is not liable.

Under the Lanham Act, even a single promotional presentation to an individual purchaser may trigger the protections of the Lanham Act where the potential providers in the market are relatively limited.

In the alternative, if you find that Bavarian Nordic proved the following elements by a preponderance of the evidence, Acambis is liable for unfair competition under the Lanham Act:

1.    Acambis made false or misleading factual representations of the nature, characteristics, or qualities of Bavarian Nordic's goods or services;

2.    Acambis used the false or misleading representations when contracting with the U.S. Government;

3.    The false and misleading representations were material, in that it is likely to influence the purchasing decision of the consumer;

4.    The false and misleading representations actually deceived or had the tendency to deceive the consumer; and

36

5.  Bavarian Nordic was damaged by Acambis' false or misleading factual representations in that the consumer decided to split several contract awards between Acambis and Bavarian Nordic.

<u>Sources</u>:

15 U.S.C. § 1125(a)(1)(A)&(B); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F.Supp.2d 424, 427 (D. Del. 2003); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 586 (3d Cir. 2002); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996).

37

4.4    **DISGORGEMENT OF PROFITS**

If you find that Acambis engaged in deceptive or unfair trade practices under Delaware statutory or common law or unfair competition under the Lanham Act, Bavarian Nordic is entitled to receive the net profits that Acambis realized as a result of its unfair actions.

In proving Acambis' net profits, Bavarian Nordic is only required to prove the amount of Acambis' gross revenues. Gross revenue consists of all Acambis' receipts for its unfair acts in the sale of MVA3000.

Acambis bears the burden of proving through documentary evidence the amount of any losses and expenses it incurred in realizing its gross revenues, as well as any portion of the profit attributable to factors other than its unfair competition. Deductible expenses include all operating, overhead, and production costs incurred in producing the gross revenue.

Profit is determined by deducting losses and expenses (which Acambis bears the burden of proving) from gross revenue (which Bavarian Nordic has the burden of proving).


Sources:

Restatement (First) of Restitution, §§ 136, 150 (1937).

DB02:5957673.1                                                   064417.1001

5.    **DELIBERATIONS AND VERDICT**

5.1    **INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering the testimony, and the evidence. Now, let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

When you retire to the jury room to deliberate, you may take with you these instructions, any notes that you have taken, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

Do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any questions or messages, you must write them on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will then give them to me, and I will respond as soon as I can. I may have to talk to the attorneys about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-5, or 8-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

Sources:

Delaware Jury Instructions 3.1 (adapted).

**5.2    UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. In the end, your vote must be exactly that—your own vote. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the form of the verdict is intended to suggest or convey in any way or manner what I think your verdict should be. What the verdict shall be is your sole and exclusive duty and responsibility.


Sources:

Delaware Jury Instructions 3.1 (adapted).

DB02:5957673.1

064417.1001

## 5.3    DUTY TO DELIBERATE

You are now free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment.  No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

Sources:

Delaware Jury Instructions 3.1 (adapted).

41

### 5.4    COURT HAS NO OPINION

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict was meant to convey what I think your verdict should be or to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Sources:

Delaware Jury Instructions 3.1 (adapted).

42

YOUNG CONAWAY STARGATT & TAYLOR, LLP

May 3, 2007

*Karen L. Pascale* (signature)

John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

- and -

BINGHAM McCUTCHEN LLP
Edward A. Pennington
Robert C. Bertin
Stephanie Scruggs
Krista L. Lynch
3000 K Street Suite 300
Washington, DC 20007
(202) 424-7500
*Attorneys for Plaintiffs,*
*Bavarian Nordic A/S and Anton Mayr*

43

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 3, 2007, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Mary B. Graham [mbgefiling@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

I further certify that on May 3, 2007, I caused a copy of the foregoing document to be

served on the above-listed counsel and on the following non-registered participants in the

manner indicated:

> ### *By E-Mail*
>
> Mary B. Graham [mgraham@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
>
> William D. Coston [wdcoston@venable.com]
> Martin L. Saad [mlsaad@venable.com]
> Tamany Vinson Bentz [TJBentz@Venable.com]
> VENABLE LLP
> 575 7th Street, NW
> Washington, DC 20004-1601
> (202) 344-4000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*

_____

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  kpascale@ycst.com
   *Attorneys for Plaintiffs,*
   *Bavarian Nordic A/S and Anton Mayr*