IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAVARIAN NORDIC A/S and | ) | |
| ANTON MAYR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | C.A. No. 05-614 (SLR) |
| ACAMBIS INC. and | ) | |
| ACAMBIS PLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS

Pursuant to Delaware Local Rule 51.1, defendants Acambis plc and Acambis, Inc. (collectively "Acambis") hereby submit their proposed Final Jury Instructions. To date, Acambis, and plaintiffs Bavarian Nordic and Anton Mayr have been unable to agree on joint final jury instructions. Nonetheless, they have committed to working towards agreed upon joint instructions and special verdict forms to be filed before the scheduled Pretrial Conference on May 8.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
Rodger D. Smith II (#3778)
James W. Parrett, Jr. (#4292)

OF COUNSEL:

William D. Coston
Jeffrey A. Dunn
Martin L. Saad
Tamany J. Vinson Bentz
VENABLE, LLP
575 7th Street, NW
Washington, DC 20004-1601
202.344.4000

1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Acambis Inc. and Acambis plc*

Dated: May 3, 2007
819898

## TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS ............................................................................... 1

   1.1    INTRODUCTION ..................................................................................... 1

   1.2    JURORS' DUTIES .................................................................................... 2

   1.3    BURDENS OF PROOF ............................................................................. 3

   1.4    EVIDENCE ................................................................................................ 4

   1.5    CONSIDERATION OF EVIDENCE ........................................................ 6

   1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................. 7

   1.7    DEPOSITION TESTIMONY .................................................................... 8

   1.8    CREDIBILITY OF WITNESSES ............................................................ 9

   1.9    NUMBER OF WITNESSES .................................................................... 10

   1.10   EXPERT WITNESSES ............................................................................ 11

   1.11   "MISSING" WITNESS ............................................................................ 12

   1.11   PARTY'S FAILURE TO TESTIFY ....................................................... 13

   1.12   DEMONSTRATIVE EXHIBITS ........................................................... 14

2.    THE PARTIES' CONTENTIONS ................................................................... 15

   2.1    THE PARTIES ........................................................................................ 15

   2.2    BAVARIAN NORDIC'S CONTENTIONS ............................................ 16

   2.3    ACAMBIS' CONTENTIONS ................................................................. 17

   2.3    ACAMBIS' CONTENTIONS ................................................................. 17

   2.4    SUMMARY OF THE ISSUES ............................................................... 18

     2.4.1   CONVERSION ............................................................................ 18

     2.4.2   DECEPTIVE TRADE PRACTICES .......................................... 18

     2.4.3   UNFAIR TRADE PRACTICES ................................................. 18

     2.4.4   UNFAIR COMPETITION UNDER THE LANHAM ACT ................... 18

3.    CONVERSION .................................................................................................. 19

   3.1    CONVERSION ELEMENTS .................................................................. 20

   3.1    CONVERSION ELEMENTS .................................................................. 21

   3.2    PROPERTY AT ISSUE ........................................................................... 22

   3.2.1   BREACH OF AGREEMENT ................................................................. 23

   3.2    CONVERSION - RIGHT TO POSSESSION ......................................... 24

   3.3    OWNERSHIP .......................................................................................... 25

3.3.1    COPIES OF PROPERTY ................................................................. 27

3.4    WRONGFUL CONTROL ................................................................. 28

3.3    CONVERSION - UNAUTHORIZED USE ...................................... 29

    3.3.1    CONVERSION - EXCEEDING AUTHORIZATION............................ 30

    3.3.2    CONVERSION - PARTIES TO THE AGREEMENT ........................... 31

    3.3.4    CONVERSION - CUSTOM IN THE INDUSTRY................................. 33

3.4    CONVERSION - INTENT ............................................................. 34

3.5    CONVERSION - INTENT ............................................................. 35

3.6    CONVERSION - LACHES ............................................................. 36

3.7    CONVERSION – UNCLEAN HANDS ........................................... 38

3.5    CONVERSION - DAMAGES......................................................... 39

    3.5.1    COMPENSATORY DAMAGES ............................................... 39

    3.8.1    CONVERSION – COMPENSATORY DAMAGES ............................ 40

    3.5.2    CONVERSION - PUNITIVE DAMAGES ........................................ 41

    3.8.2 CONVERSION – PUNITIVE DAMAGES.......................................... 42

4.    UNFAIR COMPETITION ............................................................. 44

4.1    DECEPTIVE TRADE PRACTICES ............................................... 45

4.1    DECEPTIVE TRADE PRACTICES ............................................... 47

4.2    UNFAIR TRADE PRACTICES....................................................... 49

4.3    UNFAIR COMPETITION UNDER THE LANHAM ACT ...................... 50

4.3    UNFAIR COMPETITION UNDER THE LANHAM ACT ...................... 54

    4.3.1    LANHAM ACT – FALSE REPRESENTATION OF ORIGIN.............. 56

    4.3.2    LANHAM ACT – LITERALLY FALSE STATEMENTS..................... 58

    4.3.3    LANHAM ACT – DECEPTIVE STATEMENTS ............................ 60

4.4    UNFAIR COMPETITION - LACHES............................................ 62

4.5    UNFAIR COMPETITION – UNCLEAN HANDS.............................. 64

4.4    DISGORGEMENT OF PROFITS ................................................... 65

4.6    DISGORGEMENT OF PROFITS ................................................... 66

5.    LIMITATION ON DOUBLE RECOVERY ................................... 67

6.    DELIBERATIONS AND VERDICT .............................................. 68

6.1    INTRODUCTION ....................................................................... 68

6.2    UNANIMOUS VERDICT.............................................................. 69

6.3    DUTY TO DELIBERATE ............................................................. 70

6.4     COURT HAS NO OPINION .......................................................................................... 71

**1.      GENERAL INSTRUCTIONS**

**1.1     INTRODUCTION**

Members of the jury, you have seen and heard all of the evidence and the arguments of the attorneys for each side.  Now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.  Please listen carefully to everything that I say.

You will have a written copy of these instructions with you in the jury room for reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

Sources:

Delaware Jury Instructions 1.1 (adapted to fit this case).

**1.2     JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you heard and saw in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  I will instruct you on burdens of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and the instructions that I am providing to you now.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel towards one side or the other influence your decision in any way.

Sources:

Delaware Jury Instructions 1.1 (adapted to fit this case).

**1.3      BURDENS OF PROOF**

This is a civil case in which plaintiffs Bavarian Nordic and Anton Mayr are charging defendants Acambis Inc. and Acambis plc (collectively "Acambis") with tortious conversion of certain MVA strains.  This case also involves business tort claims by Bavarian Nordic that Acambis unfairly competed with Bavarian Nordic.  Plaintiffs have the burden of proving all the elements of all of their claims by what is called a preponderance of the evidence.  That means Bavarian Nordic must produce evidence, which, when considered in light of all the facts, leads you to believe that what Bavarian Nordic claims is more likely true than not.  To put it differently, if you were to put Bavarian Nordic's and Acambis' evidence on the opposite sides of the scale, the evidence supporting Bavarian Nordic's claims against Acambis would have to make the scales tip somewhat on its side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, not consider it at all in your deliberations as to whether or not Bavarian Nordic has met its burden of proof.

Sources:

Delaware Jury Instructions 1.10 (adapted to fit this case).

3

**1.4    EVIDENCE**

The evidence you will consider consists of the following:

1.    sworn testimony of witnesses;

2.    documents and other things admitted into evidence;

3.    any facts that are stipulated (*i.e.*, formally admitted or agreed to by the parties); and

4.    any facts that are judicially noticed (*i.e.*, facts I say you must accept as true without any other evidence).

Nothing else is evidence. The attorneys' statements and arguments are not evidence. Their questions and objections are not evidence. Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence (even if they refer to or identify evidence).

Nothing you have heard or seen outside this courtroom is evidence. Do not let rumors, suspicions, or anything else that you may have heard or seen outside of court influence your decision in any way.

My legal rulings are not evidence. In addition, none of my comments or questions are evidence. For example, during the trial, I may have not let you hear the answers to some of the questions posed from the attorneys. I also may have ruled that you could not see some of the exhibits that the attorneys proffered. And, sometimes I may have ordered you to disregard things you saw or heard, or I struck testimony or exhibits from the record. You must completely ignore all of these things. Do not even think about them. If I sustained an objection or ordered evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence you decision in any way.

4

Make your decisions based only on the evidence as I have defined it here, and nothing else.

