# EXHIBIT 1

*CONTAINS CONFIDENTIAL INFORMATION*

## EXHIBIT 1

## STATEMENT OF ADMITTED FACTS

## I.    THE PARTIES

1.    Plaintiff Bavarian Nordic ("BN") is a Danish business entity based in Copenhagen, Denmark.  Bavarian Nordic maintains its principal place of business at Bøgeskovvej 9, DK-3490 Kvistgård, Denmark.  Bavarian Nordic develops vaccines to prevent infectious diseases with core technology based on MVA-BN®.

2.    Plaintiff Professor Anton Mayr ("Mayr") is a German national, on the faculty of the Ludwig-Maximillians-Universitat Munchen, in Munich, Germany. He resides at Weilheimer Strasse 1, 82319 Starnberg.

3.    Defendant Acambis plc is a corporation existing under the laws of the United Kingdom with a registered address at Peterhouse Technology Park, 100 Fulbourn Road, Cambridge CB1 9PT, UK.  Defendant Acambis, Inc. is a corporation existing under the laws of Delaware and is Acambis plc's U.S. subsidiary (collectively "Acambis").  Acambis Inc. has its principle place of business at 38 Sidney St., Cambridge, Massachusetts 02139.  Acambis develops vaccines to prevent and treat infectious diseases, including MVA.

4.    Acambis was established in 1999 from the combination of two companies: Peptide Therapeutics in the United Kingdom and OraVax, Inc. in the United States.  Acambis' employees are based in Cambridge, United Kingdom; Cambridge and Canton, Massachusetts; and Miami, Florida.

*CONTAINS CONFIDENTIAL INFORMATION*

5.      Through a partnership with Baxter Healthcare, S.A. ("Baxter"), Acambis imported into the United States from Austria an MVA based smallpox vaccine called MVA3000.

## II.      OVERVIEW OF THE TECHNOLOGY

6.      Smallpox is an acute contagious disease caused by the variola virus and is usually spread from person to person through close contact, including face-to-face contact, contact with contaminated body fluids or objects, or by the air in enclosed spaces.  Early symptoms of smallpox are a high fever, head and body aches, and vomiting.  A rash follows that spreads and progresses to pus-filled blisters that crust, scab, and fall off after three weeks.  One form of the disease, variola major, is highly virulent with a mortality rate of greater than 30 percent and a high rate of disfigurement in individuals that recover from the disease.

7.      While there is no specific treatment or cure for smallpox, it can be prevented through vaccines.  In fact, routine vaccination led to global eradication of the disease in 1979.  After eradication, routine vaccination was discontinued because the risks of vaccination outweighed the threat of disease.

8.      After September 11, 2001, concerns that the smallpox virus may be used as a weapon by terrorists prompted new programs and funding to stockpile a smallpox vaccine.  One example of such a program involved the U.S. government's issuance of Request for Proposal ("RFP") No. NIH-NIAID-DMID-03-44 ("RFP-1"), which was directed to the research and development of a modified vaccinia Ankara ("MVA") smallpox vaccine. The contract award was divided between Bavarian Nordic and Acambis.

9.      A second contract for continued research and development of a MVA smallpox

*CONTAINS CONFIDENTIAL INFORMATION*

vaccine was awarded pursuant to RFP No. NIH-NIAID-DMID-04-49 ("RFP-2"), which includes requirements for clinical testing and manufacture of 500,000 doses of the MVA smallpox vaccine. The contract award was again split between Bavarian Nordic and Acambis.

10.     Continued clinical testing and manufacture and delivery of 10-20 million doses of the MVA smallpox vaccine is the subject of a third RFP, i.e., RFP No. DHHS-ORDC-V&B-05-06 ("RFP-3"), which issued on August 15, 2005 and has not yet been awarded. RFP-3 also includes the option for purchase of 60 million additional doses of the MVA smallpox vaccine and "warm-base" manufacturing over the longer term. "Warm-base" refers to keeping a manufacturing facility "warm" by producing a minimum amount of vaccine each year for the U.S. government. Both Bavarian Nordic and Acambis submitted bids for RFP-3.

11.     On November 14, 2006, Department of Health and Human Services notified Acambis that it was no longer in the competitive range for an award under RFP-3.

12.     An attenuated virus is less likely to spread throughout the body compared to its precursor. One way for a virus to be attenuated is to grow the virus for many generations in a host system that is not the preferred, native host system for the disease. For example, when certain viruses that typically infect mammals are grown in chicken embryo cells for many generations, they will genetically mutate over time and become more efficient at replicating in the chicken embryo cells, but less efficient at replicating in mammalian cells. The attenuated virus can then be used as a vaccine against the actual disease-causing virus because of the antibodies that are now produced in the host mammal in response to the virus. In this manner, an attenuated form of the smallpox virus can provide a host mammal with immunity to the actual disease-causing smallpox virus.

*CONTAINS CONFIDENTIAL INFORMATION*

## III.    THE PRODUCT AT ISSUE

13.    Acambis' MVA-based vaccine product, MVA3000, is a smallpox vaccine designed to be less virulent than traditional smallpox vaccines.  MVA3000 is intended to be used to vaccinate individuals, including children, the elderly, and immune-compromised persons, against smallpox.  MVA3000 has been imported for the U.S. Government in furtherance of RFP-1 and RFP-2.

**REDACTED**

# EXHIBIT 2

**EXHIBIT 2**

**PLAINTIFFS' STATEMENT OF ISSUES OF
FACT REMAINING TO BE LITIGATED**

To the extent that Plaintiffs' Statement of Issues of Law That Remain to be Litigated

contains issues of fact, those issues are incorporated herein by reference.  Should the Court

determine that any issue identified in this list as an issue of fact is more properly considered an

issue of law, Plaintiffs incorporate such issues by reference into its Statement of Issues of Law

That Remain to be Litigated.

The parties will litigate whether:

**I.     CONVERSION**

1.     Between 1960 and 1974, Prof. Mayr developed MVA, deriving it from 516 serial

passages on chicken embryo fibroblasts of the Ankara strain of vaccinia virus (CVA).

2.     Prof. Mayr created MVA 572 while working as a professor at the University of

Munich.

3.     Prof. Mayr is widely recognized as the creator and owner of MVA.

4.     Numerous scientific sources credit Prof. Mayr with the creation and ownership of

MVA.

5.     A German legal opinion commissioned by Therion acknowledges that Prof. Mayr

is the owner of MVA 572 under German law.   Acambis was provided with a copy of this

German legal opinion in 2002.

6.      Prior to the conduct at issue in the present case, no individual or entity other than Prof. Mayr and his successor-in-interest, BN, has ever asserted a claims of ownership to any MVA strains or any intellectual property rights in MVA.

7.      Prof. Mayr transferred his ownership rights in MVA to BN in a series of agreements beginning in 1996 and including the November 6, 2002 agreement, in which the parties effected "transfer of ownership of all MVA vaccine stock and MVA viral stock in the possession of Dr. Mayr ('MVA strains') to BN" in exchange for valuable consideration.

8.      Prof. Mayr distributed MVA samples to other researchers in the field strictly for non-commercial research purposes.  With the exception of Dr. Moss, none of the researchers who received MVA from Prof. Mayr have made commercial use of MVA.

9.      Prof. Mayr provided Dr. Moss with MVA-575 and MVA 572 on two separate occasions at Dr. Moss' request on the basis that 1) Dr. Moss was planning to use the strain for expression vector work, 2) the strains were being provided strictly for research purposes only and were not to be used for any commercial purpose without express permission from Prof. Mayr; and 3) the strains would not be given by Dr. Moss to anyone or any organization without permission from Prof. Mayr.

10.     The custom in the industry at the time Prof. Mayr provided Dr. Moss with Mayr's MVA samples is that academics share biological materials for research purposes only, in the absence of an explicit agreement granting the recipient commercial rights.

11.     It is NIH's policy to encourage the transfer of materials for research purposes without a formal material transfer agreement.

12.    MVA 572 was deposited in the ECACC, which prohibits the commercial use of MVA 572 without express permission from BN.

13.    Dr. Moss passaged the sample of MVA 572 that he had received from Prof. Mayr. Pursuant to a material transfer agreement, Acambis received from NIH—through Dr. Moss—a sample of these progeny of Prof. Mayr's MVA 572.  Acambis received the MVA 572 progeny for free and without any restrictions on their future use.

14.    Dr. Moss transferred the MVA 572 progeny MVA 572to Acambis with the express knowledge that they would be used commercially by Acambis, to bid on RFP-1 and RFP-2.

15.    Acambis specifically acquired the MVA 572 progeny MVA 572 from Dr. Moss in order to use it, commercially, to bid on RFP-1 and RFP-2.

16.    Acambis used the MVA 572 progeny MVA 572 acquired from Dr. Moss to create and deliver more than 500,000 doses of MVA-based smallpox vaccine to the U.S. Government.

17.    Acambis was on notice at least as early as June 2002 that the MVA 572 sample in Dr. Moss' possession was to be used for research purposes only and that BN owned the MVA 572 sample.

18.    Therion, a company seeking MVA 572 from Dr. Moss at NIH, was informed that they would have to receive written permission from Prof. Mayr in order to receive a sample of MVA 572.

19.    Acambis declined to consummate the deal they had negotiated with Therion to

commercialize MVA upon learning that Therion could not establish title to the MVA sample received from Prof. Mayr.

20.    BN and Acambis held a high level technical meeting in June of 2002 to discuss a licensing arrangement to that would have provided Acambis with lawful access to MVA 572 and the ability to develop MVA based small pox vaccines. Under a Secrecy Agreement, BN disclosed how to make MVA-based small pox vaccine, including using MVA 572 as a starting material.  After initially expressing interest, Acambis abruptly called off negotiations.

21.    The 572 passage of MVA is particularly valuable in the creation of vaccines because it was created prior to the point in which fetal calf serum was used in the passaging of MVAs, and thus does not present a risk of infection by bovine spongiform encephalitis (BSE).

22.    The fair market value of the MVA 572 sample at the time of Acambis' conversion was approximately $14.59 million.

## II.    UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

23.    While promoting their new vaccine product, Acambis made false and misleading statements to the U.S. Government regarding Acambis' freedom to operate within the field of MVA-based smallpox vaccines.  In order to accelerate the development of its own MVA-based vaccine product, Acambis failed to advise its potential customer, NIH, and related governmental agencies that the MVA strains in possession of NIH were not available for distribution to Acambis for non-research purposes.

24.    At the time that Acambis made these statements Acambis was aware that both it and its partner, Baxter Pharmaceuticals, faced a substantial risk of litigation were it to bid on the

government RFPs without first securing intellectual property rights from Mayr and/or BN

25.     Prior to the U.S. government's release of RFP-1 for MVA-based smallpox vaccines in September 2002, all of Acambis' research and development efforts were focused on non-MVA-based smallpox vaccines produced and sold under the tradenames ACAM1000 and ACAM2000.

26.     Prior to the U.S. government's release of RFP-1 for MVA-based smallpox vaccines in September 2002, Acambis did not actively research or seek to produce a smallpox vaccine based on a weakened form of the MVA strain that would be safe for use in immunocompromised individuals, as well as for the general population.

27.     Acambis offered for sale to the U.S. Government, as "ACAM3000," an MVA-based vaccine that Acambis had neither developed nor manufactured.

28.     Under two non-disclosure agreements between the Division of Microbiology and Infectious Diseases ("DMID"), NIAID, NIH and Bavarian Nordic executed shortly before and shortly after September 11, 2001, Bavarian Nordic disclosed the technology for MVA-BN®, which involves plaque purifying MVA-572 in a manner that attenuates the virus such that it does not replicate in humans.   This disclosure led to sponsorship by the NIAID of a pre-Investigational New Drug Application (IND) with Bavarian Nordic during 2002 for IMVAMUNE.™

29.     Dr. Moss was a paid consultant to Acambis (d/b/a OraVax) until 2002 when Dr. Moss was required by the NIH ethics office to end his consultancy due to conflicts of interest. Dr. Moss received at least $30,000 in fees from OraVax in connection with his consulting.   In

connection with this consultancy, Dr. Moss provided advice and assistance to Acambis regarding their research and development of smallpox vaccines. HHS ethics requirements forced Dr. Moss to sever his consulting agreement with OraVax.

30.    Despite being informed by the ethics office at NIH in 2001 that he had to end his consulting relationship with Acambis, Dr. Moss informed Lance Gordon and Thomas Monath of Acambis that he would continue to provide informal consulting services for them. Thomas Monath confirmed Dr. Moss' offer, stating    REDACTED

31.    In the context of this informal consultancy, Dr. Moss revealed BN confidential business information to Acambis, including the status of BN's clinical trials and the status of BN's bids on RFP-1 and RFP-2. For example, on a conference call on July 10, 2002 between Acambis, Baxter and Dr. Moss, Dr. Moss revealed the status of NIH's investigation regarding BN's ownership claim to the MVA strain on which Acambis had based ACAM3000. During the same conference call, Dr. Moss revealed the following confidential BN information: 1) NIAID was conducting a clinical trial with BN's MVA at NIH supported centers; 2) BN's clinical trial materials were not yet prepared; and 3) BN was a few months behind Therion's clinical trial study. On July 11, 2002, Thomas Monath sought to elicit from Dr. Moss, in respect of Acambis and BN submitting competing bids for RFP-1, whether    REDACTED

32.    Acambis worked with Dr. Moss to evaluate and disparage BN's patent rights in MVA.

33.    Acambis    REDACTED    Thomas Monath

# EXHIBIT 3

Exhibit 3

## ACAMBIS' STATEMENT OF ISSUES OF FACT WHICH REMAIN TO BE LITIGATED

If any statement included herein as an issue of fact properly should be considered an issue of law, it should be so considered. Acambis reserves the right to revise this list based on the Court's decisions on pending motions.

### I.    CONVERSION

1.    Whether defendants allegedly converted tangible or intangible property.

2.    Whether any intangible property was merged with a transferable document.

3.    What was the MVA virus provided to defendants and how was it created.

4.    Who owned the vials of MVA 572 virus provided to NIH.

5.    If plaintiffs owned MVA 572, whether plaintiffs transferred ownership of the MVA 572 virus provided to NIH.

6.    Whether the vials of MVA 572 provided to NIH by plaintiffs were an unconditional gift.

7.    Whether plaintiffs owned any right to commercialize the MVA 572 virus provided to NIH.

8.    Who has made commercial use of MVA.

9.    Whether plaintiffs owned the MVA virus provided to defendants by NIH.

10.     Whether plaintiffs owned any right to commercialize the MVA virus provided to defendants by NIH.

11.     Whether anyone other than plaintiffs have asserted ownership over any MVA strains.

12.   Whether plaintiffs placed any restriction on use of the MVA 572 virus provided to NIH.

13.     Whether there was an implied restriction on use of the MVA 572 virus provided to NIH.

14.     Whether there was any restriction on the use of the MVA virus provided to defendants by NIH.

15.     Whether defendants' use of the MVA virus received from NIH violated any restriction imposed by plaintiffs on NIH.

16.     Whether defendants' use of the MVA virus received from NIH was "commercial."

17.     Whether defendants received a copy of the MVA virus provided to NIH.

18.     Whether NIH maintains the original MVA virus provided to NIH.

19.     Whether the MVA virus provided to NIH is replicable.

20.     Whether the MVA virus provided to defendants by NIH is replicable.

21.     Whether the MVA 572 provided to NIH constituted plaintiffs' entire supply of the virus.

22.     Whether plaintiffs ever demanded a return of the MVA 572 virus provided to NIH.

23.     Whether plaintiffs ever demanded a return of the MVA virus provided to defendants by NIH.

24.     Whether defendants ever possessed MVA to the exclusion of plaintiffs.

25.     Whether defendants' possession of the MVA virus provided to it by NIH was wrongful and, if it was not wrongful, whether plaintiffs demanded the return of the same MVA virus and defendants refused.

