IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAVARIAN NORDIC A/S and ANTON MAYR,

Plaintiff,

v.

ACAMBIS INC. and ACAMBIS PLC,

Defendants.

C.A. No. 05-614 (SLR)

**REDACTED - PUBLIC VERSION**

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEY FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Rodger D. Smith II (#3778)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendants Acambis Inc. and Acambis plc*

OF COUNSEL:

William D. Coston
Linsday B. Meyer
Martin L. Saad
Tamany J. Vinson Bentz
VENABLE, LLP
575 7th Street, NW
Washington, DC 20004-1601
202.344.4000

Original Filing Date: May 29, 2007
Redacted Filing Date: June 5, 2007

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ..........1

I. Acambis Should be Awarded Fees on Conversion ..........1

A. BN Knew that its Conversion Claim Had No Merit ..........2

B. BN Litigated In Bad Faith ..........4

C. BN Filed Suit with Anticompetitive Motives ..........6

II. Acambis Should be Awarded Fees Under the Lanham Act and DDTPA ..........7

III. Amount of Fees ..........11

# TABLE OF AUTHORITIES

CASES PAGE(S)

*Accu Personnel, Inc. v. Accustaff, Inc.*,
846 F. Supp. 1191 (D. Del. 1994) .......... 7

*Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*,
205 F.3d 137 (4th Cir. 2000) .......... 8

*Alexander v. Primerica Holdings, Inc.*,
819 F. Supp. 1296 (D.N.J. 1993) .......... 1

*Basketball Mktg. Co. v. And 1*,
2006 U.S. Dist. LEXIS 9688 (E.D. Pa. Mar. 10, 2006) .......... 8

*Boykin v. Bloomsburg Univ. of Penn.*,
905 F. Supp. 1335 (M.D. Pa. 1995) .......... 1

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 1

*Landon v. Hunt*,
938 F.2d 450 (3d Cir. 1991) .......... 1

*Securacomm Consulting, Inc. v. Securacom Inc.*,
224 F.3d 273 (3d Cir. 2001) .......... 7-8

*Tyler Green v. Fornario*,
2007 U.S. App. LEXIS 10873 (3d Cir. May 8, 2007) .......... 8

*Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*,
2007 U.S. Dist LEXIS 12575 (S.D. Fla. Feb. 23, 2007) .......... 8

**STATUTES AND RULES**

15 U.S.C. § 1117(a) .......... 7

Fed. R. Civ. P. 54(d)(2)(B) .......... 11

Federal Rule of Civil Procedure 54(d)(2) .......... 1

Pursuant to Federal Rule of Civil Procedure 54(d)(2), Acambis Inc. and Acambis plc (collectively "Acambis") hereby request that the Court award Acambis its attorneys' fees for defending against Plaintiff Bavarian Nordic A/S's ("BN") claims in this case. On May 15, the Court granted summary judgment to Acambis on all of BN's claims. Acambis should be reimbursed for the attorneys' fees that it incurred defending against those unfounded claims.

## I. Acambis Should be Awarded Fees on Conversion

A court may employ its inherent equitable powers to award attorneys' fees where a litigant initiates a groundless suit in bad faith or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ("A court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (citation omitted); *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991) (courts have inherent authority to sanction for bad faith conduct) (citing *Chambers v. NASCO, Inc.*); *Boykin v. Bloomsburg Univ. of Penn.*, 905 F. Supp. 1335, 1347 (M.D. Pa. 1995) (fees awarded to defendant where plaintiff did not have evidence to support claims at the time of filing complaint or when requested to dismiss parallel action); *Alexander v. Primerica Holdings, Inc.*, 819 F. Supp. 1296, 1311-12 (D.N.J. 1993) (fees awarded where plaintiff pressed for request that had no basis under Third Circuit law).

In this case, BN should be required to pay Acambis' attorneys' fees for Acambis' defense against BN's failed conversion claim.[1] That claim alleged that BN held "ownership" and "rights to commercialize" the cloned copy of an MVA 572 viral

---

[1] Acambis only seeks fees against plaintiff BN, not plaintiff Anton Mayr. Despite BN's addition of Mayr as a plaintiff, Mayr testified that he was unaware that he had been added as a party to this litigation and that he was not seeking any relief. *See* Ex. 18, Mayr 9/21/06 deposition at 7.

strain that Acambis received from the NIH and used as starting material in developing Acambis' MVA3000 smallpox vaccine product. *See* D.I. 85, Amended Complaint ¶ 24; *see also id.* at ¶¶ 47-48, 51.

