## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAVARIAN NORDIC A/S and<br>ANTON MAYR, | ) <br>) <br>) | |
| Plaintiffs, | ) <br>) | C.A. No. 05-614-SLR |
| v. | ) <br>) | *REDACTED – PUBLIC VERSION* |
| ACAMBIS INC. and<br>ACAMBIS PLC, | ) <br>) <br>) | |
| Defendants. | ) <br>) | |

## BAVARIAN NORDIC'S ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

- and -

BINGHAM MCCUTCHEN LLP
Edward A. Pennington
Robert C. Bertin
Stephanie Scruggs
Krista L. Lynch
2020 K Street NW
Washington, DC 20006-1806
(202) 373-6000

*Attorneys for Plaintiff Bavarian Nordic A/S*

June 12, 2007

# TABLE OF CONTENTS

**PAGES**

I.     INTRODUCTION ................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ...........................................2

III.   SUMMARY OF ARGUMENT ...............................................................3

IV.    STATEMENT OF FACTS ....................................................................4

V.     ARGUMENT......................................................................................7

     A.     DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS" FEES
         ON CONVERSION ........................................................................7

         1.    The American Rule: Parties Pay Their Own Litigation Fees ...................7

         2.    Bavarian Nordic's Claim Is Well-Founded ................................7

         3.    There Is No Evidence of Bad Faith on the Part of Bavarian Nordic ......10

             a.    Prof. Mayr Was Not Withheld ........................................10

             b.    Prof. Straus' Qualifications ............................................11

             c.    Bavarian Nordic's Motives..............................................12

     B.     ACAMBIS SHOULD NOT BE AWAREDED ATTORNEYS" FEES
         UNDER THE LANHAM ACT OR DDTPA....................................13

         1.    Applicable Law.....................................................................13

         2.    This Case Is Not "Exceptional" Under the Lanham Act........................14

             a.    The Unfair Competition Claims Are Not Objectively
                Baseless..................................................................14

             b.    Bavarian Nordic Pursued Litigation in an Attempt to Right
                a Wrong...................................................................15

     C.     THE AMOUNT AND TYPE OF FEES SOUGHT ARE
         UNREASONABLE  .....................................................................15

VI.    CONCLUSION..................................................................................17

i

# TABLE OF AUTHORITIES

<u>**PAGES**</u>

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) .......................................................................................... 7

*DaStar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ........................................................................................... 14

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,*
    4 F.3d 90 (1st Cir. 1993) ................................................................................... 9

*Junker v. Eddings,*
    396 F.3d 1359 (Fed. Cir. 2005) ....................................................................... 16

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,
    952 F.2d 44 (3d Cir. 1991) .............................................................................. 13

*Green v. Fornario,*
    2007 U.S. App. LEXIS 10873 (3d. Cir. May 8, 2007) ................................... 13

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    C.A. No. 04-305-SLR, 2006 U.S. Dist. LEXIS 54515 (D. Del. Aug. 4, 3006)........... 14

*Pennsylvania v. Flaherty,*
    40 F.3d 57 (3d Cir. 1994) .................................................................................. 7

*SecuraComm Consulting, Inc. v. Securacom Inc.*,
    224 F.3d 273 (3d Cir. 2000) .............................................................. 7, 13, 15

**Statutes**

15 U.S.C. § 1117(a) ......................................................................................... 13

## I.    INTRODUCTION

Defendants Acambis plc and Acambis Inc. (collectively "Acambis") seek an award of attorney fees and expert fees from Plaintiff Bavarian Nordic A/S ("Bavarian Nordic"). Acambis' arguments in support of the award are misleading and, at times, factually incorrect. Contrary to Acambis' assertions, there is no evidence that the claims were unfounded, litigated in bad faith, or done solely in an anticompetitive attempt to force Acambis out of the MVA smallpox vaccine market. In fact, nothing could be farther from the truth.

Bavarian Nordic brought this action because it genuinely felt that it had been exploited and cheated by Acambis and that the harm was actionable both here in the United States and abroad. The suit, which continues to be litigated on appeal from this Court and in other cases in the International Trade Commission and in Europe, evolved out of a sincere sense of outrage and dismay that an entity could blatantly steal trade secrets and property, both intellectual and tangible, with no ill effects. In fact, even after the U.S. Government decided to grant an award under the third and final Request for Proposal to Bavarian Nordic only (announced on June 4, 2007), Bavarian Nordic continues to press for justice.