Sources:

Delaware Jury Instructions 1.5 (adapted to fit this case).

**1.5     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your every day experience with people and events.  Give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to lead to that conclusion.

Sources:

Delaware Jury Instructions 1.5 (adapted to fit this case).

**1.6     DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Sources:

Delaware Jury Instructions 1.6 (adapted to fit this case).

**1.7    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or by the playing of videotape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in Court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence which may be used to prove particular facts.

Sources:

*IMX, Inc. v. Lendingtree, LLC*, Case No. 03-1067-SLR (D.Del.); *Boston Scientific Corp., et al. v. Cordis Corp.*, *et al*., Case No. 03-027-SLR and 03-283-SLR (D.Del.).

**1.8     CREDIBILITY OF WITNESSES**

In determining the weight given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some time or another, the witness said or did something that was different from the testimony he gave at trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you should consider whether it was simply an innocent lapse of memory or an intentional falsehood, or that may depend upon whether it concerns an important fact or an unimportant detail.

During the examination of a witness, you may have heard discussions about "impeachment." Impeachment of a witness, whether a fact witness or an expert witness, occurs when his or her testimony is contradicted by other evidence and can be considered when judging the credibility of that witness.

Sources:

Delaware Jury Instructions 1.7 (adapted to fit this case).

**1.9     NUMBER OF WITNESSES**

One more point about witnesses.  Sometimes jurors wonder if the weight of the evidence to prove a fact depends on the number of witnesses who testify.

Do not make any decision based only on the number of witnesses who testified.  What is more important is how believable the witnesses are and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Sources:

Delaware Jury Instructions 3.2 (adapted to fit this case).

## 1.10    EXPERT WITNESSES

When knowledge of technical or financial subject matter may be helpful to the jury, a person who has specialized training or experience in that technical field—he or she is called an expert witness—is permitted to state his or her opinion on those technical or financial matters. However, you are not required to accept that opinion.

In weighing opinion testimony, you may consider the expert's qualifications, the reasons for his or her opinions, and the reliability of the information supporting those opinions, as well as the factors that I have previously mentioned for weighing the testimony of any other witness. The opinion of an expert should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that a witness may have, including any bias that may arise from evidence that the witness has been or will be paid for reviewing the case and testifying or from evidence that the witness testifies regularly and makes a large portion of his or her income from testifying in court.

Sources:

Delaware Jury Instructions 2.11 (adapted to fit this case); *IMX, Inc. v. Lendingtree, LLC*, Case No. 03-1067-SLR (D.Del.); *Boston Scientific Corp., et al. v. Cordis Corp.*, *et al.*, Case No. 03-027-SLR and 03-283-SLR (D.Del.).

**PLAINTIFFS' INSTRUCTION**

**1.11  "MISSING" WITNESS**

You have heard evidence concerning Dr. Bernard Moss of the National Institutes of Health (NIH).  Both Bavarian Nordic and Acambis have attempted to elicit direct testimony from Dr. Moss.  However, Dr. Moss has not testified live and in-person at this trial.

Under Federal law and regulations, the U.S. government may prevent its employees from testifying about issues relating to their employment when such testimony would be contrary to the government's interests.  In this case, the NIH determined that allowing Dr. Moss to testify in this case would be contrary to its interests, and have thus refused to comply with Bavarian Nordic's and Acambis' subpoenas.

You are not to draw any adverse inferences against Bavarian Nordic or Acambis on account of their not being able to produce Dr. Moss in this case.  You may, however, conclude that Dr. Moss's participation in this case would have been contrary to the interests of the NIH.


Sources:

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 45 C.F.R. Part 2; U.S. District Judge Deborah Chasanow's January 19, 2007 Memorandum Opinion and Order in *Bavarian Nordic A/S v. Acambis Inc. & the National Institutes of Health*, Case No. 8:06-cv-02406-DKC, D.I. 15.


**DEFENDANTS' OBJECTION**:  Defendants object to this instruction, as it improperly limited to and focuses on only one witness, Bernard Moss, and is prejudicial, unnecessary and inaccurate. Neither Dr. Moss nor NIH is a party to this litigation, and Dr. Moss is equally unavailable to both parties.  Furthermore, the instruction does not include other "missing" witnesses that are not equally available to the parties, such as plaintiff Anton Mayr, or the parties' respective former employees.  The instruction inaccurately states the U.S. government's position, to wit, "the NIH did not refuse compliance based upon fear of disclosing wrongdoing". NIH 4th Circuit Brief at i, 18-22.  Given the allegation that Moss and Acambis conspired, this inaccurate instruction is especially prejudicial to Acambis.

**DEFENDANTS' INSTRUCTION**

**1.11    PARTY'S FAILURE TO TESTIFY**

Counsel for defendants has argued that the plaintiff Anton Mayr had important information within his knowledge which he did not produce in evidence.  For example, he refused to answer defendants' questions concerning:

(1) Plaintiff Mayr's work on MVA at the Bavarian Vaccine Institute;

(2) Plaintiff Mayr's prior distributions of MVA;

(3) Prior patents evidencing MVA ownership by the State of Bavaria; and

(4) Plaintiff Mayr's prior statements to others that Dr. Moss was free to transfer the MVA 572 strain at issue to companies.

If you find that plaintiff Mayr had knowledge of important facts which he failed to provide in response to defendants' questions, you are permitted, but not required to infer that the withheld information would have been unfavorable to plaintiffs.

You are reminded that any inference you may draw should be based on all of the facts and circumstances of this case.


Sources:

4 Modern Fed. Jury Instructions 75-6 (Matthew Bender & Co. 2003) (adapted for this case); *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88 (3d Cir. 1983).

**1.12    DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of exhibits, such as charts, and animations were offered to help illustrate the testimony of various witnesses.  These illustrated exhibits, called demonstrative exhibits, have not been admitted and are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibit that is the evidence in this case.

Sources:

Delaware Jury Instructions 2.7 (adapted to fit this case).

## 2.    THE PARTIES' CONTENTIONS

## 2.1    THE PARTIES

The plaintiffs in this are Bavarian Nordic A/S, which I will refer to as Bavarian Nordic, and Anton Mayr.  The defendants are Acambis Inc. and Acambis plc, which I will collectively refer to as Acambis.

## 2.2    BAVARIAN NORDIC'S CONTENTIONS

In this case, Bavarian Nordic and Anton Mayr contend that Acambis committed acts of tortious conversion.  In addition, Bavarian Nordic contends that Acambis engaged in deceptive trade practices under Delaware statutory law and unfair trade practices under Delaware common law.  Bavarian Nordic further contends that Acambis made false or misleading representations regarding Bavarian Nordic and its product, as well as their own product, in violation of the Lanham Act.

**DEFENDANTS' OBJECTION:**  Defendants object to this instruction.  In the Amended Complaint, ¶ 1,2 and 45, Plaintiffs cited to Delaware law as the source of its conversion claim. In the Pre-Trial Plaintiffs assert rights under Massachusetts law, not Delaware.  This instruction refers to Delaware for certain counts but does not indicate what law applies for conversion.

## 2.3     ACAMBIS' CONTENTIONS

Acambis denies Bavarian Nordic's and Anton Mayr's claims.

Acambis contends that MVA 572 was not owned by Anton  Mayr.  Further, Mayr and others widely distributed, without restriction, various strains fo MVA including MVA 572 and strains identical to MVA 572.  Mayr, or his colleague, sent MVA 572 to the NIH in 2001 without restriction.  To this date Mayr, has not asked the NIH to return that virus.  Mayr and Bavarian Nordic continue to possess MVA 572 and identical strains and have not been deprived of the exclusive right to commercialize the virus.

Acambis further contends that the NIH never provided to Acambis the physical MVA 572 virus sample that the NIH had received.  Rather, the NIH sent a cloned copy of MVA 572 to Acambis and also sent copies to other recipients.

Acambis contends that the physical virus had nominal, if any, value and that what Bavarian Nordic claims as damages arise from the right to commercialize the virus.  That is an intangible property interest, one not recognized in the law of conversion.  Anton Mayr is not seeking any monetary damages and Bavarian Nordic is not entitled to any.

With respect to the other counts, Acambis contends that it fairly competed and provided full and accurate information to the United States government during the procurement process. The government was fully informed of the Plaintiffs' claims and rejected them.

Finally, Acambis contends that because Plaintiffs' real concern is with the U.S. Government's distribution of the virus, Plaintiffs have sued the wrong party.  Plaintiffs also delayed bringing this suit, to the detriment of Acambis and Plaintiffs have "unclean hands".