26.     Whether plaintiffs suffered any harm as a result of defendants' alleged conversion.

27.     Whether defendants intentionally possessed any converted property.

28.     What was the value of the converted property at the time of the alleged conversion.

29.     Whether any conversion by defendants was with actual malice.

30.     Whether Acambis knew that plaintiffs claimed ownership over the MVA virus provided to NIH.

31.     Whether Acambis earned any profit on its contracts under RFP-1 and/or RFP-2.

**Response to Plaintiffs' Statement of Issues of Fact Remaining to Be Litigated**

PSF 1.     Anton Mayr worked on MVA with others and under the direction of Prof. Herrlich, Director of the Bavarian State Vaccine Institute.

PSF 2.        Anton Mayr worked with others to passage 572 in order to develop a virus suitable for a vaccine to be used by the Bavarian State Vaccine Institute. Mayr testified that the MVA virus with which he worked was the property of the Bavarian State Vaccine Institute. The Bavarian State held patents on MVA 572 and the use thereof in smallpox vaccines, and licensed the use of MVA.

PSF 3.        Anton Mayr is recognized as one of the principal persons involved with the passaging of MVA, but not the only person responsible for creating MVA.

PSF 4.        Numerous scientific sources cite Mayr's collaboration with others.

PSF 5.        Therion commissioned a German legal opinion concerning the sample of MVA that was provided to Therion Biologics by Anton Mayr. The opinion assumes that Anton Mayr created the MVA virus while a professor at a German university and that Therion explicitly requested the virus "for research purposes only."

PSF 6.        Other individuals have asserted claims of ownership over MVA strains and intellectual property rights in MVA, including the patentees on numerous MVA patents.

PSF 7.        Anton Mayr testified that he did not understand what he was signing when he signed the series of agreements between BN and himself. In addition, there was no agreement in place in August 2001, when NIH obtained vials of MVA 572. BN did not acquire any ownership rights until November 2002, and those rights were limited to MVA in Anton Mayr's "possession."

PSF 8.    Over the past three decades, many companies have made commercial use of MVA. Some of these companies received MVA directly from Anton Mayr, who has widely distributed the virus.

PSF 9.    After an investigation, the NIH concluded that Mayr placed no restrictions on NIH's use of MVA.

PSF 10.    The custom in the industry, if any, at the time NIH received vials of MVA 572 was that restrictions on commercial use should be placed in writing.

PSF 11.    It is NIH's policy to impose restrictions on the transfer of materials through written agreements.

PSF 12.    The ECACC only prohibits the commercial use of samples of MVA 572 obtained from the ECACC. Neither the NIH nor Acambis obtained MVA 572 from the ECACC.

PSF 13.    Dr. Moss plaque-purified the sample of MVA 572 that he understood had been sent by Anton Mayr with Gerd Sutter's assistance. Pursuant to a material transfer agreement, Acambis received from NIH – through Dr. Moss – a clone of a virus that had been plaque purified from MVA 572. Acambis received the MVA 572 progeny for the purpose of bidding on a U.S. Government contract and without any restrictions on their future use.

PSF 14.    Dr. Moss transferred vials of MVA 577 to Acambis.

PSF 15.    Acambis acquired MVA 577 from Dr. Moss in order to bid on RFP-1 and RFP-2.

PSF 16.      Acambis sent MVA 577 to Baxter, which further processed it and used it to create and deliver more than 500,000 doses of MVA-based smallpox vaccine for the U.S. Government.

PSF 17.      Acambis was informed by NIH that the MVA provided to it by NIH could be used legally to bid on a government contract.

PSF 18.      Therion also obtained MVA from Dr. Moss at NIH.

PSF 19.      Acambis declined to consummate a possible transaction with Therion for a variety of reasons, including Therion's refusal to indemnify Acambis for any third party claims involving title to Therion's MVA 575.

PSF 20.      This statement is irrelevant, as it is not related to any of the issues remaining in this litigation.

PSF 21.      The 572 passage of MVA was created prior to the point in which fetal calf serum was used in the passaging of MVAs, and thus does not present a risk of infection by bovine spongiform encephalitis (BSE).  There are vaccines based on MVA viruses passaged in fetal calf serum, including the MVA-BN vaccine that BN contends presents no significant health risk

PSF 22.      The value of vials of MVA 572 at the time of Acambis' receipt from NIH is less than $10,000.00.

## II.    UNFAIR COMPETITION

1.      Whether the MVA3000 good at issue is a virus or a vaccine product.

2.      Whether defendants made literally false statements to the U.S. Government that concern MVA3000 including Acambis' freedom to operate within the field of MVA-based smallpox vaccines.

3.      Whether defendants made false statements concerning MVA3000 and Acambis' freedom to operate within the field of MVA-based smallpox vaccines to the U.S. Government that confused the U.S. Government.

4.      Whether plaintiff BN has proven that the U.S. Government was actually confused in regards to MVA3000 or Acambis' freedom to operate within the field of MVA-based smallpox vaccines.

5.      Whether defendants falsely represented the origin of their product.

6.      Whether any misrepresentations were material.

7.      Whether defendants passed off MVA3000 as BN's goods.

8.      Whether defendants' statements to the U.S. Government concerning MVA3000 or Acambis' freedom to operate within the field of MVA-based smallpox vaccines caused a likelihood of confusion as to the source, sponsorship, approval, or certification of MVA3000.

9.      Whether defendants' statements to the U.S. Government concerning MVA3000 or Acambis' freedom to operate within the field of MVA-based smallpox vaccines caused a likelihood of confusion as to affiliation, connection, or association with or certification by another.

10.      Whether defendants represented to the U.S. Government that MVA3000 had a sponsorship, approval, characteristic, ingredient, use, benefit, or quality that it did not have.

11.     Whether defendants misrepresented to the U.S. Government that MVA3000 was of a particular standard, quality, or grade.

12.     Whether defendants disparaged plaintiff BN's vaccine, Imvamune, by false or misleading representations of fact to the U.S. Government.

13.     Whether defendants engaged in unfair conduct that creates a likelihood of confusion or of misunderstanding under Delaware law concerning MVA3000 or Acambis' freedom to operate within the field of MVA-based smallpox vaccines.

14.     Whether any misrepresentation by defendants was explicitly false.

15.     What were defendants' profits, if any, resulting from the importation of MVA3000.

16.     Whether BN suffered any damages as a result of defendants' alleged unfair competition.

17.     Whether BN will suffer any prospective harm a result of defendants' alleged unfair competition.

18.     Whether Acambis earned any profits stemming from its contracts under RFP-1 and/or RFP-2.

19.     Whether any profits Acambis earned were the result of its alleged material misrepresentations to the U.S. Government.

**Response to Plaintiffs' Statement of Issues of Fact Remaining to Be Litigated**

PSF 23.     Acambis accurately described to the U.S. Government its freedom to operate within the field of MVA-based smallpox vaccines.  The NIH was

fully informed by BN of BN's claims concerning its purported rights to the MVA 572 transferred to NIH and rightfully rejected them.

PSF 24.    Acambis and its partner Baxter Pharmaceuticals have not been prevented from bidding on or performing under the U.S. Government RFPs.  No ITC remedy has issued.  BN has not sought preliminary injunctive relief in any forum.

PSF 25.    Prior to the U.S. Government's release of RFP-1 for MVA-based smallpox vaccines in September 2002, Acambis had actively researched and developed smallpox vaccines, including those produced and sold under the tradenames ACAM1000 and ACAM2000.

PSF 26.    Prior to the U.S. Government's release of RFP-1 for MVA–based smallpox vaccines in September 2002, Acambis had researched smallpox vaccines based on the MVA strain.

PSF 27.    Acambis offered for sale to the U.S. Government, as "ACAM3000," an MVA-based vaccine that Acambis developed and its partner Baxter manufactured.

PSF 28.    Dr. Moss was a paid consultant to a predecessor of Acambis, OraVax, until 2001.  Dr. Moss received permission from NIH to provide consulting services to OraVax.

PSF 29.    Dr. Moss provided information to a wide variety of scientists.

PSF 30.    Dr. Moss did not reveal any of BN's confidential business information to Acambis.

PSF 31.        Acambis evaluated, but disputed, BN's patent rights in MVA.

PSF 32.        Acambis hoped that the U.S. Government would support Acambis' U.S. Government contract bids.

PSF 33.        Acambis has not been unjustly enriched by the use of MVA.  It has lost money.

## III.    AFFIRMATIVE DEFENSES

1.        Whether plaintiffs' claims are barred by laches, including whether they have unreasonably or negligently delayed in pursuing their claims and this delay prejudiced defendants.

2.        Whether plaintiffs' claims are barred by unclean hands, including whether they made misrepresentations to the U.S. Government.

# EXHIBIT 4

## EXHIBIT 4

## PLAINTIFFS' STATEMENT OF ISSUES OF LAW
## REMAINING TO BE LITIGATED

To the extent that Plaintiffs' Statement of Issues of Fact That Remain to be Litigated contains issues of law, those issues are incorporated herein by reference.  Should the Court determine that any issue identified in this list as an issue of law is more properly considered an issue of fact, Plaintiffs incorporate such issues by reference into its Statement of Issues of Fact That Remain to be Litigated.

BN disputes the relevance, accuracy, and applicability of the cases Acambis purports to cite in defense of its issues of law.  As the present document is not a merits brief, however, but merely a succinct statement of the issues of law that remain to be litigated, BN declines to litigate the merits of these issues or otherwise engage in a war of citations with Acambis.  As such, BN presents its succinct issues of law below:

The parties have applied Delaware's conflict-of-laws rules to Plaintiffs' conversion claim and agree that Massachusetts law applies to this claim.

## I.     CONVERSION

**1.**      Whether, pursuant to § 42 of the German Employee Invention Act as it existed between 1960 and 1974, Prof. Anton Mayr gained ownership of MVA strains he created during this period, including MVA 572.

**2.**      Whether, under applicable German law, Prof. Mayr owned the specific vial of MVA 572 at issue in this case until his assignment of rights and subsequent transfer of ownership of the virus to Bavarian Nordic.

**3.**      Whether Dr. Bernard Moss ever acquired from Prof. Mayr or Bavarian Nordic title to MVA 572 or a commercial license to that virus with the ability to sublicense.

**4.**      Whether living organisms, including the specific vial of MVA 572 at issue in this case, are tangible property susceptible of being converted, under Massachusetts law.

**5.**      Whether, when living organisms are converted and then bred, adversely to the rights of their true owner, the owner has a claim to the progeny of his converted property.

**6.**      Whether Bavarian Nordic is entitled to judgment in its favor on its conversion claim.

**7.**      Whether Acambis' knowing conversion of the specific vial of MVA 572 and/or its progeny was sufficiently culpable as to justify the imposition of punitive damages.

## II.     UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

**1.**      Whether Acambis' actions, including harvesting of the self-replicating progeny of MVA 572 and offering that progeny for sale, amount to "reverse passing off" under the Lanham Act.

**2.**     Whether Acambis' actions, including using the trade name ACAM3000 to identify the MVA virus seed itself and the packaged form of the MVA virus it sold to the U.S. Government, constitute false representation of origin under the Lanham Act.

**3.**     Whether the end product that should be considered under the Lanham Act is an MVA virus when the vaccine Acambis sold was simply repackaged progeny of Bavarian Nordic's specific vial MVA 572 under the name "ACAM3000".

**4.**     Whether Acambis' statements made to the U.S. Government that using the converted MVA 572 strain "eliminates the manufacturing risks associated with the Therion strain" constitutes false advertising under the Lanham Act and Delaware state law when Acambis knew that they did not have good title allowing them to commercialize the specific vial of MVA-572 and/or its progeny.

**5.**     Whether Acambis' statements made to the U.S. Government that Acambis was not aware of any third-party intellectual property rights that would preclude their development of an MVA-based vaccine to sell to the U.S. Government constitutes false advertising under the Lanham Act and Delaware state law.

**6.**     Whether Acambis' labeling of its MVA virus product ACAM3000 constitutes consumer confusion under the Lanham Act and Delaware state law.

**7.**     Whether there is a remedy under Delaware law for unfair trade practices for an objectionable pattern of business practices and misconduct where a party: (a) misrepresented the origin of the MVA vaccine referred to as "ACAM3000," (b) misrepresented material facts concerning its freedom to operate in the field of MVA vaccines, (c) misrepresented material facts concerning the nature, characteristics, or qualities of a competitor's goods or services to a customer and U.S. Government agencies, (d) engaged in a long-standing pattern of misconduct (including conspiring with a U.S. Government employee to obtain a competitor's confidential business information) intended to deceive the U.S. Government and prejudice Bavarian Nordic's ability to receive lucrative contracts from the U.S. Government.

**8.**     Whether, pursuant to the Lanham Act, the Delaware Deceptive Trade Practices Act, and Delaware common law, Plaintiffs are entitled to relief on its claims of unfair competition and unfair trade practices.

**9.**     Whether, pursuant to the Lanham Act, the Delaware Deceptive Trade Practices Act, and Delaware common law, Plaintiffs are entitled to punitive damages, costs and attorneys fees.

# EXHIBIT 5

Exhibit 5

## ACAMBIS' STATEMENT OF ISSUES OF LAW WHICH REMAIN TO BE LITIGATED

If any statement included herein as an issue of law properly should be considered an issue of fact, it should be so considered. Acambis reserves the right to revise this list based on the Court's decisions on pending motions.

**I.     CONVERSION**

    **A.     Generally**

1.     Whether Massachusetts or Maryland law govern plaintiffs' conversion claim. *See Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc*., 295 F. Supp. 2d 430, 434 (D. Del. 2003); *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

2.     Whether the right to commercialize a virus is tangible property or intangible property, which cannot be converted. *See Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702, at *77 (D. Md. Sept. 5, 2006) citing *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 562, 731 A.2d 957 (1999); *see also Jayson Assoc., Inc. v. United Parcel Serv.*, No. 04-10771-RWZ, 2004 U.S. Dist. LEXIS 13191, at *4 (D. Mass. July 15, 2004); *Discover Realty Corp. v. David et al.*, 2003 Mass. App. Div. 172, 175 (Mass. App. Dec. 2003); *Exp. Lobster Co. v. Bay State Lobster Co*., No. 92-6348-E, 1994 Mass. Super. LEXIS 90, at *21 (Mass. Super. Ct. Oct. 31, 1994).

3.     Whether the right to commercialize can be converted. *See Miles, Inc. v. Scripps Clinic and Research Foundation et al.*, 810 F. Supp. 1091, 1094-99 (S.D. Cal. 1993) ("*Miles*").

      4.      Whether the use of MVA 572 or its progeny in a smallpox vaccine has been dedicated to the public as a result of prior patents and patent deposits.

**B.    Ownership**

      5.      Whether ownership of any MVA devolved upon Mayr given the fact that all of the material that he worked with was the property of Bavarian Vaccine Institute.  German Law on Employees Inventions § 42; Article 5 III of the German Constitution.

      6.      Under German law ownership of the vials of MVA 572 was transferred to NIH.  If there was any implicit agreement between NIH and Mayr restricting the use of those vials, whether German law would authorize a cause of action against Acambis.  *See* Tilmann Report at ¶¶15-16.

**C.    Interference with Right to Possess**

      7.      Whether possessing a copy – and not the original – of a replicable MVA virus when plaintiffs retain additional stocks of the virus can constitute conversion. *FMC Corp. v. Cap. Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990); *Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702, at *78 (D. Md. Sept. 5, 2006); *Duty Free Americas, Inc. v. Legg Mason Wood Walker, Inc.*, No. 24-C-04-005696, 2005 WL 914395, at *2 (Md. Cir. Ct. Jan. 13, 2005); *Home Paramount Pest Control Cos., Inc. v. FMC Corp. Prods. Group.*, 107 F. Supp. 2d 684, 693 (D. Md. 2000); *Fainsbert v. Cuthbert*, No. 06-2017, 2006 WL 2096057, at *5-6 (D.N.J. July 27, 2006); *Pagliai v. Del Re*, No. 99-CIV-9030(DLC), 2001 WL 220013, at *5-7 (S.D.N.Y. Mar. 7, 2001); *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001).