The Court appropriately granted Acambis' motion for summary judgment on the conversion claim on several bases, including that: (1) plaintiffs failed to prove that they owned any rights to the MVA strain provided to NIH; (2) even if plaintiffs had rights to the strain, they did not place any restrictions on NIH's use or transfer of the strain; and (3) Acambis never possessed the MVA 572 provided to NIH, but only received a cloned copy of the strain, which is not actionable in conversion. *See* D.I. 155, 5/15/07 Memorandum Opinion at 13-16.

An award of fees on the conversion claim is appropriate as BN (a) knew that its conversion claim was unfounded; (b) engaged in bad faith litigation; and (c) proceeded with the claim in an anticompetitive attempt to force Acambis – BN's direct competitor – out of the market for MVA based smallpox vaccines.

### A. BN Knew that its Conversion Claim Had No Merit

The following facts alone make clear that BN knew that it did not have any genuine basis for asserting the conversion claim:

- In a candid email, almost one year before filing suit, BN CEO Peter Wulff acknowledged that [redacted] Ex. 10, Nov. 2004 Wulff email at BNITC00319145-46.



- In that same email, [redacted] *Id.* at BNITC00319145 [redacted].[2]

- [redacted] *See* Ex. 19, Wulff 9/21/06 deposition at 82-84. [redacted] *See* Ex. 3, BNITC00319188 (Wulff email) [redacted]

- [redacted]

---

2 BN added Prof. Mayr to the suit because it had no basis for asserting ownership in its own right. *See* D.I. 38, BN's Motion to Amend at 2 ("On information and belief, Defendants intend to argue that at the time of the alleged tortious conversion, Bavarian Nordic had not yet acquired ownership of MVA from Prof. Mayr. Were Defendants' theory correct, Prof. Mayr – rather than or in addition to Bavarian Nordic – would be the aggrieved party entitled to relief."). When adding Prof. Mayr as a plaintiff, BN also amended the complaint to expressly acknowledge that it did not have *any* ownership rights in MVA until November 2002, *after* Mayr had already provided the MVA strain at issue to the NIH. D.I. 85, First Amended Compl. ¶ 24.

3 [redacted] Ex. 2, BNITC00329347-51 at 2; *see also* Ex. 19, Wulff 9/21/06 deposition at 83-84.

[REDACTED] Ex. 19, Wulff 9/21/06 deposition at 13-14, 24; Ex. 13, Wulff 2/9/06 deposition at 205; *see also* D.I. 155, 5/15/07 Memorandum Opinion at 6.

- [REDACTED] Ex. 4, April/May 2002 email correspondence between Wulff and NIH (BNITC00064532-35); Ex. 5, 7/15/02 Mowatt letter to Wulff (BNITC00091938-39).

- BN argued to this Court that an "implied custom" restricted NIH's use of the MVA strain provided by Mayr, but previously took the position that MVA F6 was [REDACTED][4] *See* Ex. 10, Nov. 2004 Wulff email at BNITC00319145-46. BN did so in that instance to avoid claims by another entity to BN's purported MVA-BN strain [REDACTED] *See id.*

**B. <u>BN Litigated In Bad Faith</u>**

In addition to filing a meritless suit, BN engaged in bad faith litigation tactics as demonstrated by the following:

---

4 *See also* Ex. 11, Correspondence between Wulff and Mayr at BNITC00089634 [REDACTED] Ex. 1, BNITC00092041 [REDACTED]

- While BN alleged that Prof. Mayr was the purported owner of the MVA at issue, counsel – who represented both BN and Mayr – prohibited Acambis from examining Prof. Mayr on (1) Mayr's work on MVA at the Bavarian Vaccine Institute (Ex. 18, Mayr 9/21/06 deposition at 15, 22, 56); (2) Mayr's prior distributions of MVA (*id.* at 41-42, 50-51, 53); (3) prior patents evidencing MVA ownership by the State of Bavaria (*id.* at 63); and (4) Mayr's prior statements to others that Dr. Moss was free to transfer the MVA 572 strain at issue to companies (*id.* at 53).
- Despite counsel's refusal to allow testimony on those topics, subsequent to Prof. Mayr's deposition, BN arranged for plaintiffs' purported expert on German ownership to meet with Prof. Mayr – with BN's in-house counsel present – to discuss issues of ownership and prior distributions for purposes of expert testimony. *See* Ex. 20, Straus 11/30/06 deposition at 53-56; Ex. 21, Straus Second Supplemental Expert Report at ¶¶ 1-2.
- BN offered a purported expert on intellectual property law – not German civil property law, which BN argued should apply – to prove Mayr's ownership of the physical MVA 572 strain. *See* Pl. Opening Summary Judgment Brief at 16 (D.I. 115) ("BN's expert Straus…a world renowned expert in international *Intellectual Property* law….") (emphasis added).[5]
- While BN sought in this Court over $[REDACTED] in damages from Acambis as the value of the cloned MVA 572 strain, BN previously told U.S. Government

---

[5] By his own admission, Dr. Straus has never been admitted to practice law in Germany (Ex. 20, 11/30/06 Straus deposition at 18-20), is not qualified to teach on German civil law (*id.* at 22), and has only co-authored one article that in any way touches upon German civil law (*id.* at 23-24).



contracting officers [redacted] (and that [redacted]). *See* Ex. 6, 12/13/02 Chaplin letter to McInnes (BNITC00066472-74).