The summary judgment record demonstrates that Bavarian Nordic's position came as no surprise to Acambis and, in fact, Acambis recognized right from the beginning that its conduct was likely to bring a justified lawsuit by Prof. Mayr or Bavarian Nordic for the unauthorized use of the MVA virus material. *See* Ex. 1, 1/15/03 ▮▮▮▮▮▮▮▮▮▮▮▮▮ (TBC00592-594) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Moreover, the underlying facts in this case and of record in the summary judgment papers, particularly when considered in the light most favorable to Bavarian Nordic, are sufficient to establish Acambis' conversion and unfair competition. This is discussed in more detail in the facts and argument section below.

## II.    NATURE AND STAGE OF PROCEEDINGS

On December 7, 2006, Plaintiffs Bavarian Nordic and Anton Mayr ("Prof. Mayr") (collectively "plaintiffs") filed a summary judgment motion on the conversion claim (D.I. 114). At the same time, Acambis filed its own motion to dismiss or for summary judgment on the conversion and unfair competition claims (D.I. 111). On May 15, 2007, the Court granted summary judgment to Acambis and dismissed the case. *See* D.I. 155, 5/15/07 Memorandum Opinion. Shortly thereafter, Bavarian Nordic filed a Notice of Appeal to the Third Circuit (D.I. 159), and Defendants filed their Motion for Attorney Fees (D.I. 162).

### III.    SUMMARY OF ARGUMENT

1.  Acambis cannot prove that the conversion claim was not well-founded.  Bavarian
    Nordic's positions were reasonable and well supported by the facts and law.

2.  There is no evidence (let alone clear and convincing evidence) of bad faith or
    litigation misconduct.  Bavarian Nordic litigated this case in good faith.  The good
    faith with which Bavarian Nordic litigated the case up to this point (and continues
    to litigate on appeal) is not obviated merely because *Acambis* interprets certain
    evidence with a skewed application of hindsight as support for its proposition that
    Bavarian Nordic knowingly pursued a baseless claim.

3.  This case is not exceptional under the Lanham Act.  Even if it were, the Court
    should exercise its discretion to deny Acambis' request for attorney fees and
    expert fees at least because Bavarian Nordic "raised genuine issues of material
    facts with respect to defendants' conduct in light of '[t]he essence of unfair
    competition[, that] is fair play'. . ."  D.I. 155 (5/15/07 Mem. Op.) at 19 (citation
    omitted).

4.  In the event that the Court finds a basis for attorney fees on the conversion claim,
    or finds exceptional circumstances to exist with respect to the unfair competition
    claims, the amount sought by Acambis is unsupported by documentation, which
    prevents a meaningful review as to the reasonableness of the fees.  Furthermore,
    there is simply no justification for imposing the expert fees on Bavarian Nordic or
    for awarding fees under the DDTPA if no award is granted under the Lanham
    Act.

IV.    **STATEMENT OF FACTS**

1.   There is evidence of record of Acambis' use of MVA-572 progeny received from
     Dr. Moss of the NIH.  *See* Ex. 4, 3/3/03 Higgins Letter to Wulff (AC0012480) ("I
     can confirm that we are using the strain of MVA provided to Acambis Inc. by
     NIH . . . ."); Ex. 5, Materials Transfer Agreement (AC0006735-37).

2.   There is evidence of record that restrictions were embodied in an agreement
     between Prof. Mayr and Dr. Moss / NIH with respect to the MVA-572 and its
     progeny and that no ownership rights of the MVA-572 sample were transferred to
     Dr. Moss. ████████████████████████████████████████████
     ████████████████████████████████████████████
     ██████████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████ Ex. 7, 12/14/05 Mayr
     Deposition at 73:16-21 ("I never assumed when I sent samples or a sample to
     NIH, no matter which sample it was, that NIH would use it for commercial
     purposes and that continues to be my opinion today.") and 45:16-21 ("it is
     customary to exchange strains among scientists and that is only for research
     purposes."); Ex. 8, Expert Report of David Einhorn at ¶ 2 ("it is customarily
     understood that such shared materials are to be used by the recipient for research
     and not commercial purposes."); Ex. 9, Expert Report of Robert Drillien at ¶ 14,
     15 ("the transfer of live biological material to a research institution, absent a
     written agreement, takes place with the understanding that the biological
     material's use will be limited to research purposes only.")