**2.4    SUMMARY OF THE ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

**2.4.1    CONVERSION**

[Plaintiffs:1.    Whether Bavarian Nordic and/or Anton Mayr has proven by a preponderance of the evidence that Acambis tortiously converted certain MVA viruses.]

[Defendants: 1.Whether Bavarian Nordic and/or Anton Mayr has proven by a preponderance of the evidence that Acambis tortiously converted tangible property belonging to Plaintiff(s).]

**2.4.2    DECEPTIVE TRADE PRACTICES**

2.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in deceptive trade practices under Delaware statutory law.

**2.4.3    UNFAIR TRADE PRACTICES**

3.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in unfair trade practices under Delaware common law.

**2.4.4    UNFAIR COMPETITION UNDER THE LANHAM ACT**

4.    Whether Bavarian Nordic has proven by a preponderance of the evidence that Acambis engaged in unfair competition under the Lanham Act.

Over the next few minutes, I will give you a detailed explanation of these matters.

3.    **CONVERSION**

[Plaintiffs: Bavarian Nordic and Anton Mayr allege that Acambis converted certain MVA viruses in which Bavarian Nordic and/or Anton Mayr held a possessory or proprietary interest.]

[Defendants: Bavarian Nordic and Anton Mayr allege that Bavarian Nordic and/or Anton Mayr held a an ownership interest in the MVA 572 transferred to the NIH and that Acambis converted that property.]

**PLAINTIFFS' INSTRUCTION**

**3.1    CONVERSION ELEMENTS**

To find Acambis liable for this conversion, you must find that Bavarian Nordic and/or Anton Mayr has proven each of the following elements:

1.    Bavarian Nordic and/or Anton Mayr own or had a right to possess the MVA viruses at issue;

2.    Acambis exercised an unauthorized dominion or control over the MVA viruses;

3.    Acambis' exercise of dominion or control over the MVA viruses was intentional.

If you find that Bavarian Nordic and/or Anton Mayr has failed to prove one or more of these elements, Acambis cannot be held liable for conversion. In determining whether these elements have been proven, you shall also refer to Instructions 3.2, 3.3, 3.3.1, 3.3.2, 3.3.3, 3.3.4 and 3.4, which I will go over now.

Sources:

*Third Nat. Bank v. Continental Ins. Co.,* 388 Mass. 240, 244 (1983); *Spooner v. Manchester*, 133 Mass. 270, 274 (1882); *Data General Corp. v. Grumann Systems Support Corp.*, 795 F. Supp. 501 (D. Mass. 1992); *Jack Davis, Inc. v. Southworth-Milton, Inc*., 1997 Mass. Super. LEXIS 522 (1997).

**DEFENDANTS' OBJECTION**: Defendants object to this instruction as inaccurate because it does not accurately stating the law of conversion. It omits the fundamental requirements of conversion that plaintiffs own the allegedly converted property and that defendant possess the property to the complete exclusion of plaintiffs.

**DEFENDANTS' INSTRUCTION**

**3.1    CONVERSION ELEMENTS**

In this case you will have to determine whether defendants converted plaintiffs' property. Plaintiffs have alleged that defendants converted plaintiffs' property by receiving a clone copy of MVA 572 from NIH and using the copy to develop a smallpox vaccine.  Defendants deny that there was any conversion.

Conversion is the wrongful possession of personal property owned by someone else with the intent to completely deprive the owner of its use or benefit.

In order to show that defendants converted plaintiff's property, plaintiff must prove, by a preponderance of the evidence, that:

(1) the plaintiffs exclusively owned the property at the time of the alleged conversion;

(2) the defendants intentionally, wrongfully, and completely excluded plaintiffs from that property; and

(3) plaintiffs demanded the return of the property prior to filing this lawsuit.


Sources:

*Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702 at \*77 (September 5, 2006); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 S.2d 828 (Md. 2004); *Discover Realty Corp. v. David*, 2003 Mass. App. Div. 172 (Mass. App. Ct. Oct. 14, 2003); 1-2 Jury Instructions in Commercial Litigation § 2.21 (adapted for this case).

**DEFENDANTS' INSTRUCTION**

**3.2     PROPERTY AT ISSUE**

Before you can consider whether defendants have converted plaintiffs' property, you must determine what is the property at issue.  In particular, you must decide whether the property at issue is the MVA 572 transferred to NIH, the MVA 577 transferred to Acambis by NIH, or the right to commercialize either of these viruses.

Your must then consider whether the property at issue is tangible property or intangible property.  Tangible property has a physical form and is capable of being touched and seen, such as vials of MVA 572 or vials of MVA 577.

With some exceptions not applicable here, intangible property is not capable of being touched.  For example, the right to commercialize a virus is an intangible property right.

If you find that the property at issue is the right to commercialize the MVA virus provided to the NIH or to Acambis, then you must find for defendants on the issue of conversion.

However, if you find that the property at issue is tangible, in other words the vials of MVA 572 or MVA 577, then you must consider whether the defendants converted that tangible property.

Sources:

*Orteck Int'l Inc. v. Transpacific Tire & Wheel Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702 (D. Md. Sept. 5, 2006); *Jayson Assoc., Inc. v. United Parcel Serv. Co.*, No. 04-10771, 2004 U.S. Dist. LEXIS 13191 (D. Mass. July 15, 2004); *Wozniak & Padula P.C. v. Gilmore, Rees, Carlson & Cataldo, P.C.*, 2005 Mass. App. Div. LEXIS 6 (Mass. App. Dec. April 8, 2005); *Discover Realty Corp. v. David*, 2003 Mass. App. Div. 172 (Mass. App. Dec. October 14, 2003); Black's Law Dictionary 811, 1468 (7th Ed.).

**DEFENDANTS' INSTRUCTION**

**3.2.1   BREACH OF AGREEMENT**

As you consider whether defendants converted any property, you should consider whether plaintiffs' conversion claim is based on a mere breach of an agreement.  If the claim is based on the mere breach of an agreement, it is not actionable in conversion.  If you find that plaintiffs' claim is based on the mere breach of an agreement, then you must find in favor of defendants on conversion.

Sources:

*Brand Iron, Inc. v. Koehring Co*., 595 F. Supp. 1037, 1039-40 (D. Md. 1984); *Crown-Simplimatic Inc. v. Adcor Indus., Inc.*, 299 B.R. 319, 326-27 (Bankr. D. Del. 2003); *Innovative Network Solutions, Inc. v. Onestar Communications, LLC*, 283 F. Supp. 2d 295, 301 (D. Me. 2003); 18 AM JUR. 2d Conversion § 67.

**PLAINTIFFS' INSTRUCTION**

**3.2    CONVERSION - RIGHT TO POSSESSION**

In determining whether Bavarian Nordic and/or Anton Mayr had a right to possess the MVA viruses, it is not necessary that either had possession of the MVA viruses at the moment that the defendant took control over it.  It is sufficient that either had the right to take possession, and that Acambis did not have that right.

Sources:

1-2 Jury Instructions in Commercial Litigation § 2.26 (MB 2006).

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction as incomplete and inaccurate.  "The MVA viruses" is vague.  Furthermore, "In determining right to possess….it is sufficient that either had right to take possession" is circular and does not instruct the jury as to the elements of the conversion claim.  Also, the instruction has been taken out of context from the cited sources.  Finally, the instruction ignores the fundamental requirement that the plaintiffs be entitled to the "exclusive" right to possess.

**DEFENDANTS' INSTRUCTION**

**3.3    OWNERSHIP**

1.     If you find that the property at issue is tangible, you must then decide which plaintiff, if any, owned the property at issue.  Both plaintiffs cannot own the same property. Furthermore, defendants could not convert what the plaintiffs did not own.

2.     In order to prove ownership, plaintiffs must prove, by a preponderance of the evidence, that one of them was entitled to the immediate and exclusive possession of the property at issue.  In determining whether either plaintiff, if any, had the exclusive right to possession of the property, you may consider, for instance, whether one claiming ownership has given away samples of the property to others without requiring their return.

3.     You must first decide if plaintiff Anton Mayr was the lawful owner of MVA 572 at the time that vials of that material was sent to the NIH.  Plaintiffs' have the burden of proof on this point.  Defendants have argued that neither plaintiff owned the virus at issue or any rights thereto, contending instead that the Bavarian State Vaccine Institute owned the virus and any of the rights to use that virus in a commercial vaccine.