D.    **Damages**

8.    Whether and to what extent damages or other remedies are available to plaintiffs.

II.    **UNFAIR COMPETITION**

A.    **Under the Lanham Act**

9.    Whether the end product that is regulated by the Lanham Act is an MVA virus or an MVA based vaccine.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 26-27, 37 (2003); *Gen. Univ. Sys. Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir. 2004); *Monsanto Co. v. Syngenta Seeds, Inc.*, Civ. No. 04-305, 2006 U.S. Dist. Lexis 54515 (D. Del. Aug. 4, 2006) (Robinson, C.J.); *Schiffer Publ'g, Ltd v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 618 (E.D. Pa. 2004); *Bretford Mfg., Inc. v. Smith System Mfg.*, 286 F. Supp. 2d 969, 970-72 (N.D. Ill. 2003), *aff'd* 419 F.3d 576 (7th Cir. 2005).

B.    **Under Delaware Law**

10.    Whether BN's unfair competition claims can be considered under Delaware law.  *ACCU Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1212 (D. Del. 1994); 6 Del. C. § 2007 (2006).

11.    Whether BN's unfair competition claims under state law are barred by *Dastar* and its progeny.  *Monsanto Co. v. Syngenta Seeds, Inc.*, Civ. No. 04-305, 2006 U.S. Dist. Lexis 54515 (D. Del. Aug. 4, 2006).

12.    Whether statements that merely imply that Acambis had the authority to develop MVA3000 for the U.S. Government could violate the Delaware Deceptive Trade Practices Act.  *Delaware Solid Waste Auth. v. Eastern Shore Env., Inc.*, C.A. No. 1472-K, 2002 WL 537691, at *5 (Del. Ch. March 28, 2002).

13.    Whether claims brought under sections of the Delaware Deceptive Trade Practices Act that refer to "likelihood of confusion" must be based on trademarks, service marks, certification marks, or collective marks. *Delaware Solid Waste Auth. v. Eastern Shore Env., Inc.*, C.A. No. 1472-K, 2002 WL 537691, at *5 (Del. Ch. March 28, 2002).

14.    Whether BN's claim of a pattern and practice of unfair conduct is cognizable under subsection (12) of the Delaware Deceptive Trade Practices Act. *Delaware Solid Waste Auth. v. Eastern Shore Env., Inc.*, C.A. No. 1472-K, 2002 WL 537691, at *5 (Del. Ch. March 28, 2002).

## III.    RELIEF

15.    Whether plaintiffs can collect damages for conversion based on Acambis' purported commercial profits. *See United States v. Arora*, 860 F. Supp. 1091 (D. Md. 1994); *Clapp v. Haynes*, 414 N.E.2d 359 (Mass. App.Ct 1980).

16.    Whether plaintiffs may recover the MVA3000 that is the property of the U.S. Government in this litigation where the U.S. Government is not a party, and whether such a request was adequately plead. *See* Fed. R. Civ. P. 19; *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 162-63 (D. Del. 2001) (granting summary judgment for failure to join necessary government entity); 15 U.S.C. § 1118.

17.    Whether BN adequate plead any of its requests for relief.  6 Del. C. § 2533; 6 Del. C. § 2533; 15 U.S.C. § 1117..

18.    Whether BN can obtain relief under the Delaware Deceptive Trade Practices Act. *Grand Ventures v. Whaley*, 622 A.2d 655 (Del. Super. Ct 1993), aff'd, 632 A.2d 63 (Del. 1993).

19.    Whether the Court should enter judgment in excess of the actual damages proved.  6 Del. C. § 2533; 15 U.S.C. § 1117; *Grand Ventures v. Whaley*, 622 A.2d 655 (Del. Super. Ct 1993), aff'd, 632 A.2d 63 (Del. 1993).

20.    Whether under the principles of equity and on terms that the court considers reasonable BN is entitled to injunctive relief.  6 Del. C. § 2533; 15 U.S.C. § 1115.

21.    Whether this is an exceptional case and the Court should award reasonable attorneys' fees and costs to the prevailing party.  6 Del. C. § 2533; 15 U.S.C. § 1117.

22.    Whether BN adequately plead a request for the destruction or return of all MVA viruses and MVA3000 vaccines in Acambis' possession.  15 U.S.C. § 1118.

# EXHIBIT 6

**Exhibit 6 - Pretrial Order - Civil Action No. 05-614 (SLR)**

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 1 | | U.S. Patent No. 6,761,893 | BNITC00322087-322128 | | | |
| 2 | | U.S. Patent No. 6,913,752 | BNITC00322130-322155 | | | |
| 3 | | Assignment Agreement between Bavarian Nordic and Prof. Dr. Dr. h.c. mult. Anton Mayr dated 11-06-02 | BNITC0068086-68089 | | | |
| 4 | | "US Meetings November 2001, NIH informal meeting, November 26" | BNITC00025923-25928 | | | |
| 5 | | Sutter thesis entitled "The Genome of the Vaccinia Virus Ankara Strain and Its Alteration during Attenuation" (1989) | AC0564030 - 0564110 | FRE 402, 802, 901 | | |
| 6 | | Mayr et al. "Origin, Properties and Utilization of the Attenuated Vaccinia Strain MOA" | AC0357554-0357570 | | | |
| 7 | | E-mail from Peter Wulff to Andreas Hartmann English translation of Anton Mayr | BNITC00089634-89628 | | | |
| 8 | | Mayr letter to Moss dated 9/19/95 regarding sending MVA samples | BNITC00091945 | | | |
| 9 | | Mowatt Letter to Wulff dated 7/15/02 re Bavarian Nordic's Rights to the Mayr's Strain | NIH00333-NIH00334 | | | |
| 10 | | Letter to Mayr from Wulff Consultancy Agreement between Bavarian Nordic and Mayr | BNITC00091927 -00091931 | | | |
| 11 | | Cynthia Lee's Handwritten notes dated 7/10/02 | AC0011265-0011269 | | | |
| 12 | | IND dated 8/20/05 for MVA3000 | AC0006099-6129 | | | |
| 13 | | NIH letter to Roger McAvoy dated 1/17/03 from regarding Acambis proposal revision | AC0012086-0012087 | | | |
| 14 | | Materials Transfer Agreement | AC0006735-0006737 | | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 15 | | Memo regarding Minutes of 3 Way meeting (Acambis Therion and Baxter) on MVA RFP proposal | AC0154359-60 | FRE 402 | | |
| 16 | | Anton Mayr Declaration | No Bates | *see below | | |
| 17 | | NIH brochure "Principles and Guidelines for Recipients of NIH Research Grants and Contracts" | No Bates | FRE 402, Incomplete | | |
| 18 | | Letter from McAvoy to NIH regarding IP rights, part of Acambis response to RFP NIH-NIAID-DMID-03-44. | AC0012400-0012402 | | | |
| 19 | | Terms and conditions of supply cell lines from ECACC's general collection | No Bates | FRE 402, 901 | | |
| 20 | | Peter Wulff letter to Acambis dated 3/27/03 from regarding Freedom to Operate | BNITC00091994-95 | | | |
| 21 | | June 12, 2002 slide presentation | BNITC00099456-99523 | FRE 402 | | |
| 22 | | "Review of BN-Acambis/Baxter IP Position Meeting Minutes" | AC0011285-86 | | | |
| 23 | | Mayr letter to Moss dated 9/12/01 regarding the transfer | BNITC00091944 | | | |
| 24 | | Anton Mayr letter to BN dated 6/10/96 | BNITC0091920-0091921 | No Translation | | |
| 25 | | U.S. Patent No. 6,682,743 (Mayr) | CX-71:1-8 | FRE 402 | | |
| 26 | | U.S. Patent No. 6,805,870 (Mayr) | CX-72:1-20 | FRE 402 | | |
| 27 | | Meeting minutes dated 8/29/02 between Therion, Baxter and Acambis | TBC00597-00598 | FRE 402 | | |
| 28 | | E-mail from Monath to Lee regarding acquisition of MVA | AC0011240 | | | |
| 29 | | Agreement between Bavarian Nordic and Anton Mayr dated 5/28/96 Consultancy | BNITC00091928-91931 | Duplicate | | |
| 30 | | Cynthia Lee e-mail | AC0011091 | FRE 402 | | |
| 31 | | Secrecy Agreement between Bavarian Nordic and DMID, NIAID, NIH | CX-79C:1-2 | | | |
| 32 | | NIH-NIAID_DMID-03-44 (RFP-1) | AC0008299-8368 | | | |

*Objections to BN016: FRE 802, 402, 901, Foundation, No Translation

DCDOCS/683614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 33 | | NIH-NIAID-DMID-04-49 (RFP-2) | AC0008369-0008432 | | | |
| 34 | | (RFP-3) Number DHHS-ORDC-V&B | CX-82:1-79 | | | |
| 35 | | BN's Response to RFP-1 | CX-83C:1-289 | | | |
| 36 | | BN's Response to RFP-2 | CX-84C:1-188 | | | |
| 37 | | BN's Response to RFP-3 | CX-85C:1-372 | | | |
| 38 | | Acambis Response to RFP-1 | AC0330661-0330993 | | | |
| 39 | | Acambis Response to RFP-2 | AC0358797-AC0358942 | | | |
| 40 | | Acambis Response to RFP-3 | AC0076574-AC0076750 | | | |
| 41 | | Secrecy Agreement between Bavarian Nordic and Acambis | AC0011312-11315 | FRE 402 | | |
| 42 | | Acambis Press release "MVA3000" | CX-91:1 | | | |
| 43 | | Acambis press release dated Dec. 2 2005 "Acambis completes delivery of 500,000 doses of MVA3000 smallpox vaccine to US Government" | CX-93:1 | | | |
| 44 | | Correspondence between Therion and Mayr | BNITC0003988-00033990 | | | |
| 45 | | Oravax Consultancy Agreement | AC0011586-11589 | FRE 402, 403 | | |
| 46 | | Business Proposal Response to RFP-3 | AC0331103-331314 | | | |
| 47 | | MVA Project Meeting Minute Notes | AC0010057-0010059 | FRE 402 | | |
| 48 | | E-mail regarding BN clinical experience with 3rd generation smallpox vaccine. | AC0139476-0139478 | FRE 402 | | |
| 49 | | Cynthia Lee E-mail regarding BN info | AC0140103-0140104 | FRE 402 | | |
| 50 | | Acambis MVA Presentation | AC0359490-0359502 | FRE 402 | | |
| 51 | | Cynthia Lee E-mail regarding BN market intelligence presentation | AC0076387 | FRE 402 | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 52 | | Rich Weltzin e-mail regarding MVA timesheets | AC0363845 | FRE 402 | | |
| 53 | | E-mail Preliminary results and 2004 bonus | AC0020702-704 | FRE 402 | | |
| 54 | | Cynthia Lee E-mail regarding BN info in MVA IB | AC0297401-402 | FRE 402 | | |
| 55 | | Cynthia Lee E-mail regarding conversation with Peter Wulff | AC0297398-297400 | FRE 402 | | |
| 56 | | Cynthia Lee E-mail regarding HIV MVA and BN | AC0297759-0297761 | FRE 402 | | |
| 57 | | Cynthia Lee E-mail regarding Feedback from meeting with BN | AC0316076-78 | FRE 402 | | |
| 58 | | Cynthia Lee E-mail regarding Acambis Inc. Letter regarding BN Communications | AC0010049-0010050 | FRE 402 | | |
| 59 | | Press Release Teleconference with FDA | AC0009601 | FRE 402 | | |
| 60 | | BN MVA Presentation at the Phacilitate Spring Vaccine Symposium - with handwritten notes | AC0006759-6781 | FRE 402, 901, Sponsorship | | |
| 61 | | Handwritten notes BN meeting | AC0012620-12624 | FRE 402 | | |
| 62 | | Cynthia Lee e-mail regarding Monath's slides for MVA presentation | AC0138299-138302 | FRE 402 | | |
| 63 | | Bernie Moss replication data for various MVA clones was provided to Acambis along with strain | AC0010999 | FRE 402, Incomplete | | |
| 64 | | Handwritten notes 6/14/02 meeting between Acambis and NIH | AC0011271 | | | |
| 65 | | Cynthia Lee E-mail dated 8/27/02 regarding executing the MTA for the MVA strain from NIH | AC0011255-11257 | | | |
| 66 | | E-mail Correspondence regarding signing the MTA for the MVA strain from NIH | AC0011258-11261 | *see below | | |
| 67 | | Monath Moss e-mail correspondence dated 8/24/02 regarding signing the MTA for the MVA strain from NIH | AC0011262-11263 | Duplicate | | |
| 68 | | E-mail Correspondence between Monath and Lee regarding Acambis decision to go with Therion strain rather than Moss strain | AC0011264 | | | |

*Objections to BN066: Incomplete, Partially Duplicative

DCDOCS/683614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 69 | | Handwritten notes conference call with B. Moss and Baxter | AC0011265-11269 | Duplicate | | |
| 70 | | E-mail re: Moss teleconference | AC0011270 | | | |
| 71 | | E-mail from Monath to Exec. Committee dated 3/11/04 regarding Moss vs. Acambis comments on MVA | AC0155883 | | | |
| 72 | | History of MVA tree and e-mail regarding same | AC0011000-11002 | | | |
| 73 | | Cynthia Lee e-mail regarding Therion MVA and attached Material Inventory Form | AC0010979-203870 | | | |
| 74 | | Vollstedt et al., J. of Virology, 78(8): 3846-3850 (2004) | BNITC00333502-00333506 | FRE 402 | | |
| 75 | | Scientific Report authored by Mark Suter entitled "MVA-BN does not replicate in ...AGR129 mice" | BNITC00327755-327758 | FRE 402 | | |
| 76 | | Cynthia Lee/Thomas Monath e-mail regarding RFP-1 and sequencing info | AC0058863 | FRE 402 | | |
| 77 | | Cynthia Lee e-mail regarding BN's data for MVA trial | AC0140041-149384 | FRE 402 | | |
| 78 | | E-mail correspondence comparing the immunogenicity of MVA-BN and ACAM 3000 and supporting data | AC0139773-405 | FRE 402 | | |
| 79 | | E-mail from Moss to Monath regarding MVA tree and history | AC0140496-97 | Duplicate | | |
| 80 | | E-mail to Monath and Lee from Atkinson regarding decision to discontinue negotiations with Therion | AC0011074 | | | |
| 81 | | Handwritten notes dated 1/6/03 meeting with Bernie Moss | AC0011243-0011242 | FRE 402, 802 | | |
| 82 | | 2003 Mayr Agreement | BNITC00094849-00094853 | | | |
| 83 | | 1999 Mayr Agreement | BNITC00319166-319169 | | | |
| 84 | | 2001 Mayr Agreement | BNITC00319175-319179 | FRE 901 | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 85 | | Letter dated 3/22/02 to Higgins from Hartmann regarding potential collaboration term sheet | AC0011679-11681 | | | |
| 86 | | Therion Presentation to Acambis dated 6/13/02 | TBC00019-48 | | | |
| 87 | | Monath e-mail to Panicali dated 6/26/02 | TBC00575 | | | |
| 88 | | Acambis e-mail to Therion requesting Therion get Mayr permission to use strain | TBC00492 | | | |
| 89 | | Woodrich (Therion) e-mail to Atkinson (Acambis) dated 12/18/02 setting out limited indemnity provision | TBC00672 | | | |
| 90 | | Therion E-mail forwarding Final Draft of Licensing agreement (contains cost information) | TBC00675-00721 | | | |
| 91 | | Therion E-mail to Acambis outlining cost issues with strain; indemnity issue | TBC00722-00723 | FRE 802 | | |
| 92 | | Therion letter dissolving relationship | TBC00724-00725 | | | |
| 93 | | Mazzara (Therion) e-mail to Moss (NIH) dated 2/21/02 requesting MTA and other info | TBC00857-00858 | FRE 802 | | |
| 94 | | Blake (Therion) e-mail to Mowatt (NIH) dated 4/10/02 reflecting knowledge of BN position and current situation | TBC00853-00854 | | | |
| 95 | | Panicali (Therion) letter to NIAID dated 6/2/04 requesting further expansion of "rights" to strain | TBC00949-50 | | | |
| 96 | | NIAID MTA to Therion | TBC01016-01018 | | | |
| 97 | | Wyatt Letter and Gov't docs documenting the entire history of the strain (includes a BioReliance doc) | TBC00913-00946 | | | |
| 98 | | Gritz's handwritten notes regarding Mayr and NIH communications | TBC00831-00852 | | | |
| 99 | | Cover e-mail and document outlining the properties of TBC-MVA | TBC01046-01051 | FRE 402 | | |
| 100 | | Higgins memo regarding Therion Position on IP rights | TBC00592-00594 | | | |