- BN brought a trade secrets claim that clearly fell within the scope of a mandatory arbitration provision, forcing Acambis to discover the basis of the claim and move for its dismissal. *See* D.I. 49 (Motion to Dismiss); D.I. 83 (8/21/06 Order dismissing trade secrets claim).

### C. <u>BN Filed Suit with Anticompetitive Motives</u>

While BN was aware that its conversion claim had no merit, the facts demonstrate that BN filed the claim in an effort to hamper Acambis' ability to compete for U.S. Government contracts for MVA smallpox vaccines. In fact, BN had a stated strategy [redacted] *See* Ex. 14, 2/17/06 Chaplin (30(b)(6)) deposition at 155-56 & Ex. 9, BNITC216389-90. Indeed, BN filed this suit just days after RFP-3 – by far the largest of the three MVA smallpox vaccine contracts – issued, despite learning more than two years prior that Acambis obtained the strain from NIH. *See* Ex. 7, 3/3/03 Higgins letter to Wulff (AC0012480) ("I can confirm that we are using the strain of MVA provided to Acambis Inc. by NIH...."); Ex. 12, 8/15/05 RFP-3 announcement.

Perhaps most telling is the fact that, while the NIH had possession of the original MVA 572 samples provided by Mayr, and that the NIH provided copies of that strain to Acambis and others, BN did not sue the NIH, admittedly because the NIH was its largest customer, but instead sued Acambis, its competitor for MVA contracts. *See* Ex.19, 9/21/06 Wulff deposition at 120; Ex. 13, 2/9/06 Wulff deposition at 208 [redacted]

[redacted]

Indeed, BN had actual notice as of in 2002 that the NIH would distribute the strain to others for purposes of vaccine development, but took no action. *See* Ex. 5, 7/15/02 Mowatt letter to Wulff (BNITC00091938-39). Rather than filing suit at that time, BN waited while Acambis moved forward with its MVA3000 program, only to file suit years later, just days after RFP-3 issued and just weeks before bids were due. *See* Ex. 8, 4/6/03 Hartmann email to Chaplin/Wulff (BNITC00185728) [redacted]

In the end, it is clear that BN had no basis for filing suit, yet went forward in a bad faith attempt to knock Acambis out of competition for MVA smallpox vaccine contracts.

## II. Acambis Should be Awarded Fees Under the Lanham Act and DDTPA

In addition to an award of fees on the conversion claim, Acambis should be awarded fees for defending against BN's meritless claims under the Lanham Act and Delaware Deceptive Trade Practices Act ("DDTPA"). Both of those Acts provide that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); DDTPA § 2533(b).[6]

The determination of whether a case is "exceptional" is within the sound discretion of the District Court. *See Securacomm Consulting, Inc. v. Securacom Inc.*, 224

---

6 The two provisions are interpreted consistently. *See Accu Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1216 (D. Del. 1994).

F.3d 273, 277 (3d Cir. 2001). As the Third Circuit noted in *Securacomm*, the legislative history of the Lanham Act explains that the attorneys' fees provision is designed to "give defendants a remedy against unfounded suits." *Id.* at 280-81 (quoting S. Rep. No. 93-1400, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7137).

Determining whether a case is exceptional is a two-step process. *Tyler Green v. Fornario*, 2007 U.S. App. LEXIS 10873, at *10 (3d Cir. May 8, 2007). First, the Court must decide whether the losing party engaged in "culpable conduct." *Id.* Second, the Court "must decide whether the circumstances are 'exceptional' enough to warrant a fee award." *Id.* That assessment may include consideration of factors other than culpability, such as the closeness of the liability question. *Id.*

Culpable conduct "comes in a variety of forms and may vary depending on the circumstances of a particular case." *Securacomm*, 224 F.3d at 280. In cases where the defendant is the prevailing party, "the plaintiff's culpable conduct…center[s] on the act of filing the lawsuit…." *Id.* at 283 (affirming fees award to prevailing defendant where plaintiff brought suit in "sweeping attempt to beat a financially weaker opponent through the use of vexatious litigation."); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) (relevant considerations include "economic coercion, groundless arguments, and failure to cite controlling law.") (internal quotations omitted); *Basketball Mktg. Co. v. And 1*, 2006 U.S. Dist. LEXIS 9688, at *27-28 (E.D. Pa. Mar. 10, 2006) (awarding fees to prevailing defendant where suit "brought in retaliation" for prior suit by defendant against plaintiff); *Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 2007 U.S. Dist LEXIS 12575, at *15 (S.D. Fla. Feb. 23, 2007) (fees

awarded to prevailing defendant where suit "commenced in bad faith for an anticompetitive purpose").