4

3.  There is evidence of record of Prof. Mayr's creation and ownership of MVA-572 and its progeny. *See, e.g.,* Ex. 10, 9/12/01 Mayr letter to Moss (AC0006782); Ex. 11, Mayr Laboratory Notebook; Ex. 12, Investigator's Brochure for ACAM3000 (AC0010240-80) at page 6; Ex. 13, 11/14/05 Declaration of Prof. Dr. Dr. H.C. Mult. Anton Mayr at page 3 ("I created MVA, and a strain referred to as MVA-572, . . . ."); ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ Ex. 15, Expert Report and/or Legal Opinion of Prof. Dr. Dres. H.C. Joseph Straus at ¶¶14 and 20; Ex. 16, 6/7/04 Moss email to Monath regarding history of MVA (AC0348220-222). In addition, there is evidence that Mayr exported his biological material from Germany. *See, e.g.,* Ex. 6, 2/26/02 Gritz Letter to Mayr (TBC00010). However, the record is completely silent as to any evidence that others have stepped forward in the 30+ years that have passed since Prof. Mayr created MVA-572 to assert ownership or expressed concern regarding the exportation.

4.  There is evidence of record of agreements between Bavarian Nordic and Prof. Mayr regarding MVA-572 and its progeny. *See* Ex. 7, 12/14/05 Mayr Deposition at 19:12-15; Ex. 17, 1996 Agreement Between Bavarian Nordic and Anton Mayr (BNITC00091927-31); Ex. 18, 2002 Assignment Agreement (BNITC00068086-89).

5.  There is no evidence of discovery abuses. The first Mayr deposition was taken with few objections from Bavarian Nordic's counsel, Edward Pennington, on the issues of conversion, Mayr's dealings with NIH, Mayr's ownership and creation

of MVA, and trade secret issues and concluded cordially when Acambis' counsel

ran out of questions. *See, e.g.*, Ex. 7, 12/14/05 Mayr Deposition at 63:7-10. The

entire deposition transcript is included for reference. While Acambis now

complains about the second deposition of Prof. Mayr, it is Acambis' counsel and

this Court that limited the scope of the deposition. Ex. 19, Transcript of 9/13/06

Discovery Conference (D.I. 93) at 13:14-14:1.

6. There is evidence of customer confusion regarding Acambis' MVA product.



## IV.    ARGUMENT

### A.    DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES ON CONVERSION

#### 1.    The American Rule: Parties Pay Their Own Litigation Fees

As the Supreme Court has made clear, in the absence of an agreement or statute providing for attorney's fees, the American rule is that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the [losing party]." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *see also Pennsylvania v. Flaherty*, 40 F.3d 57, 60 (3d. Cir. 1994) (plaintiff cannot recover attorneys' fees from the opposing party unless there is a statute or agreement between the parties that provides for the awarding of attorney's fees). And, while there are several narrow exceptions to this rule, none of those are applicable to the facts here.

Even assuming, *arguendo,* that one of the narrow exceptions applied, the award of attorney fees is an equitable matter and the Court must look to all the circumstances of the case in determining whether such fees should be granted. *See, e.g.*, *SecuraComm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 281 (3d Cir. 2000). Where, as here, there is no evidence that a party brought a baseless claim or litigated in bad faith, an award of attorney's fees is entirely improper.

#### 2.    Bavarian Nordic's Claim is Well-Founded

As recognized by the Court, the "facts of this case do not fit comfortably into the standard paradigm of a conversion claim." D.I. 155 (5/15/07 Mem. Op.) at 13. It is therefore difficult to compare the pleading threshold in this case to a situation in a settled

area of law.  In fact, Acambis attempts to paint a picture of unsupported claims rather than a possible case of first impression based on the underlying facts.

Regardless, as set forth above, the record is bursting with evidence of (1) Acambis use of MVA-572 and/or progeny thereof; (2) the restrictions that were placed on Dr. Moss and NIH with respect to the use of MVA-572 and its progeny that it received from Prof. Mayr and that no ownership rights of MVA-572 were transferred to Dr. Moss; (3) Prof. Mayr's creation and ownership of MVA-572; and (4) agreements between Prof. Mayr and Bavarian Nordic regarding MVA-572 and its progeny.