4.     If Anton Mayr did own the strain, you must then decide whether he transferred ownership of the vials of MVA 572 that were sent to the NIH.  The parties have agreed that German law can be considered in determining whether Prof. Mayr transferred ownership of the vials of MVA 572 to NIH.

5.     German law requires that one separately analyze whether there has been a transfer of ownership of the vials of MVA 572 sent to the NIH and whether there were terms and conditions placed on the use of the vials of MVA 572.  Stated another way, German law allows the recipient to own the transferred property regardless of whether the recipient is limited by a separate agreement, which would be regulated by contract law, to perform in a certain way.

25

6.      You must consider whether Prof. Mayr transferred ownership of the vials of MVA 572 to NIH.  Under German law a transfer of ownership occurs when there has been (a) a change of possession, and (b) an agreement to transfer ownership.  Agreements to transfer ownership do not need to be explicit, they can be implied by the circumstances of the transaction and how it would objectively be viewed, including the understanding of the sender and recipient.  Evidence of any agreement to transfer ownership can include, among other things, whether the sender obligated the recipient to take care of the property, to return the property at the conclusion of use, or to provide periodic reports on the property's condition or status.

7.      If you find that elements (a) and (b) are met then you must find that plaintiffs transferred ownership of the vials of MVA 572 to the NIH.  If plaintiffs transferred ownership to the NIH, you must find for the defendants.


<u>Sources:</u>

*Worldcom, Inc. v. Boyne*, No. 02-1479, 2003 U.S. App. LEXIS 12843 (4th Cir. 2003); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 S.2d 828 (Md. 2004); *Jayson Assoc., Inc. v. United Parcel Service Co.*, No. 04-10771, 2004 U.S. Dist. LEXIS 13191 at *5 (July 15, 2004); 1-2 Jury Instructions in Commercial Litigation § 2.26 (Matthew Bender & Co. 2006); Introductory Law to the Civil Code of Germany Art. 43.1, 43 Nr. 3; Bundesgerichtshof – BGH – Neue Juristische Wochenschrift – NJW – 1996, page 2233/2234; Palandt/Helfrich, Burgerliches Gesetzbuch, 65th Ed. 2006; Erman/Palm, BGB 11th ed. 2004 Einl. § 104 Nr. 21, § 929; Rother, Archiv fur die civilistische Praxis, vol. 159, page 1 seq.; Grigoleit, Archiv fur die civilistische Praxis, vol. 199, page 379 seq.; Palandt, op.cit Uberblick vor BGB § 104 Nr. 22.

**DEFENDANTS' INSTRUCTION**

**3.3.1    COPIES OF PROPERTY**

In considering whether plaintiffs have been completely excluded from the property at issue, you must consider whether the defendants merely received a copy of the property and not the original.  Use or possession of a copy of property is not actionable in conversion.  If you find that Acambis merely received a clone copy of the MVA 572 provided to the NIH, then you must find in favor of defendants on conversion.

Sources:

*Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, 2006 U.S. Dist. LEXIS 67702 at *76-77 (D. Md. Sept. 5, 2006); *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001); *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969); *FMC Corp. v. Cap. Cities/ABC, Inc*., 915 F.2d 300, 303-304 (7th Cir. 1990).

**DEFENDANTS' INSTRUCTION**

**3.4    WRONGFUL CONTROL**

In addition to ownership, plaintiffs must prove that defendants intentionally and wrongfully excluded plaintiffs from the property at issue.

First, you must consider whether their exercise of control was wrongful. Exercise of control is only wrongful if it is contrary to the rights of the owner. In order to be wrongful, the owner of the property must have demanded the return of the property and the defendants must have refused that demand.

Second, you must determine whether defendants have exercised control over the property at issue to the complete exclusion of plaintiffs. This requires more than a mere temporary interference with plaintiffs' property rights. For instance, if plaintiffs continued to have access to MVA 572, then they were not completely excluded from it. Stated another way, there is no conversion if plaintiffs' can use the property.

Plaintiffs must prove both of these elements by a preponderance of the evidence before you can find that defendants converted any property. If plaintiffs fail to prove any one of these elements, you must find for defendants on the issue of conversion.

Sources:

*Home Paramount Pest Control Co., Inc. v. FMC Corp./Agric. Prod. Group*, 107 F.Supp.2d 684 (D. Md. 2000), *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 S.2d 828 (Md. 2004); *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965 (Md. 1989); *Duty Free Americas, Inc. v. Legg Mason Wood Walker, Inc.*, No. 04-005696, 2005 WL 914395 (Md. Cir. Ct. Jan. 13, 2005); *Export Lobster Co, Inc. v. Bay State Lobster Co., Inc.*, No. 92-6348, 1994 Mass. Super. LEXIS 90 (Mass. Supp. October 31, 1994); *Pearson v. Dodd*, 410 F.2d 701 (D.C. 1969).

**PLAINTIFFS' INSTRUCTION**

**3.3     CONVERSION - UNAUTHORIZED USE**

You may find that Acambis exercised dominion or control over the MVA viruses adversely to Bavarian Nordic's and/or Anton Mayr's right to possess the MVA viruses if Acambis used the property without authorization.

Sources:

*Hall v. Corcoron*, 107 Mass. 251, 254-55 (1871); *Goell v. Smith*, 128 Mass. 238, 239-40 (1880);

*Hall v. Boston & W.R. Corp.*, 96 Mass. 439, 443 (1867); Restatement (2d) of Torts § 228.

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction as an incomplete and inaccurate statement of the law of conversion.  For example, ownership is not merely "the right to possess," and conversion is not merely "unauthorized use," but use to the complete exclusion of plaintiffs.

**PLAINTIFFS' INSTRUCTION**

**3.3.1    CONVERSION - EXCEEDING AUTHORIZATION**

The limits of the authorization for use of property like the MVA viruses at issue

ordinarily are determined by the terms, expressly or reasonably to be implied, of any agreement

between the parties.

Sources:

Restatement (2d) of Torts §228.

**DEFENDANTS' OBJECTION**:    Defendants object to this instruction because it and
incomplete an inaccurate statement of the law of conversion.  For instance, this instruction
confuses principles of contract law and conversion law.

**PLAINTIFFS' INSTRUCTION**

**3.3.2   CONVERSION - PARTIES TO THE AGREEMENT**

In this case, there are four parties to consider in determining whether Acambis used

the vial of MVA-572 virus and its progeny without authorization: Bavarian Nordic,

Dr.Anton Mayr, Dr. Bernard Moss and Acambis.

**DEFENDANTS' OBJECTION**:   Defendants object to this instruction as inappropriate, confusing and an inaccurate statement of conversion law.  For instance, conversion may not be based upon a mere breach of contract and, therefore, an instruction on an agreement between the parties confuses the principles of contract law and conversion law.

**PLAINTIFFS' INSTRUCTION**

**3.3.3   CONVERSION - BURDEN OF PROOF**

It is Acambis' burden to prove that Dr. Bernard Moss received from Bavarian Nordic

and/or Dr. Anton Mayr ownership of the MVA-572 vial for all purposes, and that Acambis

received from Dr. Moss ownership of the MVA-572 vial and its progeny for all purposes.  You

are instructed that if Dr. Bernard Moss did not receive ownership of the MVA-572 vial for all

purposes from Bavarian Nordic and/or Dr. Anton Mayr, then Acambis did not receive ownership

of the MVA-572 vial and its progeny for all purposes, including rights to commercialize the

MVA.

Sources:

Restatement (2d) Torts §§228, 895.

2 N.Y. PJI3d 3:10, at 98 (2007).

**DEFENDANTS' OBJECTION:**  Defendants object to this instruction because it is inaccurate.
For instance, the instruction misstates the burden of proof in conversion.  Plaintiffs must prove,
*inter alia*, (1) ownership; (2) use by defendants to the complete exclusion of plaintiff;
(3) wrongful use, in that plaintiffs asked for the return of the virus and were denied.

**PLAINTIFFS' INSTRUCTION**

### 3.3.4   CONVERSION - CUSTOM IN THE INDUSTRY

You have heard and seen evidence regarding the ordinary customs practiced by researchers in the virology field around the 2001 timeframe.  You are to consider this evidence if you cannot separately determine the content of the agreement between Dr. Anton Mayr and Dr. Bernard Moss in determining whether Dr. Bernard Moss received from Bavarian Nordic and/or Dr. Anton Mayr ownership of the MVA-572 vial for all purposes, and that Acambis received from Dr. Bernard Moss ownership of the MVA-572 vial for all purposes, including for commercial purposes.