DCDOCS/683614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 101 | | November 6 2002 letter from Anton Mayr to Bernard Moss requesting details of his activities with MVA obtained from Mayr | BNITC00318207-00318208 | | | |
| 102 | | November 6 1997 letter from Geoff Smith to Mayr requesting permission to transfer samples to Rowlands | BNITC0091855 | | | |
| 103 | | September 26 1995 Mayr Declaration of Value to Therion | CX-209C:1 | | | |
| 104 | | June 23 1997 Britton Letter to Blanchard asking Mayr permission to use MVA, enclosed in following August 8 1997 Blanchard letter asking Mayr permission for Britton to use MVA | BNITC00034097 | FRE 802, Foundation | | |
| 105 | | April 14 2004 Williams (NIH) letter to Acambis (Atkinson) forwarding Acambis-NIAID CDA | AC0011583-0011585 | FRE 402 | | |
| 106 | | November 30 1997 E-mail from Peter Wulff to Geoff Smith promising MVA for research purposes only | BNITC00091853-00091854 | | | |
| 107 | | March 3 2003 Letter from Nick Higgins (Acambis) to Peter Wulff confirming use of MVA strain | AC0012480 | | | |
| 108 | | February 28 Letter from Wulff to Acambis asserting IP rights in MVA strain | AC0012482-0012482 | | | |
| 109 | | Acambis Chronology of letters and Activities | AC0012414-0012415 | Foundation | | |
| 110 | | Woodrich e-mail to Atkinson dated 12/20/02 incorporating e-mail regarding Mayr permission | TBC00590-591 | Duplicate | | |
| 111 | | Higgins e-mail to Woodrich dated 1/15/03 attaching letter delineating reasons Acambis cannot use TBC-MVA | TBC00592-00594 | Duplicate | | |
| 112 | | November 6 2002 letter from Anton Mayr to John Montagne | BNITC00091964-0091965 | | | |
| 113 | | Mowatt e-mail to Wulff dated 5/28/02 | BNITC00091940-91943 | | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 114 | | Mayr letter to Blanchard dated 9/1/95 restricting use of MVA to "scientific" use | BNITC0091857 | | | |
| 115 | | Blanchard statement promising to use MVA only for scientific work | BNITC0091851 | | | |
| 116 | | Moss letter to Mayr dated 4/23/03 | BNITC00091986-00091987 | | | |
| 117 | | Montagne letter to Wulff dated 6/30/03 | BNIT00091973-00091974 | | | |
| 118 | | Wulff letter to Montagne dated 3/27/03 | BNITC00091993 | | | |
| 119 | | Wulff letter to Pamela McInnes dated 12/13/02 | BNITC003l8210-00318212 | | | |
| 120 | | Montagne letter to Mayr dated 12/10/02 acknowledging receipt of letter | BNITC00092006 | | | |
| 121 | | Acambis Responses to Cost Questions | AC0011856-AC0011866 | | | |
| 122 | | NIH Contract Awards 2003 | CX-236.1-5 | | | |
| 123 | | NIH Contract Awards 2004 | CX-237:1-6 | | | |
| 124 | | History of MVA tree and e-mail regarding same | AC0140496-AC014097 | Triplicate | | |
| 125 | | Mayr letter to Moss (2001) regarding MVA-572 | AC006782 | Duplicate | | |
| 126 | | Monath e-mail to Moss dated 8/28/02 regarding MVA shipment | AC0389584-85 | | | |
| 127 | | Notes regarding Moss transfer of MVA | AC0011243-244 | Duplicate | | |
| 128 | | Anton Mayr CV | BNDEL001270-1272 | *see below | | |
| 129 | | Mayr et. al, Infection 3 (1975) No. 1 | | Duplicate | | |
| 130 | | Mayr, History of Variola, Smallpox Eradication and MVA | BNITC00091887-91902 | | | |
| 131 | | Hartmann e-mail to Higgins 7/25/02 from re BN Acambis license negotiation | AC0528358-60 | | | |
| 132 | | Therion-Acambis-Baxter MVA Collaboration Agreement Term Sheet dated 8/12/02 | AC0012419-20 | | | |

*Objection to BN128: FRE 802, 901, Foundation, Untimely Production

DCDOCS/682614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 133 | | Atkinson e-mail to Woodrich and Panicali dated 12/22/02 re NIH MVA strain | TBC00580 | | | |
| 134 | | Lee e-mail to Weltzin dated 12/26/02 regarding Therion strain vs NIH strain | AC0336880-82 | | | |
| 135 | | Atkinson e-mail to Higgins, McAvoy, and Stay dated 1/15/03 regarding Acambis' decision to stop Therion negotiation | AC0336980 | | | |
| 136 | | Einhorn CV | Produced with Expert Report | FRE 802 | | |
| 137 | | Straus CV | Produced with Expert Report | FRE 802 | | |
| 138 | | Drillien CV | Produced with Expert Report | FRE 802 | | |
| 139 | | Jarosz CV | Produced with Expert Report | FRE 802 | | |
| 140 | | Anton Mayr Published CV- Hospital-Hygiene, Gesundhelswesen und Desiniektion 1/76 | Not Produced | FRE 802, Not Produced | | |
| 141 | | Moss Letter to Mayr dated 9/14/95 | BNDEL001273 | | | |
| 142 | | Moss Letter to Mayr dated 8/3/01 | BNDEL001259 | | | |
| 143 | | Request for Approval of Outside Activity dated 04/21/1998 | DBM001-4 | FRE 402, 403 | | |
| 144 | | Request for Approval of Outside Activity dated 03/10/99 | DBM009-013 | FRE 402, 403 | | |
| 145 | | Oravax Consulting Agreement dated 03/30/98 | DBM014-017 | FRE 402, 403 | | |
| 146 | | Request for Approval of Outside activity dated 11/21/2000 | DBM018-020 | FRE 402, 403 | | |
| 147 | | Oravax Consulting Agreement dated 11/3/00 | DBM021-025 | FRE 402, 403 | | |
| 148 | | Memo re requested compensation information from B. Moss to NIAID Ethics Office dated 5/28/04 | DBM026 | FRE 402, 403 | | |
| 149 | | Memo from Deputy Ethics Counselor, NIAID to Staff dated 2/23/01 | DBM027-028 | FRE 402, 403 | | |
| 150 | | Memo from Deputy Ethics Counselor, NIAID to Staff dated 3/15/02 | DBM029-034 | FRE 402, 403 | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 151 | | Correspondence from Monath to Moss dated 1/18/99 | DBM035-038 | FRE 402, 403 | | |
| 152 | | Moss Oravax Invoice dated Aug. - Dec. 1998 | DBM039 | FRE 402, 403 | | |
| 153 | | Moss Oravax Invoice dated Jan. 1, 1999-March 31, 1999 | DBM040 | FRE 402, 403 | | |
| 154 | | Moss Oravax Invoice dated April 1, 1999 - June 30, 1999 | DBM041-043 | FRE 402, 403 | | |
| 155 | | Moss Oravax Invoice dated July 1, 1999 - September 30, 1999 | DBM044 | FRE 402, 403 | | |
| 156 | | Moss Oravax Invoice dated Oct. 1, 1999 - March 31, 2000 | DBM 045 | FRE 402, 403 | | |
| 157 | | Moss Oravax Invoice dated April 1, 2000 - September 30, 2000 | DBM046 | FRE 402, 403 | | |
| 158 | | Moss e-mail to Monath dated 12/20/99 | DBM 047-49 | FRE 402, 403 | | |
| 159 | | Moss e-mail to Monath dated 2/27/00 | DBM050-51 | FRE 402, 403 | | |
| 160 | | Moss e-mail to Monath dated 2/28/00 | DBM 052-055 | FRE 402, 403 | | |
| 161 | | Moss e-mail to Monath dated 3/7/00 | DBM056-057 | FRE 402, 403 | | |
| 162 | | Monath e-mail to Moss dated 4/24/00 | DBM058 | FRE 402, 403 | | |
| 163 | | Monath e-mail to Moss dated 7/2/00 | DBM059-61 | FRE 402, 403 | | |
| 164 | | Monath e-mail to Moss dated 10/24/00 | DBM062-063 | FRE 402, 403 | | |
| 165 | | Moss e-mail to Monath dated 10/24/00 | DBM064-066 | FRE 402, 403 | | |
| 166 | | Monath e-mail to Moss dated 10/25/00 | DBM067-069 | FRE 402, 403 | | |
| 167 | | Monath e-mail to Moss dated 10/25/00 | DBM070-072 | FRE 402, 403 | | |
| 168 | | Monath e-mail to Moss dated 10/25/00 | DBM073-075 | FRE 402, 403 | | |
| 169 | | Monath e-mail to Moss dated 11/3/00 | DBM076 | FRE 402, 403 | | |
| 170 | | Davis e-mail to Moss dated 11/3/00 re Invoice | DBM077 | FRE 402, 403 | | |
| 171 | | Monath e-mail to Moss dated 11/3/00 | DBM078 | FRE 402, 403 | | |
| 172 | | Monath e-mail to Moss dated 1/12/01 | DBM079-80 | FRE 402, 403 | | |
| 173 | | Moss e-mail to L. Gordon dated 1/12/01 | DBM081-082 | FRE 402, 403 | | |
| 174 | | L. Gordon e-mail to Moss dated 1/15/02 | DBM083-084 | FRE 402, 403 | | |
| 175 | | L. Gordon e-mail to Moss dated 1/16/01 | DBM085-87 | FRE 402, 403 | | |

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 176 | | B. Moss 1099-Miscellaneous Income for 1998-2000 | DBM088 | FRE 402, 403 | | |
| 177 | | Table of B. Moss Oravax Invoices | DBM089 | FRE 402, 403 | | |
| 178 | | B. Moss Confidential Financial Disclosure Forms | DBM090-97 | FRE 402, 403 | | |
| 179 | | MVA 1 and MVA 2 Revenue & Profit 2003-2005 | ACDEL000001 | | | |
| 180 | | Gross Profit Margin Documents | ACDEL000002-7 | | | |
| 181 | | RFP-1 and RFP-2 Profits | ACDEL000008-533 | | | |
| 182 | | Acambis RFP-1 and RFP-2 Financials | ACDEL002953-2972 | | | |
| 183 | | Acambis RFP-1 and RFP-2 Financials | ACDEL003886-003897 | | | |
| 184 | | Acambis RFP-1 and RFP-2 Financials | ACDEL003907-003914 | | | |
| 185 | | Acambis RFP-1 and RFP-2 Financials | ACDEL003932-004391 | | | |
| 186 | | Acambis RFP-1 and RFP-2 Financials | ACDEL004398-004448 | | | |
| 187 | | Acambis RFP-1 and RFP-2 Financials | ACDEL004476-004885 | *see below | | |
| 188 | | E-mail from Nick Higgins from R. Woodrich dated 7/8/02 re collaboration proposal | TBC00018 | | | |
| 189 | | Draft of Acambis and Baxter's Proposal for a license with Therion dated 9/30/03 | TBC00632-00671 | | | |
| 190 | | Gritz Letter to Mayr dated 09/26/95 | AC0012424 | | | |
| 191 | | Moss e-mail to Monath *et al.* dated 8/24/02 regarding MTA | AC0348482-84 | | | |
| 192 | | Lee e-mail to McAvoy dated 1/13/03 | AC0336945 | | | |
| 193 | | Monath e-mail to Kleanthous et al. dated 6/21/03 "lab beneficiary" | AC0450441-42 | FRE 402, 403 | | |
| 194 | | B. Moss e-mail to Monath dated 5/08/04 | AC0410318 | FRE 402, 403 | | |
| 195 | | Moss e-mail to Monath dated 6/11/04 | AC0409496 | FRE 402, 403 | | |
| 196 | | Monath e-mail to Falkner et al. dated 7/01/03 | B003941 | FRE 402, 403 | | |

*Objection to EN187: FRE 402, 403, 611, 802, 901

DCDOCS/683614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 197 | | Monath e-mail to Moss dated 07/11/02 "shoe-in" | AC0349038 | FRE 402, 403 | | |
| 198 | | Acambis Responses to Questions on MVA 03-44 Business Proposal | AC0012119 | Incomplete | | |
| 199 | | Acambis Letter to NIH dated 11/14/03 | AC0012113 | | | |
| 201 | | BN Equity Research Document | AC0011704 | FRE 402 | | |
| 202 | | Chief Business Officer's Report by Higgins dated 1/12/03 | AC0217051-52 | | | |
| 203 | | Monath e-mail to McAvoy et al. dated 12/26/04 re meeting with Therion this afternoon | AC0336880 | Duplicate | | |
| 204 | | Lee e-mail to Weltzin dated 1/15/2003 | AC0336980 | Duplicate | | |
| 205 | | McAvoy e-mail to Atkinson et al dated 12/23/02 regarding meeting with Therion | AC0336880-82 | Duplicate | | |
| 206 | | Atkinson e-mail to Richard Woodrich; Dennis Panicali dated 12/22/02 | TBC00880 | Duplicate | | |
| 207 | | Acambis Plan to License and Patent New MVA Vaccine dated 9/27/02 | AC0012101 | *see below | | |
| 208 | | Acambis Plan to License and Patent New MVA Vaccine dated 2/4/04 | AC0012089 | Incomplete | | |
| 209 | | Lee e-mail to Weltzin et al. dated 9/19/02 re technical proposal conference call | AC0336538-39 | | | |
| 210 | | Monath e-mail to Moss dated 11/27/03 | AC0387217-18 | FRE 402 | | |
| 211 | | E-mail to C. Lee from Monath dated 8/21/02 regarding talk with Moss about Therion talks | AC0011264 | Duplicate | | |
| 212 | | E-mail from Moss to Monath dated 6/11/04 | AC40946-99 | *see below | | |
| 213 | | Monath e-mail to Moss dated 6/07/04 | AC0409328-29 | Duplicate | | |
| 214 | | Handwritten Notes dated 6/14/02 | AC0011271 | Duplicate | | |
| 215 | | Monath e-mail to Moss dated 1/18/03 | AC0370790 | FRE 402 | | |
| 216 | | Monath e-mail to Kleanthous et al. dated 6/21/03 | AC0450441-442 | *see below | | |
| 217 | | List of Viruses Left in the LVD by Gerd Suter | NIH document | | | |
| 218 | | Standard NIH Materials Transfer Agreement | NIH document | *see below | | |