In this case, Acambis should be awarded its attorneys' fees for having to defend against BN's groundless Lanham Act and DDTPA claims. Those claims had no factual or legal support and, like the conversion claim, appear to have been brought solely for anticompetitive purposes.

BN did not detail its purported Lanham Act and DDTPA claims until its opposition to Acambis' motion for summary judgment. BN repeatedly delayed answering Acambis' discovery requests for information regarding those claims, and provided only a rambling narrative of the claims in interrogatory responses produced *after* the close of discovery. *See* Ex. 16, 8/4/06 M. Saad letter to Bertin, 8/24/06 M. Saad letter to Pennington, and 9/18/06 BN Second Supp. Interrogatory Responses.

When forced to show its hand in opposing Acambis' motion for summary judgment, it became obvious that the gravamen of BN's Lanham Act and DDTPA claims was the same as BN's conversion claim – Acambis' receipt and use of the MVA strain from NIH in connection with Acambis' vaccine product, MVA3000. *See* D.I. 125, Pl. Opp. Br. at 35, ¶ (i) ("Anton Mayr and/or [BN] could sue … Baxter in Austria to enjoin Baxter from using the MVA 572 property"); *id.* at ¶ (ii) (asserting that it is unfair that Acambis got MVA "for free...from a known, unauthorized source"); *id.* at 37, ¶ (v) (asserting that Acambis was "well aware of the potential 'cloud' on its ability to commercialize MVA"); *id.* at 38, ¶ (viii) ("Acambis made unauthorized use of Bavarian Nordic's, and previously Anton Mayr's MVA").

Like its conversion claim, BN had no factual or legal basis for its Lanham Act or DDTPA claims. For instance, with respect to the Lanham Act claim, by BN's own admission, the product at issue was the MVA3000 vaccine, not the underlying viral strain. *See* Ex. 15, BN ITC Statement of Undisputed Material Facts at 5. As a result, under established Supreme Court precedent, there could be no reverse passing off claim. *See* D.I. 155, 5/15/07 Memorandum Opinion at 17 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)).

Similarly, BN's allegations of false representations and consumer confusion were wholly unsupported. *See id.* at 18 ("Given that the audience for defendants' alleged 'false representations,' the U.S. Government, was responsible for distributing the MVA 572 in the first instance and had made similar representations regarding MVA, the court concludes that plaintiffs' Lanham Act claim in this regard is not cognizable under the facts of record. Neither have the plaintiffs identified genuine issues of material fact with respect to their claim of consumer confusion.").

On the DDTPA claim, BN offered no evidentiary or legal basis whatsoever for proceeding under the Delaware statute. That complete failure led the Court to rightly wonder: "How can Delaware law be invoked when none of the alleged conduct took place in Delaware; there is no alleged injury in Delaware; and the parties had no relationship in Delaware?" D.I. 155, 5/15/07 Memorandum Opinion at 19. Indeed, BN itself argued that Massachusetts law should apply to the state law claims. *Id.*

In the end, BN had no basis for bringing claims under the Lanham Act or DDTPA and should be held to account for forcing Acambis to defend against those claims.

**III. <u>Amount of Fees</u>**

Acambis incurred approximately $[redacted] in attorneys' fees from the Venable and Morris Nichols firms, and $[redacted] in expert fees defending against BN's unfounded claims in this case. Because the Lanham Act and DDTPA claims were predicated primarily on the conversion allegations, a fees award under either of those statutes should include fees incurred defending against the conversion claim. To the extent that the Court declines to award fees on all of BN's failed claims, any apportionment may be made prior to any final award. *See* Fed. R. Civ. P. 54(d)(2)(B) (a motion for fees "must state the amount or provide a fair estimate of the amount sought.").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr. (#4292)*

Mary B. Graham (#2256)
Rodger D. Smith II (#3778)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendants*
*Acambis Inc. and Acambis plc*

OF COUNSEL:

William D. Coston
Linsday B. Meyer
Martin L. Saad
Tamany J. Vinson Bentz
VENABLE, LLP
575 7th Street, NW
Washington, DC 20004-1601
202.344.4000

Dated: May 29, 2007
843629

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 5, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

**BY E-MAIL**

Edward A. Pennington
BINGHAM MCCUTCHEN LLP
3000 K Street, Suite 300
Washington, DC 20007

*/s/ James W. Parrett, Jr.*
James W. Parrett, Jr. (#4292)