In particular, the record is clear that MVA, including the specific vial of MVA-572 at issue in this case, was developed and passaged by Prof. Mayr at the University of Munich (Institute für Mikrobiologie und Infektionskrankheiten der Tiere, Ludwig-Maximilians-Universität München).  *See, e.g.*, Ex. 10, 9/12/01 Mayr letter to Moss (AC0006782).  Specifically, the vial of MVA-572 sent to Dr. Moss from Prof. Mayr

> represents lyophilized tissue culture material from the 572nd passage of MVA on primary chicken embryo fibroblasts harvested February 22, 1974 and originates from the vaccinia virus MVA developed and passaged at the Institute für Mikrobiologie und Infektionskrankheiten der Tiere, Ludwig-Maximilians-Universität München (*see* Mayr *et al 1975, Passage history, properties and applicability of the attenuated vaccinia virus strain MVA*, Infection 3:6-14). . .[and] has been stored at the [I]nstitute under my control since that time.

*Id*; *see also* Ex. 11, Mayr Laboratory Notebook.  Moreover, Acambis has consistently relied on this information in government submissions relating to the RFPs and FDA correspondence.  *See, e.g.*, Ex. 12, Investigator's Brochure for ACAM3000 (AC0010240-80) at page 6.

Prof. Mayr subsequently transferred his ownership / title of MVA to Bavarian Nordic.  Ex. 17, 1996 Agreement Between Bavarian Nordic and Anton Mayr

(BNITC00091927-31); Ex. 18, 2002 Assignment Agreement (BNITC00068086-89). While Acambis alleges that it is somehow entitled to attorney fees because of a "lapse" in the agreements between Bavarian Nordic and Prof. Mayr, the transfer of ownership rights under the 2002 Assignment Agreement applies retroactively. In any event, Bavarian Nordic produced accounting statements to show the uninterrupted monthly payments to Prof. Mayr from Bavarian Nordic during the alleged "lapse." Moreover, Prof. Mayr was added as a plaintiff in this case, not to suggest that Bavarian Nordic does not have rights of its own to pursue against Acambis, rather to avoid potential arguments by Acambis that would obfuscate the real issues in this case.

As such, the elements of a conversion claim appeared to have been met at the time of filing the complaint even before discovery, *i.e.*, (1) the defendant intentionally and wrongfully exercised dominion and control over the personal property; (2) the plaintiff had ownership or possessory interest in the property at the time of the alleged conversion; and (3) the plaintiff was damaged by the defendant's conduct (*see, e.g., Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993)), and are now demonstrated through the throngs of evidence in the record.[1]

Moreover, if the conversion claim were truly baseless as Acambis contends, the Court would have had no need to even glance at the expert reports proffered by the parties. However, the Court used the expert reports to arrive at its conclusion that "under

---

[1] While Acambis cites communications from Peter Wulff in an attempt to demonstrate its proposition that the conversion claim was not well-founded, it is important to note that Peter Wulff is not an attorney and has no background in property law or any other type of law. As such, his comments and interpretations as to ownership of MVA are irrelevant. In any event, the cited communications pre-date the due diligence performed by Bavarian Nordic for this litigation.

German law, a transfer of ownership rights regarding MVA 572 took place between Dr. Mayr and Dr. Moss/NIH." D.I. 155 (5/15/07 Mem. Op.) at 16. It is worth noting that this conclusion is at odds with both Bavarian Nordic's expert and at odds with an opinion from a German law firm retained by Therion under very similar circumstances pertaining to the strain Therion received from Mayr. *See generally* Ex. 15, Expert Report and/or Legal Opinion of Prof. Dr. Dres. H.C. Joseph Straus; Ex. 22, Supplemental Expert Report and/or Legal Opinion of Prof. Dr. Dres. H.C. Joseph Straus; Ex. 14, 12/6/02 Memorandum to Therion Biologics from Knoll, Rohrborn & Partner (TBC00001-TBC00017).

### 3. There Is No Evidence of Bad Faith on the Part of Bavarian Nordic

From the beginning, Bavarian Nordic has litigated this case in good faith and continues to pursue the case on appeal in good faith. Despite Acambis' attempts to distort history, Bavarian Nordic has conducted itself with professionalism throughout this litigation.