Sources:

*Ghen v. Rich*, 8 F. 159 (D. Mass. 1881); *Nixon v. United States*, 978 F.2d 1269, 1276 n. 18 (D.C. Cir. 1992); 1-2 Jury Instructions in Commercial Litigation § 2.26 (MB 2006).

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction as confusing, inaccurate and unnecessary.  For instance, this instruction confuses the principles of contract law and conversion law.

**PLAINTIFFS' INSTRUCTION**

**3.4     CONVERSION - INTENT**

In determining whether Acambis' actions were intentional, it is not necessary for Bavarian Nordic and/or Anton Mayr to prove that Acambis intended to do Bavarian Nordic and/or Anton Mayr any harm or commit any fraud.  It is not even necessary that Acambis knew that the MVA viruses were properly in Bavarian Nordic's and/or Anton Mayr's possession.  If you find from the facts that Acambis intended to exercise control over the MVA viruses in a manner that indicated a decision by Acambis to use the MVA viruses as if Acambis had the right of possession, then you will find that Acambis had sufficient intent under these instructions.

<u>Sources</u>:

*Kelly v. Laforce*, 288 F.3d 1, 12 (1st Cir. 2002); *Hall v. Boston & W.R. Corp.*, 96 Mass. 439, 443 (1867); 1-2 Jury Instructions in Commercial Litigation § 2.25 (MB 2006).

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction because as inaccurate because it misstates the law of conversion.  For instance, it implies that mere possession is sufficient to find intent.

**DEFENDANTS' INSTRUCTION**

**3.5    CONVERSION - INTENT**

If you have found that plaintiffs had ownership of MVA 572 and that Acambis completely excluded plaintiffs from the use of MVA 572, then you must next decide whether Acambis' actions were intentional.  In determining whether Acambis' actions were intentional, you must consider whether Acambis knowingly exerted control over the property.  If you find that Acambis knowingly exerted control over the property at issue, then you may find that it had the sufficient intent under these instructions.

Sources:

*Kelly v. Laforce*, 288 F.3d 1, 12 (1st Cir. 2002); *Hall v. Boston & W.R. Corp.*, 96 Mass. 439, 443 (1867); 1-2 Jury Instructions in Commercial Litigation § 2.25 (MB 2006).

**DEFENDANTS' INSTRUCTION:**

**3.6    CONVERSION - LACHES**

If upon a consideration of all the facts on the issues of conversion you find that the plaintiffs have failed to sustain the burden cast upon them, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiffs have sustained their burden on these issues, then you should proceed to consider the issue of laches. In this regard the burden is upon the defendants to establish that plaintiffs delayed in bringing suit, which prejudiced defendants.

In this case, defendants allege that plaintiffs delayed because plaintiffs were aware for many years of defendants' possession and intended use of the virus received from the NIH. In determining whether there was a delay you must consider the time that elapsed between when either of the plaintiffs was put on notice that NIH was distributing MVA 572 or its progeny, and August 18, 2005, when BN filed this lawsuit. You may consider such issues as whether plaintiffs were reasonably diligent in the pursuit of the MVA 572 and whether plaintiffs have a legitimate excuse for such delay.

You must then consider whether defendants have been prejudiced by the delay. There are two types of prejudice: evidentiary or economic. Economic prejudice arises when a defendant will either lose the significant monetary investments it made in a product over time, or incur significant monetary penalties as a result of conduct which could have been altered had the lawsuit been brought earlier. Evidentiary prejudice arises when a defendant cannot defend itself because of the delay. In this regard you can consider the age of witnesses, the loss of records or the unreliability of memories of long past events.

If you determine that the defendants have sustained their burden of establishing that plaintiffs' claims are barred, then you should proceed no further and your verdict must be for the

defendant.  If, however, you find that the plaintiff has established the essential elements of their case and that the defendant has not sustained their burden of the affirmative defense, then you should proceed to consider the issue of damages.

<u>Sources</u>:

*Joint Stock St'Yv. UDV North Am., Inc.*, 53 F.Supp. 2d 692 (D. Del. 1999).

**DEFENDANTS' INSTRUCTION**

**3.7    CONVERSION – UNCLEAN HANDS**

If upon a consideration of all the facts on the issues of conversion you find that the plaintiffs have failed to sustain the burden cast upon them, then you should proceed no further and your verdict must be for the defendant.

If, however, you find that the plaintiffs have sustained their burden on these issues, then you should proceed to consider the issue of unclean hands. In this regard the burden is upon the defendants to establish that plaintiffs have engaged in the same type of allegedly wrongful acts that they accuse defendants of.

In this case, defendants allege that plaintiffs are not entitled to any relief because they have acted with unclean hands. You must consider whether plaintiffs have engaged in the same allegedly wrongful acts that they accuse defendants of and whether plaintiff actions are so unconscionable that they should be barred from obtaining any relief in this litigation.

If you determine that plaintiffs have acted with unclean hands, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiff has established the essential elements of their case and that the defendant has not sustained their burden of the affirmative defense, then you should proceed to consider the issue of damages.

**PLAINTIFFS' INSTRUCTION**

**3.5    CONVERSION - DAMAGES**

**3.5.1  COMPENSATORY DAMAGES**

If you find that Bavarian Nordic and/or Anton Mayr has proven all the elements of the conversion claim, you must evaluate the amount of the compensatory damages to which either or both of the plaintiffs is entitled.

Damages for conversion are assessed as the fair market value of the property at the time of the conversion.  "Fair market value" must reflect market forces, including Government contracts to purchase MVA, and should consider negotiations among bidders for those contracts and material to compete for those contracts.  Fair market value ultimately reflects the value attached to the property when it is offered for sale by an owner who is willing, but under no compulsion, to sell and is bought by a buyer who is willing, but not compelled, to buy.

Nevertheless, Acambis is not entitled to benefit from appreciation of the value of the converted MVA viruses.  Thus, if you find that the fair market value of the MVA viruses has increased since the time of the conversion, Bavarian Nordic is entitled to any profit Acambis has earned due to its appreciation in value.


Sources:

1-10 Jury Instructions on Damages in Tort Actions § 10.07 (MB 2005); Restatement (First) of Restitution, § 154 (1937).


**DEFENDANTS' OBJECTION**:  Defendants object to this instruction because it is inaccurate and misstates the law by allowing conversion damages based on appreciation.  Moreover, Mayr does not seek any damages in this case.

**DEFENDANTS' INSTRUCTION**

**3.8.1   CONVERSION – COMPENSATORY DAMAGES**

If you find that defendants have converted plaintiffs' property, then you must determine the value of the converted property.  The value of the property is the fair market value of the property standing alone at the time of conversion.  In other words, the price that a hypothetical, willing buyer would pay to a hypothetical, willing seller in a free and open market.

In this case, plaintiff Prof. Mayr is not seeking damages.  Therefore, if you find that Prof. Mayr owned the converted property at the time of the alleged conversion, you may not award damages.

Sources:

*Wallace v. Lechman & Johson, Inc.*, 732 A.2d 868 (Md. 1999); *Clapp v. Haynes*, 414 N.E.2d 359 (Mass. App. Ct. 1980); 1-17 Jury Instructions in Commercial Litigation § 17.11 (Matthew Bender & Co. 2006).

**PLAINTIFFS' INSTRUCTION**

**3.5.2   CONVERSION - PUNITIVE DAMAGES**

In addition to compensatory damages, you may award punitive damages to Bavarian Nordic and/or Anton Mayr if you find that Acambis' conduct was particularly reprehensible.  By reprehensible, I mean reckless or motivated by malice or fraud.   Keep in mind that mere inadvertence, mistake, or errors of judgment that constitute negligence will not suffice.

The purpose of punitive damages is both to punish wrongdoers and to deter others from engaging in similar conduct.  In determining the amount of punitive damages to award, you may consider the effect (if any) that Acambis' actions had on third parties in determining the reprehensibility of Acambis' actions.   You may not, however, punish Acambis for harm it inflicted on anyone other than Bavarian Nordic or Anton Mayr.

Sources:

*Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987); *Philip Morris USA v. Williams*, 549 U.S. 801; 127 S. Ct. 1057 (2007).

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction as an incomplete and inaccurate statement of the law.