*Objection to BN207: Incomplete, Partially Duplicative

*Objection to BN212: FRE 402, 403, Duplicate

*Objection to BN216: FRE 402, 403, Duplicate

*Objection to BN218: FRE 402, 403, 901, Foundation

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 219 | | Lee e-mail to Monath dated 7/22/03 | AC0391750 | FRE 402 | | |
| 220 | | Monath e-mail to Moss dated 8/27/02 regarding MTA | AC0389581 | | | |
| 221 | | Moss e-mail to Monath dated 6/7/04 | AC0409345-347 | Duplicate | | |
| 222 | | Monath's e-mail dated 11/03/04 regarding Heller being a Mole | AC0562899-0562902 | | | |
| 223 | | Transgene License | BNITC00107435-44 | *see below | | |
| 224 | | Mayr Power of Attorney | BNDEL001269 | *see below | | |
| 225 | | ECACC Deposit of MVA-572 | BNDEL000001-4 | | | |
| 226 | | Acambis Press Release dated 11/14/06 | | | | |
| 227 | | Mayr Letter to Mowatt dated 11/6/02 | BNITC00062200-6201 | *see below | | |
| 228 | | Moss e-mail to Gail Mazzara dated 2/22/02 | TBC00859-860 | | | |
| 229 | | Higgins e-mail to Richard Woodrich dated 2/4/03 | TBC00494 | Duplicate | | |
| 230 | | Mutual General Release between Therion, Acambis, and Baxter | TBC00581-84 | Duplicate | | |
| 231 | | Denn e-mail to Eaglemen et al dated 12/23/02 regarding risk of BN lawsuit | TBC00588-89 | | | |
| 232 | | Mazzara (Therion) e-mail to Butler (NIH) dated 3/12/02 regarding written request from Mayr for pre-1980 MVA from Moss | TBC00907-8 | | | |
| 233 | | Woodrich letter to Acambis and Baxter dated 12/10/02 enclosing copies of correspondence between Mayr and Gritz | TBC00001-18 | *see below | | |
| 234 | | Wulff fax to Gritz dated 4/9/02 regarding correspondence with Mayr | TBC00911 | Duplicate | | |
| 235 | | Salata (NIAID) letter to Li (Therion) dated 5/31/05 regarding amendment to MTA expanding field of use | TBC01019-21 | | | |
| 236 | | Journal of General Virology Instructions to Authors | | *see below | | |
| 237 | | Journal of cell Biology Instructions to Authors | | *see below | | |

*Objection to BN223:  FRE 402, 901, Foundation
*Objection to BN224:  FRE 402, Untimely Production
*Objection to BN227:  FRE 402, 901, Duplicate
*Objection to BN233:  TBC00018 is not part of the referenced correspondence

*Objection to BN236:  FRE 402, Foundation, Not Produced
*Objection to BN237:  FRE 402, Foundation, Not Produced

DCDOCS/682614.1

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 238 | | Journal of Virology Instructions to Authors | No Bates | *see below | | |
| 239 | | Mayr Lab Notes | | *see below | | |
| 240 | | Cynthia Lee letter dated 4/17/03 | AC0011069-73 | FRE 402 | | |
| 241 | | Handwritten notes dated 8/14/02 | AC0011087-92 | *see below | | |
| 242 | | Roger McAvoy email dated 7/28/03 | AC0011233 | *see below | | |
| 243 | | History of MVA stock | AC0011245-11853 | *see below | | |
| 244 | | Nick Higgins Letter to Peter Wulff dated 4/9/03 | AC0011360 | *see below | | |
| 245 | | Nick Higgins Letter to Peter Wulff dated 3/3/03 | AC0011363 | Duplicate | | |
| 246 | | Federal Express U.S. Air Bill | AC0011602 | FRE 402 | | |
| 247 | | Plan to License and Patent New MVA Vaccine | AC0012403-12452 | *see below | | |
| 248 | | Letter to Nick Higgins dated 3/22/02 | AC0012709-10 | *see below | | |
| 249 | | Peptide Therapeutics Fax dated 11/3/2000 | AC0012712-15 | *see below | | |
| 250 | | Subcontract between Acambis and Baxter | AC0015855-15876 | | | |
| 251 | | Acambis Executive Committee Meeting Minutes | AC0073691-73709 | | | |
| 252 | | Monath email dated 5/8/04 | AC0083722 | FRE 402 | | |
| 253 | | Monath email dated 5/9/04 | AC0083725 | FRE 402 | | |
| 254 | | Nick Higgins email dated 7/25/02 | AC0155873 | FRE 402 | | |
| 255 | | Email from J. Davis dated 6/6/02 regarding Therion meeting | AC0265224 | Duplicate | | |
| 256 | | Cynthia Lee email dated 6/7/02 regarding Therion meeting | AC0273215 | | | |
| 257 | | Nick Higgins email dated 4/30/04 | AC0410038 | FRE 402 | | |
| 258 | | Gordon Cameron email dated 10/15/04 | AC0441791 | FRE 402 | | |
| 259 | | Acambis Internal Memo dated 11/5/04 regarding Oxxon Therapeutics Meeting | AC0541745 | | | |
| 260 | | Monath email to Nick Higgins et al. dated 11/3/04 | AC0562927-0562932 | | | |
| 261 | | Brenda Brooks email dated 7/21/04 | AC0568765-66 | | | |
| 262 | | BN payments made to Mayr | BNDEL001260-68 | Foundation | | |

*Objection to BN238: FRE 402, Foundation, Not Produced
*Objection to BN239: FRE 402, 403, 901, Foundation, Not Original, Not Produced
DCDOCS/682614.1
*Objection to BN241: Improper Composite Exhibit
*Objection to BN242: Inadvertent Waiver of Attorney-Client Privilege
*Objection to BN243: FRE 402, 802, Duplicate, Improper Composite Exhibit
*Objection to BN247: Duplicate, Improper Composite Exhibit
*Objection to BN248: Incomplete, Duplicate
*Objection to BN249: FRE 402, Incomplete

| TRIAL EX. NO. | DOC. DATE | DESCRIPTION | BATES NUMBER | OBJECTIONS | FRE IN SUPPORT OF ADMISSION | ADMITTED |
|---|---|---|---|---|---|---|
| 263 | | Bedford email to Lee *et al.* dated 5/5/04 regarding BN flyer | AC0360685 | FRE 402 | | |
| 264 | | Record of FDA Contact dated 10/7/04 | AC0009601 | Duplicate | | |
| 265 | | Newberne letter to J. Cohen (FDA) dated 11/10/04 regarding BN | AC0011765-770 | FRE 402 | | |
| 266 | | Monath email to Lee *et al.* dated 1/12/05 regarding FDA contact | AC0219162 | FRE 402 | | |
| 267 | | Bedford email to Executive Committee dated 2/17/05 regarding complaint about BN press materials | AC0302036 | FRE 402 | | |
| 268 | | Newberne e-mail to Malarkey (FDA) regarding BN | AC0010054 | Incomplete, Cumulative | | |
| 269 | | Record of FDA Contact dated 4/12/05 | AC0068727 | *see below | | |
| 270 | | Monath email to Lee *et al.* dated 3/5/04 regarding fortune cookie approach | AC009321-22 | FRE 402 | | |
| 271 | | 7/6/05 Press Release regarding Oxxon and BN Cross-License (www.oxti.com/news/pr_2005-07-06.php) | | *see below | | |
| 271 | | 7/6/05 Stock Exchange Annoucement regarding Oxxon and BN Cross-License (http://www.bavarian-nordic.com/composite-379.htm?templateid=41) | | *see below | | |
| 272 | | MVA-572 Sequence Data | BNDEL00005-79 | *see below | | |
| 273 | | Transgene License | BNDEL000155-164 | FRE 402 | | |
| 274 | | Oxxon License | | *see below | | |
| 275 | | Acambis' Investigational Brochure | AC0010246 et seq. | *see below | | |

*Objection to BN296: FRE 402, Incomplete

*Objection to BN271: FRE 802, Foundation, Best Evidence

*Objection to BN271: FRE 802, Foundation, Best Evidence

*Objection to BN272: FRE 402, 901, 802

*Objection to BN274: Acambis reserves the right to object pending disclosure
    of Bates number or other identifying information

*Objection to BN 275: Acambis reserves the right to object pending accurate description

DCDOCS/683614.1

# EXHIBIT 7

\* Acambis reserves the right to supplement or amend this list once BN has disclosed its exhibit list pursuant to Delaware Local Rule 16.4.

\* Some of these exhibits will be used for limited purposes and not for the truth of the matter asserted.