### a. Prof. Mayr Was Not Withheld

The suggestion that Bavarian Nordic acted in bad faith by somehow withholding Prof. Mayr as a witness is baseless. In fact, the first deposition of Prof. Mayr demonstrates a lengthy and thorough examination of Prof. Mayr by Acambis (as well as ITC staff attorney) on issues relating to conversion, trade secret, ownership, research and development during the ITC case. Ex. 7, 12/14/05 Mayr Deposition. The transcript reveals few objections and a cordial conclusion when Acambis' representative was finished:

MR COSTON:  I just have two, two more

[questions].

  . . .

MR COSTON:  Thank you very much.

MR PENNINGTON:  Are you done?

MR COSTON:  Yes.

  . . .

MR COSTON:  Danke schon.

Ex. 7, 12/14/07 Mayr Deposition at 77:21-78:6; *see also* Ex. 7, 12/14/05 Mayr

Deposition at 63:7-10 (Q [Mr. Coston]: "Right.  I have no further questions.").  Despite

this thorough discovery and his advancing age and health problems, Prof. Mayr was

again made available for deposition in this case.  If Acambis now regrets the limited

scope with which Prof. Mayr was deposed during the September 21, 2006 deposition, it

should review the Court's order regarding the scope of Prof. Mayr's testimony in the

second deposition and its own counsel's agreement as to the acceptable scope for the

additional deposition.[2]

### b.  Prof. Straus' Qualifications

With regard to Acambis' attack on Bavarian Nordic's choice of expert Prof.

Straus, he was retained by Bavarian Nordic as an expert in German law.  Ex. 22,

---

[2]  In particular, the Court understood the scope of Prof. Mayr's additional deposition
to be limited to the "transfer of the viral strain from Dr. Mayr to Dr. Maas [sic]," which
Acambis' counsel, Ms. Bentz, confirmed and asked that "it also include Professor Myr's
[sic] agreements with Bavarian Nordic concerning the viral strain and also Professor
Myr's [sic] damages in this case."  Ex. 19, Transcript of 9/13/06 Discovery Conference
(D.I. 93) at 13:14-14:1.  Bavarian Nordic's counsel recognized that, despite the repeated

Supplemental Expert Report and/or Legal Opinion of Prof. Dr. Dres. H.C. Joseph Straus at ¶1.  As an added bonus, however, Prof. Straus is also "a world renowned expert in international Intellectual Property law . . . ."  *See* D.I. 115 (Bavarian Nordic's Opening Summary Judgment Brief) at 16.  Bavarian Nordic fails to see how the selection of an expert with Prof Straus' exemplary qualifications and background in academia constitutes bad faith litigation tactics.[3]

**c.    Bavarian Nordic's Motives**

Acambis asserts that Bavarian Nordic's motives were purely anti-competitive.  However, as discussed above, Bavarian Nordic had a legitimate legal and factual basis for its conversion claim and viewed Acambis' actions as unscrupulous, especially in light of the secrecy agreement between Bavarian Nordic and Acambis and the licensing discussions with Bavarian Nordic prior to the fall of 2002 and Acambis' subsequent bids for RFP-1 and RFP-2.  *See* Ex. 23 (Joint Statement of Facts) at 17.  In light of this history between the parties, it is puzzling that Acambis feels justified in asserting that Bavarian Nordic's motives are purely anti-competitive.[4]

---

questioning of Prof. Mayr regarding agreements with Bavarian Nordic, "[it] is germane and if they believe they need another bite at it, that's not a problem."  *Id.* at 14:2-9.

[3]    However, Acambis' expert Prof. Tillman is a partner in Bird and Bird, a law firm that represents Baxter (against Bavarian Nordic), the subcontractor and producer of the product MVA3000 at issue in this case.  As such, unlike the treatment of the expert reports in this case, a German court would view Prof. Tillman's expert report as a party opinion.

[4]    In fact, it appears that Acambis routinely engages in behavior that may come closer to what most understand as bad faith conduct.  For example, Acambis entered into discussions with Karl Heller, an ex-employee of Bavarian Nordic as it was ▮▮▮▮▮▮▮▮

In sum, the record is replete with bases for Bavarian Nordic's conversion claim and evidence of good faith litigation. Thus, the Court should deny Acambis' motion for attorney fees on conversion.