**DEFENDANTS' INSTRUCTION**

**3.8.2 CONVERSION – PUNITIVE DAMAGES**

If you find that defendants have converted plaintiffs' property, you may also consider whether to assess punitive damages against defendants. Punitive damages are not intended to further compensate the plaintiffs, but instead are designed to punish the defendants and serve as a deterrent to them and others from repeating such conduct in the future.

An award of punitive damages must be proven by clear and convincing evidence. This standard applies to your decision of whether to award punitive damages and, if you so decide, to the amount of any such award.

Whether or not to award punitive damages is a matter exclusively within your discretion. You are not required to award punitive damages, and plaintiffs have no right or entitlement to receive an award of punitive damages. You may decide not to award punitive damages even if you find that there is sufficient evidence to permit punitive damages.

If in your discretion you decide to award such damages you should consider the purpose of awarding such damages, as it has been explained to you, and the character of the conduct of the defendants in this case.

You should not award punitive damages unless you are satisfied that plaintiffs have proven by clear and convincing evidence that defendants acted with actual malice. Actual malice as used in these instructions means that the defendants intentionally acted with hatred or ill will. A showing of negligence alone, no matter how gross or outrageous, will not satisfy the standard of actual malice. If Acambis had reason to believe that it was acting lawfully, punitive damages should not be awarded.

Should you decide to award punitive damages, you shall have to fix the amount of such damages. In deciding the amount of punitive damages, you must choose an amount that is

sufficient to punish and deter defendants, but may not choose an amount that exceeds the amount necessary to achieve that purpose. In making that determination, you must consider the extent to which any such award can or will deter the type of misconduct and the relative degree of reprehensibility of that misconduct.

In determining the degree of reprehensibility, one important consideration is whether the conduct involved in acts of violence, caused any personal injury, posed a threat to public health or safety, or posed any other danger to "life or limb," versus whether the conduct caused only financial injury.

In determining the amount of punitive damages you may consider the history of defendants' behavior, the degree of awareness of wrongdoing, the impact of defendants' misconduct on plaintiffs, the defendants' motivation, and the impact of any compensatory award on the behavior of defendants and others. The amount of punitive damages should not exceed an amount reasonably related to the actual or potential injury inflicted on plaintiffs.

Sources:

*BMW of N. Am. V. Gore,* 500 U.S. 559 (1996); *United States v. Arora*, 860 F. Supp. 1091 (D. Md. 1994), Black's Law Dictionary 968 (7th Ed.); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828 (Md. 2004); *Bowden v. Caldor, Inc.*, 350 Md. 4 (1998); *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216 (1995); 1-17 Jury Instructions in Commercial Litigation § 17.26 (Matthew Bender & Co. 2006) (adapted for this litigation).

4.    **UNFAIR COMPETITION**

Bavarian Nordic contends that Acambis engaged in deceptive and unfair trade practices under Delaware law.  In addition, Bavarian Nordic alleges that Acambis engaged in unfair competition under the Lanham Act.  I will discuss the elements required to prove each of these in greater detail now.


**DEFENDANTS' OBJECTION**:  Defendants object to this instruction since BN hasn't stated any separate cause of action under the general rubric of "unfair competition" that goes beyond the other stated causes of action.

**PLAINTIFFS' INSTRUCTION**

**4.1    DECEPTIVE TRADE PRACTICES**

In particular, Bavarian Nordic contends that Acambis engaged in deceptive trade practices under Delaware statutory law. To find Acambis liable for unfairly competing with Bavarian Nordic under Delaware statutory law, you must find that Bavarian Nordic proved by a preponderance of the evidence that Acambis engaged in any one or more of the following forms of misconduct:

1.    Acambis caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2.    Acambis caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

3.    Acambis represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

4.    Acambis represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or

5.    Acambis engaged in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Bavarian Nordic is not required to prove that any actual confusion or misunderstanding occurred.

If you find that Bavarian Nordic has failed to prove that Acambis engaged in any of the forms of conduct enumerated above, Acambis cannot be held liable for deceptive trade practices against Bavarian Nordic under Delaware statutory law.

Sources:

6 Del. C. § 2532(a)(2), (3), (5), (7), (12); 6 Del. C. § 2532(b); Restatement of the Law, Third, Unfair Competition, § 1.

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction as incomplete and inaccurate.  For instance, the instruction fails to set forth what the goods and services at issue are, and omits additional elements required under Delaware case law interpreting the statute.

**DEFENDANTS' INSTRUCTION**

**4.1     DECEPTIVE TRADE PRACTICES**

In this case plaintiff Bavarian Nordic has also alleged that defendants engaged in unfair competition in violation of Delaware's Deceptive Trade Practices Act, also referred to as the Delaware Act or the DDTPA.  In order to determine whether defendants have violated the Delaware Act you must consider whether defendants:

(1) caused likelihood of confusion or of misunderstanding concerning MVA3000 and its affiliation, connection, or association with, or certification by, another;

(2) represented that MVA30000 has a sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not have;

(3) represented that MVA3000 is of a particular standard, quality, or grade; or

(4) disparaged plaintiff BN's MVA-BN vaccine by false or misleading representation of fact.

Additionally, plaintiff must prove by a preponderance of the evidence that the defendants' representation was explicitly false.  If you do not find that defendants have made an explicitly false statement you cannot find that they have violated the Delaware Act.

If you find that defendants made an explicitly false representation, then you must consider whether that representation was likely to cause confusion.  In particular, plaintiff must additionally prove, by a preponderance of the evidence, that defendants' statements or misrepresentations were likely to confuse the U.S. Government.  When considering whether there was a likelihood of confusion you can consider, among other things, the degree of care likely to be exercised by the U.S. Government in purchasing the good, whether there has been actual confusion, or the intent of defendants.  In making this determination, you are entitled to

consider what the U.S. Government knew about MVA3000 and any MVA viruses used to make the vaccine.

Unless you find that the U.S. Government was likely confused by defendants' statements or misrepresentations you cannot find that defendants violated the Delaware Act.

 Sources:

*Del. Solid Waste Auth. v. Eastern Shore Environmental, Inc.*, No. 1472-K, 2002 WL 537691 (Del. Ch. March 28, 2002); *Draper Comm, Inc. v. Del. Valley Broadcaster, Ltd.*, 505 A.2d 1283 (Del. Ch. 1985); *Rockland Mortgage Corp. v. Shareholders Funding, Inc.*, 835 F. Supp. 182 (D. Del. 1993).

**PLAINTIFFS' INSTRUCTION**

**4.2    UNFAIR TRADE PRACTICES**

Bavarian Nordic also contends that Acambis engaged in unfair trade practices under Delaware common law.  "Unfair trade practices," as used in these instructions, include any conduct that would constitute immoral, unethical, oppressive, or unscrupulous conduct that would result in substantial injury to competitors or other businesses.

To find Acambis liable for engaging in unfair trade under Delaware common law, you must find that Acambis has engaged in an unfair trade practice that prevented Bavarian Nordic from legitimately earning revenue.


Sources:

*Edix Media Group, Inc. v. Mahani*, 2006 Del. Ch. LEXIS 207 (Del. Ch. 2006); 1-2 Jury Instructions in Commercial Litigation § 2.15 (MB 2006).


**DEFENDANTS' OBJECTION**:    Delaware's Deceptive Trade Practices Act codified the common law action of unfair trade practices.  Accordingly, by purporting to allege a claim under both Delaware's Deceptive Trade Practices Act and the common law of unfair trade practices, plaintiffs have improperly alleged identical and redundant claims.    Such pleading is inappropriate and prejudicial and invites either an inappropriate double recovery or inconsistent verdicts as to what is the same cause of action.  *See ACCU Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1214 (D. Del. 1994); *Edix Media Group, Inc. v. Mahani*, 2006 Del. Ch. LEXIS 207 (Del. Ch. 2006); Y*oung v. Joyce*, 351 A.2d 857 (Del. 1975).