## Exhibit List

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| **Patents** | | | |
| US Patent No. 6,761,893 | - | 1 | None. |
| US Patent No. 6,913,752 | - | 2 | None. |
| German Patent 2145 477 | AC 559584-90 | 3 | None. |
| Swiss Patent 568 392 | - | 4 | FRE 402. FRE 802. Document in German. Document not produced. |
| Patent Application P 44 05 841.1 | - | 5 | FRE 402. FRE 802. Document in German. Document not produced. Cannot identify document from description. (BN preserves further objections pending Acambis' identification of this exhibit.) |
| US Patent No. 6,682,742 | - | 6 | FRE 802. Document not produced. |
| US Patent No. 7,094,412 | - | 7 | FRE 802. Document not produced. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| US Patent No. 7,056,723 | - | 8 | FRE 802. Document not produced. |
| US Patent No. 6,440,422 | - | 9 | FRE 402. FRE 802. Document not produced. |
| US Patent No. 7,049,145 | - | 10 | FRE 402. FRE 802. Document not produced. |
| US Patent No. 5,185,146 | - | 11 | FRE 402. FRE 802. Document not produced. |
| Deposit Certificate | BNITC 91903-06 | 12 | None. |
| Deposit Certificates | BNITC 91907-18 | 13 | None. |
| WO 97/02355 | AC 7947-92 | 14 | FRE 402. FRE 802. |
| | | | |
| **Articles** | | | |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| 7/7/05 News article re Vivacs | - | 15 | FRE 802. FRE 901. Document not produced. Cannot identify document from description. (BN preserves further objections pending Acambis' identification of this exhibit.) |
| Herrlich, et al. "Experimental Studies on Transformation of the Variola Virus into the Vaccinia Virus." 1962 | BNITC 33810-30 | 16 | None. |
| Stickl, et al. "Intracutaneous smallpox vaccination with a vaccinia virus having attenuated virulence." 1971 | - | 17 | FRE 802. FRE 402. Document not produced. Document in German. |
| Stickl, et al. "MVA Vaccination Against Smallpox: Clinical Tests with an Attenuated Live Vaccinia Virus Strain (MVA)." 1974 | AC 12993-13000 | 18 | FRE 802. FRE 402. Document in German. |
| Mayr, et al. "Origin, Properties and Utilization of the Attenuated Vaccinia Strain MOA." 1975 | AC 357554-70 | 19 | None. |
| Mayr et al. "The Smallpox Vaccinia Strain MVA: markers, Genetic Structure, Experiences with Parenteral Prophylactic and Behavior in Organisms with a Debilitated Defense Mechanism." 1978 | AC 357571-96 | 20 | None. |
| Antoine, et al. "The Complete Genomic Sequence of the Modified Vaccinia Ankara Strain: Comparison with Other Orthopoxviruses." 1998 | B 3473-504 | 21 | FRE 802. FRE 402. |
| Shiver, et al. "Replication-incompetent adenoviral vaccine vector elicits effective anti-immunodeficiency-virus immunity" 2002 | - | 22 | FRE 802. FRE 402. Document not produced. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Altenburger et al. "Partial deletion of the human host range gene in the attenuated vaccinia virus MVA." 1989. | ACO248522 | 23 | FRE 802. FRE 402. |
| Hanke et al. "Clinical experience with plasmid DNA- and modified vaccinia virus Ankara-vectored human immunodeficiency virus type 1 Glade A vaccine focusin on T-cell induction." 2007. | - | 24 | FRE 802. FRE 402. Document not produced. |
| Degano et al. "Gene Gun intradermal DNA immunization followed by boosting with modified vaccine virus Ankara: enhaced CD8+ T cell immunogenicity and protective efficacy in the influenza and malaria models." 1999. | - | 25 | FRE 802. Document not produced. |
| Staib et al. "Inactivation of the viral interleuikin 1B receptor improves CD8+ T-cell memory responses elicited upon immunization with modified vaccinia virus Ankara." 2005. | | 26 | FRE 802. Document not produced. |
| Fachinger et al. "Poxvirus-Induced Immunostimulating Effects on Porcine Leukocytes." 2000 | | 27 | FRE 802. Document not produced. |
| | | | |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| **Depositions** | | | |
| Mayr 9/21/06 Deposition (portions to be designated) | - | 28 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Mayr 12/14/05 Deposition (portions to be designated) | - | 29 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Heller 2/16/06 Deposition (portions to be designated) | - | 30 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Wulff 02/09/06 Deposition (portions to be designated) | - | 31 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Wuiff 09/21/06 Deposition (portions to be designated) | - | 32 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Wuiff 2/10/06 Deposition (portions to be designated) | – | 33 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Gritz 02/08/06 Deposition (portions to be designated) | - | 34 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Chaplin 2/1/06 Deposition (portions to be designated) | – | 35 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Chaplin 2/17/06 Deposition (portions to be designated) | | 36 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Chaplin 01/31/06 Deposition (portions to be designated) | | 37 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Chaplin 09/19/06 Deposition (portions to be designated) | | 38 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Higgins 8/25/06 Deposition (portions to be designated) | – | 39 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Straus 11/30/06 Deposition (portions to be designated | – | 40 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Einhorn 11/30/06 Deposition (portions to be designated) | - | 41 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Howley 12/05/05 Deposition (portions to be designated) | | 42 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Howley 12/06/05 Deposition (portions to be designated) | | 43 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Meisinger 12/12/05 Deposition (portions to be designated) | | 44 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Meisinger 12/13/05 Deposition (portions to be designated) | | 45 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Villumsen 02/06/06 Deposition (portions to be designated) | | 46 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Baxter 02/16/06 depositions (portions to be designated) | | 47 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Suter Deposition 02/20/06 (portions to be designated) | | 48 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Carroll Deposition 03/01/06 (portions to be designated) | | 49 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Carroll Deposition 03/02/06 (portions to be designated) | | 50 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Jarosz Deposition 03/06/06 (portions to be designated) | | 51 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Drillien 03/08/06 Deposition (portions to be designated) | | 52 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Drillien 03/09/06 Deposition (portions to be designated) | | 53 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Drillien 11/24/06 Deposition (portions to be designated) | - | 54 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Jarosz 11/28/06 Deposition (portions to be designated) | | 55 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Einhom 03/10/06 Deposition (portions to be designated) | | 56 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| Einhom 11/30/06 Deposition (portions to be designated) | | 57 | BN preserves its objection to this exhibit pending Acambis' designation of specific testimony. |
| | | | |
| **Websites** | | | |
| Paul Erlich Website | - | 58 | Content unspecified; lack of foundation. not produced as required |
| Ascenion website (www. ascenion. de/index .php?id=314) | – | 59 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| Transgene website | - | 60 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Geovax website | - | 61 | Insufficient identification to allow for specific objection; lack of foundation not produced as required. |
| GeneMax Form 10KSB | - | 62 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| MVA Her2/neu web page: http://www.ascenion.de/index.php?id=314&L=<br><br>1&1-1) | | 63 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| www. I i fesci en ce-bav aria.de/portalnews details,33909,755,66596,detail .html) | | 64 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| IAVI Report Jan. – July 2002 | | 65 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| | | | |
| **ITC filings** | | | |
| ITC Initial Determination | - | 66 | 402, 403 |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| ITC Final Determination | | 67 | 402, 403 |
| ITC Transcript (portions to be designated) | - | 68 | 402, 403 |
| Complainant's Proposed Findings of Fact (ITC - filed on 5/31/06) | – | 69 | 402, 403 |
| ITC Response (12/22/06) | - | 70 | 402, 403 |
| **BN's** Response to Acambis' First Requests for Admissions | - | 71 | 402, 403 |
| | | | |
| **NIH documents** | | | |
| List of vials left at NIH by Sutter | NIH 470-74 | 72 | Authentication. |
| Letter dated 09/19/95 from Mayr to Moss | NIH 336 | 73 | Same as BNITC00091945. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Fax dated 05/09/02 from Wulff to Gritz | NIH 321 | 74 | Same as TBC00911. |
| NIH Notebook | NIH 112-289 | 75 | Authentication. |
| Email dated 05/28/02 from Mowatt to Wulff re 8Apr 2002 facsimile to Dr. B. Moss | NIH 343-46 | 76 | Same as BNITC00091940-91943. |
| Letter dated 07/15/02 from Mowatt to Wulff | NIH 333-34 | 77 | None. |
| | | | |
| **Acambis documents** | | | |
| History of MVA 1974 Stock | AC 6786-95 | 78 | None. |
| Email dated 08/04/05 from Morse to Monath, Lee, and Weltzin re MVA Technologies from the GSF | AC 519849-53 | 79 | Part of document unreadable (851-853). |
| Email dated 08/22/05 from Wallace to Wooding re Acambis website enquiry | AC 457149 | 80 | 402 |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Letter dated 09/12/01 from Mayr to Moss (Ex. 14 – Mayr 9/21/06 Deposition) | AC 6782 | 81 | None. |
| MTA between NIH and Acambis | AC 6735-37 | 82 | None. |
| RFP-1 | AC 8299-368 | 83 | None. |
| Letter dated 02/17/03 from Mowatt to McAvoy | AC 12086-87 | 84 | None. |
| AUTM Manual | ACDEL 4895-921 | 85 | 402 |
| Materials Transfer in Academia – 20 Questions and Answers | ACDEL 4922-57 | 86 | 402 |
| Material Transfer Agreements - AUTM | ACDEL 4958-78 | 87 | 402 |
| BU MTA | ACDEL 4979-80 | 88 | 402 |
| Bavarian Nordic Profit and Loss Statement | - | 89 | Insufficient identification to allow for specific objection. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Acambis Total Billed for RFP Contracts | - | 90 | Insufficient identification to allow for specific objection. |
| Email dated 07/25/02 from Hartmann to Higgins re Our meeting next Monday | ACO528358-60 | 91 | None. |
| Portion of Acambis IND | AC 259, 441-442, 465-466, 478, 484 | 92 | Incomplete document. |
| Acambis Response to RFP-3 | AC 76574-77289 | 93 | None. |
| Letter dated 11/27/02 from NIH to Acambis re: MVA 572 | | 94 | Insufficient identification to allow for specific objection; lack of foundation. |
| Acambis Accounting Data | | 95 | Insufficient identification to allow for specific objection; lack of foundation; not produced as required. |
| Vaccinia Project Experiment Log | AC11103-07 | 96 | Appears incomplete. |
| | | | |
| **Transgene documents** | | | |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Transgene Documents (Ex. 10, Mayr 9/21/06 Deposition) | T0002-10 | 97 | Authentication. |
| | | | |
| **Therion documents** | | | |
| Letter dated 09/18/95 from Gritz to Mayr | TBC 3 | 98 | None. |
| Email dated 03/12/02 from Therion to NTH re Empty MVA needs | TBC 907 | 99 | Incomplete document. |
| MTA between NIH and Therion | TBC 1016-18 | 100 | None. |
| Gritz Notebook | TBC 831-852 | 101 | None. |
| Letter dated 01/15/03 from Higgins to Woodrich re TBC-MVA License Agreement | TBC 593 | 102 | Incomplete document (TBC 592-594). |
| Draft License Agreement between Therion and Acambis | TBC 633-71 | 103 | None. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Email dated 09/03/02 from Greenhalgh to Lee re MVA Master File | TBC 504-528 | 104 | Incomplete document (TBC 503-574). |
| | | | |
| **Baxter documents** | | | |
| Letter dated 12/08/92 from Mayr to Dorner | B 223 | 105 | Authentication; 402; 802. |
| Baxter  Diagrams Diag | B 1548-50 and B 2854-59 | 106 | Authentication; 802. |
| Letter dated 12/8/92 from Mayr to Dorner re: MVA transfer | B000223 | 107 | Duplicate of 107. |
| | | | |
| **BN's Documents** | | | |
| BN's IND | BNITC11876-11930; BNITC52397-99 | 108 | None. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Email dated 11/10/04 from Wulff to Rasmussen, Westerlund, and Chaplin re GSF Royalty | BNITC 319145-46 | 109 | 403, Privileged. |
| Letter dated 02/07/00 from Howley to Wulff with History of the Vaccinia Virus Strain MVA | BNITC 34109-13 | 110 | Incomplete; German document. Authentication. |
| Email dated 05/10/05 from Wulff to Chaplin re Meeting with Anton Mayr April 28, 2005 | BNITC 33626-28 | 111 | 402<br>403 |
| Email dated 11/11/04 from Wulff to Hartmann re For translation | BNITC 89634 | 112 | 402<br>403 (waste of time) 801(c), 802, uncertified translation |
| Email dated 11/16/04 from Wulff to Mayr re visit | BNITC 89639-41 | 113 | 402<br>403<br>Lack |
| Letter dated 09/14/95 from Moss to Mayr | BNDEL 1273 | 114 | None. |
| Letter dated 12/19/03 from Heydn to Berkley re Development of Recombinant MVA Vaccine for AIDS | BNITC 69051-52 | 115 | 402<br>403<br>Lack of foundation. |
| IAVI Meeting Minutes dated 02/03/04 | BNITC 318674-75 | 116 | 402, 403 |
| Letter dated 10/06/95 from Bennett to Mayr | BNITC 91841-44 | 117 | 402,403, 801, 803(c) |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Letter dated 06/30/95 from Mayr to Bennett (Ex. 11, Mayr 9/21/06 Deposition) | BNITC 91848-49 | 118 | 402, 403, Lack of foundation. |
| Email dated 02/04/02 from Wulff to Huemer re Vaccine Preparation | BNITC 66349-51 | 119 | 402, 403, 801, 803(c), Lack of foundation. |
| Letter dated 11/30/92 from Falkner to Mayr | BNITC 33977 | 120 | 402, 403, 801, 803(c) |
| Letter dated 02/24/93 from Berry to Mayr | BNITC 33981 | 121 | 402, 403, 801, 803(c) |
| License Agreement between BN and Transgene dated 02/28/02 | BNDEL 155 | 122 | 402, 403, Lack of foundation. |
| Letter dated 09/01/95 from Mayr to Blanchard | BNITC 91857 | 123 | 402, 403, unsigned letter. |
| Statement signed by Blanchard regarding MVA | BNITC 91851 | 124 | 402, 403, 801, 803(c) |
| Letter dated 11/05/97 from Smith to Mayr | BNITC 91855 | 125 | 402, 403, 801, 803(c), illegible in part. |
| Cross License Agreement between Oxxon and BN | BNITC 333516-43 | 126 | 402, 403 |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Letter of Intent between Oxxon and BN | BNITC 211146-47 | 127 | 402, 403 |
| Letter dated 09/26/95 from Mayr to Gritz | BNITC 33989-90 or TBC 4 | 128 | None. |
| Email dated 09/08/99 from Wulff to Pielken and Howley re Anton Mayr's MVA - Recipients | BNITC 27436 | 129 | 402 403 |
| Email dated 08/10/01 from Wulff to Jakobsen re Meeting with Anton Mayr August 7 | BNITC 319188 | 130 | German document. |
| Letter dated 08/03/01 from Moss to Mayr (Ex. 7 – Mayr 9/21/06 Deposition) | BNDEL 1259 | 131 | None. |
| Letter dated 04/23/03 from Moss to Mayr (Ex. 13 – Mayr 9/21/06) | BNITC 91986-87 | 132 | None. |
| Email dated 05/28/02 from Mowatt to Wulff re 8 Apr 2002 facsimile to Dr. B. Moss | BNITC 64532-35 | 133 | 801, 803(c) |
| Letter dated 07/15/02 from Mowatt to Wulff | BNITC 91938-39 | 134 | 801, 803(c) |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Agreement dated 06/01/96 between BN and Mayr | BNITC 91928-31 | 135 | None. |
| Agreement dated 06/01/99 between BN and Mayr | BNITC 319166-69 | 136 | None. |
| Email dated 08/22/01 from Wulff to Jakobsen re Anton Mayr – new contract | BNITC 329327-28 | 137 | None. |
| Agreement dated 11/06/02 between BN and Mayr | BNITC68086-89 | 138 | None. |
| Email dated 02/09/99 from Howley to Wulff re Copy of the letter to Anton Mayr | BNITC 26909-10 | 139 | 801, 803(c), Lack of foundation, 106 incomplete. |
| Supplemental Agreement dated 03/24/04 between BN and Mayr | BNITC 17191-94 | 140 | None. |
| Email dated 05/20/01 from Howley to Chaplin re MVA-BN Tree latest version | BNITC 19878-81 | 141 | 801, 803(c), Lack of foundation, 106 incomplete. |
| Agreement dated 10/06/94 between BN and GSF | BNITC 329184-200 | 142 | 402, 403 |
| Agreement dated 11/25/97 between BN and GSF | BNITC 329243-68 | 143 | 402, 403 |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Email dated 12/08/04 from Wulff to Chaplin re Discussions between GSF and Bavarian Nordic | BNITC 245402-04 | 144 | 402, 403 |
| Email dated 05/29/01 from Wulff to Jakobsen re Agreement – Anton Mayr | BNITC 319191 | 145 | None. |
| Email dated 11/11/04 from Wulff to Mayr re visit | BNITC 89629-31 | 146 | None. |
| Letter dated 03/27/03 from Wulff to La Montagne re MVA – Intellectual Property | BNITC 68993 | 147 | None. |
| Letter dated 06/30/03 from La Montagne to Wulff re MVA – Intellectual Property | BNITC 91973-74 | 148 | FRE 802. |
| Email dated 11/23/02 from Ennis to Chaplin, Wulff, etc. re MVA for immunology studies | BNITC 66463-64 | 149 | FRE 802. FRE 402. |
| Email dated 11/19/97 from Wulff to Sutter re MVA Virus to Miles Carroll | BNITC 92041 | 150 | None. |
| Tabulated History of MVA | BNITC 52397-99 | 151 | FRE 901. |
| Email dated 03/08/02 from Wulff to Science Magazine | BNITC 64259-83 | 152 | None. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Letter dated 6/1/95 from A. Bennett to A. Mayr re: Use of MVA in Studies | BNITC0009185 | 153 | FRE 402. FRE 802. |
| Letter dated 1/10/96 from A. Mayr to BN Research Institutes re: MVA agreement | BNITC00091920 | 154 | None. |
| Email dated 04/06/03 from Andreas Hartmann to Paul Chaplin re: FYI | BNITC00185728-29 | 155 | FRE 402. FRE 403. |
| BN 2003 Annual Report | - | 156 | None. |
| BN 2004 Annual Report | BNITC 322434-501 | 157 | None. |
| BN 2005 Annual Report | - | 158 | None. |
| BN 2006 Annual Report | - | 159 | None. |
| Letter dated 12/13/02 from Chaplin to McInnes re Development of MVA | BNITC 66472 | 160 | None. |
| Email dated 6/22/04 from A. Hartmann to P. | | 161 | |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Wulff, P. Chaplin, R. Djurup, M. Rassmussen re: Meeting Minutes: BMGS 15 June | BNITC 245814-245816 | 161 | FRE 802. |
| BN Confidential Exhibit 19 | - | 162 | None. |
| Confidentiality Agreement dated 08/20/01 between NIH and BN | - | 163 | FRE 402. |
| Email dated 11/09/01 from Arndtz to Chaplin re Information about 2-step vaccination trials | BNITC 53026-37 | 164 | FRE 802. |
| Email dated 06/02/04 from Chaplin to Hartmann re GSK revised | BNITC 216389-90 | 165 | FRE 403. |
| BN Group Budget 2005 | BNITC 80930-57 | 166 | None. |
| Email dated 03/23/05 from Heller to Monath re MVA project | AC79441-79444 | 167 | None. |
| Tilmann CV | | 168 | None. |
| Green CV | | 169 | None. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Berneman CV | | 170 | None. |
| Stephens CV | | 171 | None. |
| BN Accounting Documents | | 172 | Insufficient identification to allow for specific objection; lack of foundation |
| Email dated 11/5/02 from Chaplin to Wulff re letter to Moss from Anton | BNITC 64593-95 | 173 | 801, 802 |
| Email from Wulff to Chaplin re Orthopox Meeting Minutes | BNITC 33631-34 | 174 | Privileged |
| Email from Wulff to Chaplin re Discussions between GSF and Bavarian Nordic | BNITC 245402-04 | 175 | None. |
| Email from Aamund to Chaplin re Brev fra AA | BNITC 246917 | 176 | None. |
| Bavarian Nordic 2006 Results, Webcast 30 March 2007 | | 177 | 402, 403, Insufficient identification to allow for specific objection; lack of foundation |
| Letter from Higgins to Wulff dated 03/03/03 re MVA - Intellectual Property Rights | AC 12480 | 178 | None. |

| Description | Bates Number | Defendants' Exhibit # | Objection |
|---|---|---|---|
| Letter from Higgins to Wulff dated 04/09/03 re MVA - Intellectual Property Rights | AC 11360 | 179 | None |
| Email dated 02/27/04 from Chaplin to Kovacs re Letter of Intent | BNITC00246648 | 180 | None |
| BN's Objections and Responses to Acambis; First Set Interrogatories | | 181 | None. |
| BN's Confidential Supplemental Responses to Acambis' First Set Interrogatories | | 182 | None. |
| BN's Confidential Second Supplemental Responses to Acambis' First Set Interrogatories | | 183 | None. |
| BN's Confidential Third Supplemental Responses to Acambis' First Set Interrogatories | | 184 | None. |
| BN's Responses to Acambis' Second Set of Interrogatories | | 185 | None. |
| Joint Statement of Facts from ITC | | 186 | 402, 403 |

# EXHIBIT 8

**EXHIBIT 8**

**PLAINTIFFS' LIST OF WITNESSES
TO BE CALLED LIVE OR BY DEPOSITION**

1.   Plaintiffs expect to call some or all of the witnesses identified below either live or by deposition.

2.   Plaintiffs reserve the right to call substitute witnesses to the extent that a witness's circumstances change, or a witness other wise becomes unavailable for trial.  Plaintiffs further reserve the right to call any witness for impeachment purposes.

3.   Plaintiffs reserve the right to call at trial any witness who appears on the Defendants' List of Witness to Be Called Live or By Deposition, attached hereto as Exhibit 9.  If any of Defendants' witnesses fail to appear at trial, Plaintiffs reserve the right to use their deposition testimony.

4.   Plaintiffs reserve the right to call one or more witnesses who testimony is necessary to establish the admissibility of a trial exhibit if the admissibility of the exhibit is challenged by the Defendants.