**B.    ACAMBIS SHOULD NOT BE AWARDED ATTORNEYS'
       FEES UNDER THE LANHAM ACT OF DDTPA**

**1.    Applicable Law**

The decision to award attorney fees to a prevailing party in an unfair competition suit is discretionary and it turns on whether the Court believes that the case is, in the words of the Lanham Act, "exceptional." *Green v. Fornario*, 2007 U.S. App. LEXIS 10873, at \*3 (3d. Cir. May 8, 2007); *see also* 15 U.S.C. § 1117(a). As emphasized by the Court of Appeals for the Third Circuit, the term "exceptional" is not "a throwaway." *Id.* In fact, determining whether a case is exceptional is a two-step process requiring the Court to first decide whether the defendant engaged in any culpable conduct and then to decide whether the circumstances are "exceptional" enough the warrant a fee award. *Id.* at \*10 (citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47, 49 (3d Cir. 1991)). Bad faith, fraud, and malice are examples of the sort of culpable conduct that could support a fee award. *SecuraComm*, 224 F.3d at 280. None of those types of conduct are present here.

Moreover, a court may also decline to award attorney fees despite a finding of culpable conduct based on the totality of the circumstances. *Green*, No. 06-2649 at \*10. For example, the Court may consider other factors besides culpable conduct, such as the closeness of the liability question and whether the plaintiff suffered damages. *Ferrero*, 952 F.2d at 49.

### 2.    This Case Is Not "Exceptional" Under the Lanham Act

This case is not exceptional under the Lanham Act. Here, it appears that Acambis alleges two basic categories of culpable conduct: (1) groundless claims and (2) bad faith litigation based on an anticompetitive motive. Neither of these categories exist here.

#### a.    The Unfair Competition Claims Are Not Objectively Baseless

Like the conversion claim, the record is full of factual bases to support Bavarian Nordic's claims of unfair competition by Acambis, including the intentional and wrongful control over Bavarian Nordic's property and the subsequent use thereof to bid for a government contract against Bavarian Nordic. In fact, this Court recognized that Bavarian Nordic "raised genuine issues of material facts with respect to defendants' conduct in light of '[t]he essence of unfair competition[, that] is fair play'. . ." D.I. 155 (5/15/07 Mem. Op.) at 19 (citation omitted).

In addition, there is evidence of customer confusion. 

In this vein, this case is easily distinguished from the set of facts present in *Monsanto Co. v. Syngenta Seeds, Inc.*, C.A. No. 04-305-SLR, 2006 U.S. Dist. LEXIS 54515 (D. Del. Aug. 4, 3006) where the *DaStar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) holding was applied because the trademark was used on a

finished product. Here, while Acambis used the name ACAM3000 to designate its

finished MVA-based smallpox vaccine product, it also used ACAM3000 to identify the

MVA virus material that originated from Prof. Mayr. This was of necessity at the time of

the submission of the responses to RFP-1 and RFP-2 because Acambis did not yet have a

finished product; it only had the MVA virus material it received from Dr. Moss, which it

confusingly referred to as ACAM3000. As such, the holding in *Monsanto* is not

dispositive to the unfair competition claims in the present case.

b. **Bavarian Nordic Pursued Litigation in an Attempt to Right a Wrong.**

As discussed above, Bavarian Nordic pursued this litigation (and continues to

pursue it on appeal) out of sense of utter disbelief and dismay that Acambis would

engage in such unjust and harmful conduct. As such, Bavarian Nordic's motives were in

no way based on a desire to "beat a financially weaker opponent through the use of

vexatious litigation," but, rather, to right a perceived wrong. *SecuraComm*, 224 F.3d at

283.

In sum, this case is not "exceptional" enough to merit an award of attorneys' fees

to Acambis under the Lanham Act. Even if it were, the Court should exercise its

discretion to deny Acambis' request for attorney fees at least because of the closeness of

the liability question and the damages suffered by Bavarian Nordic at the expense of

Acambis' conduct.

**C.    THE AMOUNT AND TYPE OF FEES SOUGHT ARE UNREASONABLE**

In the event that the Court finds a basis for attorney fees on the conversion claim

or find exceptional circumstances to exist with respect to the unfair competition claims,

15

the amount sought by Acambis is unsupported by documentation, which prevents any type of review as to the reasonableness of the fees. In particular, Acambis has not provided the evidence usually analyzed in determining a reasonable attorney fee, such as:

> Hourly time records, full expense statements, documentation of attorney billing rates in the community for the particular type of work involved, the attorney's particular skills and experience; and detailed billing records or client's actual bills showing tasks performed in connection with the litigation.