**PLAINTIFFS' INSTRUCTION**

**4.3     UNFAIR COMPETITION UNDER THE LANHAM ACT**

Bavarian Nordic contends that Acambis unfairly competed with Bavarian Nordic for contracts with the U.S. Government in violation of 15 U.S.C. § 1125(a)(1), commonly called the Lanham Act. This section provides that:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (A) is likely to cause confusion, or to cause mistakeor to deceive as to the affiliation, connection, or association of such person with another person, or as to the. origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Acambis is liable for unfair competition under the Lanham Act if Bavarian Nordic has proven each of the following elements by a preponderance of the evidence:

1.     Acambis used in commerce a false designation of origin or a false or misleading representation of fact in connection with the MVA vaccine product it sold to the U.S. Government, or in connection with the services Acambis provided to the U.S. Government relating to this MVA vaccine product;

2.     Acambis' use of the false designation of origin or the false or misleading representation of fact is likely to cause confusion, mistake, or deceive as to:

the affiliation, connection or association of Acambis with Bernard Moss;

the origin of the MVA vaccine product that Acambis sold to the U.S. Government; or

the sponsorship or approval of the MVA vaccine product that Acambis sold to the U.S. Government, or the services Acambis provided to the U.S. Government relating to this MVA vaccine product by another person; and

3. Bavarian Nordic was or is likely to be damaged by Acambis' actions.

If you find that Bavarian Nordic has failed to prove one or more of these elements, Acambis is not liable.

In the alternative, Acambis is liable for unfair competition under the Lanham Act if Bavarian Nordic has proven each of the following elements by a preponderance of the evidence:

1. In commercial advertising or promotion, Acambis used a false designation of origin or a false or misleading representation of fact in connection with the MVA vaccine product it sold to the U.S. Government, or in connection with the services Acambis provided to the U.S. Government relating to this MVA vaccine product;

2. Acambis' use of the false designation of origin or the false or misleading representation of fact misrepresented the origin of the MVA vaccine product that Acambis sold to the U.S. Government or misrepresented the nature, characteristics, qualities, or origin of the services Acambis provided to the U.S. Government relating to this MVA vaccine product; and

51

3.    Bavarian Nordic was or is likely to be damaged by Acambis' actions.

If you find that Bavarian Nordic has failed to prove one or more of these elements, Acambis is not liable.

Under the Lanham Act, even a single promotional presentation to an individual purchaser may trigger the protections of the Lanham Act where the potential providers in the market are relatively limited.

In the alternative, if you find that Bavarian Nordic proved the following elements by a preponderance of the evidence, Acambis is liable for unfair competition under the Lanham Act:

1.    Acambis made false or misleading factual representations of the nature, characteristics, or qualities of Bavarian Nordic's goods or services;

2.    Acambis used the false or misleading representations when contracting with the U.S. Government;

3.    The false and misleading representations were material, in that it is likely to influence the purchasing decision of the consumer;

4.    The false and misleading representations actually deceived or had the tendency to deceive the consumer; and

5.    Bavarian Nordic was damaged by Acambis' false or misleading factual representations in that the consumer decided to split several contract awards between Acambis and Bavarian Nordic.

Sources:

15 U.S.C. § 1125(a)(1)(A)&(B); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F.Supp.2d 424, 427 (D. Del. 2003); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 586 (3d Cir. 2002); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996).

**DEFENDANTS' OBJECTION**:  Defendants object to this instruction because it inaccurate, confusing and broader than the facts alleged as the basis for Bavarian Nordic's claim.  For instance, the instruction omits the fundamental requisite of a likelihood of confusion from certain elements and omits the materiality requirement.

**DEFENDANTS' INSTRUCTION**

**4.3    UNFAIR COMPETITION UNDER THE LANHAM ACT**

In this case you will have to determine whether defendants have violated the Lanham Act by engaging in unfair competition to the detriment of Bavarian Nordic.   Plaintiff BN has alleged that defendants engaged in unfair competition by representing to the U.S. Government that defendants had ability to legally manufacture an MVA based smallpox vaccine.

Under the Lanham Act there are three ways that plaintiffs assert that defendants engage in unfair competition:

(1) making false and material representations as to the origin of MVA3000

(2) making material literally false statements about MVA3000; or

(3) making false and material statements concerning MVA3000 that confused the U.S. Government.

You will be instructed in more detail as to each of these three topics in subsequent instructions.

However, for any violation of the Lanhan Act to have occurred, the allegedly false or misleading statements must have been made in an advertisement.   For the purposes of these instructions an "advertisement" is commercial speech intended to influence consumers and as such is disseminated sufficiently to the relevant purchasing public.   Only statements made in advertisements can violate the Lanham Act.

Also, for any violation of the Lanhan Act to have occurred, the advertised goods must have traveled in interstate commerce.   That is, the goods must have traveled through more than one state.   Only statements about goods that have traveled in interstate commerce can violate the Lanham Act.

Sources:

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002); *Johnson & Johnson-Merck Consumer Pharm. Co., Rhone-Poulenc Rorer Pharm. Inc.*, 19 F.3d 125 (3d Cir. 1994); *Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F.Supp.2d 695 (M.D. Pa. 2006); *Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101 (D. Del. 2002); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F.Supp.2d 424 (D. Del. 2003).

**DEFENDANTS' INSTRUCTION**

**4.3.1   LANHAM ACT – FALSE REPRESENTATION OF ORIGIN**

In order to prove that defendants misrepresented the origin of MVA3000 plaintiff BN must prove, by a preponderance of the evidence, that defendants made material statements about the origin of MVA3000 that confused the U.S. Government.

In this regard it is not be enough for plaintiff to show that defendants misrepresented the origin of an ingredient, such as the MVA virus used to manufacture the MVA 3000 vaccine. Furthermore, you cannot consider statements as to the source of any intellectual property, idea or concept that embodied by the MVA 3000 vaccine.   Rather, Bavarian Nordic must show that defendants misrepresented where the MVA 3000 vaccine was manufactured.

Next, you must consider whether the defendant's statements confused, or were likely to confuse, the U.S. Government regarding the origin of MVA3000.   In determining whether defendant's statements confused, or were likely to confuse, you may consider whether there is any evidence of actual confusion.   In making this determination, you are entitled to consider what the U.S. Government knew about MVA3000 and any MVA viruses used to make the vaccine.

Finally, you must consider whether Acambis' statements were material to a U.S. Government purchasing decision.   Material misrepresentations are those that are likely to influence purchasing decisions.   In making this determination, you are entitled to consider whether the U.S. Government knew about MVA3000 and any viruses used to make the vaccine – independent of what Acambis told the U.S. Government.

You must find that plaintiff BN has proven all three things, by a preponderance of the evidence, in order to find that defendants made false representations of origin in violation of Federal Law.

<u>Sources</u>:

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Johnson & Johnson-Merck Consumer Pharm. Co., Rhone-Poulenc Rorer Pharm. Inc.*, 19 F.3d 125 (3d Cir. 1994); *Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101 (D. Del. 2002).

This instruction is also adapted from the charges given in *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763 (5th Cir. 1980), cert. denied, 449 U.S. 1022 (1980); and *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert, dismissed, 434 U.S. 1052 (1978).

**DEFENDANTS' INSTRUCTION**

**4.3.2   LANHAM ACT – LITERALLY FALSE STATEMENTS**

In order prove that any of defendants' statements were literally false, plaintiff must prove three things by a preponderance of the evidence.

First, plaintiff must show that Acambis made an unambiguous statement regarding MVA3000 that was false.  Only an unambiguous message can be literally false.  In determining whether a statement is unambiguous you can consider the degree to which a message relies upon the consumer to infer a particular conclusion – the more a message relies on the consumer the less likely it is literal false.

Second, plaintiff must show that this statement was untrue.  An untrue statement is one that is actually false and not just a statement that is unsubstantiated.

Third, plaintiff must show that the statement was material to the U.S. Government's purchasing decision.   Material misrepresentations are those that are likely to influence purchasing decisions.  In making this determination, you are entitled to consider what the U.S. Government knew about MVA3000 and any MVA viruses used to make the vaccine.

Overall, your determination of literal falsity must consider the message in the context in which it was given.

You must find that plaintiff BN has proven all three things, by a preponderance of the evidence, in order to find that defendants made literally false statements in violation of Federal Law.

Sources:

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002); *Johnson & Johnson-Merck Consumer Pharm. Co., Rhone-Poulenc Rorer Pharm. Inc.*, 19 F.3d 125 (3d Cir. 1994); *Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101 (D. Del. 2002).

**DEFENDANTS' INSTRUCTION**

## 4.3.3    LANHAM ACT – DECEPTIVE STATEMENTS

In order to prove that defendants made deceptive statements in violation of the Federal Law plaintiffs must, prove by a preponderance, that defendants made material misrepresentations about MVA3000 that confused the U.S. Government.

First, you must find that defendants made an impliedly false statement to the U.S. Government.