5.   The following is a list of witness whom Plaintiffs may call at trial either in person or by deposition:

Prof. Dr. Dr. h.c. mult. Anton Mayr (By Deposition)
Institute for Medical Microbiology and Infectious Diseases
Veterinary Faculty of the University of Munich
Veterinärstraβe 13
Munich 80539
Germany

Paul Chaplin
Bavarian Nordic GmbH
Fraunhoferstr. 13
82152 Martinsried

Munich, Germany

Peter Wulff
Bavarian Nordic GmbH
Fraunhoferstr. 13
82152 Martinsried
Munich, Germany

Lars Villumsen
Bavarian Nordic A/S
Ved Amagerbanen 23
DK - 2300 Copenhagen S
Denmark

Cynthia Lee
Address Unknown

Gordon Cameron
Acambis plc
Peterhouse Technology Park
100 Fulbourn Road
Cambridge
CB1 9PT, UK

Thomas Monath
Acambis Inc.
38 Sidney Street
Cambridge, MA 02139

Linda Gritz
Therion Biologics Corporation
76 Rogers Street
Cambridge, MA 02142

Nick Higgins

Clement Lewin
Acambis Inc.
38 Sidney Street
Cambridge, MA 02139

Roger McAvoy
Address Unknown

David Einhorn
(Expertise set forth in expert report)

The Jackson Laboratory
80 Indian Point Rd.
Bar Harbor, ME 04609

John Jarosz
(Expertise set forth in expert report)
Analysis Group
1899 Pennsylvania Ave., NW Suite 200
Washington, DC 20006

Joseph Straus
(Expertise set forth in expert report)
Franz Reber 7
Muniich, Germany

Robert Drillien
(Expertise set forth in expert report)
IGBMC
1 rue Laurent Fries
BP 10142
67404, Illkirch

# EXHIBIT 9

Exhibit 9

## **DEFENDANTS' LIST OF WITNESSES TO BE CALLED LIVE OR BY DEPOSITION**

Louis Berneman
(Expertise set forth in expert report dated
November 10, 2006)
2119 Delancey Place
Suite 400
Philadelphia, PA  19103

Elizabeth Brown
26 Teasel Drive
Ely, Cambridge
United Kingdom, CB6 3WJ

Miles Carroll
59 Madly Grove
Wantage, Oxon
England, 0X12 9XW

Paul Chaplin
Bavarian Nordic GmbH
Fraunhoferstr. 13
82152 Martinsried
Munich, Germany

Robert Drillien
14 rue Waldteufel
Strasbourg, France

Phil Green
(Expertise set forth in expert report dated
November 10, 2006)
7 Wells Avenue
Newton, MA 02459

Linda Gritz

Karl Heller
Dorfanterweg 125
85774, Unterfoehring
Germany

Nicholas Higgins
Chief Executive Officer
Intercytex
St John's Innovation Centre
Cowley Road
Cambridge
CB4 0WS
United Kingdom

Paul Howley
Virax Holdings Ltd.
CAN006 569 106
Suite 220
Kew Junction Tower
89 High Street
Kew, Vic 3101
Australia

Cynthia Lee

Anton Mayr
Institute for Medical Microbiology and
Infectious Diseases Veterinary Facility of the
University of Munich
Veterinärstraße 13
Munich 80539, Germany

Roger McAvoy

Christine Meisinger
Bavarian Nordic GmbH
Fraunhoferstr. 13
82152 Martinsried
Munich, Germany

Bernard Moss
10301 Dickens Avenue
Bethesda, MD 20814

Ashley Stevens
(Expertise set forth in expert report dated
November 10, 2006)
70 Yale Street
Winchester, MA 01890

Joseph Straus
Franz Reber 7
Munich, Germany

Winfried Tilmann
(Expertise set forth in expert report dated
November 10, 2006)
Kaiser Friedrich-Ring 7
40545, Dusseldorf

Representative from Transgene
5510 Nicholson Lane
Kensington, Maryland 20895-1078

Peter Wulff
Bavarian Nordic GmbH
Fraunhoferstr. 13
82152 Martinsried
Munich, Germany

# EXHIBIT 10

## **EXHIBIT 10**

## **PLAINTIFFS' STATEMENT OF INTENDED PROOFS**

### I.　　CONVERSION

BN will prove that Prof. Anton Mayr created all MVA virus strains, up to and including MVA 572. As the creator of MVA 572, Prof. Mayr became its owner under German law, and has been universally recognized as such. Through a series of agreements beginning in 1996, Mayr transferred ownership of MVA viruses and vaccine stocks to BN in exchange for valuable consideration. In August 2001, Mayr provided a sample of MVA 572 from his freezer in Munich to Bernard Moss of the NIH. Mayr did not transfer title to this specific vial of MVA 572 to Moss, nor did Mayr provide Moss with a commercial license with the right to sublicense MVA. Rather, the agreement between the parties evidences that Moss's use of their vial of MVA 572 was limited to research purposes. (While the explicit agreement between the parties is controlling, custom and practice within the industry provide further extrinsic evidence that Moss's right to possess this vial of MVA 572 was limited to his noncommercial research.) Neither Moss nor the NIH acquired any right to transfer MVA 572 or its progeny to third-parties to commercialize. Nevertheless, Moss transferred progeny derived from the specific vial of MVA 572 to Acambis for Acambis' commercial use. Acambis knowingly received the MVA 572 progeny and used them to bid on a lucrative RFP issued by the federal government. Acambis' possession and unauthorized use of the MVA 572 progeny is directly adverse to BN's possessory and proprietary interests in MVA 572. The value of the strain at the time of its conversion was approximately $14.59 million.

BN intends to rely on the following evidence in support of its conversion claim:

a) Trial testimony of BN's witnesses;

b) Evidence that Mayr created MVA;

c) Agreements between Mayr and BN assigning ownership of MVA to BN;

d) Testimony and exhibits regarding the provision of MVA 572 from Mayr to Moss, including the explicit and implicit limits on Moss's possession of the virus;

e) Testimony and exhibits evidencing the custom of researchers in the industry at the time of Mayr's transfer of MVA 572 to Moss;

f) Evidence of Moss's derivation of the clone he transferred to Acambis from the MVA 572 sample he received from Mayr, and correspondence regarding the transfer;

g) Acambis correspondence indicating its intention to use the MVA 572-derived clones to bid on the government RFPs;

h) Acambis' proposals for RFP-1 and RFP-2, using the MVA 572-derived clones;

i) Evidence of Acambis' negotiations with BN and Therion to acquire MVA for its commercial use;

j) Evidence of the value of the strain at the time of conversion;

k) As necessary, various other documents set forth on BN's or Acambis' list of trial exhibits.

## II.    UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

BN will prove that Acambis (a) misrepresented the origin of the MVA vaccine referred to as "ACAM3000," (b) misrepresented material facts concerning its freedom to operate in the field of MVA vaccines, and (c) engaged in a long-standing pattern of misconduct intended to deceive the U.S. Government and prejudice BN's ability to receive lucrative contracts from the U.S. Government.

BN will prove that BN and Acambis were the two primary competitors for MVA-based contracts with the U.S. Government.

BN will prove that Acambis was not involved in the manufacture of ACAM3000, but instead used a virus strain illicitly procured from Bernard Moss of the NIH and shipped directly to Baxter Pharmaceuticals in Austria for manufacture. Despite not having developed or manufactured the vaccine, however, Acambis referred to the product in negotiations with the U.S. Government as "ACAM3000," implying the product's relationship with other non-MVA Acambis vaccines—ACAM1000 and ACAM2000—and obscuring the extent to which the vaccine was in fact based on an MVA strain proprietary to BN.

BN will further show that Acambis was aware during the period that it was bidding on the government RFPs that Mayr and/or BN had proprietary interests in the MVA 572 strain. BN had directly informed Acambis of its proprietary interest in MVA 572, and Acambis had also been so informed by a third-party, Therion Biologics Corporation, with whom Acambis was in licensing negotiations. Acambis was thus aware that both it and its partner, Baxter Pharmaceuticals, faced a substantial litigation risk were it to bid on the government RFPs without first securing intellectual property rights from Mayr and/or BN. Nevertheless, Acambis represented to the government that Acambis had complete freedom to operate with the MVA 572-derived strain.

BN will also prove that Acambis conspired with Bernard Moss of the NIH to obtain BN proprietary information and viral material and to unfairly influence the government's process for awarding contracts. BN will prove that Moss had been a paid consultant for Acambis (d/b/a OraVax) until 2001, when Moss was required to give up his formal consultancy due to conflicts of interest. BN will prove that well after giving up his formal consultancy, however, and throughout the period in question, Moss and Acambis worked together to: (1) evaluate and disparage BN's intellectual property rights in MVA; (2) transfer BN's proprietary strains of

MVA to Acambis; and (3) reveal BN confidential business information—including the status of BN's clinical trials and the status of BN's bids on the government RFPs, information known only to Moss through his employment with NIH.

BN will prove that as a result of Acambis' unfair competition and deceptive trade practices, Acambis was able to realize approximately $14.3 million in falsely gained profits.

BN intends to rely on the following evidence in support of its unfair competition claims:

a)  Trial testimony of BN's witnesses;

b)  Testimony and exhibits concerning Acambis' non-MVA viruses, ACAM1000 and ACAM2000;

c)  Testimony and exhibits concerning the development and manufacture of ACAM3000;

d)  Testimony and exhibits concerning the naming of ACAM3000, and its subsequent change to MVA3000;

e)  Testimony and exhibits concerning Acambis' freedom to operate with viral strains derived from MVA 572, including internal correspondence and correspondence with BN, Therion Biologics Corporation, Baxter Pharmaceuticals, and agents of the U.S. Government;

f)  Acambis' proposals for RFP-1 and RFP-2, using MVA 572-derived clones;

g)  Testimony and exhibits concerning Acambis' correspondence with Bernard Moss;

h)  Evidence of the profits Acambis earned through its activities in RFP-1 and RFP-2;

i)  As necessary, various other documents set forth on BN's or Acambis' list of trial exhibits.

# EXHIBIT 11

Exhibit 11

## ACAMBIS' STATEMENT OF INTENDED PROOFS

Acambis will prove the following at trial:

### I.     CONVERSION

1.     Plaintiffs cannot meet their burden of proving that they had any ownership or possessory interest in the property at the time of the alleged conversion. Plaintiffs are not the sole, lawful owners of MVA 572 or its progeny or any rights thereof.

2.     Plaintiffs cannot meet their burden of proving that defendants intentionally and wrongfully exercised control over personal property to the exclusion of the rightful owner.  Anton Mayr gave vials of MVA 572 to the NIH without any restrictions, Acambis never possessed the MVA572 provided to NIH, and plaintiffs continue to have full access to MVA 572.  Futhermore, Acambis requested, and received, confirmation from U.S. Government that the U.S. Government had the right to provide the strain to Acambis and that Acambis could use it for commercial purposes.

3.     Plaintiffs cannot meet their burden of proving that defendants converted any property actionable in tort.  Plaintiffs have proceeded on a theory of conversion of intangible property, which is not a recognized tort.

4.     Plaintiffs cannot meet their burden of proving that they were harmed by the defendants' conduct, or that any damages are appropriate.

5.     Plaintiffs cannot meet their burden of proving actual malice.

### II.     UNFAIR COMPETITION

6.      BN cannot meet its burden of proving that Acambis engaged in unfair competition in violation of the Lanham Act.  Defendants did not misrepresent any material facts to the U.S. Government.  The U.S. Government was not confused by anything that Acambis said in its responses to RFP-1 or RFP-2.

7.      BN cannot meet its burden of proving that Acambis engaged in unfair competition in violation of the Delaware Deceptive Trade Practices Act.

8.      BN cannot show a risk of prospective harm.

9.      BN cannot prove Acambis' commercial profits or any actual damages caused by the alleged unfair acts.

## III.    AFFIRMATIVE DEFENSES

10.     Plaintiffs unreasonably or negligently delayed in pursuing their claims and this delay prejudiced defendants.

11.     Plaintiffs are not entitled to prevail on their claims because they have unclean hands.

# EXHIBIT 12

## EXHIBIT 12

## PLAINTIFFS' EVIDENTIARY ISSUES

Bavarian Nordic requests that the Court address the following evidentiary issues that the parties have been unable to reach an agreement:

1.     **Exclusion of ITC Record.**

The record from the ITC case should be excluded as prejudicial and irrelevant to the claims at issue in this case.

2.     **Jury Instruction Regarding Dr. Bernard Moss.**

The NIH determined that allowing Dr. Moss to testify in this case would be contrary to its interests, and have thus refused to comply with Bavarian Nordic's and Acambis' subpoenas. Accordingly, BN seeks a jury instruction, which would draw no adverse inference against Bavarian Nordic or Acambis on account of their not being able to produce Dr. Moss in this case.

3.     **Exclusion of Any Testimony from Dr. Miles Carroll.**

Due to Dr. Carroll's conflict of interest revealed during the ITC case, Acambis agreed not to use Dr. Carroll as a fact or as an expert witness in the Delaware case. However, Acambis has now listed Dr. Carroll as a witness.  He was not disclosed as an expert witness under the Rules.

4.     **Exclusion of ITC Deposition Testimony Outside Scope of Delaware Claims.**

Deposition testimony taken during the ITC that is outside of the scope of the claims in this case should be excluded as irrelevant including testimony from Karl Heller, Christine Meisinger, Paul Howley and Steve Atkinson.

5.     **Exclusion of Any Testimony from Andreas Hartmann.**

Testimony from Andreas Hartmann should be excluded.  Mr. Hartmann appears as a fact witness on Acambis' witness list but he was not deposed in this case.  Although, BN has repeatedly requested that Acambis produce him for deposition, Acambis refused to do so and also refused to remove him from their witness list.

6.     **Exclusion of Louis Berneman's Testimony on Mayr's Ownership of MVA Strains.**

Acambis should not be permitted to introduce testimony on issues outside of his expertise.  By his own admission and recitation of qualifications in his expert report, he has been involved with negotiating licenses since 1989.  Expert Report of Louis Berneman at pp. 2-3.  However, he has no stated expertise in the area of ownership, which is a German legal issue.

7.     **Exclusion of Ashley Stevens' Testimony on Mayr's Ownership of MVA Strains.**

Acambis should not be permitted to introduce testimony on issues outside of his expertise.  By his own admission and recitation of qualifications in his expert report, he has spent the last 20 years negotiating licenses.  Expert Report of Ashley Stevens at pp. 2-3.  However, he has no stated expertise in the area of ownership, which is a German legal issue.

# EXHIBIT 13

**EXHIBIT 13**
**DEFENDANTS' EVIDENTIARY ISSUES**


I.    **Exclusion of Straus Testimony on German Civil Property Law**

Plaintiffs should not be permitted to introduce testimony on German civil
property law from purported expert Prof. Dr. Joseph Straus as he is not expert in that
field.  By his own admission, Straus has never been admitted to practice law in Germany[1]
(11/30/06 deposition  at 18-20), is not qualified to teach on German civil law (*id.* at p.
22), and has only co-authored one article that in any way touches upon German civil law
(*id.* at 23-24).  Further, he admits that the totality of his formal training as to German civil
law was limited to one two-semester course with non-German students as part of his post
graduate work (*id.* at 12-13).  Straus also admits that he does not have any personal
experience with Material Transfer Agreements – he has never prepared or been asked to
review such agreements.  *Id.* at 40-41.  Plaintiffs themselves appear to acknowledge that
Dr. Straus is not expert in German civil property law, instead characterizing him as a
purported "world renowned expert in international *Intellectual Property* law."  *See* Pl.
Opening Br. in Support of Motion for Summary Judgment at 16 (emphasis added).

Nonetheless, Dr. Straus' offers purported expert opinions on German civil
property law, such as whether Mayr owned the MVA 572 strain provided to NIH, and
whether the transfer of 572 to NIH constituted a transfer of ownership under Section 929
of the German Civil Code.  Straus dep. at 69 – "Q:  [T]he property rights that you're
discussing in your report are tangible property rights as opposed to, for example,
intellectual property rights?  A:  Yes."); Straus Supp. Report at ¶ 16 ("IV.  Conclusion.
Under the case law of the German Federal Supreme Court (BGH) in the case at hand, as a
consequence of the clear lack of a respective agreement, no transfer of ownership from
Prof. Mayr to NIH/Dr. Moss in MVA 572 has taken place under § 929 BGB.").  Dr.
Straus is not qualified to provide such opinions and should not be permitted to offer such
testimony at trial.  *See* Fed. R. Evid. 702 ("[A] witness *qualified as an expert by
knowledge, skill, experience, training or education*, may testify thereto in the form of an
opinion….") (emphasis added).