See *Junker v. Eddings*, 396 F.3d 1359, 1366 (Fed. Cir. 2005). Without this information, the Court cannot perform a meaningful review of the reasonableness of the amount. In addition, Bavarian Nordic cannot make specific objections to the requested amount, such as the time spent and activities performed by Acambis' counsel. However, Bavarian Nordic notes that Acambis has stated publicly that "they have ongoing costs of about GBP 0.5m for the Delaware case," which is lower than the fees sought in its motion Ex. 26 (6/12/07 Handelsbanken Capital Markets Company Update) at page 8.

However, with respect to any fees purportedly incurred by Acambis relating to the trade secret component of Bavarian Nordic's Lanham Act and DDTPA claims, Acambis could have at any time moved to have the case dismissed on the basis of the arbitration clause. Instead, Acambis moved to stay this case and then proceeded to participate in discovery of the trade secret claims in the ITC (which Acambis argued were the same as those in this case). *See* D.I. 12 (Acambis' Motion to Stay) at 2. In fact, Acambis did not even move to terminate the trade secret claims in the ITC. Rather, it waited until after the close of discovery and after the ITC Staff Attorney moved to terminate the trade secret portion of the investigation to address the trade secrets claim in this case. *See* D.I. 49 (Sealed Joint Proposed Pretrial Order) at 4. Moreover, Acambis sought no

reimbursement of fees at the ITC for the ultimate dismissal in that case of the trade secret claims. As such, Acambis should not now be able to recover attorney fees in this litigation for activity that occurred during the ITC investigation.

Furthermore, Acambis has previously argued that there is no difference between the Lanham Act claims and the remaining claims in this case, including the DDTPA claims. *See* D.I. 112 (Acambis' Opening Summary Judgment Brief) at 36-37. Thus, there is no basis for Acambis to request separate reimbursement for these claims or to compensate Acambis for these claims in the amount of the cost to defend the conversion claim.

Finally, there is simply no justification set forth by Acambis for imposing the expert fees expended by Acambis on Bavarian Nordic, especially in light of the fact that the decision on summary judgment made great use of the expert testimony.

## VI.    CONCLUSION

The conduct of Bavarian Nordic in litigating this case cannot be characterized in any way to warrant the extreme sanction of fee shifting. Bavarian Nordic acted reasonably and professionally at all times throughout this case. This is certainly not a case in which the claims were unfounded or the plaintiff engaged in bad faith conduct. This is also not an "exceptional" case such that fees should be awarded under the Lanham Act or DDTPA.

Thus, there is no justifiable reason to disregard the American rule that each party should pay its own attorney fees. Accordingly, the Court should dismiss Acambis' motion. In the alternative, in light of the pending appeal of the dismissal of the case on

summary judgment, the Court should dismiss Acambis' motion for attorney fees without

prejudice to renew following the determination of the merits appeal.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

June 12, 2007

_Karen L Pascale_

John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

- and -

BINGHAM MCCUTCHEN LLP
Edward A. Pennington
Robert C. Bertin
Stephanie Scruggs
Krista L. Lynch
2020 K Street NW
Washington, DC 20006-1806
(202) 373-6000

_Attorneys for Plaintiff, Bavarian Nordic A/S_

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on June 20, 2007, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Mary B. Graham [mbgefiling@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

I further certify that on June 20, 2007, I caused a copy of the foregoing document to be

served on the above-listed counsel and on the following non-registered participants in the

manner indicated:

> ### *By E-Mail*
>
> Mary B. Graham [mgraham@mnat.com]
> James Walter Parrett, Jr. [jparrett@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
>
>
> William D. Coston [wdcoston@venable.com]
> Martin L. Saad [mlsaad@venable.com]
> Tamany Vinson Bentz [TJBentz@Venable.com]
> VENABLE LLP
> 575 7th Street, NW
> Washington, DC 20004-1601
> (202) 344-4000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*

_____

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  kpascale@ycst.com
   *Attorneys for Plaintiff Bavarian Nordic A/S*