Second, you must find that defendants' statement actually mislead the U.S. Government. In order to prove that defendants mislead the U.S. Government, plaintiff must prove actual deception by a preponderance of the evidence.  It is not sufficient for plaintiff to show how the U.S. Government could react; instead plaintiff must show how the U.S. Government actually did react.  In this regard, the effect of the statement on the U.S. Government is critical to your determination. In making this determination, you are entitled to consider what the U.S. Government knew about MVA3000 and any MVA viruses used to make the vaccine.

Third, you must find that defendants' statement was material to the U.S. Government's purchasing decision.   Material misrepresentations are those that are likely to influence purchasing decisions.  In making this determination, you are entitled to consider what the U.S. Government knew about MVA3000 and any MVA viruses used to make the vaccine.

You must find that plaintiff BN has proven all three things, by a preponderance of the evidence, in order to find that defendants made deceptive statements.

<u>Sources</u>:

 *Sandoz Pharm. Corp. v. Richardson-Vicks*, 902 F.2d 222 (3d Cir. 1990); *Johnson & Johnson-Merck Consumer Pharm. Co., Rhone-Poulenc Rorer Pharm. Inc.*, 19 F.3d 125 (3d Cir. 1994); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101 (D. Del. 2002).

**DEFENDANTS' INSTRUCTION:**

**4.4    UNFAIR COMPETITION - LACHES**

If upon a consideration of all the facts on the issues of unfair competition you find that the plaintiffs have failed to sustain the burden cast upon them, then you should proceed no further and your verdict must be for the defendant.  If, however, you find that the plaintiffs have sustained their burden on these issues, then you should proceed to consider the issue of laches. In this regard the burden is upon the defendants to establish that plaintiffs delayed in bringing suit, which prejudiced defendants.

In this case, defendants allege that BN was aware for many years of the conduct that they now contend was allegedly wrongful and delayed making their claims.  In determining whether there was a delay you must consider the time that elapsed between when BN was put on notice of Acambis' statements to the U.S. government and August 18, 2005, the date BN filed this action. You may consider such issues as whether BN had a legitimate excuse for such delay.

You must then consider whether Acambis has been prejudiced by the delay.  There are two types of prejudice:  evidentiary or economic.  Economic prejudice arises when a defendant will either lose the significant monetary investments it made in a product over time, or incur significant monetary penalties as a result of conduct which could have been altered had the lawsuit been brought earlier.  Evidentiary prejudice arises when a defendant cannot defend itself because of the delay.  In this regard you can consider the age of witnesses, the loss of records or the unreliability of memories of long past events.

If you determine that the defendants have sustained their burden of establishing that BN's claims are barred, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiff has established the essential elements of their case and that

the defendant has not sustained their burden of the affirmative defense, then you should proceed to consider the issue of damages.

<u>Sources</u>:

*Joint Stock St'Y v. UDV North Am., Inc.*, 53 F.Supp. 2d 692 (D. Del. 1999).

.

**DEFENDANTS' INSTRUCTION**

**4.5    UNFAIR COMPETITION – UNCLEAN HANDS**

If upon a consideration of all the facts on the issues of unfair competition you find that the plaintiffs have failed to sustain the burden cast upon them, then you should proceed no further and your verdict must be for the defendant.

If, however, you find that the plaintiffs have sustained their burden on these issues, then you should proceed to consider the issue of unclean hands. In this regard the burden is upon the defendants to establish that plaintiffs have engaged in the same allegedly wrongful acts that they accuse defendants of.

In this case, defendants allege that plaintiffs are not entitled to any relief because they have acted with unclean hands. You must consider whether plaintiffs have engaged in the same allegedly wrongful acts that they accuse defendants of and whether plaintiff actions are so unconscionable that they should be barred from obtaining any relief in this litigation.

If you determine that plaintiffs have acted with unclean hands, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiff has established the essential elements of their case and that the defendant has not sustained their burden of the affirmative defense, then you should proceed to consider the issue of damages.

**4.4    DISGORGEMENT OF PROFITS**

If you find that Acambis engaged in deceptive or unfair trade practices under Delaware statutory or common law or unfair competition under the Lanham Act, Bavarian Nordic is entitled to receive the net profits that Acambis realized as a result of its unfair actions.

In proving Acambis' net profits, Bavarian Nordic is only required to prove the amount of Acambis' gross revenues. Gross revenue consists of all Acambis' receipts for its unfair acts in the sale of MVA3000.

Acambis bears the burden of proving through documentary evidence the amount of any losses and expenses it incurred in realizing its gross revenues, as well as any portion of the profit attributable to factors other than its unfair competition. Deductible expenses include all operating, overhead, and production costs incurred in producing the gross revenue.

Profit is determined by deducting losses and expenses (which Acambis bears the burden of proving) from gross revenue (which Bavarian Nordic has the burden of proving).

Sources:

Restatement (First) of Restitution, §§ 136, 150 (1937); sources.

**DEFENDANTS' OBJECTIONS**: Defendants object to this instruction as inaccurate because it misstates the law. For instance, it places the burden of proving that its profits arise from something other than unfair competition, but it is BN's burden to prove this as part of their unfair competition case. In addition, evidence other than documentary evidence is admissible to prove costs and to prove attribution of profits to other factors.

**4.6    DISGORGEMENT OF PROFITS**

If you find that Acambis engaged in unfair competition under the Lanham Act, you must consider what were the net profits that Acambis realized as a result of its wrongful actions.

In proving Acambis' net profits, Bavarian Nordic is required to prove the amount of Acambis' gross revenues. Gross revenue consists of all Acambis' receipts for its unfair acts in the sale of MVA3000. Bavarian Nordic must also show that these sales were a result of defendants' wrongful acts. Stated another way, Bavarian Nordic must show that the misrepresentations must have caused the U.S. Government to award the contract to defendants and that any profits were attributable to the misrepresentations and not to some other reason.

Acambis bears the burden of proving through documentary evidence the amount of any costs and expenses it incurred in realizing its gross revenues. Deductible expenses include all operating, overhead, and production costs incurred in producing the gross revenue.

Profit is determined by deducting costs and expenses (which Acambis bears the burden of proving) from gross revenue (which Bavarian Nordic has the burden of proving).

Sources:

Defendants' Sources: 15 U.S.C.A. § 1117 (2006).

66

**DEFENDANTS' INSTRUCTION**

**5.     LIMITATION ON DOUBLE RECOVERY**

In this action, the plaintiffs have alleged multiple bases of recovery, in particular conversion and unfair competition.  If you find for the plaintiff on any of those bases of liability, you may award plaintiff such damages as you deem appropriate based on my previous instructions.  In awarding damages, however, you must use care to award the plaintiff damages only once for each loss suffered.  The mere fact that you may find that the defendant is liable under more than one of the bases of liability does not permit you to award the measure of loss more than once.

Source:

1-17 Jury Instruction in Commercial Litigation § 17.14 (Matthew Bender & Co. 2006) (adapted for this litigation).

**6.      DELIBERATIONS AND VERDICT**

**6.1      INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering the testimony, and the evidence.  Now, let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

When you retire to the jury room to deliberate, you may take with you these instructions, any notes that you have taken, and the exhibits that the Court has admitted into evidence.  You should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

Do not talk to the jury officer, to me, or to anyone but each other about the case.  If you have any questions or messages, you must write them on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will then give them to me, and I will respond as soon as I can.  I may have to talk to the attorneys about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 5-5, or 8-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

Sources:

Delaware Jury Instructions 3.1 (adapted).

**6.2     UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors.  Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts.  In the end, your vote must be exactly that—your own vote.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the form of the verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  What the verdict shall be is your sole and exclusive duty and responsibility.

Sources:

Delaware Jury Instructions 3.1 (adapted).

**6.3     DUTY TO DELIBERATE**

You are now free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment.  No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

Sources:

Delaware Jury Instructions 3.1 (adapted).

**6.4     COURT HAS NO OPINION**

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict was meant to convey what I think your verdict should be or to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Sources:

Delaware Jury Instructions 3.1 (adapted).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 3, 2007 upon the following individuals in the manner indicated:

| <u>BY E-MAIL</u> | <u>BY E-MAIL</u> |
|---|---|
| John W. Shaw, Esquire | Edward A. Pennington |
| Young Conaway Stargatt & Taylor LLP | Bingham McCutchen LLP |
| The Brandywine Building, 17th Floor | 3000 K Street, Suite 300 |
| 1000 West Street | Washington, DC 20007 |
| Wilmington, DE 19801 | |

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)