---

[1]    As Straus admits, German law requires the following in order to practice law or
be qualified to act as a legal advisor:  (1) passing a first examination (taken after four
years of university) to become a "jurist," (2) completion of an internship known as
"Referendar," (3) passing a second state examination to obtain the status of "assessor" or
"volljurist," upon which one would then be eligible to apply for (4) admission to the bar
as an attorney of law.  Straus dep. at 25-26.  Yet Prof Straus admits that he has not
completed any of the requisite four steps.  *Id*. at 26-27.

## II.    Exclusion of Trade Secrets Claims

Plaintiff BN should be precluded from offering any argument or evidence that Acambis misappropriated BN's trade secrets in support of its unfair competition claims. This Court dismissed BN's trade secrets count pursuant to a binding arbitration agreement between BN and Acambis in an Order dated August 21, 2006.  (D.I. 83.)  BN acknowledged this Order and agreed not to pursue trade secret allegations in this case. *See* 8/23/06 Letter from Pascale to Graham (stating that BN included the trade secrets in its First Amended Complaint "purely to forestall any argument that plaintiffs have voluntarily dropped that claim, and not to derogate the effect of the August 21 Order.").

It now appears that BN will seek to put forth evidence and argument that Acambis misappropriated trade secrets related to BN's MVA program to support its conversion and unfair competition claims. *See, e.g.,* Pretrial Order, Exhibit 2 (Plaintiffs' Statement of Facts to be Litigated) at ¶ 20 ("Under a Secrecy Agreement, BN disclosed how to make MVA-based small pox vaccine, including using MVA 572 as a starting material."). The proposed trade secret evidence includes a slideshow from a June 12, 2002 meeting between the companies and other evidence relied upon in the ITC to support its trade secrets claim. *See id.; see also* BN021, BN061, BN064, and BN213.  Numerous other exhibits appear designed solely to support a misappropriation of trade secrets claim. *See* BN 47-56, 60-61, 76-78.  BN also states that it intends to prove that "Acambis conspired with Bernard Moss of the NIH to obtain BN proprietary information," and that Moss and Acambis "worked together" to "reveal BN confidential business information."  Exhibit 10 (Plaintiffs' Statement of Intended Proofs) at p.3.

BN should not be permitted to circumvent the Court's August 21 Order and Delaware law by seeking to introduce trade secret evidence and argument as part of its purported unfair competition claims.  *See* D.I. 83; *see also BAE Systems Aircraft Controls Inc. v. Eclispe Aviation Corp.,* 224 F.R.D. 581, 585 (D. Del. 2004) (Robinson, C.J.) ("Any doubts as to the scope of arbitrable issues should be resolved in favor of arbitration.").  Further, to the extent that BN argues that Dr. Moss provided Acambis with confidential information, that allegation would be covered by BN's confidentiality agreement with NIH (*see* BN031) and, in any event, is not actionable under Delaware unfair competition law.  *See* 6 Del. C. § 2007 (2006) ("[T]his chapter displaces conflicting tort, restitutionary, and other law of the State providing civil remedies for misappropriation of trade secret.").

## III.    Exclusion of Intellectual Property Claims

Plaintiff BN should be precluded from offering any argument or evidence that Acambis infringed any BN intellectual property in support of BN's unfair competition claims. BN previously represented that its patent rights were not the basis of its unfair competition claims. *See, e.g.,* 10/18/05 BN Reply in Support of Motion to Strike Inequitable Conduct Defense ("Bavarian Nordic's Lanham Act claim…does not mention patents at all…and none of Bavarian Nordic's claims in this lawsuit allege or depend upon patent infringement."); *id.* at n. 2 ("Patent claims and defenses are squarely before the ITC, not here."). The Court granted BN's motion to strike defendants' inequitable conduct defense based on those representations. *See* D.I. 73. The Court also denied defendants' motion to add counterclaims relating to BN's purported patent rights, including counterclaims of patent invalidity and unenforceabililty, on the basis that such amendments would "change the very nature of the case…." D.I. 83.

However, BN's pretrial submissions state that it will seek to introduce evidence and argument that Acambis "made allegedly false and misleading statements" to the U.S. Government regarding its "freedom to operate" within the field of MVA-based smallpox vaccines "without first securing intellectual property rights from Mayr and/or BN." *See* Exhibit 10 (Plaintiffs' Intended Proofs) at p.3 ("Acambis was thus aware that it…faced a substantial litigation risk were it to bid on the government RFPs without first securing intellectual property rights from Mayr and/or BN."); *id.* (Acambis and Dr. Moss "worked together…to evaluate and disparage BN's intellectual property rights in MVA…."); *see also* Pretrial Order, Exhibit 2 (Plaintiffs' Statement of Facts to be Litigated) at ¶¶ 23-24, 31; Trial Exhibit BN260.

BN should not be permitted to argue and introduce evidence that Acambis acted contrary to plaintiffs' purported intellectual property rights. Acambis did not pursue its patent defenses in this action (unlike the ITC) based on BN's representations that its claims "do not allege or depend on" patent rights. Indeed, Acambis agreed not to call its primary patent expert from the ITC based on BN's representations. *See* 8/24/06 Letter from M. Saad to E. Pennington at 2. If BN wishes to pursue its patent rights in a forum other than the ITC, it should be required to do so in a separate action where Acambis has the opportunity to put forward its patent defenses of inequitable conduct, invalidity, and non-infringement.[1]

---

[1]    It is worth noting that the ALJ in the parallel ITC proceeding invalidated every one of BN's patent claims on multiple grounds. While that decision has been remanded by the Commission, it has not been vacated and the Commission took no position on the merits of the decision in the Commission's remand order.

## IV.    Exclusion of Evidence Regarding Mayr Testimony

Plaintiffs should be precluded from offering any evidence on issues on which defendants were prevented from examining Prof. Mayr. Plaintiff's counsel refused to allow Prof. Mayr to answer questions in deposition on several key topics relating to conversion, despite Prof. Mayr's admitted ability to respond, including (1) Mayr's work on MVA at the Bavarian Vaccine Institute (Mayr 9/21/06 deposition at 15, 22, 56); (2) Mayr's prior distributions of MVA (*id*. at 41-42, 50-51, 53); (3) prior patents evidencing ownership by the State of Bavaria (*id*. at 63); and (4) Mayr's prior statements to others that Dr. Moss was free to transfer the MVA 572 strain at issue to companies (*id*. at 53). *See also* D.I. 107, 10/5/06 Discovery Conference Tr. at 10-22; *id*. at 18 ("THE COURT: …[B]ecause [plaintiffs' counsel] insisted on limiting [Mayr's deposition], we've got an issue here.").

While defendants cannot anticipate all evidence that plaintiffs may seek to introduce on these topics, at a minimum they should be precluded from introducing testimony and evidence through purported expert Straus – describing a meeting between Mayr and Strauss that took place after the close of discovery – that is clearly designed to rehabilitate Prof. Mayr's deposition testimony on ownership. In Straus' own words, "I recently met with Professor Anton Mayr, in order to confirm my understanding of how, when and where he created various MVA strains, including MVA 572 strain [sic]. I did this because I understood that Prof. Mayr is elderly and has given testimony in depositions in the last twelve months which has been used by counsel for Acambis to argue that Prof. Mayr did not own the MVA 572 strain." 12/6/06 Straus Second Supp. Report at ¶ 1. Straus should not be permitted to serve as a surrogate for Mayr when defendants were foreclosed from examining Mayr on ownership issues.

Similarly, plaintiffs should be precluded from offering evidence that "Prof. Mayr created MVA 572 while working as a professor at the University of Munich." Pretrial Order, Exhibit 2 (Plaintiffs' Statement of Issues of Fact to be Litigated) at ¶ 2. According to Prof. Mayr's sworn deposition testimony, he created MVA 572 at the Bavarian Vaccine Institute and "worked there as an employee. All material that I worked with was the property of that institute…." Mayr 9/21/06 dep. at 17; *see also* Mayr 12/14/05 deposition at 12-14, 18 (Mayr went to Turkey to obtain CVA virus at the direction of his "boss," Prof. Herrlich, and passaged the virus because his "boss, Professor Herrlich, believed that by continuing the passaging of the virus" if would become safer). When Acambis sought to further examine Mayr on his work at the Bavarian Vaccine Institute, plaintiffs' counsel instructed Mayr not to answer. *Id*. at 15-16; 22 56. Plaintiffs should not now be permitted to offer evidence contrary to Mayr's earlier testimony regarding his work at the Institute when defendants were foreclosed from further discovery on that topic.

Further, plaintiffs should not be permitted to offer evidence that the State of Bavaria or other German government entity have not claimed ownership rights to MVA 572. For instance, BN states in its proposed pretrial facts that "[p]rior to the conduct in the present case, no individual or entity other than Prof. Mayr and his successor-in-

interest, BN, has ever asserted a claims [sic] of ownership to any MVA strains or any intellectual property rights in MVA." Pretrial Order, Exhibit 2 (Plaintiffs' Statement of Issues of Fact to be Litigated) at ¶ 6. Once again, defendants were not permitted to complete the examination of Prof. Mayr on issues relating to ownership, such as patents on MVA 572 held by the State of Bavaria and Mayr's prior distributions of MVA 572.

Plaintiffs should also be precluded from offering evidence that "Prof. Mayr distributed MVA samples to other researchers in the field strictly for non-commercial research purposes." *Id*. at ¶ 8. Plaintiffs' counsel repeatedly instructed Prof. Mayr not to answer questions regarding those prior distributions in deposition, and should not now be permitted to introduce evidence supporting their position while denying defendants discovery on that issue. *See* Mayr 9/21/06 deposition at 41-42, 50-51, 53; Pretrial Order, Exhibit 2 (Plaintiffs Statement of Facts to be Litigated) at ¶ 8.

In addition, they should be precluded from offering exhibit BN016, a declaration from Anton Mayr, which is rank hearsay. Mayr himself testified under oath that he did not recall having seen the document. 12/14/05 Mayr deposition at 18-19. Further, on its face, the document has inaccuracies in the translation. *See* BN016 at ¶ 5, p.3 (referencing date in line 5 not included in translation).

## V.    Exclusion of Evidence Not Produced in Discovery

In accordance with the Court's prior ruling that the parties could not seek to offer evidence provided after the August 14, 2007 close of fact discovery, plaintiffs should be precluded from offering the following. *See* D.I. 107, 10/5/06 Discovery Conference Tr. at 22 ("[T]he record is closed....and you are all stuck with the record you've made.").

1.    Dr. Joseph Straus' "Second Supplemental Expert Report" – which was provided to defendants *after* the close of *both* fact and expert discovery – and any related testimony and evidence. The report offers belated facts on two issues: (1) a meeting between Dr. Straus and Anton Mayr (with BN's in-house counsel present); and (2) German and Swiss patents concerning MVA 572. Not only was such evidence produced after the close of discovery, but plaintiffs foreclosed discovery on both topics by instructing Mayr not to answer questions in deposition related to the very topics raised in Straus' untimely report. As a result, admission of such evidence would prejudice defendants as they were not able to probe those topics in discovery and, since Prof. Mayr is not appearing live at trial, will not have the opportunity to question him on those topics.

2.    Prof. Mayr's "Power of Attorney" (BNDEL001269, exhibit number BN223) dated February 2005, which was produced on October 16, 2006, more than two months *after* the August 14 close of discovery. *See* K. Lynch 10/16/06 email to T. Bentz (confirming that the document had never before been produced); *see also* 10/18/06 letter T. Bentz to R. Bertin. That document, which purports to give BN the rights to any past claim by Mayr relating to MVA, fell squarely within defendants' document requests. *See, e.g.*, BN's Response to ITC Document Request No. 104 (Oct. 31, 2005) (requesting, among other things, "any contract or agreement with Professor Mayr"); 7/14/06 Acambis Request for Production to Mayr No. 6 (requesting "[a]ll agreements with Bavarian Nordic and all drafts thereto."). The admission of this document would prejudice defendants because they were not able to examine witnesses on the document in discovery and, since Prof. Mayr is not appearing live at trial, will not have the opportunity to question him on it at all.

3.    Prof. Mayr's *curriculum vitae* (BNDEL001270-72, exhibit number BN128), which was produced on October 13, 2006, almost two months *after* the August 14 close of discovery, and a purported 1976 *curriculum vitae* (BN140), which appears on plaintiffs' exhibit list, but was never produced in discovery. *See* T. Bentz 10/16/06 email to R. Bertin; *see also* 10/18/06 letter T. Bentz to R. Bertin. Defendants repeatedly requested documents from Mayr, including specifically his *curriculum vitae* (which was referenced in his discovery responses), during the course of discovery; plaintiffs provided no explanation for the untimely production. *See* 10/18/06 letter T. Bentz to R. Bertin; *see also* 9/20/06 letter T. Bentz to E. Pennington at 2; 9/12/06 letter T. Bentz to R. Bertin; 8/24/06 letter M. Saad to E. Pennington and R. Bertin at 3. The admission of these documents would prejudice defendants because they were not able to examine witnesses on the documents in discovery and, since Prof. Mayr is not appearing live at trial, will not

have the opportunity to question him on them at all. Again, the plaintiffs are attempting to prove facts about Mayr through hearsay.

      4.      BN proposed exhibit BN238, described as "Mayr Lab Notes," which do not have any Bates range designation and do not appear to have ever been produced at all in this case. Such notes, to the extent that they relate to MVA, would have been responsive to Acambis' discovery requests to Mayr. *See, e.g.*, 7/14/06 Acambis Request for Production to Mayr No. 10 ("All documents referring or relating to your alleged MVA strains, including but not limited to all inventory lists, logs, diaries and notebooks."). The admission of any such materials would prejudice defendants because they were not able to examine witnesses on the material in discovery and, since Prof. Mayr is not appearing live at trial, will not have the opportunity to question him on it at all.

### VI.    "Missing Witness" Instruction/Bernard Moss of NIH

Plaintiffs have proposed a "missing witness" instruction for Dr. Bernard Moss of NIH, stating that "NIH determined that allowing Dr. Moss to testify in this case would be contrary to its interests" and instructing the jury that it may "conclude that Dr. Moss's participation in this case would have been contrary to the interests of the NIH." Plaintiffs' Proposed Instruction 1.1.  That instruction should not be read to the jury as it is, *inter alia*, prejudicial, inaccurate, and misleading.

First, given the allegation that Moss and Acambis conspired against BN, any adverse inference drawn against NIH would effectively be an adverse inference against Acambis.  Second, the instruction inaccurately states the U.S. government's position as to why it would not allow Dr. Moss to testify in this proceeding.  According to a brief filed with the Fourth Circuit by the Department of Justice, "the NIH was *not* concerned with exposure of agency wrongdoing. Rather, what concerned the NIH was BN's use of the district court as a forum to expound untrue statements about the NIH."  DOJ Brief at p. 19.  Indeed, the NIH had concluded that the "requested information is apparently sought not just to support BN's allegations against Acambis, but also in anticipation of a lawsuit against the United States." *Id*. at p. 20.  Further, the instruction does not include other "missing" witnesses that are not equally available to the parties, such as plaintiff Anton Mayr, or the parties' respective former employees.  As BN does not offer such an instruction as to these persons, there would be an improper focus on Dr. Moss.

Given BN's deliberate decision not to sue NIH (admittedly because NIH was a customer), it cannot now complain regarding Dr. Moss' participation in this case.  Dr. Moss cooperated and provided full and complete testimony *in his personal capacity* on August 28, 2006 in response to a subpoena from BN.  D.I. 125, Pl. Opposition Br. at 2; *see also* Ex. 42 to Def. Opposition Br., Moss deposition.  That testimony debunked plaintiffs' false allegations of conflict of interest, establishing that Dr. Moss had at all times adhered to NIH procedures and had openly sought and obtained approval for his prior consulting activities for Acambis' predecessor, OraVax, which were terminated before the events in question.  *See* D.I. 122, Def. Opposition Br. at 21 n.17.